Volume I, Appx0001-Appx04297
23-2208

# United States Court of Appeals
# for the Federal Circuit

**FINTIV, INC.,**

*Plaintiff-Appellant*

v.

**APPLE INC.,**

*Defendant-Appellee*

———————————

Appeal from the United States District Court for the Western District of Texas, Case No. 1:21-cv-00896-ADA, District Judge Alan D. Albright

---

## CORRECTED NON-CONFIDENTIAL JOINT APPENDIX
### Volume I of IV

---

Meredith Martin Addy
**ADDYHART P.C.**
Charles A. Pannell, III
10 Glenlake Parkway
Suite 130
Atlanta, Georgia  30328
312.320.4200
meredith@addyhart.com
770.715.2020
cpannell@addyhart.com

Melanie L. Bostwick
**Orrick, Herrington & Sutcliffe LLP**
1152 15th Street, NW,
Washington, DC 20005
202.339.8400
mbostwick@orrick.com
Abigail Colella
acolella@orrick.com

Alexandra Bursak
**Orrick, Herrington & Sutcliffe LLP**
21 East 52nd Street
New York, NY  10019
212.506.500
abursak@orrick.com

*Additional Counsel Listed on Inside Cover*

Caren A. Yusem
**ADDYHART P.C.**
1101 Pennsylvania Avenue, N.W.
Suite 300
Washington, DC 20004
312.804.4885
caren@addyhart.com

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
ThucMinh Nguyen
**Kasowitz Benson Torres LLP**
333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA  94065
650.453.5170
jwaldrop@kasowitz.com
djones@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
hkim@kasowitz.com
tnguyen@kasowtiz.com

Paul G. Williams
**Kasowitz Benson Torres LLP**
1230 Peachtree Street, NE
Suite 2445
Atlanta, GA  30309
404.260.6102
pwilliams@kasowitz.com

*Attorneys for Appellant
Fintiv, Inc.*

Stanley J. Panikowski
**DLA Piper LLP (US)**
4365 Executive Drive
Suite 1100
San Diego, CA  92121-2133
858.677.1400
Stanley.panikowski@us.dlapiper.com

Jessica Hannah
**DLA Piper LLP (US)**
555 Mission Street, Suite 2400
SanFrancisco, CA  94105-2933
415.836.2570
Jessica.hannah@us.dlapiper.com

*Attorneys for Appellee
Apple Inc.*

# Table of Contents

| | Description | |
|---|---|---|
| | 2019-08-07 – Protective Order | xxxvii-lxvii |
| 1. | 2023-06-29 Judgment (Dkt. 469) | Appx00001 |
| 2. | 2023-06-21 **Sealed** Order Granting Motion For Summary Judgment [ECF No. 270] (Dkt. 467) | Appx00002-Appx00011 |
| 3. | 2023-06-12 **Sealed** Order (Dkt. 463); | Appx00012-Appx00022 |
| 4. | 2022-07-05 Order – Denying Fintiv's Motion for Sanction [ECF No. 431] (Dkt. 441) | Appx00023-Appx00025 |
| 5. | 2022-03-17 Claim Construction Order and Memorandum in Support Thereof (Dkt. 424) | Appx00026-Appx00050 |
| 6. | 2019-11-27 Claim Construction Order (Dkt. 86) | Appx00051-Appx00084 |
| 7. | US 8,843,125 B2 | Appx00085-Appx00098 |
| 8. | Civil Docket Sheet - 1-21-cv-00896-ADA | Appx00099-Appx00158 |
| 9. | 2020-09-01 Hearing Transcript – Denying Plaintiff's Motion for Leave to Amend Complaint | Appx00159-Appx00258 |
| 10. | 2018-12-21 (Dkt. 1) Complaint | Appx00259-Appx00297 |
| 11. | 2019-01-02 (Dkt. 7) Rule 7 Disclosure | Appx00298-Appx00301 |
| 12. | 2019-03-12 (Dkt. 24) Motion to Dismiss (Withdrawn per Text Order of 8/2/19) | Appx00302-Appx00311 |
| 13. | 2019-03-12 (Dkt. 25) Rule 7 Disclosure | Appx00312-Appx00313 |
| 14. | 2019-04-09 (Dkt. 28) Amended Complaint with Exh. A & B | Appx00314-Appx00355 |
| 15. | 2019-04-09 (Dkt. 29) Response in Opposition to Motion re Motion to Dismiss | Appx00356-Appx00369 |
| 16. | 2019-04-09 (Dkt. 30) Affidavit ISO Response to Motion to Dismiss; Declaration of J. Waldrop and Exh. A | Appx00370-Appx00382 |
| 17. | 2019-04-23 (Dkt. 31) Answer to Amended Complaint | Appx00383-Appx00391 |
| 18. | 2019-06-10 (Dkt. 38) Agreed Scheduling Order | Appx00392-Appx00396 |
| 19. | 2019-06-10 (Dkt. 39) Agreed ORDER governing proceedings | Appx00397-Appx00402 |

| 20. | 2019-06-13 (Dkt. 40) Apple's Opposed Motion to Change Venue– with Exhibits | Appx00403-Appx00735 |
|---|---|---|
| 21. | 2019-07-03 (Dkt. 43) Affidavit of D. Gibson ISO 42 motion - Response in Opposition to Motion | Appx00736-Appx00737 |
| 22. | 2019-07-03 (Dkt. 44) Affidavit ISO 42 motion - Response in Opposition to Motion with Exhibits | Appx00738-Appx01465 |
| 23. | 2019-07-05 (Dkt. 45) Response in Opposition to Motion to Transfer Venue (40) | Appx01466-Appx01483 |
| 24. | 2019-07-05 (Dkt. 46) Motion to Withdraw Plaintiff's Response in Opposition to Defendant's Motion to Change Venue 40 previously filed as Dkt. No. 42 | Appx01484-Appx01491 |
| 25. | 2019-07-08 (Dkt. 47) Order Granting 46 Motion to Withdraw 42 Response in Opposition to Motion | Appx01492 |
| 26. | 2019-07-22 (Dkt. 52) Motion for leave to File Sealed Document | Appx01493-Appx01494 |
| 27. | 2019-07-22 (Dkt. 53) **Sealed** filed (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit C−1) | Appx01495-Appx01519 |
| 28. | 2019-07-23 (Dkt. 54) Transcript filed of Proceedings held on 5-30-19 | Appx01520-Appx01535 |
| 29. | 2019-08-07 (Dkt. 56) Agreed Protective Order | Appx01536-Appx01566 |
| 30. | 2019-09-04 (Dkt. 66) Transcript filed of Proceedings held on 8-29-19 | Appx01567-Appx01638 |
| 31. | 2019-09-07 (Dkt. 68) MOTION for Leave to File Post−Hearing Brief in Support of Defendant's Motion to Transfer Venue by Apple Inc. | Appx01639-Appx01642 |
| 32. | 2019-09-07 (Dkt. 69) Brief regarding 40 Opposed Motion to Change Venue by Apple Inc. with exhibits | Appx01643-Appx01724 |
| 33. | 2019-09-07 (Dkt. 70) **Sealed** ORDER Denying Apple's Motion to Transfer Venue | Appx01725-Appx01742 |
| 34. | 2019-09-12 (Dkt. 71) Apple's Opening Claim Construction Brief with exhibits | Appx01743-Appx02196 |

| 35. | 2019-09-12 (Dkt. 72) Fintiv's Opening Claim Construction brief with exhibits | Appx02197-Appx02227 |
|-----|------------------------------------------------------------------------------|---------------------|
| 36. | 2019-09-12 (Dkt. 73) ORDER Denying Apple's Motion to Transfer Venue (**Public Version** of Dkt. 70) | Appx02228-Appx02245 |
| 37. | 2019-10-03 (Dkt. 74) Apple's Response Claim Construction Brief with exhibits | Appx02246-Appx02479 |
| 38. | 2019-10-03 (Dkt. 75) Fintiv's Responsive Claim Construction Brief with exhibits | Appx02480-Appx02567 |
| 39. | 2019-10-17 (Dkt. 76) Apple's Reply Claim Construction Brief | Appx02568-Appx02588 |
| 40. | 2019-10-17 (Dkt. 77) Fintiv's Reply Claim Construction Brief with exhibits | Appx02589-Appx02916 |
| 41. | 2019-10-21 (Dkt. 78) Apple's MOTION to Stay Case Pending Mandamus Review | Appx02917-Appx02981 |
| 42. | 2019-10-24 (Dkt. 79) Fintiv's Notice of Filing Joint Claim Construction Statement with exhibit | Appx02982-Appx03002 |
| 43. | 2019-11-07 (Dkt. 82) Minute Entry for 11/8/2019 Markman Hearing | Appx03003 |
| 44. | 2019-11-08 (Dkt. 83) Transcript filed of Proceedings held on 11-7-19 | Appx03004-Appx03153 |
| 45. | 2019-11-26 (Dkt. 85) Notice of Filing Joint Post−Markman Hearing Statement | Appx03154-Appx03157 |
| 46. | 2019-12-23 (Dkt. 88)  Case Transfer and Opening Letter sent to all Counsel | Appx03158 |
| 47. | 2019-12-20 (Dkt. 89) ORDER re Apple's petition for Writ of Mandamus directing transfer of case to U.S.D.C., N.D., California | Appx03159-Appx03163 |
| 48. | 2020-01-23 (Dkt. 90) Received Courtesy Copy of Motion for Rehearing En Banc filed in the U.S. Court of Appeals for the Federal Circuit | Appx03164-Appx03199 |
| 49. | 2020-01-30 (Dkt. 91) Apple's First Amended Answer and Defenses to Fintiv's First Amended Complaint for Patent Infringement | Appx03200-Appx03208 |
| 50. | 2020-01-30 (Dkt. 92) Second Amended Complaint with exhibits | Appx03209-Appx03251 |

| 51. | 2020-02-13 (Dkt. 93) Apple's Motion to Dismiss | Appx03252-Appx03265 |
|---|---|---|
| 52. | 2020-02-24 (Dkt. 98) Apple's Brief re Telephone conference with attachments (**Sealed** Exh. A) | Appx03266-Appx03271 |
| 53. | 2020-02-24 (Dkt. 99) Motion for Leave to File sealed document | Appx03272-Appx03275 |
| 54. | 2020-02-26 (Dkt. 100) Transcript filed of Proceedings held on 2-24-2020 | Appx03276-Appx03299 |
| 55. | 2020-02-27 (Dkt. 103) **Sealed** Responsive Letter Brief re Source Code by Fintiv, Inc; with exhibit | Appx03300-Appx03319 |
| 56. | 2020-03-02 (Dkt. 104) Fintiv's Response in Opposition to Motion to Dismiss | Appx03320-Appx03338 |
| 57. | 2020-03-09 (Dkt. 105) Apple's Reply to Response to Motion to Dismiss | Appx03339-Appx03347 |
| 58. | 2020-03-16 (Dkt. 107) Third Party Wells Fargo's Motion to Quash with exhibits | Appx03348-Appx03446 |
| 59. | 2020-03-17 (Dkt. 108) Amended Motion to Quash with attachments | Appx03447-Appx03545 |
| 60. | 2020-03-23 (Dkt. 110) Fintiv's Response in Opposition to Wells Fargo's Amended Motion Quash Subpoena with exhibits | Appx03546-Appx03566 |
| 61. | 2020-03-24 (Dkt. 111) Standing Order | Appx03567-Appx03570 |
| 62. | 2020-03-25 (Dkt. 112) Motion for Protective Order by USAA FSB with exhibits | Appx03571-Appx03675 |
| 63. | 2020-03-25 (Dkt. 113) Supplement to Motion for Protective Order by USAA FSB | Appx03676-Appx03677 |
| 64. | 2020-03-30 (Dkt. 114) Wells Fargo Bank's Reply ISO its M2 Quash | Appx03678-Appx03687 |
| 65. | 2020-04-01 (Dkt. 115) Fintiv's Opposition to USAA FSB Motion, Protective Order 112 | Appx03688-Appx03700 |
| 66. | 2020-04-07 (Dkt. 119) USAA's Reply ISO Motion for Protective Order with exhibit | Appx03701-Appx03718 |
| 67. | 2020-04-07 (Dkt. 121) Transcript filed of Proceeding held on April 7, 2020 | Appx03719-Appx03748 |
| 68. | 2020-04-09 (Dkt. 122) Standing Order | Appx03749 |
| 69. | 2020-04-24 (Dkt. 124) Amended Scheduling Order | Appx03750-Appx03752 |

| | | |
|---|---|---|
| 70. | 2020-06-08 (Dkt. 128) Minute Entry for proceedings held 6/8/2020 | Appx03753 |
| 71. | 2020-06-20 (Dkt. 129) Transcript filed of Proceedings held on 6-8-20 | Appx03753-Appx03780 |
| 72. | 2020-06-25 (Dkt. 131) ORDER Denying Apple's Request For Plaintiff To Re−Serve Its Final Infringement Contentions | Appx03781-Appx03785 |
| 73. | 2020-07-05 (Dkt. 134) Transcript filed of Proceedings held on 7-2-20 | Appx03786-Appx03811 |
| 74. | 2020-07-07 (Dkt. 135) **Sealed** Motion for leave to File Seal - Motion for Leave to Amend Final Disclosure of Asserted Claims, Accused Instrumentalities, and Infringement Contentions  with exhibits | Appx03812-Appx03814 |
| 75. | 2020-07-08 (Dkt. 136)  **Sealed** Motion for Leave to Amend Final Disclosure of Asserted Claims, Accused Instrumentalities, and Infringement Contentions | Appx03815-Appx04361 |
| 76. | 2020-07-13 (Dkt. 137) ORDER, Set Motion Hearing for <u>136</u> Sealed Motion filed, <u>93</u> Motion to Dismiss for Failure to State a Claim Motion Hearing set for 7/21/2020 | Appx04362 |
| 77. | 2020-07-14 (Dkt. 139) **Sealed** - Fintiv's Motion for Leave to File Sealed Documents  - Third Amended Complaint | Appx04363-Appx04366 |
| 78. | 2020-07-15 (Dkt. 142) **Sealed**  Motion for leave to File to File Third Amended Complaint with sealed attachments | Appx04367-Appx04566 |
| 79. | 2020-07-16 (Dkt. 143) **Sealed** Apple's Motion for leave to File under seal its opposition to Fintiv's Motion to Amend its Final Infringement contentions | Appx04567-Appx04570 |
| 80. | 2020-07-18 (Dkt. 144) **Sealed** Apple's opposition to Fintiv's Motion to Amend its Final Infringement contentions | Appx04571-Appx05840 |
| 81. | 2020-07-21 (Dkt. 147) Sealed corrected – Ex. 7 to (Dkt 144) | Appx05841-Appx06113 |
| 82. | 2020-07-27 (Dkt. 148) Unopposed Motion for Leave to File Sealed Document - Fintiv's | Appx06114-Appx06116 |

| | Reply in Support of Motion for Leave to File Amended Final Infringement Contentions | |
|---|---|---|
| 83. | 2020-07-29 (Dkt. 149) **Sealed** Response in Support of Motion for Leave to Amend Final Disclosure of Asserted Claims Accused Instrumentalities, and Infringement Contentions with exhibits | Appx06117-Appx06229 |
| 84. | 2020-07-29 (Dkt. 150) Defendant Apple Inc.' Unopposed Motion For Leave To File Under Seal Its Opposition To Fintiv Inc.'s Motion For Leave To File Third Amended Complaint For Patent Infringement | Appx06230-Appx06232 |
| 85. | 2020-07-30 (Dkt. 153) **Sealed** Response In Opposition To Fintiv, Inc.'s Motion For Leave To File Third Amended Complaint For Patent Infringement with Exhibits | Appx06233-Appx06429 |
| 86. | 2020-07-31 (Dkt. 154) Transcript filed of Proceedings held on 7-31-20 | Appx06430-Appx06444 |
| 87. | 2020-07-31 (Dkt. 155) Minute Entry for proceedings on 7/31/2020 | Appx06445 |
| 88. | 2020-08-05 (Dkt. 162) Minute Entry for Discovery Hearing held on 8/5/2020 | Appx06446 |
| 89. | 2020-08-06 (Dkt. 163) Transcript filed of Discovery Hearing held on 8-5-20 | Appx06447-Appx06510 |
| 90. | 2020-08-10 (Dkt. 164) Unopposed Motion for Leave to File Sealed Document - *Plaintiff's Reply Memorandum Of Law In Support Of Motion For Leave To File Third Amended Complaint For Patent Infringement* | Appx06511-Appx06513 |
| 91. | 2020-08-11 (Dkt. 165) Fintiv's **Sealed** Reply ISO Motion for Leave to File Third Amended Complaint with attachments | Appx06514-Appx06824 |
| 92. | 2020-08-17 (Dkt. 166) Unopposed Motion for leave to File Sealed Document - *Defendant Apple Inc.'s Unopposed Motion For Leave To File Under Seal Its Sur-Reply In Opposition To Fintiv, Inc.'s Motion For Leave To File Third Amended Complaint For Patent Infringement* | Appx06825-Appx06827 |

| 93. | 2020-08-18 (Dkt. 167) **Sealed** Apple's *Sur−Reply In Opposition To Fintiv, Inc.s Motion For Leave to File Third Amended Complaint For Patent Infringement* with exhibits | Appx06828-Appx06894 |
|---|---|---|
| 94. | 2020-08-24 (Dkt. 170) Apple's Opening Supplemental Claim Construction <u>with attachments</u> | Appx06895-Appx07693 |
| 95. | 2020-08-24 (Dkt. 171) Unopposed Motion for leave to File Sealed Document - *Fintiv's Sur−Sur−Reply ISO Motion for Leave to Amend Complaint* | Appx07694-Appx07696 |
| 96. | 2020-08-24 (Dkt. 172) Fintiv's Supplemental Claim Construction Brief with attachments | Appx07697-Appx07943 |
| 97. | 2020-08-24 (Dkt. 173) **Sealed** Plaintiff's *Sur−Reply Memorandum of Law ISO Motion for Leave to File Third Amended Complaint* | Appx07944-Appx07969 |
| 98. | 2020-09-01 (Dkt. 175) Minute Entry for proceedings held on 9/1/2020 re <u>142</u> Motion for leave to File Sealed Document filed by Fintiv, Inc., <u>93</u> Motion to Dismiss for Failure to State a Claim filed by Apple Inc; Transcript of hearing held on 9/1/2020 | Appx07970 |
| 99. | 2020-09-04 (Dkt. 176) Unopposed Motion for leave to File Sealed Document - *Fintiv's Supplemental Claim Construction Brief Regarding the Term "[A/The] Mobile Device"* | Appx07970-Appx07973 |
| 100. | 2020-09-04 (Dkt. 177) Apple's Supplemental Claim Construction brief regarding [a – the] Mobile Device with exhibits 26, 27, 28, 29 | Appx07974-Appx08003 |
| 101. | 2020-09-08 (Dkt. 178) **Sealed** Plaintiff *Fintiv's, Supplemental Claim Construction Brief Regarding The Term [A/The] Mobile Device* with Exhibits 17, 18, 19, 20 | Appx08004-Appx08039 |
| 102. | 2020-09-10 (Dkt. 179) ANSWER to <u>92</u> Amended Complaint | Appx08040-Appx08049 |
| 103. | 2020-09-29 (Dkt. 183) Transcript filed of Proceedings held on 9-29-20 | Appx08050-Appx08063 |

| 104. | 2020-09-30 (Dkt. 184) ORDER denying Apples Motion to Dismiss is Vacated. Further Ordered that Apples Motion to Dismiss at ECF No. <u>93</u> is GRANTED | Appx08064 |
|---|---|---|
| 105. | 2020-10-16 (Dkt. 186) Motion for leave to FUS Apple's Motion To Strike Fintiv's Amended Final Infringement Contentions; | Appx08065-Appx08067 |
| 106. | 2020-10-22 (Dkt. 188) Transcript of Markman Hearing - on 10-21-20 | Appx08068-Appx08113 |
| 107. | 2020-10-30 (Dkt. 191) Motion for leave to File Sealed Document *Fintiv's Opposition to Defendant Apple Inc.'s Motion to Strike Fintiv's Amended Final Infringement Contentions* **sealed** | Appx08114-Appx08121 |
| 108. | 2020-11-02 (Dkt. 193) **Sealed** *Fintiv's Opposition To Apple's Motion To Strike amended Final Infringement Contentions* with exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, P | Appx08122-Appx09777 |
| 109. | 2020-11-03 (Dkt. 194) Transcript filed of Proceedings held on 11-2-20 - ***(Public Version)*** | Appx09778-Appx09804 |
| 110. | 2020-11-06 (Dkt. 199) Motion for leave to File Sealed Document – Apple's Reply In Support Of Its Motion To Strike Fintiv's Amended Infringement Contentions | Appx09805-Appx09808 |
| 111. | 2020-11-09 (Dkt. 200) **Sealed** Reply In Support Of Apple Inc.'s Motion To Strike Fintiv's Amended Final Infringement Contentions | Appx09809-Appx09816 |
| 112. | 2020-11-12 (Dkt. 201) Transcript filed of Proceedings held on 11-5-20 | Appx09817-Appx09847 |
| 113. | 2020-11-13 (Dkt. 202) Transcript filed of Proceedings held on August 28, 2020 | Appx09848-Appx09912 |
| 114. | 2020-11-13 (Dkt. 203) Transcript filed of Proceedings held on September 1, 2020 | Appx09913-Appx10013 |
| 115. | 2020-12-15 (Dkt. 205) SCHEDULING ORDER | Appx10014-Appx10015 |

x

| | | |
|---|---|---|
| 116. | 2021-01-14 (Dkt. 206) Motion for leave to File Sealed Document – *Apple's Motion for Judgment on the Pleadings as to Pre-Suit Indirect Infringement* and Exhibits A through H | Appx10016-Appx10022 |
| 117. | 2021-01-20 (Dkt. 207) **Sealed** Motion filed. *Apple's Opposed Motion to Strike Fintiv's Amended Final Infringement Contentions* – with attachments | Appx10023-Appx11083 |
| 118. | 2021-01-20 (Dkt. 208) **Sealed** *Apple Inc's Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement* with exhibits | Appx11084-Appx11207 |
| 119. | 2021-02-08 (Dkt. 211) **Sealed**. *Fintiv's Opposition To Apple Inc.'s 208 Motion For Judgment On The Pleadings As To Pre−Suit Indirect Infringement* with Exhibits | Appx11208-Appx11411 |
| 120. | 2021-02-11 (Dkt. 212) Agreed Amended Scheduling Order | Appx11412-Appx11413 |
| 121. | 2021-02-19 (Dkt. 214) Apple's Reply ISO its Motion for Judgment on the Pleadings as to pre-suit indirect infringement (with exhibit) | Appx11414-Appx11437 |
| 122. | 2021-02-19 (Dkt. 215) **Sealed**. Exhibit L to Apple Inc's Reply in Support of its Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement (Exh. L attached to Dkt 214) | Appx11438-Appx11451 |
| 123. | 2021-03-22 (Dkt. 218) **Sealed** *Fintiv's Motion for Leave to Amend Infringement Contentions* with Exh. A - L | Appx11452-Appx12970 |
| 124. | 2021-03-22 (Dkt. 219) Attachment *Exhibit C* to 218 | Appx12971-Appx13019 |
| 125. | 2021-03-22 (Dkt. 221 Fintiv's Submission of additional exhibits to Motion for Leave to File Amended infringement Contentions under seal (Dkt 218) Exhibits C, D and E to 218 | Appx13020-Appx13071 |
| 126. | 2021-04-02 (Dkt. 225) **Sealed**: *Apple Inc.'s Opposition to Fintiv, Inc.'s Motion for Leave to Amend Infringement Contentions* of 218 | Appx13072-Appx13551 |

| | Sealed Motion by Apple with attachments Ex 1, 2, 6, 7, 9, 10 | |
|---|---|---|
| 127. | 2021-04-02 (Dkt. 226) Attachment Nonconfidential Exhibits to Apple Inc.'s Opposition to Fintiv, Inc.'s Motion for Leave to Amend Infringement Contentions to 225 Sealed Document – Exh. 3, 4, 5, 8, 11 | Appx13552-Appx13630 |
| 128. | 2021-04-09 (Dkt. 228) Fintiv's Motion *For* A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports with exhibits | Appx13631-Appx13659 |
| 129. | 2021-04-09 (Dkt. 229) Motion for leave to File Sealed Document | Appx13660-Appx13662 |
| 130. | 2021-04-13 (Dkt. 230) **Sealed** - *Plaintiff Fintiv, Inc.'s* **Reply** *In Support Of its 218 Motion For Leave To Amend Infringement Contentions*, Exh. A, B, C, D, E | Appx13663-Appx13697 |
| 131. | 2021-04-16 (Dkt. 231) Apple's Opposition to Fintiv's Motion  re 228 For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports filed by Fintiv, Inc. with Exh. A | Appx13698-Appx13712 |
| 132. | 2021-04-23 (Dkt. 249) **Sealed**: *Fintiv,'s Reply ISO Motion For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports* of 228 MOTION For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports by Fintiv, Inc with Exh. 1 | Appx13713-Appx13762 |
| 133. | 2021-04-23 (Dkt. 250) Declaration Of Jonathan K. Waldrop ISO Fintiv, Inc.'s Reply | Appx13763-Appx13802 |

| | ISO <u>228</u> Motion For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports | |
|---|---|---|
| 134. | 2021-06-15 (Dkt. 259) Transcript filed of Proceedings held on April 30, 2021 | Appx13803-Appx13882 |
| 135. | 2021-06-15 (Dkt. 260) Transcript filed of Proceedings held on May 12, 2021 | Appx13883-Appx13902 |
| 136. | 2021-06-16 (Dkt. 261) Standing Order regarding Scheduling Order | Appx13903-Appx13907 |
| 137. | 2021-06-28 (Dkt. 262) **<u>Sealed</u>** *Plaintiff Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony Of Ahmer Khan* with exhibits 1 - 7 | Appx13908-Appx14025 |
| 138. | 2021-06-28 (Dkt. 263) **<u>Sealed</u>** *Fintiv's Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus.* with Exhs. 1 - 8 | Appx14026-Appx14178 |
| 139. | 2021-06-28 (Dkt. 264) **<u>Sealed</u>** *Apple's Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein* with *Exhibits 1 -3* | Appx14179-Appx14246 |
| 140. | 2021-06-28 (Dkt. 265-1) Attachment *Exhibit 4* to <u>264</u> Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. | Appx14247-Appx14251 |
| 141. | 2021-06-28 (Dkt. 264) **<u>Sealed</u>** *Apple's Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein* with Exhibits 5 - 7 | Appx14252-Appx14272 |
| 142. | 2021-06-28 (Dkt. 265-1) Attachment *Exhibit 4* to <u>264</u> Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. | Appx14273-Appx14277 |
| 143. | 2021-06-28 (Dkt. 266) **<u>Sealed</u>** *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus.* with Exhibits 1 - 19 | Appx14278-Appx15004 |

| | | |
|---|---|---|
| 144. | 2021-06-28 (Dkt. 267) **Sealed** *Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifu*s with Exhibits 1 - 6 | Appx15005-Appx15090 |
| 145. | 2021-06-28 (Dkt. 268) **Sealed** *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report Regarding Damages Of W. Christopher Bakewell* with Exhibits 1 - 4 | Appx15091-Appx15123 |
| 146. | 2021-06-28 (Dkt. 269) **Sealed** *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, Ph.D.* with Exhibits 1- 4 | Appx15124-Appx15155 |
| 147. | 2021-06-28 (Dkt. 270) **Sealed** *Motion for Summary Judgment of Noninfringement* by Apple Inc, with exhibits 1 - 8 | Appx15156-Appx15460 |
| 148. | 2021-06-28 (Dkt. 271) **Sealed** *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell* with attachments | Appx15461-Appx15554 |
| 149. | 2021-06-28 (Dkt. 272) **Sealed** *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D* with Exhibits 1 - 11 | Appx15555-Appx15589 |
| 150. | 2021-06-28 (Dkt. 273) Attachment Exhibits 1, 9, 10, 11 to <u>270</u> Sealed Motion for Summary Judgment of Noninfringement by Apple Inc. | Appx15590-Appx15628 |
| 151. | 2021-06-28 (Dkt. 274) **Sealed** Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus by Fintiv, Inc., with Exhibits 1 - 15 | Appx15629-Appx16027 |
| 152. | 2021-06-28 (Dkt. 275) **Sealed** *Fintiv, Inc.'s Daubert Motion To Exclude The Disclosure And Declaration And Testimony Of Ahmer Khan* with Exhibits 1 - 7 | Appx16028-Appx16330 |
| 153. | 2021-06-28 (Dkt. 276) **Sealed** *Fintiv, Inc.'s Daubert Motion To Exclude Portions Of Dr. Lynne Weber's Opening Expert Report And W.* | Appx16331-Appx16408 |

| | *Christopher Bakewell's Opening Expert Report* with Exhibits 1-5 | |
|---|---|---|
| 154. | 2021-06-28 (Dkt. 277) **<u>Sealed</u>** *Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell.* with Exhibits 1-11 and Proposed Order | Appx16409-Appx16533 |
| 155. | 2021-06-28 (Dkt. 278) **<u>Sealed</u>** *Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D* with attachments 1 - 4 | Appx16534-Appx16563 |
| 156. | 2021-06-28 (Dkt. 279) **<u>Sealed</u>** *Fintiv, Inc.'s Omnibus Motion For Partial Summary Judgment* | Appx16564-Appx16627 |
| 157. | 2021-06-30 (Dkt. 280) **<u>Sealed</u>**  Fintiv, Inc.'s **<u>Corrected</u>** Omnibus Motion for Partial Summary Judgment (Dkt. 279) by Fintiv with attachments 1 - 28 | Appx16628-Appx18016 |
| 158. | 2021-07-02 (Dkt. 281) *Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan (**Public Version** of Dkt. 262)* | Appx18017-Appx18071 |
| 159. | 2021-07-02 (Dkt. 282) *Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus (**Public Version** of Dkt. 263)* | Appx18072-Appx18135 |
| 160. | 2021-07-02 (Dkt. 283) *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus (**Public Version** of Dkt. 266)* | Appx18136-Appx18155 |
| 161. | 2021-07-02 (Dkt. 284) *Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus (**Public Version** of Dkt. 267)* | Appx18156-Appx18182 |
| 162. | 2021-07-02 (Dkt. 285) *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report Regarding Damages Of W.* | Appx18183-Appx18194 |

| | | |
|---|---|---|
| | *Christopher Bakewell* (***Public Version*** of Dkt. 268*)* | |
| 163. | 2021-07-02 (Dkt. 286) *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, Ph.D.* (***Public Version*** *of Dkt. 269)*. (Attachments: # 1 Declaration of Jonathan K. Waldrop, | Appx18195-Appx18206 |
| 164. | 2021-07-02 (Dkt. 287) *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell* (***Public Version*** of Dkt. 271***)*** | Appx18207-Appx18230 |
| 165. | 2021-07-02 (Dkt. 288*) Fintiv, Inc.'s Motion To Strike And Exclude Portions of The Rebuttal Expert Report Of Lynne J. Weber, PH.D* (***Public Version*** of Dkt. 272) | Appx18231-Appx18243 |
| 166. | 2021-07-02 (Dkt. 289) *Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony of Henry Dreifus* (***Public Version*** *of Dkt. 274)* | Appx18244-Appx18269 |
| 167. | 2021-07-02 (Dkt. 290) *Fintiv, Inc.'s Daubert Motion To Exclude The Disclosure And Declaration And Testimony of Ahmer Khan* (***Public Version*** *of Dkt. 275)* | Appx18270-Appx18292 |
| 168. | 2021-07-02 (Dkt. 291) *Fintiv, Inc.'s Daubert Motion To Exclude Portions of Dr. Lynne Weber's Opening Expert Report And W. Christopher Bakewell's Opening Expert Report* (***Public Version*** *of Dkt. 276)* | Appx18293-Appx18321 |
| 169. | 2021-07-02 (Dkt. 292) *Fintiv, Inc.'s Daubert Motion To Exclude Portions of The Expert Rebuttal Report And Testimony of W. Christopher Bakewell* (***Public Version*** *of Dkt. 277)* | Appx18322-Appx18338 |
| 170. | 2021-07-02 (Dkt. 293) *Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D* (***Public Version*** *of Dkt. 278)* | Appx18339-Appx18350 |

| | | |
|---|---|---|
| 171. | 2021-07-02 (Dkt. 294) *Fintiv, Inc.'s Corrected Omnibus Motion for Partial Summary Judgment (**Public Version** of Dkt. 280)* | Appx18351-Appx18428 |
| 172. | 2021-07-09 (Dkt. 295) *Apples's Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein (**Public Version** of 264)* Sealed | Appx18429-Appx18443 |
| 173. | 2021-07-09 (Dkt. 296) *Motion for Summary Judgment of Noninfringement (**Public Version** of 270)* by Apple | Appx18444-Appx18475 |
| 174. | 2021-07-27 (Dkt. 299) **Sealed**:  *Fintiv's **Opposition** To Apple's Motion To Exclude The Opinions Of Fintiv's Damages Expert Roy Weinstein* of 264 Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc.. with attachments - Declaration of J. Waldrop, Exhs. 1-14 and proposed Order | Appx18476-Appx18589 |
| 175. | 2021-07-27 (Dkt. 300) **Sealed** *Fintiv's **Opposition** To Apple's Motion For Summary Judgment of 270 Sealed Motion for Summary Judgment of Noninfringement* with attachments - Declaration of J. Waldrop, Exhs. 1 - 26 and proposed Order | Appx18590-Appx19387 |
| 176. | 2021-07-27 (Dkt. 301) **Sealed** *Apple's **Opposition** to Motion to Strike of 262 The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan* | Appx19388-Appx19401 |
| 177. | 2021-07-27 (Dkt. 302) **Sealed** *Apple's **Opposition** to Daubert Motion of 267 Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus* | Appx19402-Appx19419 |
| 178. | 2021-07-27 (Dkt. 303) **Sealed** *Apple's **Opposition** to Daubert Motion to Exclude of 275 Fintiv's Daubert Motion To Exclude The Disclosure And Declaration And Testimony Of Ahmer Khan* | Appx19420-Appx19431 |

| | | |
|---|---|---|
| 179. | 2021-07-27 (Dkt. 304) **<u>Sealed</u>** *Apple's* **Opposition** *to Daubert Motion to Exclude of <u>276</u> Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of Dr Lynne Weber's Opening Expert Report And W. Christopher Bakewell's Opening Expert Report* | Appx19432-Appx19450 |
| 180. | 2021-07-27 (Dkt. 305) **<u>Sealed</u>** *Apple's* **Opposition** *to Moton to Strike and Exclude of <u>266</u> Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus* | Appx19451-Appx19464 |
| 181. | 2021-07-27 (Dkt. 306) **<u>Sealed</u>** *Apple's* **Opposition** *to Motion to Exclude of <u>274</u> Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus* | Appx19465-Appx19484 |
| 182. | 2021-07-27 (Dkt. 307) **<u>Sealed</u>** *Apple's* **Opposition** *to Motion to Strike and Exclude of <u>269</u> Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, PH.D* | Appx19485-Appx19496 |
| 183. | 2021-07-27 (Dkt. 308) **<u>Sealed</u>** *Apple's* **Opposition** *to Motion to Strike and Exclude of <u>272</u> Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D* | Appx19497-Appx19508 |
| 184. | 2021-07-27 (Dkt. 309) **<u>Sealed</u>** *Apple's Opposition to Daubert Motion of <u>278</u> Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D.* | Appx19509-Appx19517 |
| 185. | 2021-07-27 (Dkt. 310) **<u>Sealed</u>** *Apple's* **Opposition** *to Daubert Motion of **277** Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell* | Appx19518-Appx19533 |
| 186. | 2021-07-27 (Dkt. 311) **<u>Sealed</u>**: *Apple's* **Opposition** *to Motion to Strike of <u>268</u> Plaintiff* | Appx19534-Appx19539 |

xviii

| | | |
|---|---|---|
| | *Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report Regarding Damages Of W. Christopher Bakewell* | |
| 187. | 2021-07-27 (Dkt. 312) <u>**Sealed**</u> *Apple's* ***Opposition*** *to Corrected Omnibus Motion of* <u>*280*</u> *CORRECTED /* Plaintiff Fintiv, Inc.'s Corrected Omnibus Motion for Partial Summary Judgment (Dkt. 279) | Appx19540-Appx19576 |
| 188. | 2021-07-27 (Dkt. 313) <u>**Sealed**</u> *Apple's* ***Opposition*** *to Motion to Strike of* <u>*271*</u> Sealed Motion Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell | Appx19577-Appx19588 |
| 189. | 2021-07-27 (Dkt. 314) <u>**Sealed**</u> *Apple's* ***Opposition*** *to Motion to Strike of* <u>*263*</u> Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus | Appx19589-Appx19602 |
| 190. | 2021-07-27 (Dkt. 315) <u>**Sealed**</u>: Apple's Appendix of Exhibits | Appx19603-Appx20825 |
| 191. | 2021-08-03 (Dkt. 316) *Fintiv's* ***Opposition*** *to Apple's re* <u>*264*</u> *Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein* by Apple Inc. ***(Public Version*** *of Dkt. 299)* with attachments – Declaration of J. Waldrop, Exhs. 5, 6, 8, 9, 10, 11 and proposed Order | Appx20826-Appx20885 |
| 192. | 2021-08-03 (Dkt. 317) *Fintiv's* ***Opposition*** *to Motion,* <u>*270*</u> *for Summary Judgment of Noninfringement* ***(Public Version*** *of Dkt. 300)* with attachments – Declaration of J. Waldrop, Exhs. 1, 6, 7, 13, 14, 16, 19, 26 and proposed Order | Appx20886-Appx21002 |
| 193. | 2021-08-13 (Dkt. 318) Redacted Copy of <u>301</u> Sealed Document, by Apple Inc.. | Appx21003-Appx21016 |
| 194. | 2021-08-13 (Dkt. 319)  Redacted Copy of <u>302</u> Sealed Document, by Apple Inc | Appx21017-Appx21034 |

| 195. | 2021-08-13 (Dkt. 320) Redacted Copy of <u>303</u> Sealed Document, by Apple Inc | Appx21035-Appx21046 |
|---|---|---|
| 196. | 2021-08-13 (Dkt. 321) Redacted Copy of <u>304</u> Sealed Document, by Apple Inc.. | Appx21047-Appx21065 |
| 197. | 2021-08-13 (Dkt. 322) Redacted Copy of <u>305</u> Sealed Document, by Apple Inc | Appx21066-Appx21079 |
| 198. | 2021-08-13 (Dkt. 323) Redacted Copy of <u>306</u> Sealed Document, by Apple Inc | Appx21080-Appx21099 |
| 199. | 2021-08-13 (Dkt. 324) Redacted Copy of <u>307</u> Sealed Document, by Apple Inc. | Appx21100-Appx21111 |
| 200. | 2021-08-13 (Dkt. 325) Redacted Copy of <u>308</u> Sealed Document, by Apple Inc | Appx21112-Appx21123 |
| 201. | 2021-08-13 (Dkt. 326) Redacted Copy of <u>309</u> Sealed Document, by Apple Inc. | Appx21124-Appx21132 |
| 202. | 2021-08-13 (Dkt. 327) Redacted Copy of <u>310</u> Sealed Document, by Apple Inc | Appx21133-Appx21148 |
| 203. | 2021-08-13 (Dkt. 328) Redacted Copy of <u>311</u> Sealed Document, by Apple Inc | Appx21149-Appx21154 |
| 204. | 2021-08-13 (Dkt. 329) Redacted Copy of <u>312</u> Sealed Document, by Apple Inc. | Appx21155-Appx21191 |
| 205. | 2021-08-13 (Dkt. 330) Redacted Copy of <u>313</u> Sealed Document, by Apple Inc | Appx21192-Appx21203 |
| 206. | 2021-08-13 (Dkt. 331) Redacted Copy of <u>314</u> Sealed Document, by Apple Inc | Appx21204-Appx21217 |
| 207. | 2021-08-17 (Dkt. 333) **<u>Sealed</u>** *Fintiv.'s* **Reply** *In Further Support of <u>262</u> Plaintiff Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan* (Dkt. 262) | Appx21218-Appx21228 |
| 208. | 2021-08-17 (Dkt. 334) **<u>Sealed</u>** *Fintiv's* **Reply** *in Further Support of <u>263</u> Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus* with Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1 | Appx21229-Appx21256 |
| 209. | 2021-08-17 (Dkt. 335) **<u>Sealed</u>** *Fintiv's* **Reply** *in Further Support of <u>266</u> Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The* | Appx21257-Appx21358 |

| | | |
|---|---|---|
| | *Opening Expert Report And Testimony Of Henry Dreifus* with Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1) | |
| 210. | 2021-08-17 (Dkt. 336) <u>**Sealed**</u> *Fintiv's **Reply** In Further Support of 267 Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus* with Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3 | Appx21359-Appx21393 |
| 211. | 2021-08-17 (Dkt. 337) <u>**Sealed**</u> *Fintiv's **Reply** in Further Support of 275 Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude The Disclosure And Declaration And Testimony Of Ahmer Khan* | Appx21394-Appx21403 |
| 212. | 2021-08-17 (Dkt. 338) <u>**Sealed**</u> *Fintiv's **Reply** In Further Support of 274 Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus* with Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, #4 Exhibit 3. | Appx21404-Appx21466 |
| 213. | 2021-08-17 (Dkt. 339) <u>**Sealed**</u> *Fintiv's **Reply** In Further Support of 276 Fintiv, Inc.'s Daubert Motion To Exclude Portions Of Dr. Lynne Weber's Opening Expert Report And W. Christopher Bakewell's Opening Expert Report* | Appx21467-Appx21477 |
| 214. | 2021-08-17 (Dkt. 340) <u>**Sealed**</u>: *Fintiv's **Reply** In Further Support of 268 Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report Regarding Damages Of W. Christopher Bakewell* | Appx21478-Appx21486 |
| 215. | 2021-08-17 (Dkt. 341) <u>**Sealed**</u>: *Fintiv's **Reply** in Further Support of 269 Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, PH.D* | Appx21487-Appx21496 |

| 216. | 2021-08-17 (Dkt. 342) **Sealed** *Fintiv's **Reply** In Further Support of 278 Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D* | Appx21497-Appx21505 |
| 217. | 2021-08-17 (Dkt. 343) **Sealed** *Fintiv's **Reply** In Further Support of 272 Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D* | Appx21506-Appx21515 |
| 218. | 2021-08-17 (Dkt. 344) **Sealed** *Fintiv's **Reply** In Further Support of 271 Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell* | Appx21516-Appx21526 |
| 219. | 2021-08-17 (Dkt. 345) **Sealed** *Fintiv's **Reply** in Further Support of 277 Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell* | Appx21527-Appx21537 |
| 220. | 2021-08-17 (Dkt. 347) **Sealed** ***Reply** In Support of 264 to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein* | Appx21538-Appx21595 |
| 221. | 2021-08-17 (Dkt. 348) **Sealed** *Apple's **Reply** In Support of 270 Sealed Motion for Summary Judgment of Noninfringement.* | Appx21596-Appx21611 |
| 222. | 2021-08-17 (Dkt. 349) **Sealed** *Fintiv's **Reply** Memorandum Of Law In Further Support Of Its Corrected Omnibus Motion For Partial Summary Judgment 280 **Corrected** /* Plaintiff Fintiv, Inc.'s Corrected Omnibus Motion for Partial Summary Judgment (Dkt. 279) | Appx21612-Appx21672 |
| 223. | 2021-08-19 (Dkt. 350) **Sealed** *Apple's Motion in Limine* with Attachments: # 1 Maggiore Decl., # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 10, # 9 Exhibit 15, # 10 Exhibit 16, # 11 Exhibit 17, # 12 Exhibit 18, # 13 Exhibit 19, # 14 Exhibit 20, # 15 Exhibit 22) | Appx21673-Appx21818 |

| 224. | 2021-08-19 (Dkt. 351) **Sealed** *Fintiv's Motion In Limine No. 1* To Exclude References To Fintiv As A Non−Practicing Entity, Pejorative Description Of Fintiv, Prior Litigations And Investigations, Employment And Payroll Disputes Or Financial Status Of Fintiv Or Related Entities, Absence Of Inventors, Witness Testimony Instructed Not To Answer Or Not Provided, Its Agreements And Payments To Counsel, And Fintiv's Selection Of This Venue | Appx21819-Appx21834 |
|------|------|------|
| 225. | 2021-08-19 (Dkt. 352) Attachment (Non−Confidential Exhibits*)* to 350 Motion in Limine by Apple Inc. - Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 9, #4 Exhibit 11, # 5 Exhibit 12, # 6 Exhibit 13, # 7 Exhibit 14, # 8 Exhibit 21 | Appx21835-Appx21880 |
| 226. | 2021-08-19 (Dkt. 353) **Sealed** *Fintiv's Motion In Limine No. 2* To Exclude References To Certain Arguments Relating To Apples Reputation, Third− Party Witnesses, Damages Awards, And Prior Judicial Opinions with Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Proposed Order | Appx21881-Appx21951 |
| 227. | 2021-08-19 (Dkt. 354) **Sealed** *Fintiv,'s Motion In Limine No. 3* To Exclude Certain References To Arguments Relating To Non−Infringement And Invalidity with Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Proposed Order | Appx21952-Appx22095 |
| 228. | 2021-08-24 (Dkt. 356)*)*– Apple's Reply In Support of its Motion to Exclude The Opinions of Fintiv's Damagees Expert Roy Weinstein *(Public Version)* of 347 | Appx22096-Appx22109 |
| 229. | 2021-08-24 (Dkt. 357) Apple's Reply in Support of its Motion for Summary Judgment of Noninfringement *(Public Version)* of 348 | Appx22110-Appx22125 |

| 230. | 2021-08-24 (Dkt. 358) Transcript filed of Proceedings held on 8-23-21 | Appx22126-Appx22138 |
|------|------|------|
| 231. | 2021-08-24 (Dkt. 359) Plaintiff Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan (***Public Version***) of <u>262</u> | Appx22139-Appx22149 |
| 232. | 2021-08-24 (Dkt. 360) Fintiv's Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus (***Public Version)*** of <u>263</u> | Appx22150-Appx22162 |
| 233. | 2021-08-24 (Dkt. 361) Fintiv's Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus. ***(Public Version)*** of <u>266</u> | Appx22163-Appx22175 |
| 234. | 2021-08-24 (Dkt. 362) Fintiv's Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1) (***Public Version)*** of <u>267</u> | Appx22176-Appx22200 |
| 235. | 2021-08-24 (Dkt. 363), Fintiv's Reply In Further Support Of Its Daubert Motion To Exclude The Disclosure And Declaration And Testimony Of Ahmer Khan (Dkt. 275) ***Public Version*** of <u>337</u> | Appx22201-Appx22210 |
| 236. | 2021-08-24 (Dkt. 364) Fintiv's Reply In Support Of Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus (Dkt. 274) **Public Version** of <u>338</u> | Appx22211-Appx22228 |
| 237. | 2021-08-24 (Dkt. 365) Fintiv's Reply In Further Support Of Its Daubert Motion To Exclude Portions Of Dr. Lynne Weber's Opening Expert Report And W. Christopher Bakewell's Opening Expert Report (Dkt. 276) ***Public Version*** of <u>339</u> | Appx22229-Appx22239 |
| 238. | 2021-08-24 (Dkt. 366) Fintiv's Reply In Support Of Motion To Strike And Exclude | Appx22240-Appx22248 |

| | | |
|---|---|---|
| | Portions Of The Opening Expert Report Regarding Damages Of W. Christopher Bakewell (Dkt. 268) ***Public Version*** of <u>340</u> | |
| 239. | 2021-08-24 (Dkt. 367) Fintiv's Reply In Further Support Of Its Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, Ph.D (Dkt. 269) ***Public Version*** of <u>341</u> | Appx22249-Appx22258 |
| 240. | 2021-08-24 (Dkt. 368) Fintiv's Reply In Support Of Daubert Motion To Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, Ph.D (Dkt. 278) ***Public Version*** Of <u>342</u> | Appx22259-Appx22267 |
| 241. | 2021-08-24 (Dkt. 369) Fintiv's Reply In Support Of Motion To Strike And Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, Ph.D (Dkt. 272) ***Public Version*** of <u>343</u> | Appx22268-Appx22277 |
| 242. | 2021-08-24 (Dkt. 370) Fintiv's Reply In Further Support Of Its Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell (Dkt. 271) ***Public Version*** of <u>344</u> | Appx22278-Appx22288 |
| 243. | 2021-08-24 (Dkt. 371) Rebuttal Report And Testimony Of W. Christopher Bakewell (Dkt. 277) ***Public Version*** of <u>345</u> | Appx22289-Appx22299 |
| 244. | 2021-08-24 (Dkt. 372) - Fintiv's Reply Memorandum Of Law In Further Support Of Its Corrected Omnibus Motion For Partial Summary Judgment (Dkt. 280) ***Public Version*** of <u>349</u> | Appx22300-Appx22339 |
| 245. | 2021-08-27 (Dkt. 373) <u>**Sealed**</u> Motion Fintiv, Inc.'s Unopposed Motion For Leave To File Sur‑Reply To Defendant Apple Inc.'s Motion To Exclude The Opinions Of Fintiv's Damages Expert Roy Weinstein by Attachments: # 1 Exhibit A, # 2 Declaration Of Roy Weinstein, # 3 Proposed Order) | Appx22340-Appx22358 |

| | | |
|---|---|---|
| 246. | 2021-08-30 (Dkt. 375) Motion in Limine by Apple Inc. *Public Version)* of 350 | Appx22359-Appx22386 |
| 247. | 2021-08-31 (Dkt. 376) **Sealed** Document: Fintiv.'s Omnibus Opposition To Apple's Motions In Limine (Dkt. 350) Sealed Motion in Limine by Apple Inc.  - (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3 Part 1 of 2, # 5 Exhibit 3 Part 2 of 2, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8 Part 1 of 6, # 11 Exhibit 8 Part 2 of 6, # 12 Exhibit 8 Part 3 of 6, # 13 Exhibit 8 Part 4 of 6, # 14 Exhibit 8 Part 5 of 6, # 15 Exhibit 8 Part 6 of 6, # 16 Exhibit 9 Part 1 of 7, # 17 Exhibit 9 Part 2 of 7, # 18 Exhibit 9 Part 3 of 7, # 19 Exhibit 9 Part 4 of 7, # 20 Exhibit 9 Part 5 of 7, # 21 Exhibit 9 Part 6 of 7, # 22 Exhibit 9 Part 7 of 7, # 23 Exhibit 10, # 24 Exhibit 11 Part 1 of 2, # 25 Exhibit 11 Part 2 of 2, # 26 Exhibit 12, # 27 Exhibit 13, # 28 Exhibit 14, # 29 Exhibit 15, # 30 Exhibit 16, # 31 Exhibit 17, # 32 Exhibit 18, # 33 Exhibit 19, # 34 Exhibit 20, # 35 Exhibit 21, # 36 Exhibit 22, # 37 Exhibit 23, # 38 Exhibit 24, # 39 Exhibit 25, # 40 Exhibit 26, # 41 Exhibit 27, # 42 Exhibit 28, # 43 Exhibit 29, # 44 Exhibit 30, # 45 Exhibit 31, # 46 Exhibit 32, # 47 Proposed Order) | Appx22387-Appx23202 |
| 248. | 2021-08-31 (Dkt. 377) **Sealed** Apple's **Opposition** to Plaintiff's Motion in Limine No. 1  351 Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 1 To Exclude References To Fintiv As A Non−Practicing Entity, Pejorative Description Of Fintiv, Prior Litigations And Investigations, Employment And Payroll Disputes Or Financial Status (Attachments: # 1 Gibson Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E) | Appx23203-Appx23264 |

| | | |
|---|---|---|
| 249. | 2021-08-31 (Dkt. 378) **Sealed** Apple's **Opposition** to Plaintiff's Motion in Limine No. 2 of <u>353</u> Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 2 To Exclude References To Certain Arguments Relating To Apples Reputation, Third− Party Witnesses, Damages Awards, And Prior Judicial Opinions by Fintiv - (Attachments: # 1 Cunningham Decl., # 2 Exhibit A, # 3 Exhibit B) | Appx23265-Appx23302 |
| 250. | 2021-08-31 (Dkt. 379) **Sealed**: Apple's **Opposition** to Plaintiff's Motion in Limine No. 3 of <u>354</u> Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 3 To Exclude Certain References To Arguments Relating To Non−Infringement And Invalidity by Fintiv - Attachments: # 1 Cunningham Decl., # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H) | Appx23303-Appx23406 |
| 251. | 2021-09-01 (Dkt. 381) **Sealed** Proposed Joint Final Pretrial Order by Fintiv - (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, #7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20) | Appx23407-Appx24291 |
| 252. | 2021-09-03 (Dkt. 382) Unopposed Sealed Motion Fintiv's Unopposed Motion For Leave To File Sur−Reply To Defendant Apple Inc.'s Motion To Exclude The Opinions Of Fintiv's Damages Expert Roy Weinstein - (Attachments: # 1 Exhibit A, # 2 Declaration Of Roy Weinstein, # 3 Proposed Order) ***Public Version*** of <u>373</u> | Appx24292-Appx24310 |
| 253. | 2021-09-07 (Dkt. 383) Fintiv's Omnibus Opposition to Apple's Motions *in Limine* (Dkt. 350) - (Attachments: # 1 Declaration of | Appx24311-Appx24607 |

| | | |
|---|---|---|
| | Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 17, # 4 Exhibit 18, # 5 Exhibit 19, # 6 Exhibit 22, # 7 Exhibit 23, # 8 Exhibit 26, # 9 Exhibit 27, # 10 Exhibit 28, # 11 Exhibit 30, # 12 Proposed Order) *Public Version*  of 376 | |
| 254. | 2021-09-07 (Dkt. 384) Unopposed **Sealed** Motion for Leave to File Response to Fintiv's Sur−Reply to Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple - (Attachments: # 1 Exhibit 1, # 2 Proposed Order) | Appx24608-Appx24618 |
| 255. | 2021-09-08 (Dkt. 385)  Fintiv, Inc - (Attachments: # 1 Exhibit 5, # 2 Exhibit 6, # 3 Exhibit 7, # 4 Exhibit 8, # 5 Exhibit 9, # 6 Exhibit 10, # 7 Exhibit 11, # 8 Exhibit 12, # 9 Exhibit 13, # 10 Exhibit 14, # 11 Exhibit 15, # 12 Exhibit 16) *Public Version* of 381 Sealed Document, | Appx24619-Appx25029 |
| 256. | 2021-09-09 (Dkt. 388) **Sealed** Fintiv's Proposed Joint Final Pretrial Order − Supplemental And Amended Exhibits of 381 Sealed Document, Attachments: # 1 Exhibit A: Fintivs Supplemental Trial Witness List, # 2 Exhibit B: Apples Supplemental Trial Witness List, # 3 Exhibit C: Fintivs Second Amended Trial Exhibit List, # 4 Exhibit D: Apples Fourth Amended Trial Exhibit List, # 5 Exhibit E: Fintivs First Amended Proposed Voir Dire Statement, # 6 Exhibit F: Apples First Amended Proposed Voir Dire Statement) | Appx25030-Appx25352 |
| 257. | 2021-09-13 (Dkt. 389) Apple's Opposition to Fintiv's Motion in Limine No. 1 *Public Version* of 377 | Appx25353-Appx25368 |
| 258. | 2021-09-13 (Dkt. 390) Apple's Opposition to Fintiv's Motion in Limine No. *2 Public Version* of 378 | Appx25369-Appx25382 |
| 259. | 2021-09-13 (Dkt. 391) *Apple's Opposition to Fintiv's Motion in Limine No. 3 Public Version* of 379 | Appx25383-Appx25398 |

| 260. | 2021-09-13 (Dkt. 392) Apple's Unopposed Sealed Motion for Leave to File Response to Fintiv's Sur–Reply to Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein - (Attachments: # 1 Exhibit 1) ***Public Version*** of 384 | Appx25399-Appx25408 |
|------|------|------|
| 261. | 2021-09-14 (Dkt. 393) **Sealed** Fintiv's Attachment [Amended] Exhibit C to the Proposed Joint Final Pretrial Order – Supplemental and Amended Exhibits *[Dkt. 388–3]* of 388 Sealed Document,, | Appx25409-Appx25625 |
| 262. | 2021-09-15 (Dkt. 394) Apple's Opposed Emergency Motion for a Continuance or, in the Alternative, a Stay Pending Mandamus | Appx25626-Appx25694 |
| 263. | 2021-09-16 (Dkt. 396) ORDER Granting 394 Motion to Continue: The Court will continue this trial for one week, with a new trial date of October 12, 2021 | Appx25695-Appx25697 |
| 264. | 2021-09-17 (Dkt. 397) **Sealed** Joint Notice Identifying Remaining Objections To Pretrial Disclosures And Disputes On Motions In Limine - (Attachments: # 1Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7Exhibit 7, # 8 Exhibit 8) | Appx25698-Appx26183 |
| 265. | 2021-09-23 (Dkt. 401) Minute Entry for Pre–Trial Conference by Zoom – proceedings held on 9/23/2021 Case called for pre– trial conference by Zoom. The Court heard argument on various pending issues. The Court Denied the Plaintiff's Omnibus Motion for Summary Judgment, Granted in part the Defendants Motion to Exclude Weinstein and Denied in Part the Defendant's Motion to Exclude Weinstein. The Court denied the defendant motion to exclude Dreifus' report and the Court denied the defendant's motion for Summary Judgment (ECF #270). There were many other issues to be handled so the Court set another zoom hearing to handle | Appx26184 |

| | | |
|---|---|---|
| | those for tomorrow at 9:00 am. There will be an Order forthcoming with the Court's rulings. | |
| 266. | 2021-09-24 (Dkt. 404) 9-23-21 Pretrial Conference **Sealed** Transcript filed | Appx26185-Appx26308 |
| 267. | 2021-09-24 (Dkt. 405) Minute Entry for proceedings held on 9/24/2021. Case called for a continuation of Pretrial Conference. The Court heard further pending motions/issues and made rulings. The Court will be issuing an Order on rulings | Appx26309 |
| 268. | 2021-09-24 (Dkt. 406) 9-24-21 Pretrial Conference **Sealed** Transcript filed | Appx26310-Appx26394 |
| 269. | 2021-09-26 (Dkt. 407) **Sealed** Apple's Supplemental Briefing in Support of Motion in Limine No. 8 of 350 Sealed Motion in Limine - (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) | Appx26395-Appx26418 |
| 270. | 2021-09-27 (Dkt. 408) **Sealed** Fintiv.'s Supplemental Opposition To Apple Inc.'s Motion In Limine No. 8 of 350 Sealed Motion in Limine by Apple Inc. - (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2) | Appx26419-Appx26441 |
| 271. | 2021-09-28 (Dkt. 409) **Sealed** Apple's Supplemental Brief on Fintiv's Untimely OTA Proxy Theory of 263 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus by Fintiv, Inc. | Appx26442-Appx26445 |
| 272. | 2021-09-29 (Dkt. 410) **Sealed** Fintiv, Inc.'s Supplemental Brief On OTA Proxy of 263 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus by | Appx26446-Appx26450 |
| 273. | 2021-10-01 (Dkt. 411) Federal Circuit ORDER granting Petition for Writ of Mandamus filed by Petitioner Apple Inc. The | Appx26451-Appx26455 |

|  | district courts September 8, 2021 order <u>386</u> re−transferring the trial from Austin to Waco is vacated and we remand with instructions that this action shall proceed in the Austin Division of the United States District Court for the Western District of Texas.; denying as moot motion for stay pending appeal under Rule 8/18 filed by Petitioner Apple Inc |  |
|---|---|---|
| 274. | 2021-10-04 (Dkt. 412) ORDER − case is TRANSFERRED to the Austin Division of the Western District of Texas. It is Further ORDERED that this case is set for jury trial starting on January 10, 2022 at 9:00AM | Appx26456 |
| 275. | 2021-10-05 (Dkt. 414) Case Transfer and Opening Letter sent to all Counsel | Appx26457 |
| 276. | 2021-10-06 (Dkt. 415) ORDER, Jury Trial set for 1/10/2022 at 09:00 AM | Appx26458 |
| 277. | 2021-10-06 (Dkt. 416) Fintiv's Supplemental Brief on OTA Proxy ***Public Version*** of <u>410</u> | Appx26459-Appx26463 |
| 278. | 2021-10-06 (Dkt. 417) Apple's Supplemental Briefing in Support of Motion in Limine No.8 ***Public Version*** of <u>407</u> | Appx26464-Appx26468 |
| 279. | 2021-10-06 (Dkt. 418) Apple's Supplemental Brief on Fintiv's Untimely OTA Proxy Theory ***Public Version*** of <u>409</u> | Appx26468-Appx26472 |
| 280. | 2021-10-07 (Dkt. 419) ORDER, Jury Selection set for 1/6/2022 at 09:30AM before Judge Dustin M. Howell, | Appx26473 |
| 281. | 2021-10-08 (Dkt. 420) Standing Order Regarding Order Governing Proceedings Patent Cases | Appx26474-Appx26484 |
| 282. | 2022-04-14 (Dkt. 426) Standing Order Regarding Order Governing Proceedings Patent Cases | Appx26485-Appx26502 |
| 283. | 2022-06-06 (Dkt. 431) <u>**Sealed**</u> Fintiv's Emergency Motion For Reopening Of Discovery, Trial Continuance, And Sanctions - (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 | Appx26503-Appx26783 |

| | | |
|---|---|---|
| | Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Declaration Of George Eubank, # 22 Exhibit A, # 23 Exhibit B, # 24 Exhibit C) (Waldrop, Jonathan). Added MOTION for Discovery, MOTION for Sanctions on 6/7/2022 (klw). | |
| 284. | 2022-06-07 (Dkt. 433) ORDER GRANTING Plaintiff's 431 Sealed Motion for Trial Continuance. ORDER VACATING jury selection set for Thursday, June 16, 2022 and trial set for Tuesday, June 21, 2022. | Appx26784 |
| 285. | 2022-06-13 (Dkt. 435)  Fintiv's Emergency Motion For Reopening Of Discovery, Trial Continuance, And Sanctions by Fintiv, Inc. MOTION for Discovery MOTION for Sanctions Attachments: #1 Exhibit Declaration of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit Declaration of George Eubank, # 22 Exhibit A, # 23 Exhibit B, # 24 Exhibit C) **Public Version** of 431 | Appx26785-Appx26907 |
| 286. | 2022-06-23 (Dkt. 437) **Sealed** Apple's Opposition *to* 431 Fintiv's Emergency Motion For Reopening Of Discovery, Trial Continuance, And Sanctions for Discovery MOTION for Sanctions (Attachments: # 1 Exhibit A) | Appx26908-Appx27038 |
| 287. | 2022-06-23 (Dkt. 438), Plaintiff Fintiv, Inc.'s | Appx27039-Appx27054 |

| | Emergency Motion For Reopening Of Discovery, Trial Continuance, And Sanctions **_Public Version_** of <u>437</u> | |
|---|---|---|
| 288. | 2022-06-24 (Dkt. 439) 6-24-22 PreTrial Conference Hearing Sealed Transcript filed | Appx27055-Appx27124 |
| 289. | 2022-06-24 (Dkt. 440) Minute Entry for proceedings held before Judge Alan D Albright: Miscellaneous Hearing held on 6/24/2022. | Appx27125 |
| 290. | 2022-08-08 (Dkt. 442) Joint Status Report | Appx27126-Appx27129 |
| 291. | 2022-08-31 (Dkt. 443) Joint Status Report | Appx27130-Appx27133 |
| 292. | 2022-12-06 (Dkt. 445) ORDER Setting Zoom Discovery for 12/16/2022 03:00 PM) | Appx27134 |
| 293. | 2022-12-06 (Dkt. 446) ORDER, ( Discovery Hearing reset for 12/13/2022 at 01:30 PM) | Appx27135 |
| 294. | 2022-12-13 (Dkt. 447) ORDER, ( Discovery Hearing reset for 12/13/2022 at 03:00 PM) | Appx27136 |
| 295. | 2022-12-13 (Dkt. 448) Minute Entry for proceedings held before Judge Alan D Albright: Sealed Proceeding held on 12/13/2022 | Appx27137 |
| 296. | 2022-12-15 (Dkt. 449) 12-13-22 Discovery Hearing **Sealed** Transcript | Appx27138- Appx27189 |
| 297. | 2022-12-21 (Dkt. 450) **_Sealed_** Order Regarding the December 13, 2022 Discovery Dispute Hearing | Appx27190- Appx27199 |
| 298. | 2022-12-21 (Dkt. 451) **Public Version** of re <u>450</u> Sealed Order Regarding the December 13, 2022 Discovery Dispute Hearing. | Appx27200- Appx27209 |
| 299. | 2023-04-21 (Dkt. 455) ORDER, (Settlement Conference set for 6/8/2023 at 09:00 AM before Judge Alan D Albright,). | Appx27210 |
| 300. | 2023-04-24 (Dkt. 456) ORDER Setting Hearing | Appx27211 |
| 301. | 2023-04-24 (Dkt. 457) ORDER Setting Hearing | Appx27212 |
| 302. | 2023-05-11 (Dkt. 458) Minute Entry for proceedings held before Judge Jeffrey C. Manske: Status Conference held on 5/11/2023 | Appx27213 |

| | | |
|---|---|---|
| 303. | 2023-05-22 [459] Transcript of Status Conference Hearing of May 11, 2023 with Request Form | Appx27214- Appx27230 |
| 304. | 2023-06-07 (Dkt. 460) ORDER Setting Zoom Pretrial Conference for 6/13/2023 | Appx27231 |
| 305. | 2023-06-07 (Dkt. 461) ORDER, ( Jury Selection and Trial set for 7/10/2023 at 09:00 AM before Judge Alan D Albright,). | Appx27232 |
| 306. | 2023-06-09 (Dkt. 462) ORDER RESETTING Zoom Pretrial Conference | Appx27233 |
| 307. | 2023 06 13 [464] **Sealed** -Transcript of Pretrial Conference - June 13, 2023 with Request form | Appx27234- Appx27303 |
| 308. | 2023-06-13 (Dkt. 465) Minute Entry for proceedings held on 6/13/2023. Statements And Arguments Of Counsel Heard, Motion For Summary Judgment Granted, Written Order Forthcoming, The Trial Will Be Removed From The Court's Docket. | Appx27304 |
| 309. | 2023-06-13 (Dkt. 466) Order Cancelling Jury Selection And Trial on July 10, 2023 | Appx27305 |
| 310. | 2023-06-21 (Dkt. 467) Sealed Order Granting MSJ | Appx27306-Appx27315 |
| 311. | 2023-06-28 (Dkt. 468) Redacted Copy of 467 Sealed Order Granting 270 | Appx27316-Appx27325 |
| 312. | 2023-06-30 (Dkt. 471) **Sealed**  Fintiv's Notice Of Filing Demonstratives (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) | Appx27326-Appx27486 |
| 313. | 2023-07-21 (Dkt. 472) Bill Of Costs by Apple Inc | Appx27487-Appx27491 |
| 314. | 2023-07-21 (Dkt. 473) Apple's Memorandum in Support of 472 Bill of Costs - (Attachments: # 1 Exhibit A to Memorandum ISO Bill of Costs, # 2 Exhibit B to Memorandum ISO Bill of Costs, # 3 Exhibit C to Memorandum ISO Bill of Costs, # 4 Exhibit D to Memorandum ISO Bill of Costs, # 5 Exhibit E to Memorandum ISO Bill of Costs, | Appx27492-Appx27662 |

| | # 6 Exhibit F to Memorandum ISO Bill of Costs, # 7 Exhibit G to Memorandum ISO Bill of Costs) | |
|---|---|---|
| 315. | 2023-07-21 (Dkt. 474) Fintiv's Motion Objecting To Apple's Bill Of Costs re 472 Bill of Costs | Appx27663-Appx27674 |
| 316. | 2023-07-21 (Dkt. 475) Deficiency NOTICE: re 474  Plaintiff Fintiv Inc.'s Motion Objecting To Apple Inc.'s Bill Of Costs re 472 Bill of Costs | Appx27675 |
| 317. | 2023-07-21 (Dkt. 476) Appeal of Final Judgment 469 by Fintiv, Inc | Appx27676-Appx27680 |
| 318. | 2023-07-28 [477] Fintiv's Motion Objecting to Apple's Bill of Cost and [Proposed] Order | Appx27681-Appx27692 |
| 319. | 2023-08-03 [478] Apple's Reply response to Motion re  Bill of Costs | Appx27693-Appx27701 |
| 320. | 2023-08-10 [479] Fintiv's Response to Apple's Reply In Support of its Bill of Costs | Appx27702- Appx27706 |

### Note Regarding Confidential Material

Material redacted in documents at Appendix pages Appx00006, Appx00008-00009, Appx0012-00022, Appx03815-03818, Appx04235, Appx04240-04247, Appx04292-04297, Appx04303-04307, Apppx04320, Appx04367, Appx04371-04374, Appx04613-04618, Appx04735-04740, Appx04867-4873, Appx04904-04916, Appx04922-04941, Appx04960-04973, Appx04976-04984, Appx06406-06410, Appx08127, Appx08131-08137, Appx09809-09815, Appx10026, Appx10029-10038, Appx10447-10455, Appx10757, Appx10802-10811, Appx10826-10834, Appx10869-10875, Appx10887-Appx10894, Appx10985-10990, Appx11052-11058, Appx14044, Appx14049-Appx14066, Appx15160, Appx15163-15164, Appx15169, Appx15171, Appx15173-15180, Appx15220, Appx15231-15254, Appx15290-15295, Appx15428-15455, Appx16105-16122, Appx16728-16735, Appx18495-18499, Appx18601-18619, Appx18648-18988, Appx19032, Appx19083-19092, Appx19102-19128, Appx19162-19166, Appx19172-19176, Appx19199-19213, Appx19238-19242, Appx19306-19341, Appx19350-19358, Appx19359-19381, Appx21604-21607, Appx25050, Appx25282-25284, Appx26185, Appx26282-26306, Appx26504-26509, Appx26543-26545, Appx26730-26731, Appx26734-23783, Appx26902-26903, Appx26911, Appx26913, Appx26915-26916, Appx27234-27301. Appx27320, Appx27322-27323, Appx27331, Appx27337-27344, Appx27355, Appx27373-27377, of the non-confidential version of this Appendix, and highlighted in the confidential version are the Confidential Sealed versions which Appellee Apple requests that the confidential designations from the district court be maintained. The redacted material consists of confidential Apple business information.

This information was filed with the district court and sealed under the Protective Order (xxxvii-lxvii / Appx01536-Appx01566) entered by the Hon. Alan D. Albright on August 7, 2019, both of which are reproduced below per Federal Circuit Rule 25.1.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| FINTIV, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 6:18-cv-372-ADA |
| APPLE, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## AGREED PROTECTIVE ORDER
## REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS

Plaintiff Fintiv, Inc. ("Plaintiff") and Defendant Apple Inc. ("Defendant") (collectively the "Parties" or singularly "Party") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

**AGREED PROTECTIVE ORDER – PAGE 1**

1. **PURPOSES AND LIMITATIONS**

  (a) Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

  (b) The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a). Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

2. **DEFINITIONS**

  (a) "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

  (b) "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this case.

  (c) "Patents-in-suit" means U.S. Patent No. 8,843,125, and any other patent asserted in this case, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

AGREED PROTECTIVE ORDER – PAGE 2

(d)      "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e)      "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in this case.

(f)      "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," as provided for in this Order. Protected Material shall not include: (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

(g)      "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h)      "Source Code" means computer code, scripts, assembly, binaries, object code, source code listings and descriptions of source code, object code listings and descriptions of object code, Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, and Computer Aided Design (CAD) files that describe the hardware design of any component.

3.    **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

**AGREED PROTECTIVE ORDER – PAGE 3**

4.  **SCOPE**

   (a)    The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

   (b)    Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material.

   (c)    Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with the consent of the Producing Party or by order of the Court, including sealed filings authorized by Paragraph 15(b) of this Order.

   (d)    This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

5.  **DURATION**

   Even after Final Disposition of this case, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

6.  **ACCESS TO AND USE OF PROTECTED MATERIAL**

   (a)    <u>Basic Principles</u>.  All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without

limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function. Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

      (b)    <u>Patent Prosecution Bar</u>. Absent the written consent of the Producing Party, any person on behalf of the Receiving Party who receives one or more items designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" by the Producing Party shall not be involved, directly or indirectly, in any of the following activities: (i) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of mobile payment hardware or software, before any foreign or domestic agency, including the United States Patent and Trademark Office; and (ii) the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to the functionality, operation, and design of mobile payment hardware or software. These prohibitions are not intended to and shall not preclude counsel from participating in proceedings on behalf of a Party challenging the validity of any patent, including reexamination, inter partes review, covered business method review, or any post-grant review proceedings in the United States Patent and Trademark Office or elsewhere ("Post-Grant Activity"). These prohibitions are not intended to and shall not preclude Plaintiff's litigation counsel from participating in any Post-Grant Activity, except that Plaintiff's litigation counsel may not advise on, consult on, prepare, prosecute, draft, edit, and/or amend patent claims, or otherwise advise on or affect the scope of claims in patents or patent applications relating to the functionality, operation, and design of mobile payment hardware or software, before any foreign

**AGREED PROTECTIVE ORDER – PAGE 5**

or domestic agency, including the United States Patent and Trademark Office. These prohibitions shall begin when access to "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" are first received by the affected individual, and shall end two (2) years after the Final Disposition of this case, including all appeals.

      (c)     Secure Storage, No Export. Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order. To ensure compliance with applicable United States Export Administration Regulations, Protected Material may not be exported outside the United States or released to any foreign national (even if within the United States).

      (d)     Legal Advice Based on Protected Material. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

      (e)     Limitations. Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material. Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed, and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to an order of the Court.

**AGREED PROTECTIVE ORDER – PAGE 6**

7.   **DESIGNATING PROTECTED MATERIAL**

(a)   <u>Available Designations</u>.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein:  "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

(b)   <u>Written Discovery and Documents and Tangible Things</u>.   Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Paragraph 7(a) may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.   In the event that original documents are produced for inspection, the original documents shall be presumed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" during the inspection and re-designated, as appropriate during the copying process.

(c)   Native Files.  Where electronic files and documents are produced in native electronic format, such electronic files and documents shall be designated for protection under this Order by appending to the file names or designators information indicating whether the file contains   "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," material, or shall use any other reasonable method for so designating Protected Materials produced in electronic format. When electronic files or documents are printed for use at deposition, in a court

proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to Paragraph 12, the Party printing the electronic files or documents shall affix a legend to the printed document corresponding to the confidentiality designation of the Producing Party and include the production number and designation associated with the native file. No one shall seek to use in this case a .tiff, .pdf or other image format version of a document produced in native file format without also providing a copy of the image format version to the Producing Party so that the Producing Party can review the image to ensure that no information has been altered.

(d)    <u>Depositions and Testimony</u>. Parties or testifying persons or entities may designate depositions and other testimony with the appropriate confidentiality designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony is designated within thirty (30) days of receipt of the transcript of the testimony. If no confidentiality designation on the record is made, all information disclosed during a deposition shall be deemed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" until the thirty (30) day time period in which it may be appropriately designated, as provided for herein, has passed. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this

matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

8. **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a)     A   Producing   Party   may   designate   Discovery   Material   as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i)     The Receiving Party's Outside Counsel, such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Not more than three (3) representatives of the Receiving Party who are officers or employees of the Receiving Party, who may be, but need not be, in-house counsel for the Receiving Party, as well as their immediate paralegals and staff, to whom disclosure is reasonably necessary for this case, provided that: (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

xlv

(iii)    Any outside expert or consultant retained by the Receiving Party to assist in this case, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iv)    Court reporters, stenographers, and videographers retained to record testimony taken in this case;

(v)    The Court, jury, and court personnel;

(vi)    Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vii)    Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(viii)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(ix)    Any other person with the prior written consent of the Producing Party.

**AGREED PROTECTIVE ORDER – PAGE 10**

## 9. DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY"

(a)     A Producing Party may designate Discovery Material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party. The Parties agree that the following information, if non-public, shall be presumed to merit the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation:   trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)     The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Any outside expert or consultant retained by the Receiving Party to assist in this case, provided that disclosure is only to the extent necessary to perform such work; and provided that:  (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time

**AGREED PROTECTIVE ORDER – PAGE 11**

of retention to become an officer, director, or employee of a Party or of a competitor of a Party;

(c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (d) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (e) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iii)     Court reporters, stenographers and videographers retained to record testimony taken in this case;

(iv)     The Court, jury, and court personnel;

(v)     Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vi)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vii)     Any other person with the prior written consent of the Producing Party.

10.     **<u>DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"</u>**

(a)     To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b)     Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this case, or to obligate any Party to produce any Source Code.

(c)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be subject to the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 11 below, solely to:

(i)     The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Any outside expert or consultant retained by the Receiving Party to assist in this case, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

xlix

(iii)    Court reporters, stenographers and videographers retained to record testimony taken in this case;

(iv)    The Court, jury, and court personnel;

(v)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vi)    Any other person with the prior written consent of the Producing Party.

## 11.    **DISCLOSURE AND REVIEW OF SOURCE CODE**

(a)    Any Source Code that is produced by Plaintiff shall be made available for inspection in electronic format at the Redwood Shores office of its outside counsel, Kasowitz Benson Torres LLP, or any other location mutually agreed by the Parties. Any Source Code that is produced by Defendant will be made available for inspection at the Menlo Park, CA office of its outside counsel, Orrick, Herrington & Sutcliffe LLP, or any other location mutually agreed by the Parties. Source Code will be made available for inspection between the hours of 8 a.m. and 6 p.m. local time on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

(b)    Prior to the first inspection of any requested Source Code, the Receiving Party shall provide fourteen (14) days' notice of the Source Code that it wishes to inspect. The Receiving Party shall provide five (5) business days' notice prior to any additional inspections.

(c)    Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

**AGREED PROTECTIVE ORDER – PAGE 14**

1

(i)　　All Source Code shall be made available by the Producing Party to the Receiving Party's outside counsel and/or experts in a secure room on a secured computer without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal, or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the software tools do not permit the compiling (running) of Source Code and the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least five (5) business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.

(ii)　　No recordable media or recordable devices, including without limitation sound recorders, computers, except as provided in Paragraph 11(c)(iii), personal digital assistants (PDAs, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of

any kind, (e.g., USB memory sticks and portable hard drives), shall be permitted into the Source Code Review Room.

(iii)    The Receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(iv)    The Producing Party may visually monitor the activities of the Receiving Party's representatives in the Source Code Review Room during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way.  During the Receiving Party's review of the Source Code, the Producing Party shall not otherwise interfere with the Receiving Party's review of the Source Code and shall not be permitted access to the Receiving Party's notes, work product, or discussions inside the review room or following each day's inspection of the Source Code.  During the Source Code review, the Producing Party agrees to provide a "break-out" room for the Receiving Party's Source Code reviewer(s) to make phone calls and work.  To the extent such a break-out room is not reasonably available, the Producing Party agrees to so notify the Receiving Party at least three (3) business days in advance of any day on which the Receiving Party's Source Code reviewers are expected to inspect the Source Code.

(v)    No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein.  Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein.  The Producing Party shall make available a laser printer with commercially reasonable printing speeds for on-site printing during inspection of the Source Code.  The Receiving Party

**AGREED PROTECTIVE ORDER – PAGE 16**

may print limited portions of the Source Code only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report). Any printed portion that consists of more than twenty (20) pages of a continuous block of Source Code shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy. The Receiving Party may print out no more than 250 pages total. The Receiving Party shall not print Source Code in order to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere, and that printing is permitted only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report). Upon printing any such portions of Source Code, the printed pages shall be collected by the Producing Party. The Producing Party shall Bates number, copy, and label "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" any pages printed by the Receiving Party. Within five (5) business days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or confirm that the copy has been sent to the Receiving Party via courier for two day delivery with a tracking number or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose. The Parties shall meet and confer within two (2) business day of any such objection. If after meeting and conferring the Parties cannot resolve the objection, the objection may be jointly submitted to the Court for resolution within three (3) business days of the meet and confer. The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and

analysis elsewhere. The printed pages shall constitute part of the Source Code produced by the Producing Party in this case.

(vi)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code.  Such identification shall be in addition to any other disclosure required under this Order.  All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The Producing Party shall be entitled to a copy of the log upon one (1) day's advance notice to the Receiving Party.

(vii)     Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room.  The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.  Proper identification of all authorized persons shall be provided prior to any access to the Source Code Review Room or the Source Code Computer.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the Source Code Review Room or the Source Code Computer may be denied, at the discretion of the Producing Party, to any individual who fails to provide proper identification.

**AGREED PROTECTIVE ORDER – PAGE 18**

(viii)   Other than as provided above, the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Source Code Computer including, without limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device.  The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities or the offices of its Outside Counsel.

(ix)   The Receiving Party's Outside Counsel may make no more than three (3) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(c)(v), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon one (1) day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(x)   The Receiving Party's Outside Counsel and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  No more than a total of ten (10) individuals identified by the Receiving Party shall have access to the printed portions of Defendant's Source Code (except insofar as such code appears in any court filing or expert report).

(xi)   The Receiving Party may bring three (3) copies of the printed Source Code to the deposition unless the Producing Party notifies the Receiving Party in advance of the deposition that the Producing Party will provide a Source Code computer at the deposition containing all of the Source Code the Receiving Party previously printed, in computer-searchable

**AGREED PROTECTIVE ORDER – PAGE 19**

format. Further, the Receiving Party may bring to the deposition copies of any expert reports or pleadings containing source code, including any annotated copies of such documents containing source code. Only persons permitted to see the Source Code under the provisions of this Order shall be allowed to attend any deposition where Source Code is disclosed or discussed. Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition shall remain with the Producing Counsel's outside counsel for secure destruction in a timely manner following the deposition.

(xii)    Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code). Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. If a Party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, the Parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the Source Code and such Source Code will not be filed absent agreement from the Producing Party that the confidentiality protections will be adequate. If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or provide written permission to the Receiving Party that an electronic or any other copy needs to be made for a Court filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic

**AGREED PROTECTIVE ORDER – PAGE 20**

files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order. Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored. Additionally, any such electronic copies must be labeled "CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" as provided for in this Order.

12. **NOTICE OF DISCLOSURE**

(a)     Prior to disclosing any Protected Material to any person described in Paragraphs 8(b)(ii), 8(b)(iii), 9(b)(ii), or 10(c)(ii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i) the name of the Person;

(ii) an up-to-date curriculum vitae of the Person;

(iii) the present employer and title of the Person;

(iv) an identification of the past ten (10) years of the Person's past and current employment and consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person, including but not limited to an identification of any individual or entity with or for whom the Person is employed or to whom the person provides consulting services relating to the design,

development, operation, or patenting of mobile payment hardware or software, or relating to the acquisition of intellectual property assets relating to mobile payment hardware or software;

(v) an identification of all pending patent applications on which the Person is named as an inventor or in which the Person has any ownership interest, or as to which the Person has had any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

(vi) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. During the pendency of this case, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of mobile payment hardware or software, or the acquisition of intellectual property assets relating to mobile payment hardware or software.

(b) Within fourteen (14) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the fourteen (14) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this fourteen (14) day period. If the Producing Party objects to disclosure to the

AGREED PROTECTIVE ORDER – PAGE 22

Person within such fourteen (14) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

(c)     For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Protected Material in a way or ways that are inconsistent with the provisions contained in this Order.

(d)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(e)     An initial failure to object to a Person under this Paragraph 12 shall not preclude the nonobjecting Party from later objecting to continued access by that Person for good cause. If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection. If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court resolves the matter or the Producing Party withdraws its objection. Notwithstanding the

foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Material may thereafter be provided to the Person.

13. **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)     A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)     Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection. Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)     The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute. The Producing Party shall have the burden of justifying the disputed designation;

(ii)     Failing agreement, the Receiving Party may bring a motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation. The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)     Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the

following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

14.     **SUBPOENAS OR COURT ORDERS**

(a)     If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

15.     **FILING PROTECTED MATERIAL**

(a)     Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested Parties or non-parties, a Receiving Party may not file or disclose in the public record any Protected Material.

(b)     In lieu of Local Rule 5.2, any Party may file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order, provided that the opposing Party may challenge the propriety of sealing with seven (7) days of the sealed filing.  However, nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

16.     **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)     The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to

**AGREED PROTECTIVE ORDER – PAGE 25**

production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)     Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)     Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

17.     **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)     The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

(b)      A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless the Receiving Party knows that the document was inadvertently not designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 17(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)      Notwithstanding      the      above,      a      subsequent      designation      of "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials while the materials were not marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 6(b).

18.      **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)      In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all

**AGREED PROTECTIVE ORDER – PAGE 27**

reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

       (b)    Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected Material.

19.    **FINAL DISPOSITION**

       (a)    Not later than ninety (90) days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective outside counsel of the Producing Party or destroy such Material, at the option of the Producing Party. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned case with prejudice, including all appeals.

       (b)    All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective outside counsel of the Producing Party or destroyed. Notwithstanding the provisions for return or destruction of Discovery Material, outside counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes, but must return any pleadings, correspondence, and consultant work product that contain Source Code.

20.    **DISCOVERY FROM EXPERTS OR CONSULTANTS**

       (a)    Absent good cause, drafts of reports of testifying experts, and reports and other written materials, including drafts, of consulting experts, shall not be discoverable.

       (b)    Reports and materials exempt from discovery under the foregoing Paragraph shall be treated as attorney work product for the purposes of this case and Protective Order.

**AGREED PROTECTIVE ORDER – PAGE 28**

21.  **MISCELLANEOUS**

(a)  <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)  <u>Termination of Matter and Retention of Jurisdiction</u>.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned case.  The Court shall retain jurisdiction after Final Disposition of the above-captioned case to hear and resolve any disputes arising out of this Protective Order.

(c)  <u>Successors</u>.  This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d)  <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.  This Order shall not constitute a waiver of the right of any Party to claim in this case or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this case or any other proceeding.

(e)  <u>Burdens of Proof</u>.  Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level

**AGREED PROTECTIVE ORDER – PAGE 29**

of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f) <u>Modification by Court</u>.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the Western District of Texas is responsible for the interpretation and enforcement of this Order.  All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Western District of Texas.

(g) <u>Discovery Rules Remain Unchanged</u>.  Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Western District of Texas, or the Court's own orders. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Western District of Texas, or the Court's own orders.

**SO ORDERED.**

Signed this 7th day of August, 2019.

Alan D Albright

**AGREED PROTECTIVE ORDER – PAGE 30**

## EXHIBIT A

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Fintiv, Inc. v. Apple, Inc.*, United States District Court, Western District of Texas, Waco Division, Civil Action No. 6:18-cv-372-ADA. Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address: _____

Dated: _____

_____

[Signature]

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FINTIV,

      *Plaintiff*,

    v.

APPLE INC.,

      *Defendant*.

Civil Action No. 1:21-cv-00896

## FINAL JUDGMENT

The Court granted Defendant Apple Inc.'s Motion for Summary Judgment of No

Infringement on June 21, 2023. ECF No. 467. The Court now enters its Judgment as follows:

**IT IS ORDERED** that final judgment is entered in favor of Defendant and against

Plaintiff. Plaintiff shall take nothing by this action.

**IT IS FURTHER ORDERED** that any and all motions not previously ruled upon by the

Court are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's remaining counterclaims and defenses

are dismissed without prejudice.

**IT IS FURTHER ORDERED** that any relief not specifically granted in this judgment is

**DENIED**.

**IT IS FINALLY ORDERED** that the Clerk of Court is directed to close the case.

**SIGNED** this 29th day of June, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| **FINTIV, INC.,**<br>   ***Plaintiff,***<br><br>  ***v.***<br><br>**APPLE INC.,**<br>   ***Defendant.*** | **1:21-CV-896-ADA** |

## ORDER GRANTING MOTION
## FOR SUMMARY JUDGMENT [ECF No. 270]

Before the Court is Defendant Apple Inc.'s ("Apple") Motion for Summary Judgment of Non-Infringement. ECF No. 270. Plaintiff Fintiv, Inc. ("Fintiv") filed a Response. ECF No. 300. Apple then replied. ECF No. 348. After originally denying the motion, the Court heard further oral argument on the Motion on June 13, 2023. ECF Nos. 465–66. At the hearing, the Court granted Apple's Motion and vacated its prior decision. This opinion memorializes that ruling.

### I. BACKGROUND

On December 21, 2018, Fintiv filed its complaint alleging infringement of U.S. Patent No. 8,843,125 ("the '125 patent"). ECF No. 1 ¶ 3. Fintiv alleges Apple infringes independent claims 11, 18, and 23 and dependent claims 13, 14, 20, 24, and 25 ("asserted claims"). ECF No. 270-2 ("Shamos Report") ¶ 2. All the asserted claims relate generally to "card provisioning." ECF No. 270-3 ("Shamos Depo.") at 31:21–24; ECF No. 273-1 ("'125 patent") claims 11, 18, 23. Card provisioning is a process whereby a user "load[s] data concerning a payment instrument, such as a credit card, onto a mobile device for the purposes of making payment transactions." Shamos Report ¶ 71. Independent claim 11 recites a method for card provisioning, specifically a "method for provisioning a contactless card applet in a mobile device comprising a mobile wallet application." Independent claim 18 recites a system for card provisioning, specifically a "wallet

management system (WMS) in a non-transitory storage medium to store and manage mobile wallet account information." Independent claim 23 recites a "mobile device" for card provisioning. '125 patent, claims 11, 18, 23.

Fintiv accuses each of the Apple iPhone, Watch, iPad, and Mac products of infringing at least one claim of the '125 patent. Shamos Report ¶¶ 102–03. Every asserted claim recites a "widget." Claim 11 requires "retrieving a widget . . . corresponding to a contactless card applet" and "provisioning the widget." Claim 18 requires "a widget management component configured to store and to manage widgets" and "a rule engine configured to filter a widget." Claim 23 requires "a mobile wallet application configured to store a widget" and "an over-the-air (OTA) proxy configured to provision . . . a widget." The Court construed "widget" to have its plain-and-ordinary meaning, where the plain-and-ordinary meaning is "software that is either an application or works with an application, and which may have a user interface." ECF No. 86 at 17, 34. The Court also ruled that "a POSITA would not understand that a widget is a stand-alone application, but rather as code, e.g., a 'plug-in,' that runs within an application." *Id.* at 16.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). A material fact will have a reasonable likelihood to affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating a lack of a genuine dispute of material fact lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the fact that the court believes that the non-moving party will be unsuccessful at trial is an insufficient reason to grant summary judgment in favor of the moving party. *See Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). Yet, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

### III. DISCUSSION

Apple moves for summary judgment of non-infringement of the '125 patent on four independent grounds. One of Apple's grounds is that Fintiv and its technical expert, Dr. Michael Shamos, identified no software in the accused products that constitutes a "widget" under the Court's construction of that term—a requirement of all asserted claims. As explained below, the Court finds that the record is devoid of evidence that the accused products practice the "widget" limitation under the Court's construction. Because the Court finds that Apple has met its burden

3

on this ground, the Court need not address the other three grounds. Apple has therefore established that there is no genuine dispute of material fact that it does not practice the asserted claims, and it is entitled to summary judgment as a matter of law.

### A.    Apple's Position

Apple contends that it is entitled to summary judgment of noninfringement as to all asserted claims because (1) Fintiv identified no software code in the accused products that meets the "widget" limitations of the asserted claims, and (2) undisputed facts confirm the accused products do not use and are not configured to use a "widget." ECF No. 270 at 12–13. ***First***, Apple argues that Fintiv's expert Dr. Shamos identified no Apple software code that constitutes a "widget" as construed by the Court. *Id.* at 14. Indeed, Apple points to Dr. Shamos's deposition testimony that confirms this argument:

> Q. So do we agree that your report does not cite the -- or identify the software that
> is the widget in the accused iPhone device?
> A. Yeah. I think it -- I think it doesn't identify the source code of the widget.

*Id.* (citing Shamos Depo. at 73:12–74:5 (emphasis added)). After citing several occasions in Dr. Shamos's deposition testimony establishing there is no source code that makes up the widget in the accused devices, Apple reiterates that Dr. Shamos confirmed under oath that "there is nowhere in [his] report that cites the source code that makes up the widget for any of the accused devices." *See id.* at 15 (citing Shamos Depo. at 75:14–20).

***Second***, Apple asserts that Fintiv also failed to present evidence that the accused products practice other "widget"-related limitations of the asserted claims. *Id.* For example, asserted claim 11 requires "retrieving a widget." Dr. Shamos agreed that during card provisioning a widget must be retrieved from an Apple server to an accused device, but Apple argues he could not identify any widget retrieved from any Apple server. *Id.* (citing Shamos Depo. at 56:23–25). And asserted claim 18 requires "a widget management component configured to store and to manage widgets,"

4

but Apple contends that Dr. Shamos could not identify which server allegedly stores the claimed

"widget," nor does he know which component is responsible for such storage. *Id.* at 16.

## B. Fintiv And Its Expert Failed To Identify The Claimed "Widget" In The Accused Products.

Fintiv and Dr. Shamos failed to identify the claimed widget in the accused products. In Dr.

Shamos' expert report, only one paragraph discusses the "widget" limitation and contains citations

to Apple's source code—paragraph 309. Shamos Report ¶ 309. But when asked at his deposition,

Dr. Shamos conceded that none of the source code cited in that paragraph is the claimed "widget":

> Q. So the software that you're talking about in Paragraph 309 -- that is the widget,
> is that the software that's cited in Paragraph 309?
> A. I don't think so.

Shamos Depo. at 53:11–14. When Dr. Shamos was asked about each of the source code files cited

in paragraph 309 individually, he confirmed that none of those files is a "widget." *Id.* at 61:21–23

(███████████████ not the widget); 62:11–12 ("███████ alone can't be the widget"); 66:17–

20 ("I can't tell" if ███████ is the widget); 69:20–24 ("not ready to say" ███████ is the widget);

70:11–12 (███████████████ not the widget); 70:16–22

(████████████████████ and ████████████████ not the

widget); 71:14–17 (████████████████ not the widget); 71:18–24

(████████████████ not the widget); 71:25–72:5 (████████████████

███████████████ not the widget). As explained above, Dr. Shamos also confirmed that

none of the software files cited in other parts of his report constitutes a "widget":

> Q. But if we did the same exercise we just spent the last 30 minutes doing, we
> would find that there is nowhere in your report that cites the source code that makes
> up the widget for any of the accused devices. Is that right?
> A. That's right.

*Id.* at 75:14–20 (emphasis added).

Confidential Material Omitted

Fintiv's opposition confirms it has no evidence of a "widget" in the accused products; that is, the accused products contain no "software that is either an application or works with an application, and which may have a user interface." *See* ECF No. 86 at 17, 34. Fintiv first responds that Apple is misreading the construction of "widget" to require "software code" because the word "code" is not the Court's construction of "widget" and source code is not the only way Fintiv can prove Apple's infringement. *See* ECF No. 300 at 9–10. Not so. Fintiv cites only two cases in support of its arguments (*see id.* at 10), but neither case applies here. In *Tarkus Imaging Inc. v. Adobe Sys.*, Case No. 10-63-LPS, 2012 WL 2175788 (D. Del. June 14, 2012), the court denied summary judgment of noninfringement because the court was "not persuaded" by the fact that "Tarkus's expert has not identified specifically infringing source code." *Id.* at *3. But unlike Dr. Shamos, the plaintiff's expert in *Tarkus* relied on "testimony from a Canon Rule 30(b)(6) witness on source code [and] the expert report of William Elswick, an expert for Tarkus who personally reviewed the source code." *Id.* at *3 n.2. Here, Dr. Shamos cites no deposition testimony nor any expert who "personally reviewed" the Apple source code to support his speculation that there must be a "widget" in the products.[1] Critically, Apple is not misconstruing the court's construction of "widget" to require source code; Apple is showing the complete devoid of evidence that Dr. Shamos presented in his expert report to prove infringement.

---

[1] *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 847–48 (Fed. Cir. 2010), also does not support Fintiv. Contrary to Fintiv's misleading parenthetical ("affirming jury finding of infringement despite no source code available to be presented," ECF No. 300 at 10), the lack of source code related to invalidity, not infringement. The prior art source code had been destroyed years before litigation began, so the dispute "turned largely on the credibility of [the prior art's] creators." *Id.* at 846. The court affirmed the jury's finding of validity because "the jury was free to disbelieve Microsoft's expert … and credit i4i's expert, who opined that it was impossible to know whether the claim limitation was met without looking at S4's source code." *Id.* at 848 (emphasis added). Here, Dr. Shamos had Apple's source code, but still found no "widget."

6

Fintiv then contends that it has proffered sufficient evidence (source code and non-source code) to defeat Apple's Motion. *See* ECF No. 300 at 9. But Fintiv's opposition never identifies what "software" or "software code" comprises the claimed "widget" in the accused products. *See* ECF No. 300 at 9–23. Fintiv instead points to multiple things that are not the claimed "widget." For instance, Fintiv claims that "Apple's own technical documents reference 'widgets' and 'widget' in connection with *other features*." *Id.* at 11–12 (emphasis added, pointing to Home Screen widgets); *see also id.* at 16 ("Apple has marketed other features as 'widgets.'"). The Court finds that those "other features" have nothing to do with provisioning in Apple Wallet or Fintiv's infringement claims. Fintiv also claims that Apple servers allegedly "build widget assets," but Fintiv does not say what those "assets" purportedly are. *Id.* at 13. Fintiv also speculates that an "underlying file that produces the image of a card on the screen ***can*** in fact have executable code" (*id.* at 21, emphasis added), but speculation is not a substitute for evidence. And Fintiv points to a source code module, ███████████████████ (*id.* at 18), that "has no purpose and is not used on the Mac," but never says that module is the claimed "widget"—because it is not. ECF No. 270-6 ("Diederich Depo.") at 18:4–7; 114:17–25.

Fintiv also points to Dr. Shamos's report at paragraphs 359–60. ECF No. 300 at 13. There, Dr. Shamos relies on the following three screenshots to show that "the widget (providing a user interface) is also provisioned (made available for use)." *Id.*

Confidential Material Omitted

7



Shamos Report ¶¶ 359–60. But neither Dr. Shamos nor Fintiv can identify specifically what in these screenshots is the claimed "widget." *See id.* Dr. Shamos merely states that "[e]ach screenshot below (showing the virtual card image for the Visa card) presents a software (with a user interface) that is made available to the user for selecting, via its user interface, among the available ones to, for example, view the card's details or perform transactions." *Id.* ¶ 359. This is mere speculation and is insufficient to establish a genuine dispute of material fact that the accused products infringe the "widget" limitation.

Fintiv's opposition relies on source code modules that its own expert testified under oath are not the claimed "widget." *See* ECF No. 300 at 15 ("The foregoing source code modules of Apple's severs are used to create widgets that are stored in Apple's servers."). Dr. Shamos was asked about each of the cited source code modules, and he confirmed under oath that none of them is the accused "widget." *See* Shamos Depo. at 61:21–23 (███████████ is not the widget); 70:11–12 (████████ is not the widget); *see also id.* at 53:11–14; 62:11–12; 66:17–20; 69:20–24; 70:16–22; 71:14–17; 71:18–24; 71:25–72:5 (each of the source code files

8

Confidential Material Omitted

cited in Shamos Report ¶ 309 is not the claimed widget). As the file names reveal, Fintiv is pointing to passes, implying they might be "created" as the "widget." *See* ECF No. 300 at 15, 18. But Dr. Shamos also confirmed that no matter what creates them, passes are not the widget. Shamos Depo. at 62:11–12; 66:17–20; 69:20–24. Thus, nowhere does Fintiv's opposition state that "the 'widget' in the accused product is X," where X is an identifiable piece of software, as required by the Court's construction.

    **C.    Dr. Shamos' Speculation About Nonexistent "Widgets" In The Accused Products Is Not Enough To Survive Summary Judgment.**

    Faced with its failure to identify software that constitutes the accused "widget," Fintiv cites Dr. Shamos' speculation that there must be a widget somewhere in the accused products, even though he failed to identify it in his expert report. *Compare* ECF No. 300 at 9 ("And--are you prepared to testify at trial that there is a widget in the accused Apple devices that infringes the claims of the '125 patent? A. Yes.") *with* Shamos Depo. at 73:12–74:5 (agreeing that his report fails to identify the source code or software that is the accused widget). But under settled Federal Circuit law, "the non-movant can't defeat summary judgment with conclusory allegations, unsupported assertions, or only a scintilla of evidence." *Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1128 (Fed. Cir. 2021) (citing *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020)). Rather, a plaintiff must prove with admissible evidence that the accused products meet each limitation of an asserted claim. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). Thus, Fintiv cannot survive summary judgment by citing testimony that its expert is prepared to speculate at trial "that there is a widget in the accused Apple devices." ECF No. 300 at 9. Simply saying, "it must be in there somewhere" is no substitute for the requirement that Fintiv "set forth specific facts showing that there is a genuine issue for trial" with respect to the "widget" limitation. *See* Anderson, 477 U.S. at

256. Fintiv's opposition is devoid of any such "specific facts," because it cannot identify a "widget" in the accused card provisioning process.

On the contrary, Fintiv doubles down on its speculation by arguing that "Apple's own technical documents reference 'widgets' and 'widget' in connection with other features." ECF No. 300 at 11 (emphasis added), citing ECF No. 300 Exs. 13, 14. As Fintiv admits, the cited evidence has nothing to do with Apple Pay or Apple Wallet; rather, the evidence relates to "us[ing] widgets on your Home Screen." *Id.* And not surprisingly, Dr. Shamos cites none of this evidence in his expert report, because it does not bear on infringement.[2] So Fintiv's speculation—without even the support of its expert—that "there must be widgets in Apple Pay because there are widgets in other parts of the product" is even further removed from the "specific facts" Fintiv was required to set forth in opposing the Motion. *Anderson*, 477 U.S. at 256.

## IV. CONCLUSION

Apple has presented sufficient evidence that no genuine dispute of material fact exists on non-infringement. Fintiv then failed to demonstrate a genuinely disputed material fact, or indeed any facts at all, showing that Apple infringes the "widget" limitation present in all asserted claims of the '125 patent. Accordingly, Defendant Apple's Motion for Summary Judgment of Non-Infringement (ECF No. 270) is **GRANTED**.

SIGNED this 21st day of June, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

---

[2] Fintiv also cites an undated, one-page presentation slide titled "Provisioning: Requirements." ECF No. 300 at 13. Dr. Shamos neither cites nor discusses this document, and it says nothing about "software that is an application or works with an application." The document refers to data that is sent and received, including "required fields for the card to be provisioned," "payment product name," and whether "card supported or not." The Court finds this document is not evidence of the claimed "widget."

# Confidential Material Omitted

Sealed – Redacted in Full

Appx00012 – Appx00022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| FINTIV, INC., | |
|      Plaintiff, | Civil Action No. 1:21-cv-00896-ADA |
| v. | |
| APPLE INC., | |
|      Defendant. | |

### ORDER ON EMERGENCY MOTION [ECF NO. 431]

On this day, came on for consideration Plaintiff Fintiv, Inc.'s Emergency Motion for Reopening Discovery, Trial Continuance, and Sanctions. ECF No. 431 ("Emergency Motion"). The Court having considered Fintiv's moving papers and Apple's response, ECF No. 437 ("Opposition"), the authorities cited in the parties' briefs, the exhibits attached thereto, and the arguments of counsel, hereby rules as follows:

1.    Fintiv's motion for a trial continuance is hereby **GRANTED**.  The Court will reschedule trial in this matter following the completion of the bilateral, limited fact discovery ordered below, and any resulting motion practice.

2.    Fintiv's motion to reopen discovery is hereby **GRANTED-IN-PART** to the extent the Court orders additional limited bilateral discovery. The Court orders the following with respect to further discovery in this matter:

    a.    Fintiv will be permitted to take the depositions of Apple employee Ben Vigier, former Apple employee Pascal Caillon, and former Apple employee Charles Buchbinder.  As to Mr. Caillon and Mr. Buchbinder,

Apple will endeavor to secure their voluntary attendance at depositions, but failing that, Fintiv may serve subpoenas on each individual to secure their deposition attendance.

b.    Apple is ordered to produce the documents, including emails, identified in Apple's Opposition.

c.    Fintiv is ordered to produce the documents, including invoices, identified in the Emergency Motion.

d.    Apple will be permitted to take the deposition of former CorFire employee George Eubank.  Fintiv will endeavor to secure his voluntary attendance at a deposition, but failing that, Apple may serve a subpoena on Mr. Eubank to secure his deposition attendance.

e.    To the extent either party wishes to depose any additional witnesses but the other party opposes, the former shall contact the Court to request leave to conduct additional depositions.

f.    Both parties are ordered to conduct additional searches through limited sets of email and ESI using custodians and search terms agreed to by the parties, and to produce nonprivileged results of those email/ESI searches to the other side.  Unless otherwise agreed to by the parties, the time period for searching of email/ESI shall be limited to the calendar years 2011 through 2016. If the parties are unable to agree upon the parameters of such custodians, searches and productions, the issues shall be referred to Magistrate Judge Gilliland for resolution.

3.      The Court further **ORDERS** that any additional motion practice shall be addressed with the Court after the completion of the discovery ordered above. This includes motions related to leave to amend pleadings, expert reports, and pretrial disclosures. It also includes any motions to reconsider rulings made during the September 2021 pretrial conference.

4.      Fintiv's motion for sanctions is hereby **DENIED** as to the requested Rule 37 death penalty sanctions.  The Court will address any application related to attorneys' fees and/or costs by either party after the conclusion of trial in this matter. The Court will address any application related to a jury instruction regarding an adverse inference of Apple's suppression and/or concealment of evidence during the jury charge process.

SIGNED THIS 5th day of July, 2022.

THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **FINTIV, INC.,** | § | |
| *Plaintiff* | § | |
| | § | **W-18-CV-00372-ADA** |
| **v.** | § | |
| | § | |
| **APPLE INC.,** | § | |
| *Defendant* | § | |
| | § | |
| | § | |

## CLAIM CONSTRUCTION ORDER

Before the Court are the Parties' claim construction briefs: Plaintiff Fintiv's opening, responsive, and reply briefs (ECF No. 72, 75, and 77, respectively) and Defendant Apple's opening, responsive, and reply briefs (ECF No. 71, 74, and 76, respectively). The Court held the Markman hearing on November 7, 2019. ECF No. 82. During that hearing, the Court informed the Parties of the constructions it intended to provide for all terms except one. This Order does not alter any of those constructions.

I.    **Background**

Fintiv filed this lawsuit on December 21, 2018 alleging that Apple infringed at least claims 11, 18, and 23 of U.S. Patent No. 8,843,125. ECF No. 1. The '125 Patent is entitled "System and Method for Managing Mobile Wallet and its Related Credentials." The '125 Patent is directed towards the management of virtual cards stored on mobile devices. '125 Patent at 1:25-26.

The '125 Patent purports to solve several problems that were present in the prior art. First, the user had limited ability to manage payment applets. *Id.* at 2:6-8. Second, the user may be unable to view any account specific information in the secure element or manage payment

applications. *Id.* at 2:26-29. Third, the user may be "bombarded" with applications that are not compatible with his/her mobile device. *Id.* at 2:42-44.

The invention in the '125 Patent is based on a client-server architecture. *See, e.g.*, '125 Patent at Fig. 1. On the server side are, *inter alia*, the Mobile Wallet Management System ("WMS") and the Trusted Service Manager ("TSM"). The former stores and manages mobile wallet account information. *Id.* at 3:31-33. The WMS comprises other components, including a wallet client management component (to store and manage a mobile wallet application), the widget management component (to store and to manage widgets), a device profile management component (to store mobile device information), and a rule engine (to filter a widget based on the mobile device information). *Id.* at 3:33-39. The TSM acts as an "integration point for all of the external parties the mobile device may deal with, providing for a seamless and more efficient operation of mobile services." *Id.* at 5:42-46. The WMS may reside within the TSM. *Id.* at 5:28-29.

On the client side is the user's mobile device. The mobile device comprises, *inter alia*, a mobile wallet application, over-the-air ("OTA") proxy, secure element ("SE"), contactless card applet ("CCA"), and wallet management applet. *See, e.g.*, *id.* at Fig. 2. The mobile wallet application "may have the same composition as a conventional wallet, which may contain payment cards, member cards, transportation cards, and loyalty cards." *Id.* at 1:43-46. One of the OTA proxy's functions is to operate as a transceiver for the mobile device to the server. *See, e.g.*, *id.* at 6:34-37, 6:63-64, and 8:5-10. The secure element is memory component that securely stores account specific sensitive information. *Id.* at 7:38-43. The contactless card applet corresponds to a conventional card. *See id.* at 8:60-63. The WMA may store account specific information of the CCA which may be viewed by the user. *Id.* at 2:8-10 and 8:66-9:5. The WMA "may include both

2

a WMA 21 container and one or more WMA 21 applets.  WMA 21 container may manage the information stored in the WMA 21 applets."  *Id.* at 7:8-11.

## II.    Legal Principles

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").  The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Philips*, 415 F.3d at 1313.

"'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)).  "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).  Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent.  *Id.* at 1318.  Expert testimony also may be

3

helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* To disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent "a clear disavowal of claim scope." *Id.* at 1366. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

Under the doctrine of claim differentiation, a court presumes that each claim in a patent has a different scope. *Phillips*, 415 F.3d at 1314-15. The presumption is rebutted when, for example, the "construction of an independent claim leads to a clear conclusion inconsistent with a dependent claim." *Id.* The presumption is also rebutted when there is a "contrary construction dictated by the written description or prosecution history." *Seachange Int'l., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005). The presumption does not apply if it serves to broaden the claims beyond their meaning in light of the specification. *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1326 (Fed. Cir. 2017).

### III.    Legal Analysis

#### A.    "wallet management applet (WMA)" (claims 11 and 23)

| Fintiv's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "integrated functionality that enables management of a wallet related applet." | "software application for storing duplicate account specific information accessible to the mobile wallet application" |

Fintiv contends that "wallet management applet" should bear its plain-and-ordinary meaning because a POSITA "would have reasonable certainty about the meaning and scope of the term from its context in the claims and specification." ECF No. 72 at 5. Fintiv further contends that the plain-and-ordinary meaning of this term is "integrated functionality that enables management of a wallet related applet." *Id.* at 9. Fintiv contends that this proposed construction is consistent with the claims and specification, and does not exclude any embodiments. *Id.*

Apple contends that "wallet management applet" does not have a plain-and-ordinary meaning because it is a "coined term." ECF No. 71 at 11. Apple further contends even if "wallet management applet" were not a coined term, the Court should still construe it because the jury should not "guess" what the meaning of a highly technical term is. *Id.* Apple contends that its proposed construction "follows from the intrinsic evidence, including numerous references and explanations in the specification." *Id.*

#### i.    "Wallet management applet" is a coined term and does not have a plain-and-ordinary meaning

The first question before the Court is whether "wallet management applet" is a coined term. Apple contends that it is a coined term whereas Fintiv does not appear to argue otherwise. ECF No. 71 at 11. Because there is no evidence that "wallet management applet" was a well-known term at the time of the '125 Patent's filing, the Court agrees with Apple that this is a coined term.

The next question is whether a coined term can have a plain-and-ordinary meaning. Apple cites two Federal Circuit cases—*Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345 (Fed. Cir. 2019) and *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014)—for the proposition that coined terms do not have an "ordinary and customary meaning." ECF No. 71 at 13. By contrast, Fintiv argues that coined terms may not require construction. ECF No. 75 at 10. As a general matter, the Court agrees with Fintiv. More specifically, when "the components of the term have well-recognized meanings," a POSITA could "infer the meaning of the entire phrase." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004).

But that general principle requires that the Court exercise its judgment to determine whether the combination of the constituent words is merely the "sum of the parts" or whether that combination has a meaning that is something more than—or significantly different from—the "sum of the parts." An example of the former could be "wide-body passenger jet." A POSITA would understand that "wide-body" is in contrast to a "narrow-body" airplane, *e.g.*, two aisles in a wide-body airplane versus one aisle in a narrow-body airplane. A POSITA would also understand that a "passenger" airplane would be pressurized and have seats for the passengers, in contrast to a cargo airplane which may provide neither. A POSITA would finally understand that "jet" refers to the type of engine that provides thrust. By contrast, an example of the latter is "ice cream." *See* ECF No. 74 at 23. Even though a POSITA knows what "ice" and "cream" are, the POSITA may not infer that "ice cream" is significantly different that the combination of ice and cream.

To determine whether the term is more akin to "wide-body passenger jet" or "ice cream," a court should turn to the specification as it is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315; *see also Intervet Inc. v. Merial Ltd.,* 617 F.3d 1282, 1287 (Fed.

Cir. 2010) (citing *Phillips*, 415 F.3d at 1315) ("Idiosyncratic language, highly technical terms, or terms coined by the inventor are best understood by reference to the specification."). The Court has analyzed all recitations of "WMA" in the specification and provides the most relevant and informative passages below:

- Abstract: "retrieving a widget and a wallet management applet (WMA) corresponding to the contactless card applet"
- 7:4-8: "WMS 110 requests TSM system 120 to provision a corresponding wallet management applet (WMA) 21 with the following information via OTA proxy: [Card Production Life Cycle] or [Card Serial Number], [Card Image Number], Mobile ID and WMA personalization data."
- 7:8-11: "In an example, WMA 21 may include both a WMA 21 container and one or more WMA21 applets. WMA 21 container may manage the information stored in the WMA 21 applets."
- 7:16-20: "The WMA 21 container is a software application that may reside within the SE of the mobile device 100 to manage account information related to the contactless card applet 23 (i.e. WMA 21 applet) that may be typically inaccessible by the user."
- 7:38-43: "To provide the user of the mobile device with the account specific information related to contactless card applets, separate account information associated with the corresponding contactless card applet 23 (e.g. credit card number, expiration date, security code, PIN, etc.) may be provisioned into the SE as WMA 21 applets."
- 8:66-9:2: "The corresponding WMA 21 applet, which may include account specific information of the contactless card apple (e.g. credit card number, expiration date, security code, PIN. etc.), may be provisioned into the SE."
- 9:61-66: "WMA 21 container may, however, limit amount of change requests to the WMA 21 applet as they contain account specific information. For example, the number of times expiration date may be changed with a reference time period may be limited, or changes to the credit card numbers may be prohibited."

Based on the component words, a POSITA might infer that a "wallet management applet" is "an applet that manages an electronic wallet." But the above passages recite that the WMA may comprise both a container (which is a software application) and one or more applets. '125 Patent at 7:8-11, 7:16-20. In other words, the WMA is not only an "applet" as a POSITA would infer from its component words, but it comprises both a software application and an applet. Accordingly, based on that fact alone, WMA appears to be more akin to "ice cream" than "wide-

body passenger jet." As such, the Court does not find that WMA has a plain-and-ordinary meaning, and will turn to Fintiv's and Apple's respective constructions.

### ii. Analysis of Fintiv's proposed alternate construction

Fintiv's alternate proposed construction suffers from at least two infirmities. First, it replaces "applet" with "integrated functionality." Applet is a well-understood computer science term that refers to a small software program that may run inside of a larger program, *e.g.*, an internet browser. *Applet, Microsoft Computer Dictionary* (5th ed. 2002). By contrast, "integrated functionality" does not indicate how the functionality must implemented, let alone that it must be implemented in software. As such, Fintiv's proposed construction allows for the WMA to be implemented by hardware, software, or a combination thereof, which is significantly broader than limiting its implementation to software. There is no support in the specification for such a broad definition for "applet" nor did the patentee act as his/her own lexicographer to redefine "applet" in any way. *Phillips*, 315 F.3d at 1315 ("Claims must always be read in light of the specification.") (quoting *See In re Fout*, 675 F.2d 297, 300 (CCPA 1982)); *Thorner*, 669 F.3d at 136. And even if a POSITA understood that "integrated functionality" requires a software implementation, a POSITA would not necessarily understand that "integrated functionality" could be software that may run inside a larger program.

Second, Fintiv's alternate proposed construction is unlikely to be helpful to a jury. *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2014 WL 3735222, at *2 (E.D. Tex., July 28, 2014). A jury may find the word "integrated" to be confusing as it may be unclear from the specification what the WMA needs to be integrated with, or if it needs only to be integrated with the mobile device. A jury may find the word "functionality" to be vague, and difficult to determine if the accused technology meets that particular aspect of the claim limitation. More generally, Fintiv's alternate proposed construction rewrites the claim language without specifically

8

describing the functionality embodied by the WMA. It is difficult to see how that alternate construction is more helpful to a jury than the original claim term.

For at least these reasons, the Court rejects adopting Fintiv's alternate proposed construction.

### iii. Analysis of Apple's proposed construction

On the other hand, Apple's proposed construction—"software application for storing duplicate account specific information accessible to the mobile wallet application"—also suffers from a few infirmities. First, although the phrase "software application" appears in the specification (*see, e.g.*, '125 Patent at 7:16), "software" is redundant with "application,"[1] which may confuse the jury. *Kroy*, 2014 WL 3735222, at *2. Second, Apple's use of "application" may be narrower than the full scope of a WMA. In particular, the specification recites that the "WMA include both a WMA container and one or more applets." '125 Patent at 7:8-9. The specification further describes the "WMA container" as a "software application." *Id.* at 7:16-20. Therefore, because it may comprise one or more applets, a WMA may be broader than a software application. As such, Apple's use of "application" in its construction of WMA limits the scope of WMA. Third, Apple's use of "duplicate" may be unnecessary and potentially misleading. During the *Markman* hearing, Apple's counsel conceded that "duplicate" was already implied in its construction. Hrg. Tr. at 65:5-8. Furthermore, the use of the word "duplicate" in Apple's construction may cause a jury to think that it means something other than simply the user's account information stored on the mobile device.

---

[1] Apple's counsel agreed that "software" was redundant with "application" and that including "application" in its construction was not necessary. Hrg. Tr. at 61:9-15 ("At the end of the day I don't think it's critically important to have both of those words in the construction. If that was the only thing standing between adopting Apple's construction was removal of the word "application" and instead it just said software for storing duplicate account information, I don't think we'd have a significant problem with that.").

Fourth, Apple's proposed construction violates the doctrine of claim differentiation. More specifically, claim 16, which depends on claim 11, recites "wherein the WMA is a software application configured to store account specific information." '125 Patent at 13:60-61. Because Apple's proposed construction limits the WMA to "storing duplicate account specific information," then claims 11 and 16 would have the same scope with respect to that term.

Relatedly, Apple's proposed construction would also improperly read a limitation from a dependent claim into the broader independent claim, thus narrowing the scope of the independent claim. ECF No. 75 at 7 (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d at 910 ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest.")). The use of the word "wherein" in a dependent claim indicates the patentee intended for the dependent claim to have a <u>narrower</u> scope for that aspect of the independent claim. *Chien-Lu Lin v. Twins Enter., Inc.*, No. CV 01–07390 MMM (JWJx), 2002 WL 34455514, at *20 (C.D. Cal. Nov. 12, 2002) ("Generally, when a limitation in a dependent claim is intended to narrow a step set forth in the independent claim, the word "wherein" is used."). As such, the patentee intended that claim 16 should have a narrower scope with respect to the functionality of the WMA than does the scope of claim 11. But because Apple's proposed construction tracks the language from dependent claim 16, adopting Apple's proposed construction for WMA, which appears in both claims 11 and 16, would incorrectly read in a limitation from dependent claim 16 into independent claim 11, and concomitantly incorrectly limit the scope of claim 11.

Apple contends that the "presumption [that claim differentiation applies] is overcome in situation like this one, where the intrinsic evidence consistently describes the claim term in a way that is necessary to 'achieve an object of the invention.' The "WMA . . . is necessary to achieve

the object of the invention: allowing users to view and access account specific information." ECF No. 76 at 9-10. The Court disagrees with Apple's contention that the doctrine of claim differentiation does not apply because applying claim differentiation to claim 16 would not prevent either claim 11 or claim 16 from achieving what Apple argues is the object of the invention. More specifically, claim 16 recites one particular functionality of the WMA, namely, that it is "configured to store account specific information," which Apple contends is the object of the invention. Because claim 16 is a subset of claim 11 and because claim 16 purportedly recites the object of the invention, both claims 11 and 16 can achieve the purported object of the invention.

The Court's conclusion is consistent with Federal Circuit case law that found claim differentiation inapplicable because none of those circumstances are present here. For example, there is no "contrary construction dictated by the written description or prosecution history" that would lead the Court to conclude that claim differentiation does not apply in this case. *Seachange*, 413 F.3d at 1369. Nor does claim differentiation result in claim 16 being broader in scope than claim 11. *Intellectual Ventures*, 870 F.3d at 1326.

Finally, Apple's proposed construction incorrectly excludes a preferred embodiment. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (excluding a preferred embodiment is "rarely, if ever, correct and would require highly persuasive evidentiary support."). Although the specification supports Apple's proposed construction that the WMA stores accounts specific information ('125 Patent at 7:38-43 8:66-9:2), the specification also describes that the WMA implements some security features, namely, that the WMA container may limit change requests to the WMA applet, *e.g.*, the number of times the expiration date may change during a period of time and/or changes to the credit card number may be prohibited. *Id.* at 9:61-66. Because

11

Apple's proposed construction excludes that WMA's security functionality, it incorrectly excludes a preferred embodiment.

For at least these reasons, the Court rejects adopting Apple's proposed construction.

### iv. The Court's construction for "wallet management applet" and the reasoning therefor

For the reasons described below, the Court construes "wallet management applet" as "software that enables management of an electronic wallet including, but not limited to, the functionality of storing account specific information." Hrg. Tr. at 82:5-7. First, the specification consistently describes that the WMA is a "software application." *See, e.g.*, '125 Patent at 7:16. But because "software" may be redundant with "application"—and thus potentially confusing to a jury—the Court uses "software" in its construction.

Second, the specification recites that the WMA container "manages account information related to the contactless card applet 23 (i.e. WMA 21 applet) and that the account information may include credit card number and expiration date. *Id.* at 7:16-20, 7:38-42.

Third, the specification describes that the WMA performs at least two functions: it stores account specific information (*id.* at 7:38-43, 8:66-9:2) and it implements some security features to protect that information (*id.* at 9:61-66). A POSITA would understand that this account information is stored in a mobile wallet, *i.e.*, an electronic wallet.

Fourth, because a jury may not understand what "management of an electronic wallet" may entail and because object of the invention is to store account information within the WMA in order to make it available to the user (*id.* at 7:38-43), the Court's construction incorporates the following phrase: "including, but not limited to, the functionality of storing account specific information."

For the reasons stated above, the Court construes "wallet management applet" as "software that enables management of an electronic wallet including, but not limited to, the functionality of storing account specific information."

**B.    "widget" (claims 11, 18, and 23)**

| Fintiv's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "integrated functionality that relates to applications related to a financial institution, transportation account, and the like." | "user interface software application" |

Fintiv contends that "widget" should bear its plain-and-ordinary meaning because a POSITA "would have reasonable certainty about the meaning and scope of the term from its context in the claims and specification." ECF No. 72 at 10. Fintiv further contends that the plain-and-ordinary meaning of this term is "integrated functionality that relates to applications related to a financial institution, transportation account, and the like." *Id.* at 11. Fintiv argues that, unlike Apple's proposed construction, that its proposed plain-and-ordinary meaning "not narrowing and is consistent with the specification." *Id.* at 11.

Apple contends that "widget" requires construction because, to a lay person, a "'widget' generically refers to an undefined article and is largely synonymous with terms like gadget, gizmo, and thingamabob." ECF No. 71 at 16. Even though claims are construed from the perspective of a POSITA, and not a lay person, the Court agrees with Apple, at least to the extent that the Court cannot simply order that "widget" should bear its plain-and-ordinary meaning without providing a definition for that plain-and-ordinary meaning. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). More specifically, the issue is that "widget" has both a non-technical meaning (*e.g.*, "gizmo") and a technical one. Because the jury may incorrectly apply the

non-technical plain-and-ordinary meaning, the Court needs to provide a construction for this term.
*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008)
("A determination that a claim term 'needs no construction' or has the 'plain and ordinary
meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance
on a term's 'ordinary' meaning does not resolve the parties' dispute."). Therefore, the Court finds
that Fintiv's proposed construction of "plain-and-ordinary meaning" as stand-alone construction
does not sufficiently construe the term in order to help a lay jury.

### i. Analysis of Fintiv's proposed alternate construction

Fintiv's alternate proposed construction suffers from a few infirmities. First, several words
within the construction are vague, confusing, or unclear, which ultimately is not helpful for a jury.
*Kroy*, 2014 WL 3735222, at *2. For example, a jury may find the word "integrated" to be
confusing as it may be unclear from the specification what the widget needs to be integrated with,
or if it needs only to be integrated with the mobile device. As a second example, a jury may also
find that "functionality" and "and the like" to be vague, and difficult to determine if the accused
technology meets either term. As a third example, a jury will probably find that the phrase "that
relates to applications related to a financial institution, transportation account . . . " is difficult to
understand.

Second, Fintiv's construction could potentially incorrectly limit the construction of
"widget" to a preferred embodiment. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348
(Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him
to his preferred embodiment or import a limitation from the specification into the claims."). In
particular, the specification recites that "[w]idgets may be an application configured to interface
with a user of the mobile device. In an example, widgets may refer to individual payment
applications, transportation applications, and other related applications." '125 Patent at 5:6-9. The

first sentence in this passage describes that widgets may be applications with a user interface. The

second sentence starts with "[i]n an example," which then indicates that the specific widgets listed,

*i.e.*, "individual payment applications, transportation applications, and other related applications,"

are merely examples of widgets that are applications with a user interface. Given that these

particular applications are merely examples, the proper construction of "widget" is broader than

these examples. Because Fintiv's proposed construction only recites these examples (and

substitutes "other related applications" with "and the like"), it incorrectly limits the construction

of "widget" to this preferred embodiment.

For at least these reasons, the Court rejects Fintiv's proposed construction.

### ii.    Analysis of Apple's proposed construction

Apple's proposed construction likewise suffers from at least two infirmities. First, as was

the case for "wallet management applet," although the phrase "software application" appears in

the specification (*see, e.g.*, '125 Patent at 7:16), "software" is redundant with "application,"[2] which

may confuse the jury. *Kroy*, 2014 WL 3735222, at *2.

Second, Apple's proposed construction incorrectly excludes some preferred embodiments.

*Vitronics*, 90 F.3d at 1583 (excluding a preferred embodiment is "rarely, if ever, correct and would

require highly persuasive evidentiary support."). The specification recites that "[w]idgets <u>may</u> be

an application configured to interface with a user of the mobile device.." '125 Patent at 5:6-7

(emphasis added). This passage explicitly recites that widgets may be an application with a user

interface. But, given that passage uses the word "may," a widget may also be an application that

does <u>not</u> have a user interface (or is configured not to have one). A POSITA would know that

applications may or may not have a user interface. Hrg. Tr. at 84:10-13 (Apple: "I don't think we

---

[2] Apple's counsel agreed that "software" was redundant with "application" and that including "application" in its construction was not necessary. Hrg. Tr. at 83:24-84:2.

are in this instance, Your Honor. There can certainly be, you know, applications that run in the backgrounds of a computer that are not invisible or the user doesn't interact with at least not in any direct way.").  Therefore, Apple's proposed construction is incorrect because it excludes the preferred embodiment of widgets that may <u>not</u> be configured to have a user interface.

Apple's proposed construction also incorrectly excludes preferred embodiments of "widgets" which are not applications.  The specification recites that "[t]he corresponding widget may reside in the mobile wallet application 24, at the application level, to provide an interface to the user." '125 Patent at 8:63-65.  A POSITA would understand that this passage describes that a widget may something other than an application given that it "may" reside in another application and "at the application level" *Id.*  Because applications do not generally "reside" within other applications, a POSITA would not understand that a widget is a stand-alone application, but rather as code, *e.g.*, a "plug-in," that runs within an application.  This description is consistent with the plain-and-ordinary meaning of "widget."  Because Apple's proposed construction incorrectly limits a "widget" only to an application, it excludes the preferred embodiment of widgets that are not applications, but that may reside in an application.

For at least these reasons, the Court rejects Apple's proposed construction.

### iii.  The Court's construction for "widget" and the reasoning therefor

For the reasons described below, the Court construes "widget" as plain-and-ordinary meaning and where the plain-and-ordinary meaning is "software that is either an application or works with an application, and which may have a user interface." Hrg. Tr. at 82:5-7.  First, as described above, the specification describes that a "widget" may be an application. '125 Patent at 5:6-9 ("Widgets may be an application configured to interface with a user of the mobile device. In an example, widgets may refer to individual payment applications, transportation applications, and other related applications.").  Second, as was also described above, the specification does not limit

16

widgets to applications, but describes widgets as software that resides inside an application. *Id.* at 8:63-65 ("The corresponding widget may reside in the mobile wallet application 24, at the application level, to provide an interface to the user."). Third, the specification describes that a widget may have a user interface. *Id.* at 5:6-9, 8:63-65.

For the reasons stated above, the Court construes "widget" as plain-and-ordinary meaning and where the plain-and-ordinary meaning is "software that is either an application or works with an application, and which may have a user interface."

### C.    "mobile wallet application" (all asserted claims)

| Fintiv's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "application that provides wallet functionality on the mobile device." | "mobile wallet software application capable of being independently downloaded and installed" |

Fintiv contends that "mobile wallet application" should bear its plain-and-ordinary meaning because a POSITA "would have reasonable certainty about the scope and meaning of the term from its context in the claims and specification." ECF No. 72 at 11-12. Fintiv further contends that the plain-and-ordinary meaning of this term is "application that provides wallet functionality on the mobile device." *Id.* at 11. Fintiv contends that part of Apple's proposed construction—"mobile wallet software application"—supports Fintiv's proposed construction. *Id.* at 12.

Apple contends that "mobile wallet application" should be construed because it is a "technical term that lay jurors are unlikely to be familiar with." ECF No. 71 at 20. Apple contends that the "primary dispute between the parties is whether a mobile wallet application must be 'capable of being independently downloaded and installed.'" *Id.* Apple contends that the intrinsic evidence compels that the Court adopt its proposed construction of "mobile wallet software

application capable of being independently downloaded and installed." *Id.* at 22. In particular, Apple contends its construction that the mobile wallet application "must be capable of being independently downloaded and installed" because that construction reflects the solution to the purported problem that the '125 Patent attempted to solve, namely, for the server to filter out incompatible mobile wallet applications and only offer compatible ones to the user. ECF No. 74 at 19.

The Court rejects Apple's proposed construction for the reasons that follow. First, contrary to Apple's assertions, the '125 Patent did not solve the problem of filtering out incompatible mobile wallet applications only, but it also solved at least two other problems, namely, that the user (1) had limited ability to manage payment applets and (2) may be unable to view any account specific information in the secure element or manage payment applications. '125 Patent at 2:6-8, 2:26-29. The '125 Patent solved these problems by provisioning a wallet management applet and widget corresponding to the contactless card applet, and provisioning account specific information associated with the applet into the SE as WMA applets. *Id.* at Abstract, 7:38-43. Therefore, because the '125 Patent solved two other problems beyond what Apple identifies, that fact undermines Apple's argument that the phrase "capable of being independently downloaded and installed" must be included in the final construction in order to reflect the solution to the only problem that the '125 Patent attempted to solve.

Second, Apple's proposed construction imports a limitation from a preferred embodiment. *Kara Tech*, 582 F.3d at 1348 ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."). In particular, the specification describes that "[t]he mobile wallet application 24 may be downloaded directly to the requesting mobile device 100, <u>sent to the user in a physical medium</u>

18

storing the application, or by other suitable methods for providing software applications." '125 Patent at 6:27-30 (emphasis added). This passage plainly recites two specific methods of providing the mobile wallet application to the mobile device, namely, via download or via transfer using a physical storage device.[3] The passage also contemplates providing the mobile wallet application by other "suitable" means. Because the specification recites non-download methods of providing the mobile wallet application, Apple's proposed construction incorrectly attempts to import the downloading limitation from a preferred embodiment.

Third, the inclusion of "independently" in Apple's proposed construction could be unhelpful to a jury because it may not be clear what scope that word has. In particular, it is unclear from who or what the downloading and installation needs to be "independent" of.[4] For example, could "independently" refer to whether the mobile wallet application can be downloaded and installed separately from other software? As another example, does the downloading and installing also need to be independent of the service provider, card issuer, manufacturer of the mobile device's hardware, manufacturer of the mobile device's software, and/or the user? To be fully "independent," the downloading and installing would need to be completely independent of all these entities, which would make it impossible to download and install the mobile wallet application onto the mobile device, thus frustrating the entire point of the invention. *See AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1239-40 (Fed. Cir. 2003). The Court will not adopt a construction that has an unclear scope and/or that will completely undermine the invention. *Id.*

---

[3] Apple attempts to characterize transfer by a physical medium as a form of downloading. ECF No. 75 at 20 ("At bottom, regardless of how the mobile wallet application is provided to the mobile device for installation, all of the disclosed methods involve a transfer of the wallet from an external location to the mobile device, and so [does] a download of the wallet to the mobile device."). This argument is, at best, weak and unpersuasive because the patent clearly differentiates downloading and physical transfers whereas Apple's proposed construction attempts to eliminate any difference between them.

[4] Apple argues that "it is clear based on the intrinsic record that the mobile wallet application is installed independently of the standard software already present on the mobile device." ECF No. 74 at 20. Apple, however, does not provide a single citation in support of this argument.

The Court construes "mobile wallet application" as having its plain-and-ordinary meaning for the reasons that follow. First, the specification describes a "mobile wallet application" in the same way a POSITA would infer its meaning from the meaning of its component words. *Bancorp*, 359 F.3d 1372. For example, the specification recites that "[t]he model mobile wallet application may have the same composition as a conventional wallet, which may contain payment cards, member cards, transportation cards, and loyalty cards." '125 Patent at 1:43-46. The specification further recites that "the widget representing the virtual card may reside within the mobile wallet application 24." *Id.* at 6:2-4. Second, Apple's proposed construction begins with "mobile wallet software application," which is exactly the same as the claim term, with the addition of a redundant word ("software"), to its proposed construction. Because Apple's proposed construction is essentially the same as the claim term (apart from adding "capable of being independently downloaded and installed"), that implies that Apple also believes that the meaning is clear and unambiguous, and thus does not require construction. Third, according to Apple, the "primary" dispute between the parties was whether the construction of "mobile wallet application" needs to include the phrase "capable of being independently downloaded and installed." ECF No. 71 at 20. The Court has resolved that dispute and Apple does not raise any other reason why the plain-and-ordinary meaning is incorrect.[5]

For the reasons stated above, the Court construes "mobile wallet application" as having its plain-and-ordinary meaning.

---

[5] Apple contends that "mobile wallet application" is a technical term that requires construction. But Apple's argument is undermined by its proposed construction—the beginning of which only adds "software" to that term—which is not a non-technical construction that may be more suitable for a lay jury.

**D.     "SE information" (claims 14 and 23)[6]**

| Fintiv's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  To the extent the Court requires construction the plain and ordinary meaning is "information related to the secure element that may include at least card production life cycle, card serial number, card image number, and integrated circuit card identification." | "information relating to the secure element" |

Fintiv contends that "SE information" should bear its plain-and-ordinary meaning because a POSITA would understand the term in the "context of the claims and specification."  ECF No. 72 at 13.  Fintiv further contends that the plain-and-ordinary meaning of this term is "information related to the secure element that may include at least card production life cycle, card serial number, card image number, and integrated circuit card identification."  *Id.* at 11.

Apple contends that "SE information" should be construed because "the jury is unlikely to be familiar with the acronym SE or the phrase 'SE information[.]'"  ECF No. 71 at 23.  Apple contends that its proposed construction is a "straight-forward plain-English construction."  *Id.*

Fintiv's proposed construction appears to cover information that is related to the SE, *e.g.*, card production life cycle, card serial number, card image number, and integrated circuit card identification.  By contrast, Apple's proposed construction covers information about and related to the SE, but not information that is stored on the SE itself.  ECF No. 74 at 22; Hrg. Tr. at 126:14-17 ("I think, Your Honor, what the work we were trying to do with our construction was to communicate that it was information about the secure element and not necessarily any information stored on the secure element.").

---

[6] There is no dispute between the parties that "SE" is an acronym for "secure element."  Hrg. Tr. at 124:24-125:2.

The '125 Patent and the four provisional applications (61/428,846, 61/428,851, 61/428,852, and 61/428,853) which are incorporated by reference describes that "SE information" includes information that related to the SE. '125 Patent at 6:52-60 ("In step 208, the OTA proxy captures the mobile device information . . . including SE information (e.g. Card Production Life Cycle (CPLC), Card Serial Number (CSN), Card Image Number (CIN), Integrated Circuit Card Identification (ICCID)), which may be stored in a device memory component of the mobile device 100."); ECF No. 71, Ex. 2 ('846 Application) at 9 ("In step 208, the wallet application through OTA proxy captures the mobile device information . . . including SE information (e.g. CPLC, CSN, CIN, ICCID)."); ECF No. 71, Ex. 3 ('851 Application) at 21 ("Once launched, the mobile wallet application . . . will gather SE information (Card Production Life Cycle (CPLC), Card Serial Number (CSN), Card Image Number (CIN), Integrated Circuit Card Identification (ICCID))."); ECF No. 71, Ex. 3 at 21 ("If the SE is a UICC type, it will read both the SE information and handset information from the UICC card. If however, SE is a Micro SD or Embedded SE, OTA Proxy will read the CIN from the SE and then obtain MSISDN and IMEI/MEID via mobile device application programming interface (API)."); *see also* ECF No. 71, Ex. 3 at 68 (describing SE information as "SPLC, CSN, CIN, ICCID"). These passages consistently recite that the OTA proxy captures mobile device information, which includes SE information. '125 Patent at 6:52-60; ECF No. 71, Ex. 2 ('846 Application) at 9; ECF No. 71, Ex. 3 ('851 Application) at 21; ECF No. 71, Ex. 3 at 68. These passages further recite that the SE information includes, *inter alia*, Card Image Number (CIN). '125 Patent at 6:52-60; ECF No. 71, Ex. 2 ('846 Application) at 9; ECF No. 71, Ex. 3 ('851 Application) at 21; ECF No. 71, Ex. 3 at 68. Therefore, based on these passages, the SE information is information, *e.g.*, card production life cycle, card serial number, card image number, and integrated circuit card identification, that is related to the SE.

But the provisional applications also describe that "SE information" includes information about the SE's attributes or characteristics. ECF No. 71, Ex. 3 ('851 Application) at 51 (reciting SE information as "Secure Element Information: Name(M), Version(M), Description, Card Manufacturer Name(M), Plastic Stock ID, Platform Information (Type, Version, OS Platform, OS Version, Implementer) (M), Chip Information (Name, Model, Version, Chip Manufacturer, Description, Resources, Power) (M), Communication Information (Contact/Contactless Baud Rate, PPS)"); ECF No. 71, Ex. 5 ('853 Application) at 58-59 (describing SE information as including, *inter alia*, SE Type, NFC support, and platform."); ECF No. 71, Ex. 5 at 86 (describing SE information as including, *inter alia*, "SE type, SE memory capacity, SE COS, SE manufacturer.").

Critically, the '851 Application also recites that the OTA Proxy will "read" the information such as the CIN (Card Image Number) from the SE. ECF No. 71, Ex. 3 at 21 ("If the SE is a UICC type, it <u>will read both the SE information</u> and handset information from the UICC card. If however, SE is a Micro SD or Embedded SE, OTA Proxy will <u>read the CIN from the SE</u> and then obtain MSISDN and IMEI/MEID via mobile device application programming interface (API).") (emphasis added). A POSITA would understand that a component, *e.g.*, the OTA proxy, cannot "read" information on a memory component, *e.g.*, the SE, unless that information is first stored on that memory component. In other words, because the '125 Patent specifically recites the CIN as an example of SE information ('125 Patent at 6:52-60) and the '851 Application specifically recites that the CIN may be read from the SE (ECF No. 71, Ex. 3 at 21), a POSITA would understand that the '125 Patent (which incorporates the '851 Application by reference) discloses that SE information could be stored on the SE.

23

The Court rejects Apple's proposed construction because it excludes a disclosed embodiment. *Vitronics*, 90 F.3d at 1583 (excluding a preferred embodiment is "rarely, if ever, correct and would require highly persuasive evidentiary support."). More specifically, Apple's proposed construction explicitly excludes information that is stored on the SE. ECF No. 74 at 22; Hrg. Tr. at 126:14-17. As described above, however, the '851 Application recites that the OTA Proxy will "read" the SE information such as the CIN (Card Image Number) that has been stored on the SE. But even if the '851 Application did not explicitly disclose that SE information may be stored on the SE, there is no disclosure in the '125 Patent that SE information could <u>not</u> be stored on the SE, let a disclaimer that recites that. If anything, a POSITA would understand that the logical place to store SE information—especially regarding the characteristics and attributes of the SE—is on the SE. Therefore, because Apple's proposed construction excludes some disclosed embodiments, the Court rejects Apple's proposed construction.

Fintiv's alternative proposed construction may be too narrow as it is unclear whether information about the SE, *e.g.*, capacity of the SE, falls within the meaning of that term.

Accordingly, in an attempt to clarify the scope of this term while also providing a construction that is helpful for the jury, the Court construes "SE information" as "information that is about or related to the SE including, but not limited to, production life cycle, card serial number, card image number, and integrated circuit card identification" for the reasons that follow. First, the '125 Patent and provisional applications describe that SE information includes both information about and related to the SE. *See, e.g.*, '125 Patent at 6:52-60 (related to), ECF No. 71, Ex. 3 ('851 Application) at 51 (about). Second, in order to assist the jury in understanding what "information . . . related to the SE" means, the Court's construction includes the examples listed in the '125 Patent. Although these example are technical terms that the jury may be unfamiliar

with, the Court believes that in this case including these examples will assist the jury in understanding the meaning of the Court's construction. Furthermore, either party's expert witness can easily explain what each of those terms means.

Finally, while the Court's construction does not explicitly recite that information stored on the SE is within the scope of the term "SE information," the Court believes that nothing in its construction explicitly or implicitly recites that information stored on the SE falls outside of the scope of the Court's construction, nor should any party argue or imply otherwise in its infringement or invalidity contentions, expert report(s), or at trial.

### E.    "mobile device information" (claims 14, 18, and 23)

| Fintiv's Proposed Construction | Apple's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "mobile device related information." | "hardware or software properties relating to the mobile device" |

Fintiv contends that "mobile device information" should bear its plain-and-ordinary meaning because a POSITA "would have reasonable certainty about the scope and meaning of the term from its context in the claims and specification." ECF No. 72 at 14. Fintiv further contends that the plain-and-ordinary meaning of this term is "mobile device related information." *Id*.

Apple contends that "mobile device information" should be construed as "hardware or software properties relating to the mobile device." ECF No. 71 at 25. Apple contends that "[w]ithout such a construction, a jury may be misled into thinking that other types of information, such as who owns a mobile device or the identity of the person that happens to be using it, qualify as mobile device information." *Id*. In particular, Apple contends that its proposed construction is based on the fact that the '125 Patent differentiates mobile device information and user profile information. *Id.*; Hrg. Tr. at 97:13-17, 99:21-100:2.

The Court determines that "mobile device information" be given its plain-and-ordinary meaning that a person of ordinary skill in the art would ascribe to it for the reasons that follow. Hrg. Tr. at 100:3-5. First, for this term, neither of the exceptions to the general rule that plain-and-ordinary meaning applies are present here. *See Thorner*, 669 F.3d at 1365. Second, this term is not a technical term for which a construction would help the jury understand the meaning of the term. *Kroy IP Holdings*, 2014 WL 3735222, at *2.

Third, the Court disagrees with Apple's argument that construction is needed "because a jury may be misled into thinking that other types of information . . . qualify as mobile device information." ECF No. 71 at 25. Whether a particular piece of information is mobile device information or not is fact question, which is for the jury to decide. *Freescale Semiconductor, Inc. v. Promos Techs., Inc.*, 561 F.Supp.2d 732, 757 (E.D. Tex. 2008)) ("Whether types of metal ions in addition to those specifically listed in the specification should be considered mobile ions will be a question of fact based on the proper construction of this term. The court need not determine this fact question during the claim construction process."); *AVM Techs., LLC v. Intel Corp.*, No. 15-33-RGA, 2016 WL 41827402016, at *9 (D. Del. Aug. 5, 2016) ("Whether a particular accused product has one input transistor or multiple input transistors is a fact question for a jury to decide. Intel has thus failed to show that its proposed limitation is warranted as a matter of claim construction."); *Dynocom Indus., Inc. v. Mainline Auto. Equip. Pty. Ltd.*, No. 2:16-CV-00553-JRG-RSP, 2017 WL 30208262017, at *8 n.2 (E.D. Tex. July 17, 2017) ("determining the amount of allowable misalignment that would be considered a "common axis" is likely a fact question, and not a claim construction issue."). The Seventh Amendment guarantees a trial by jury and this Court will not "invade the province of the jury by deciding factual issues." *Kemin Foods, L.C. v.*

*Omniactive Health Techs., Inc.*, No. 8:07–cv–1308–T–33TGW, 2009 WL 3157670, at *10 n.8 (M.D. Fla. Sept. 27, 2009).

That said, if a party attempts to argue that a particular piece of information is either mobile device information or user profile information when the specification clearly recites that it is in the other category, then that is a question more properly reserved for a motion to strike a party's contentions, a motion for summary judgment, or a *Daubert* motion, and not for claim construction. Hrg. Tr. at 100:6-15 ("If the plaintiffs take the position that Apple infringes with respect to proving the claim element 'mobile device information' and their expert says the reason they do is it includes some bucket that you feel is inappropriate based on the specification, I'll take that up as a matter of law down the road either in a Daubert challenge where you tell me that that's not permissible or in a motion for summary judgment where you can articulate -- where you can articulate why in the specification it should not be included."). Likewise, if a party argues that a particular piece of information is not mobile device information when specification clearly recites that it is, *e.g.*, International Mobile Equipment Identity (IMEI) / Mobile Equipment Identifier (MEID) ('125 Patent at 6:53-56), that is also a question that should be raised in a summary judgment or *Daubert* motion.

For the reasons stated above, the Court finds that "mobile device information" should be given its plain-and-ordinary meaning that a person of ordinary skill in the art would ascribe to it.

### F.    "over-the-air (OTA) proxy" (claim 23) and "OTA proxy" (claim 16)

| Fintiv's Proposed Construction | Apple's Proposed Construction |
|---|---|
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "functionality for creating a secure connection." | "mobile device software application for communication between a secure element and a server over a mobile network" |

Fintiv contends that "over-the-air (OTA) proxy" and "OTA proxy" should bear their plain-and-ordinary meanings because a POSITA "would have reasonable certainty about the scope and meaning of the terms from their context in the claims and specification." ECF No. 72 at 15. Fintiv further contends that the plain-and-ordinary meaning of this term is "functionality for creating a secure connection." *Id.*

Apple contends that these terms do not have plain-and-ordinary meaning and that "[w]ithout a construction, the jury will not know what the terms mean." ECF No. 71 at 27. Apple proposes that these terms should be construed as "mobile device software application for communication between a secure element and a server over a mobile network." *Id.* at 25.

The Court has analyzed all recitations of "OTA proxy" and "over-the-air proxy" in the specification and provides the most relevant and informative passages below:

1. 3:40-46: "Exemplary embodiments of the present invention provide a mobile device including . . . an OTA proxy to provision the contactless card applet."
2. 4:52-60: "In step 208, the OTA proxy captures the mobile device information (e.g. International Mobile Equipment Identity (IMEI)/Mobile Equipment Identifier (MEID), Mobile Subscriber Integrated Services Digital Network Number (MSISDN)), including SE information (e.g. Card Production Life Cycle (CPLC), Card Serial Number (CSN), Card Image Number (CIN), Integrated Circuit Card Identification (IC-CID)), which may be stored in a device memory component of the mobile device 100."
3. 4:63-64: "Afterwards, in step 209, the OTA proxy sends the captured SE and mobile device information to the TSM system 120" (*see also* 5:58-62, 9:11-13)
4. 6:34-37: "In response, TSM system 120 transmits the requested mobile wallet application 24 to mobile device 100 for installation and an accompanying over-the-air (OTA) proxy program to allow OTA provisioning in step 206."
5. 7:58-60: "In step 213, the OTA proxy gathers mobile device and SE specific information such as MSISDN and CIN and sends it over to TSM system 120."
6. 7:65-8:4: "Once TSM system 120 receives the information sent by OTA Proxy in step 213, TSM system 120 processes the information and converts the identifying information along with the request to provision WMA 21 container into Application Protocol Data Unit (APDU) commands in step 214 and sends them over to OTA proxy in step 215."
7. 8:5-10: "Next, in step 216, OTA proxy receives the APDU commands to install WMA 21 container and relays them to the SE, which processes the APDU commands

to install the requested WMA 21 container and its associated credentials. SE then responds back with the result of each command request in step 217."

8. 9:21-24: "However, since the widget is provisioned at the application level and not into the SE, the widget may be provisioned through the OTA proxy or through a wireless network."

From the first passage (3:40-46), a POSITA would understand that the OTA proxy provisions contactless card applets.  From the second (4:52-60) and third (4:63-64) passages, a POSITA would understand that the OTA proxy gathers (or "captures") mobile device information, which includes SE information.  From the third and fifth (8:5-10) passages, a POSITA would understand that the OTA proxy transmits data (mobile device and SE specific information) to the TSM system.  From the sixth (7:65-8:4) and seventh (8:5-10) passage, a POSITA would understand that the OTA proxy receives and forwards APDU commands from the TSM system.  Finally, from the fourth (6:34-37) and eight (9:21-24) passages, a POSITA would understand that the OTA proxy is implemented in software.

### i.  Analysis of Fintiv's proposed alternate construction

There is no support in the specification for Fintiv's alternate proposed construction that the OTA proxy "creat[es] a secure connection."  Fintiv cites to several passages (6:34-7:8, 7:51-8:17, 9:6-38) in support of the proposition that the OTA proxy creates a secure connection, but none of those passages provide such support.  Those passages collectively describe that the OTA gathers mobile device and SE information, receives APDU commands to install the requested WMA container, and updates the TSM whether the installation was successful.  But none of these passages implicitly or explicitly describe that the OTA proxy "creates a secure connection."

Rather, a POSITA would generally understand that the OTA proxy does not necessarily set up a connection, let alone a secure one for a few reasons.  First, a POSITA would understand that the OTA proxy does not necessarily create a "secure connection" as another component or

layer may provide the required security guarantees. Second, the '853 Application provides a list of the OTA proxy's capabilities, none of which includes creating a connection, let alone secure one. ECF No. 72, Ex. 5 ('853 Application) at 54-55. Third, the '851 Application describes that the OTA proxy is "optional." ECF No. 72, Ex. 3 ('851 Application) at 20 ("For the purposes of the present disclosure, mobile wallet may include the mobile wallet application 31, widgets residing within the mobile wallet application 31, WMA 21, contactless card Applets 23, and an optional OTA proxy."). Based on this disclosure, a POSITA would conclude that the invention would not use an "optional" component to perform a mission-critical task—creating a secure connection—because without that component, there would not be a secure connection, which means that the user's confidential financial information would be exposed when transmitted.

For at least these reasons, the Court rejects Fintiv's proposed construction.

### ii. Analysis of Apple's proposed alternate construction

Apple's proposed construction suffers from at least four infirmities. First, as was the case for other terms, although the phrase "software application" appears in the specification (*see, e.g.*, '125 Patent at 7:16), "software" is redundant with "application," which may confuse the jury. *Kroy*, 2014 WL 3735222, at *2.

Second, a POSITA would understand that Apple's proposed construction incorrectly potentially limits the operation of the OTA proxy to software only. More specifically, the specification describes that the OTA proxy operates, *inter alia*, as a transceiver. *See, e.g.*, '125 Patent at 4:63-64 ("Afterwards, in step 209, the OTA proxy sends the captured SE and mobile device information to the TSM system 120[.]"); 7:65-8:4 ("Once TSM system 120 receives the information sent by OTA Proxy in step 213, TSM system 120 processes the information and converts the identifying information along with the request to provision WMA 21 container into Application Protocol Data Unit (APDU) commands in step 214 and sends them over to OTA proxy

30

in step 215.").  A POSITA would understand that software cannot wirelessly transmit and receive information without hardware.  Therefore, Apple's proposed construction is incorrect to the extent it limits the operation of the OTA proxy to software only.

Third, Apple's proposed construction incorrectly excludes a preferred embodiment. *Vitronics*, 90 F.3d at 1583 (excluding a preferred embodiment is "rarely, if ever, correct and would require highly persuasive evidentiary support.").  In particular, the above passages describe that an OTA proxy provisions contactless card applets (3:40-46) and gathers mobile device information which includes SE information (4:52-60, 4:63-64).  Apple's proposed construction excludes both of these functionalities.

Fourth, Apple's proposed construction imports a limitation from one of the provisional applications.  *Kara Tech*, 582 F.3d at 1348.  More specifically, Apple's proposed construction recites that the OTA proxy requires that the communication take place "over a mobile network."  Apple cites the '851 Application in support of its construction.  ECF No. 71 at 28 (citing ECF No. 71, Ex. 4 ('852 Application) at 91).  Apple's proposed construction is incorrect because even if communication over a mobile network was the only disclosed embodiment, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  *Liebel-Flarsheim*, 358 F.3d at 913.  Apple has not shown a clear indication to limit the claims to that preferred embodiment.

For at least these reasons, the Court rejects Apple's proposed construction.

### iii.  The Court's construction for "over-the-air (OTA) proxy" and "OTA proxy" and the reasoning therefor

For the reasons described below, the Court construes the Court construes "over-the-air proxy" and "OTA proxy" as "software, in conjunction with relevant hardware, that provisions

contactless card applets, captures mobile device information (including SE information), transmits data (mobile device and SE specific information) to the TSM system, and receives APDU commands from the TSM and appropriately forwards them." Hrg. Tr. at 144:14-22. As was described in the analysis of Apple's proposed construction, a POSITA would understand that the OTA proxy needs to use hardware in order to communicate with the TSM. Accordingly, the Court's construction includes "software, in conjunction with relevant hardware." As was also described above, a POSITA would understand that the OTA proxy (1) provisions contactless card applets ('125 Patent at 3:40-46), (2) gathers mobile device information, which includes SE information (*Id.* at 4:52-60, 4:63-64), (3) transmits data (mobile device and SE specific information) to the TSM system (*Id.* at 4:63-64, 8:5-10), and (4) receives and forwards APDU commands from the TSM system (*Id.* at 7:65-8:4, 8:5-10). The Court's construction encapsulates all of these functions.

For the reasons stated above, the Court construes "over-the-air proxy" and "OTA proxy" as "software, in conjunction with relevant hardware, that provisions contactless card applets, captures mobile device information (including SE information), transmits data (mobile device and SE specific information) to the TSM system, and receives APDU commands from the TSM and appropriately forwards them."

**G. "provision[ing]" (claims 11 and 23)**

| Fintiv's Proposed Construction | Apple's Proposed Construction |
|---|---|
| No construction necessary. Alternatively, the following is provided in the event the Court determines a construction is necessary: "making available for use" | "provid[e/ing] and/or mak[e/ing] available for use" |

Fintiv contends that no construction is necessary because a POSITA "would understand the term 'provision[ing]' in the context of the claims and specification." ECF No. 72 at 17. Fintiv proposes "making available for use" as its alternate construction. *Id.*

Apple contends that the primary dispute between the parties is "whether the Court should construe the terms 'provision' and 'provisioning,' not the meaning of those terms." ECF No. 71 at 30. Apple contends that construction is necessary because "the jury is unlikely to know what it means to 'provision' a contactless card applet, a widget, and a [wallet mobile application]." *Id.* Although Apple proposed "provid[e/ing] and/or mak[e/ing] available for use" as its construction, it offered to stipulate to "mak[e/ing] available for use." *Id.*

The Court determines that "provision[ing]" be given its plain-and-ordinary meaning that a person of ordinary skill in the art would ascribe to it, where the plain-and-ordinary meaning is "mak[e/ing] available for use" for the reasons that follow. Hrg. Tr. at 92:18-93:1. First, for this term, neither of the exceptions to the general rule that plain-and-ordinary meaning applies are present here. *See Thorner*, 669 F.3d at 1365. Second, the Court agrees with Fintiv's argument that this is not a technical term for which a construction would help the jury understand the meaning of the term. *Kroy IP Holdings*, 2014 WL 3735222, at *2. Fintiv cites Apple's literature which uses the word "provisioning" in the context of a mobile wallet. ECF No. 72 at 18 (citing http://developer.apple.com/apple-pay/planning) ("if the device has been provisioned with payment cards that you support."). This document uses "provisioning" in a manner consistent with its plain-and-ordinary meaning that a person of ordinary skill in the art would ascribe to it. That said, because the Parties' agree that the plain-and-ordinary meaning is "mak[e/ing] available for use," the Court adopts that construction. Hrg. Tr. at 92:18-93:1.

33

Therefore, for these reasons stated above, the Court construes "provision[ing]" as plain-and-ordinary meaning and where the plain-and-ordinary meaning is "mak[e/ing] available for use."

## IV.    Conclusion

As described herein, the Court provides the following constructions:

| Term | Court's Construction |
| --- | --- |
| "wallet management applet" | "software that enables management of an electronic wallet including, but not limited to, the functionality of storing account specific information" |
| "widget" | Plain-and-ordinary meaning, where the plain-and-ordinary meaning is "software that is either an application or works with an application, and which may have a user interface." |
| "mobile wallet application" | Plain-and-ordinary meaning |
| "SE information' | "information that is about or related to the SE including, but not limited to, production life cycle, card serial number, card image number, and integrated circuit card identification" |
| "mobile device information" | Plain-and-ordinary meaning |
| "over-the-air (OTA) proxy" and "OTA proxy" | "software, in conjunction with relevant hardware, that provisions contactless card applets, captures mobile device information (including SE information), transmits data (mobile device and SE specific information) to the TSM system, and receives APDU commands from the TSM and appropriately forwards them." |
| "provision[ing]" | Plain-and-ordinary meaning, where the plain and ordinary meaning is "mak[e/ing] available for use." |

**SIGNED** this 27th day of November, 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE



US008843125B2

(12) **United States Patent**

Kwon et al.

(10) **Patent No.:** **US 8,843,125 B2**
(45) **Date of Patent:** **Sep. 23, 2014**

(54) **SYSTEM AND METHOD FOR MANAGING MOBILE WALLET AND ITS RELATED CREDENTIALS**

(75) Inventors: **Yongsung Kwon**, Seongnam-si (KR); **Hyungjoon Hong**, Seoul (KR); **Jiwon Kang**, Seoul (KR); **Hyunjin Kim**, Yongin-si (KR)

(73) Assignee: **SK C&C**, Seongnam, Gyeonggi-Do (KR)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 446 days.

(21) Appl. No.: **13/310,091**

(22) Filed: **Dec. 2, 2011**

(65) **Prior Publication Data**

US 2012/0172026 A1    Jul. 5, 2012

**Related U.S. Application Data**

(60) Provisional application No. 61/428,846, filed on Dec. 30, 2010, provisional application No. 61/428,851, filed on Dec. 30, 2010, provisional application No. 61/428,852, filed on Dec. 30, 2010, provisional application No. 61/428,853, filed on Dec. 30, 2010.

(51) **Int. Cl.**
| | |
|---|---|
| *H04W 4/00* | (2009.01) |
| *H04W 12/04* | (2009.01) |
| *H04L 29/06* | (2006.01) |
| *H04W 12/06* | (2009.01) |

(52) **U.S. Cl.**
CPC .............. *H04W 12/06* (2013.01); *H04W 12/04* (2013.01); *H04L 63/067* (2013.01)
USPC .......................................... **455/419**; 455/410

(58) **Field of Classification Search**
USPC ......... 455/410, 418, 419, 558; 705/16, 39, 41
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,221,838 | A | 6/1993 | Gutman et al. |
| 6,199,762 | B1 | 3/2001 | Hohle |
| 6,480,957 | B1 | 11/2002 | Liao et al. |
| 6,487,403 | B2 | 11/2002 | Carroll |
| 6,950,939 | B2 | 9/2005 | Tobin |
| 7,024,390 | B1 | 4/2006 | Mori et al. |
| 7,065,341 | B2 | 6/2006 | Kamiyama et al. |
| 7,146,159 | B1 | 12/2006 | Zhu |
| 7,149,545 | B2 | 12/2006 | Hurst et al. |
| 7,155,411 | B1 | 12/2006 | Blinn et al. |
| 7,197,297 | B2 | 3/2007 | Myles et al. |

(Continued)

OTHER PUBLICATIONS

GlobalPlatform, Card Specification, Version 2.2, published Mar. 2006.

*Primary Examiner* — Sam Bhattacharya

(74) *Attorney, Agent, or Firm* — Lowe Hauptman & Ham, LLP

(57) **ABSTRACT**

A method for provisioning a contactless card applet in a mobile device with a mobile wallet application, including activating the mobile wallet application, connecting to a Trusted Service Manager (TSM) system, synchronizing the mobile wallet application with the TSM system, displaying a contactless card applet based on attributes of the mobile device, receiving a selection of a contactless card applet, retrieving a widget and a wallet management applet (WMA) corresponding to the contactless card applet, and provisioning the selected contactless card applet, the widget, and the WMA. A wallet management system (WMS) in a non-transitory storage medium to store and manage mobile wallet account information including a wallet client management component, a widget management component, a device profile management component, and a rule engine.

**25 Claims, 5 Drawing Sheets**



**US 8,843,125 B2**

Page 2

(56)        **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 7,233,785 | B2 | 6/2007 | Yamagishi et al. |
| 7,233,926 | B2 | 6/2007 | Durand et al. |
| 7,236,742 | B2 | 6/2007 | Hall et al. |
| 7,286,818 | B2 | 10/2007 | Rosenberg |
| 7,389,123 | B2 | 6/2008 | Rydgren et al. |
| 7,415,721 | B2 | 8/2008 | Fransdonk |
| 7,447,494 | B2 | 11/2008 | Law et al. |
| 7,454,233 | B2 | 11/2008 | Lu et al. |
| 7,469,151 | B2 | 12/2008 | Khan et al. |
| 7,490,775 | B2 | 2/2009 | Biderman |
| 7,527,208 | B2 | 5/2009 | Hammad et al. |
| 7,628,322 | B2 | 12/2009 | Holtmanns et al. |
| 7,689,205 | B2 | 3/2010 | Toy et al. |
| 7,689,508 | B2 | 3/2010 | Davis et al. |
| 7,707,113 | B1 | 4/2010 | DiMartino et al. |
| 7,708,194 | B2 | 5/2010 | Vawter |
| 7,711,392 | B2 | 5/2010 | Brown et al. |
| 7,819,307 | B2 | 10/2010 | Lyons et al. |
| 7,822,439 | B2 | 10/2010 | Teicher |
| 7,822,688 | B2 | 10/2010 | Labrou et al. |
| 2008/0010215 | A1 | 1/2008 | Rackley III et al. |
| 2008/0040265 | A1 | 2/2008 | Rackley III et al. |
| 2008/0208742 | A1 | 8/2008 | Arthur et al. |
| 2009/0124234 | A1 | 5/2009 | Fisher et al. |
| 2009/0307139 | A1 | 12/2009 | Mardikar et al. |
| 2009/0307140 | A1 | 12/2009 | Mardikar |
| 2010/0125495 | A1 | 5/2010 | Smith et al. |
| 2010/0125508 | A1 | 5/2010 | Smith |
| 2010/0138518 | A1 | 6/2010 | Aiglstorfer et al. |
| 2010/0145835 | A1 | 6/2010 | Davis et al. |
| 2010/0205432 | A1 | 8/2010 | Corda et al. |
| 2010/0211507 | A1 | 8/2010 | Aabye et al. |
| 2010/0275242 | A1 | 10/2010 | Raffard et al. |
| 2010/0275269 | A1 | 10/2010 | Vilmos et al. |
| 2010/0291904 | A1 | 11/2010 | Musfeldt et al. |
| 2010/0306107 | A1 | 12/2010 | Nahari |
| 2010/0330958 | A1 | 12/2010 | Corda et al. |
| 2011/0078081 | A1 | 3/2011 | Pirzadeh et al. |
| 2014/0089185 | A1 * | 3/2014 | Desai et al. .................... 705/41 |

* cited by examiner

**Fig. 1**





Fig. 2. Install Wallet Application



Fig. 3. Install Widget (prior SP reg)



**Fig. 4. Dynamic Filtering**



**Fig. 5. Synchronization**

**1**

# SYSTEM AND METHOD FOR MANAGING MOBILE WALLET AND ITS RELATED CREDENTIALS

## CROSS REFERENCE TO RELATED APPLICATION

This application claims priority from and the benefit under 35 U.S.C. §119(a) of U.S. Provisional Patent Application No. 61/428,846, filed on Dec. 30, 2010, which is incorporated by reference for all purposes as if fully set forth herein. Also, the present application is related to U.S. Provisional Patent Application No. 61/428,851 filed on Dec. 30, 2010; U.S. Provisional Patent Application No. 61/428,852, filed on December 30; and U.S. Provisional Patent Application No. 61/428,853, filed on December 30. Applicant hereby incorporates by reference the above-mentioned provisional applications, which are not admitted to be prior art with respect to the present invention by their mention here or in the background section that follows.

## BACKGROUND OF THE INVENTION

1. Field

The following description relates to management of virtual cards stored on mobile devices.

2. Discussion of the Background

With the advent of advancing mobile technology, more features have been integrated into mobile devices. From GPS applications to mobile office products, mobile devices, such as mobile communicative terminals, have practically become a necessity for everyday needs. In order to further utilize mobile technology to better cater to a user's daily requirements, attempts have been made to provide for a mobile financial management system to replace conventional physical wallets. Specifically, this mobile wallet functionality was sought to be realized through provisioning of card issuer's account information directly into a secure element (SE) of the mobile device equipped with Near Field Communication (NFC) chipset. The SE may be a smart card chip capable of storing multiple applications, including of account specific information that may not be easily accessed by external parties. The model mobile wallet application may have the same composition as a conventional wallet, which may contain payment cards, member cards, transportation cards, and loyalty cards.

Further, to make the wallet function more convenient to the owners of the mobile device, a method of providing contactless payment (NFC-based applications) through provisioning account specific information within the secure domain of the mobile device's SE has been provided. More specifically, user financial credentials, such as credit card numbers, may be provisioned onto mobile devices equipped with Near Field Communication chipset (NFC enabled) to make payments. Once the user financial credentials have been provisioned onto the NFC enabled mobile device, the provisioned NFC enabled device may transfer information or make payments to another NFC compatible device by coming near within a few centimeters of one another without physically contacting each other. This type of technology is conventionally referred to as "contactless" technology and a payment made with this technology is referred to as "contactless" payment.

However, regardless of benefits that may be obtained through integrating wallet functionality into mobile device, prevailing technology still lacks an effective means to manage various payment applets residing within the mobile device.

**2**

With the advent of NFC-based contactless payment applications, users were provided a way to select a contactless payment applet (i.e., contactless payment virtual card) from various contactless payment applets stored in the mobile device for payment at corresponding point-of-sale (POS) devices. However, while these contactless payment applets may be selected to make a purchase, the management of payment applets may be limited. For example, a user may be limited to view the contactless payment applets stored in the user's mobile device when interacting with a POS device. Further, even if the user is able to view the various contactless payment applets stored in the mobile device with or without the POS device, the user may be unable to view the details related to the contactless payment applets (e.g., account number, expiration date, security code, balance and the like). Accordingly, users may be unable to effectively manage or keep track of various contactless payment applets stored in their respective mobile devices.

Typically, the contactless card applets may be stored within a specific compartment, or a secured domain, of the SE to be accessed during an interaction with the POS device. Moreover, even when such payment applications are accessed, since these applications are managed through industry standard Payment Procedure Secure Elements (PPSE) that only provide for application identification (ID) and label, a limited generic description may be provided to the user. Accordingly, the user may be unable to view any account specific information stored within the SE or manage such applications with or without the use of POS equipment.

Another limitation of current mobile wallet applications is the lack of support providing for such technology. With such focus on mobile commerce, many competing service providers seek delivering their services to the users. However, such services may be offered to the users without regard to the mobile device capabilities or mobile service providers utilized by the user. Due to technical or business compatibility, there may be numerous applications that may be inapplicable to the user's individual attributes (e.g., bank membership, mobile service provider, manufacturer of a mobile device owned by the user, type of secure element installed in the mobile device, operating system of the mobile device, and the like). Accordingly, users may often be bombarded with various applications that may be inapplicable to the user, making the process more difficult than necessary.

Another issue with the current mobile wallet application is its ability to update its information. As various service providers operate independently from one another, when an update is required by a particular service provider, each individual application is typically updated separately. Such inefficiency may dissuade users from obtaining crucial updates that may be necessary to a particular application.

## SUMMARY

Exemplary embodiments of the present invention provide a mobile device to store a mobile wallet application and a wallet management system (WMS) to store corresponding wallet application information. Exemplary embodiments of the present invention provide a method for provisioning a wallet application, a contactless card applet, a wallet management applet (WMA), and a widget. Exemplary embodiments of the present invention provide a method for synchronizing a mobile wallet application with the WMS.

Additional features of the invention will be set forth in the description which follows, and in part will be apparent from the description, or may be learned by practice of the invention.

US 8,843,125 B2

**3**

Exemplary embodiments of the present invention provide a method for installing a wallet application in a mobile device including requesting, by the mobile device, a mobile wallet application comprising a corresponding Over-the-Air (OTA) proxy; receiving mobile wallet application installation information; installing the mobile wallet application in the mobile device; capturing mobile device information by using the OTA proxy, the mobile device information comprising secure element (SE) information; and transmitting the mobile device information for registering the installed mobile wallet application.

Exemplary embodiments of the present invention provide a method for managing mobile wallet accounts installed on a mobile devices including receiving a request for a mobile wallet application from a mobile device; transmitting the mobile wallet application to the mobile device; receiving mobile device information, the mobile device information comprising SE information; and registering the mobile device and the corresponding mobile wallet application in a trusted service manager (TSM).

Exemplary embodiments of the present invention provide method for provisioning a contactless card applet in a mobile device comprising a mobile wallet application including activating the mobile wallet application; connecting to a TSM system; synchronizing the mobile wallet application with the TSM system; displaying a contactless card applet based on attributes of the mobile device; receiving a selection of a contactless card applet; retrieving a widget and a WMA corresponding to the contactless card applet; and provisioning the selected contactless card applet, widget, and the WMA.

Exemplary embodiments of the present invention provide a WMS in a non-transitory storage medium to store and manage mobile wallet account information including a wallet client management component to store and to manage a mobile wallet application; a widget management component to store and to manage widgets; a device profile management component to store mobile device information; and a rule engine to filter a widget based on the mobile device information.

Exemplary embodiments of the present invention provide a mobile device including a SE; a mobile wallet application to store a widget corresponding to a contactless card applet, wherein the contactless card applet is stored in the SE; a WMA corresponding to the contactless card applet, wherein WMA is stored in the SE; and an OTA proxy to provision the contactless card applet, a widget corresponding to the contactless card applet, and the WMA.

It is to be understood that both foregoing general descriptions and the following detailed description are exemplary and explanatory and are intended to provide further explanation of the invention as claimed. Other features and aspects will be apparent from the following detailed description, the drawings, and the claims.

BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are included to provide a further understanding of the invention and are incorporated in and constitute a part of this specification, illustrate embodiments of the invention, and together with the description serve to explain the principles of the invention.

FIG. **1** is a system diagram of a mobile wallet application and associated integration in accordance with an exemplary embodiment of the present invention.

FIG. **2** is a system diagram illustrating a system and method for provisioning mobile card wallet management application along with supporting applications, mobile card

**4**

widgets, contactless card applets, and related credentials in accordance with an exemplary embodiment of the present invention.

FIG. **3** is a system diagram illustrating a system and method for provisioning service provider specific mobile card widgets, contactless card applets, and wallet management application account information in accordance with an exemplary embodiment of the present invention.

FIG. **4** is a system diagram illustrating a system and method for dynamically filtering applicable mobile wallet service provider specific widgets based upon user account attributes in accordance with an exemplary embodiment of the present invention.

FIG. **5** is a system diagram illustrating a system and method for synchronizing mobile wallet application with the master mobile wallet configuration server to provide a most current version of the mobile wallet application in accordance with an exemplary embodiment of the present invention.

DETAILED DESCRIPTION OF THE
ILLUSTRATED EMBODIMENTS

The invention is described more fully hereinafter with references to the accompanying drawings, in which exemplary embodiments of the invention are shown. This invention may, however, be embodied in many different forms and should not be construed as limited to the embodiments set forth herein. Rather, these exemplary embodiments are provided so that this disclosure is thorough, and will fully convey the scope of the invention to those skilled in the art. It will be understood that for the purposes of this disclosure, "at least one of each" will be interpreted to mean any combination the enumerated elements following the respective language, including combination of multiples of the enumerated elements. For example, "at least one of X, Y, and Z" will be construed to mean X only, Y only, Z only, or any combination of two or more items X, Y, and Z (e.g. XYZ, XZ, YZ). Throughout the drawings and the detailed description, unless otherwise described, the same drawing reference numerals are understood to refer to the same elements, features, and structures. The relative size and depiction of these elements may be exaggerated for clarity, illustration, and convenience.

FIG. **1** is a system diagram of a mobile wallet system and associated integration, according to an exemplary embodiment of the present invention.

As shown in FIG. **1**, an example system utilizing mobile wallet technology may include a mobile device **100**, mobile wallet management system (WMS) **110**, supporting Trusted Service Manager (TSM) system **120**, Mobile Network Operator (MNO) **130**, and Service Provider (SP) **140**.

WMS **110** includes a wallet client management component **111**, widget management component **112**, device profile management component **113**, user profile management component **114**, data management component **115**, and rule engine **116**.

In particular, wallet client management component **111** is responsible for the wallet application itself (referred as the container), which may house the individual widgets (e.g., applications stored at the application level related to a financial institution, transportation account, and the like). The wallet client management component **111** may store container specific information, including the type of wallet application and manufacturer. For example, wallet client management component **111** may recognize a user John has a mobile wallet application manufactured by Google® and has specified set of known functionalities. By managing the type of

US 8,843,125 B2

**7**

The WMS **110**, upon receipt of the information provided by the OTA proxy, creates a Mobile identification (ID) for the installed mobile wallet application **24** in step **210**. Once the mobile ID has been created, the WMS **110** requests TSM system **120** to provision a corresponding wallet management applet (WMA) **21** with the following information via OTA proxy: CPLC or CSN, CIN, Mobile ID and WMA personalization data. In an example, WMA **21** may include both a WMA **21** container and one or more WMA **21** applets. WMA **21** container may manage the information stored in the WMA **21** applets. WMA **21** container may be installed in the mobile device **100** when WMA **21** applet is requested to be installed, or when the mobile wallet application is installed, or separately without regard to either the WMA **21** applet or the mobile wallet application.

The WMA **21** container is a software application that may reside within the SE of the mobile device **100** to manage account information related to the contactless card applet **23** (i.e. WMA **21** applet) that may be typically inaccessible by the user. In an example, the SE may store one or more contactless card applets that may be used through a mobile device **100** with NFC capability, but the contactless card applets may largely be inaccessible by the user. More specifically, during a financial transaction, the NFC enabled mobile device may transmit contactless card information, which may include account specific information to a POS device to complete the transaction. However, even during this transaction, the user is typically limited to the selection of a generic logo corresponding to the contactless card applet being used in the transaction, but no account specific information may accessed by the user of the mobile device **100**. In an example, account specific information may include credit card number, expiration date, security code (e.g., a combination of numbers typically found on back of credit cards), personal identification number (PIN) (e.g., a combination of numbers typically used to conduct financial transactions with the user's financial institution), and other related information.

To provide the user of the mobile device with the account specific information related to contactless card applets, separate account information associated with the corresponding contactless card applet **23** (e.g. credit card number, expiration date, security code, PIN, etc.) may be provisioned into the SE as WMA **21** applets. The respective account information or WMA **21** applet may be provided by duplicating the account information associated with the contactless card when the TSM receives contactless card applets from SPs to provision into the mobile device **100**. Alternatively, SP providing the contactless card applet may provide the account related information separately to the TSM system for provisioning.

In step **211**, TSM system **120** sends a wake up message to the mobile push server (e.g. Cloud to Device Messaging (C2DM)) with a mobile device identifier to wake up OTA proxy residing in the requesting mobile device **100**.

The mobile push server routes the received message to the mobile wallet application **24**, which in turn sends the request to OTA proxy and wakes OTA proxy in step **212**.

In step **213**, the OTA proxy gathers mobile device and SE specific information such as MSISDN and CIN and sends it over to TSM system **120**. In an example, OTA proxy gathers mobile device and SE specific information to send to TSM system **120** every time it is woken up. Alternatively, this step may be skipped and the mobile device and SE information provided in step **209** to register the mobile device **100** and the wallet application may be used.

Once TSM system **120** receives the information sent by OTA Proxy in step **213**, TSM system **120** processes the infor-

**8**

mation and converts the identifying information along with the request to provision WMA **21** container into Application Protocol Data Unit (APDU) commands in step **214** and sends them over to OTA proxy in step **215**.

Next, in step **216**, OTA proxy receives the APDU commands to install WMA **21** container and relays them to the SE, which processes the APDU commands to install the requested WMA **21** container and its associated credentials. SE then responds back with the result of each command request in step **217**. Although WMA **21** container, PPSE **22**, and Contactless Card Applet **23** are shown as being part of mobile device **100**, an ordinarily skilled artisan understands that these elements may not be present on the SE of the mobile device **100** until they are installed.

Subsequently, OTA Proxy relays the result back to the TSM system **120** in step **218**, and the TSM system **120** updates its system with the result.

Once the mobile wallet application **24** has been successfully installed in the mobile device **100**, the user may provision SP **140** specific contactless card applets **23**, and its corresponding widget applications and WMA **21** applet onto mobile device **100**.

FIG. **3** is a system diagram illustrating a method for installing a mobile widget into the mobile wallet application **24** and its corresponding contactless card applet and account information into the SE of the requesting mobile device in accordance with an exemplary embodiment of the present invention.

In step **301**, the user logs into the mobile wallet application **24** to start the mobile wallet application **24** for use. Once started, the mobile wallet application **24** connects to the TSM system **120**, which may house WMS **110**, for synchronization in step **302**. A more detailed description of how this synchronization process operates is provided below with reference to FIG. **5**.

TSM system **120** checks for any updated information made by external parties (e.g. SP **140**, user by web access, TSM system **120** administrator, and/or etc.) and sends the list of waiting updates to the mobile wallet application **24** in step **303**. Further, additional applications that user may be interested in may be displayed for download through dynamic filtering. The applicable applications based on user attributes will be displayed through this filtering process. A more detailed description of how this dynamic filtering works is provided below with reference to FIG. **4**.

The mobile device user is prompted to decide whether to update the mobile wallet application **24** with the changes made at the TSM system **120**, if any, in step **304**. Alternatively, the mobile device may update the mobile wallet application **24** automatically with the respective changes in step **304**.

When the mobile device **100** updates the mobile wallet application **24** or downloads a new application, a request is made to the TSM system **120**/WMS **110** to provision the updates and/or selected card applications in step **305**. If a request to update requires updating of account specific information, such as change in account number or expiration date, the process to update the application will follow the same steps regardless of the information being updated.

Further, if a request to provision the selected contactless card applet **23** is made, such as a "VISA®" contactless card applet, a corresponding widget and WMA **21** applet may be programmed to be provisioned automatically. The corresponding widget may reside in the mobile wallet application **24**, at the application level, to provide an interface to the user. The corresponding WMA **21** applet, which may include account specific information of the contactless card apple

US 8,843,125 B2

**9**

(e.g. credit card number, expiration date, security code, PIN, etc.), may be provisioned into the SE. By installing both the WMA **21** applet and the widget, the user may view and manage the information stored in the WMA **21** applet through the corresponding widget.

TSM system **120** processes the provisioning request and sends a wake up message request to the mobile push server in step **306**, and the push server proceeds to relay the request the mobile wallet application **24**, which in turn sends the message to OTA proxy, thereby waking OTA proxy in step **307**.

In step **308**, OTA proxy wakes up and gathers mobile device and SE specific information, such as MSISDN and CIN, and sends the collected information to TSM system **120**.

Once TSM system **120** receives the information sent by OTA Proxy, TSM system **120** processes the received information along with the provisioning command and converts both the received information along with the provisioning command into APDU commands to send to OTA proxy in step **309**. When sending the APDU commands, the contactless card applet and the corresponding WMA **21** applet are sent to OTA proxy for provisioning into the SE. However, since the widget is provisioned at the application level and not into the SE, the widget may be provisioned through the OTA proxy or through a wireless network.

Next, in step **310**, OTA proxy receives the APDU commands from the TSM system **120** to install requested issuer contactless applets **23** and correlating WMA **21** applet to be provisioned. In an example, contactless applets **23** and correlating WMA **21** applet are provided in different domains of the same SE. In response, SE processes the APDU commands for both the contactless applet and the WMA **21** applet and sends back the result of each command request in step **311**. As APDU commands may be processed one at a time, multiple communications may be passed back and forth between the OTA proxy and the SE.

Subsequently, OTA Proxy relays the result back to the TSM system **120** in step **312**, and the TSM system **120** updates its system with the result of the request in step **313**. Once information is updated, notification of the results is sent to SP **140** in step **314**. Similarly, the mobile wallet application **24** notifies TSM system **120** of the result of the widget installation. For example, the mobile wallet application **24** will notify the TSM system **120** whether the widget installation was a success or a failure.

Once account specific information is installed into WMA **21** container as WMA **21** applet, the respective mobile device **100** may access the information periodically for required updates. For example, the mobile device **100** may access the information stored in the WMA **21** applet using the mobile wallet application **24** to check for the expiration dates of the contactless card applets **23** stored within the mobile device **100** and prompt user for updates as necessary. Alternatively, the mobile wallet application **24** may check for updates automatically. In addition, the user may also gain access to the account number, security code, and corresponding expiration date as necessary to make purchases online for further utility. In an example, the information stored in the WMA **21** applet may allow the mobile device **100** to check the expiration date of the contactless card applet **23** and request update when the card applet expires.

WMA **21** container may, however, limit amount of change requests to the WMA **21** applet as they contain account specific information. For example, the number of times expiration date may be changed with a reference time period may be limited, or changes to the credit card numbers may be prohibited. In addition, WMA **21** container may prevent user from making changes directly in the WMA **21** applet but

**10**

allow request for modification to the TSM system **120**, which in turn will make the request to the relevant external parties. While the described process illustrates a preferred embodiment of the present invention, the amount of modification allowed by the WMA **21** container is not limited to what has been described. In some instances, WMA **21** container may allow direct modification to the account specific information as dictated by business needs.

FIG. **4** is a system diagram illustrating a method for dynamically filtering a list of mobile widget applications that are available for installation based upon corresponding mobile device attributes in accordance with an exemplary embodiment of the present invention.

In step **401**, the user logs into the mobile wallet application **24**, which seeks to connect with the TSM system **120**/WMS **110**.

The TSM system **120** receives the connection request through a mobile gateway residing within the TSM system **120** and relays the request to a Rule Engine in TSM system **120** in step **402**. The TSM system **120** queries the user account in its system in step **403** for equipment information, MNO, SP accounts, and any other relevant information. Based on the mobile device **100** attributes, a filtered list of downloadable applications from the TSM system **120** may be displayed to the mobile device. In an example, mobile device **100** attributes may include, without limitation, the mobile network provider of the mobile device **100** (e.g. "Sprint®," "Verizon®", "AT&T®", etc.), financial institutions associated with the contactless card applets stored (e.g. "Wachovia®," "Bank of America®," "Chase®", etc.), mobile device **100** manufacturer (e.g. "HTC®", "Motorola®", "Apple®", etc.), and mobile device **100** hardware specifications (i.e. hardware, software, operating system, etc.).

Here, TSM system **120** may house a large list of available applications, including contactless card applets **23**, as illustrated in FIG. **4**. TSM system **120** may house various applications without regard to the device capabilities, SPs' relationship with other SPs, or other limitations that may be inherent in the business or technical environments. However, as an individual user connects with the TSM system **120** to download new applications, TSM system **120** may dynamically filter the list of available applications based upon the mobile device attributes described above.

As many mobile devices operate with various operating systems and standards, not all of the applets provided by the SP may be compatible with the user mobile device or user's MNO. Because of lack of standardization of hardware and software on mobile devices, an efficient method to filter only the relevant applets is helpful. Along with these technical limitations, many MNOs and SPs may decide not to provide their services to each other for business reasons. As the general public may not be familiar with such knowledge, an additional filtering mechanism may be provided to provide only the applicable applets to the requesting user. In an example, all of the provided limitations may be managed and applied by the Rule Engine in the TSM system **120**. The Rule Engine may be housed in the TSM system **120** or may exist as an external entity, which interacts with TSM system **120** through a network. Further, the Rule Engine may be a combination of software and hardware, software to apply and manage the rules and hardware to store the relevant rules. Accordingly, by providing an active dynamic filtering mechanism at the TSM system **120** level, all of the parties involved in such transaction need make only a general request to the TSM system **120** to access and to provide customer specific services.

US 8,843,125 B2

**11**

Once the list of applicable applets have been dynamically filtered, TSM system **120** sends the list of applets to display to the mobile gateway in step **404**, which relays it back to the mobile wallet application **24** in step **405**.

In FIG. **5**, a system diagram is provided for synchronizing the mobile wallet application residing within the mobile device with the TSM system in accordance with an exemplary embodiment of the present invention. As with many electronic devices that may be prone to damage and wear, or often misplaced, a centralized management or storage may be beneficial to maintain a master file of the user wallet configuration.

In step **501**, multiple external parties, such as credit card service providers as illustrated in FIG. **5**, may send a request for changes to be made to the user's mobile wallet configuration directly to the TSM system **120**/WMS **110**, which may store the master configuration of the respective mobile wallet application **24**. In addition, TSM system **120** administrators and the user themselves may access the TSM system **120** via web access or any other remote access functionality. As the mobile wallet application **24** may not always be on, a central repository allows external parties to make the necessary requests without regard to user's mobile wallet application **24**'s operating status. For example, SPs **140** may request an additional contactless card applet **23** to be provisioned to the user's SE on their own time without regard to the mobile wallet application **24**'s operating status. Similarly, TSM system **120** itself may recognize that the expiration date of the respective application is coming up and prompt the user to update the card for provisioning when the mobile wallet application **24** connects to the system.

While only TSM system **120** administrator, SP **140**, and the user were displayed, the requesting party may be any external party to the TSM system **120**.

Subsequently, in step **502**, when the user logs into the mobile wallet application **24**, the mobile wallet application **24** checks with the TSM system **120**/WMS **110** for any modifications to the wallet configuration since the last login by the user. As the mobile wallet application **24** synchronizes every time the application is logged into, the user can be sure that the user has access to the most current information during use. In addition, by limiting synchronization events to access of mobile wallet application **24**, secure access to sensitive information is provided only when the user is utilizing the mobile wallet application **24**. However, if desired, mobile wallet application **24** may always be in sync by automatically whenever mobile device is on and has mobile signal.

Any updates made in the WMS **110** while mobile wallet application **24** was offline will be prompted for the user to make the updates in step **503**. User may update one application at a time or all at once if such is desired. Also, the user may set the application to automatically update every change made in the TSM system **120**/WMS **110** at synchronization.

In step **504**, while mobile wallet application **24** is still active, any modifications that are made in the mobile wallet application **24** itself will be updated in the WMS **110** in step **505** as synchronization is a continuous one during usage. For example, if the user changes a user preference on the mobile wallet application **24**, changes to the user preference may be updated into the WMS **110** in real time. Similarly, if the mobile device **110** prompts the user to update the expiration date of the contactless applet and the user agrees, user's request will be submitted to TSM system **120**, which will process the request and route it to SP **140** for processing.

It will be apparent to those skilled in the art that various modifications and variation can be made in the present invention without departing from the spirit or scope of the inven-

**12**

tion. Thus, it is intended that the present invention cover the modifications and variations of this invention provided they come within the scope of the appended claims and their equivalents.

What is claimed is:

**1**. A method for installing a wallet application in a mobile device, comprising:

requesting, by the mobile device, a mobile wallet application comprising a corresponding Over-the-Air (OTA) proxy;

receiving mobile wallet application installation information;

installing the mobile wallet application in the mobile device;

capturing mobile device information by using the OTA proxy, the mobile device information comprising secure element (SE) information; and

transmitting the mobile device information for registering the installed mobile wallet application.

**2**. The method of claim **1**, wherein installing the mobile wallet application in the mobile device comprises automatically installing upon receipt of the mobile wallet application installation information.

**3**. The method of claim **1**, further comprising provisioning a wallet management applet (WMA) container into the SE of the mobile device.

**4**. The method of claim **1**, wherein receiving mobile wallet application installation information comprises:

receiving a Wireless Application Protocol (WAP) message with an embedded Uniform Resource Locator (URL) from a Short Message Service (SMS) platform.

**5**. The method of claim **1**, wherein capturing mobile device information comprises:

capturing at least one of an International Mobile Equipment Identity (IMEI), a Mobile Equipment Identifier (MEID), a Mobile Subscriber Integrated Services Digital Network Number (MSISDN), a Card Production Life Cycle (CPLC), a Card Serial Number (CSN), a Card Image Number (CIN), and an Integrated Circuit Card Identification (ICCID).

**6**. The method of claim **3**, wherein provisioning a WMA container into the SE comprises:

transmitting a request to provision the WMA container; and

receiving the WMA container installation information in Application Protocol Data Unit (APDU) commands; and

provisioning the converted APDU commands to the SE.

**7**. A method for managing mobile wallet accounts installed on mobile devices, comprising:

receiving a request for a mobile wallet application from a mobile device;

transmitting the mobile wallet application to the mobile device;

receiving mobile device information, the mobile device information comprising secure element (SE) information; and

registering the mobile device and the corresponding mobile wallet application in a trusted service manager (TSM).

**8**. The method of claim **7**, wherein registering the mobile device and the corresponding mobile wallet application in a TSM comprises:

checking for registered account information corresponding to the requesting mobile device in the TSM system; and

registering the mobile device in the TSM system in response to no corresponding registered account infor-

US 8,843,125 B2

**13**

mation being found in the TSM system, or updating account information in response to finding the corresponding registered account information in the TSM system.

**9**. The method of claim **7**, further comprising transmitting an accompanying over-the-air (OTA) proxy application to the mobile device.

**10**. The method of claim **8**, wherein registering the mobile device comprises:

creating a mobile identifier for the installed mobile wallet application;

storing the mobile device information; and

connecting the mobile device information with the mobile identifier.

**11**. A method for provisioning a contactless card applet in a mobile device comprising a mobile wallet application, the method comprising:

activating the mobile wallet application;

connecting to a Trusted Service Manager (TSM) system;

synchronizing the mobile wallet application with the TSM system;

displaying a contactless card applet based on attributes of the mobile device;

receiving a selection of a contactless card applet;

retrieving a widget and a wallet management applet (WMA) corresponding to the contactless card applet; and

provisioning the selected contactless card applet, the widget, and the WMA.

**12**. The method of claim **11**, wherein synchronizing the mobile wallet application with the TSM system comprises:

receiving a change made to a mobile wallet application user account on the TSM system; and

provisioning the changed information.

**13**. The method of claim **11**, wherein synchronizing the mobile wallet application with the TSM system comprises:

checking for a change made to a configuration of the mobile wallet application; and

transmitting the change to the TSM system.

**14**. The method of claim **11**, wherein displaying a contactless card applet based on attributes of the mobile device comprises:

retrieving mobile device information comprising SE information;

transmitting the mobile device information; and

receiving filtered contactless card applet for provisioning, wherein the contactless card applet is filtered based on the mobile device information.

**15**. The method of claim **14**, wherein displaying the contactless card applet further comprises:

receiving filtered contactless card applet for provisioning, wherein the contactless card applet is filtered based on the business rules.

**16**. The method of claim **11**, wherein provisioning the selected contactless card applet, WMA and widget comprises:

transmitting a request for installation of the contactless applet and the corresponding widget and WMA to be installed, wherein the WMA is a software application configured to store account specific information and the widget is an application configured to interface with a user of the mobile device; and

**14**

receiving the contactless applet, the WMA, and the widget information through OTA proxy.

**17**. The method of claim **16**, wherein account specific information comprises at least one of a payment card number, a security code, an expiration date, and a personal identification number (PIN).

**18**. A wallet management system (WMS) in a non-transitory storage medium to store and manage mobile wallet account information, comprising:

a wallet client management component configured to store and to manage a mobile wallet application;

a widget management component configured to store and to manage widgets;

a device profile management component configured to store mobile device information; and

a rule engine configured to filter a widget based on the mobile device information,

wherein said wallet management system is configured to receive the mobile device information from a mobile device and store the mobile device information in the device profile management component, and

wherein said wallet management system is configured to register the mobile device and the mobile wallet application in a Trusted Service Manager (TSM) system.

**19**. The WMS of claim **18**, wherein the wallet client management component further stores wallet application specific information comprising at least wallet application type and wallet application manufacturer information.

**20**. The WMS of claim **18**, wherein the mobile device information comprises at least one of a mobile device type, a supporting Operating System (OS), a mobile service provider, a mobile device manufacturer, and a secure element (SE) type.

**21**. The WMS of claim **18**, further comprising a user profile management component to capture and manage user identifying information.

**22**. The WMS of claim **18**, wherein the WMS is hosted on the TSM system.

**23**. A mobile device, comprising:

a secure element (SE);

a mobile wallet application configured to store a widget corresponding to a contactless card applet, wherein the contactless card applet is stored in the SE;

a wallet management applet (WMA) corresponding to the contactless card applet, wherein the WMA is stored in the SE; and

an over-the-air (OTA) proxy configured to provision the contactless card applet, a widget corresponding to the contactless card applet, and the WMA,

wherein said OTA proxy is configured to capture mobile device information comprising SE information; and

wherein said OTA proxy is configured to transmit the mobile device information for registering the mobile wallet application.

**24**. The mobile device of claim **23**, wherein WMA is configured to store account information associated with the contactless card applet, and the widget is configured to include a user interface.

**25**. The mobile device of claim **24**, wherein the account information comprises at least one of a card number to access financial information, a security code, a personal identification number (PIN), and an expiration date.

\* \* \* \* \*

APPEAL,DH,PATENT

# U.S. District Court [LIVE]
# Western District of Texas (Austin)
# CIVIL DOCKET FOR CASE #: 1:21−cv−00896−ADA

Fintiv, Inc. v. Apple Inc.
Assigned to: Judge Alan D Albright
Related Cases:  6:18−cv−00372−ADA
                1:21−cv−00044−ADA
                6:21−cv−00926−ADA
Case in other court:  USCA Federal Court, 21−000187
Cause: 35:271 Patent Infringement

Date Filed: 12/21/2018
Date Terminated: 06/29/2023
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

## Plaintiff

**Fintiv, Inc.**

represented by **Daniel C. Miller**
Hall Booth Smith, P.C.
366 Madision Ave
5th Floor
New York, NY 10017
917.805.2460
Email: dmiller@hallboothsmith.com
*TERMINATED: 05/07/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Darcy L. Jones**
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
650−453−5418
Fax: 650.453.5171
Email: djones@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**George Philip Cowden**
The Cowden Law Firm, PLLC
110 N. College Ave.
Suite 1010
Tyler, TX 75702
903.201.3650
Fax: 903.201.3651
Email: george@cowdenlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gurtej Singh**
Hogan Lovells US LLP
855 Main Street
Ste. 200


A true copy of the original, I certify.
Clerk, U.S. District Court
By_____ L Diaz
July 24, 2023    Deputy

1

Redwood City, CA 94025
650−463−4152
Fax: 650−463−4199
Email: tej.singh@hoganlovells.com
*TERMINATED: 08/14/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Heather S. Kim**
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA 94065
650.453.5170
Fax: 650.453.5171
Email: hkim@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack Shaw**
Procopio Cory Hargreaves & Savitch LLP
3000 El Camino Real, Suite 5−400
Palo Alto, CA 94306
650−645−9000
Fax: 650−687−8300
Email: jack.shaw@procopio.com
*TERMINATED: 12/10/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John W. Downing**
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
650−453−5426
Fax: 650.453.5171
Email: jdowning@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Waldrop**
Kasowitz Benson Torres, LLP
333 Twin Dolphine Drive, Suite 200
Redwood Shores, CA 94065
650−453−5425
Fax: 650.453.5171
Email: jwaldrop@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Julianne Laporte**
Kasowitz Benson Torres LLP

2

1633 Broadway
New York, NY 10019
212−506−1700
Email: jlaporte@kasowitz.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Justin Wayne Allen**
Cherry Johnson Siegmund James, PLLC
400 Austin Ave.
Waco, TX 76701
254−732−2242
Fax: 866−627−3509
Email: jallen@cjsjlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc E. Kasowitz**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
212−506−1700
Email: mkasowitz@kasowitz.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marcus A. Barber**
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
650−453−5413
Fax: 650.453.5171
Email: mbarber@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul G. Williams**
Kasowitz Benson Torres LLP
1230 Peachtree Street, NE, Suite 2445
Atlanta, GA 30309
404−260−6102
Fax: 404−393−9752
Email: pwilliams@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rodney R. Miller**
Womble Bond Dickinson (US) LLP
Suite 2400
271 17th Street, NW

3

Atlanta, GA 30363
404−879−2435
Email: rodney.miller@wbd−us.com
*TERMINATED: 05/07/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shelley Ivan**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
(212) 506−1700
Fax: (212) 506−1800
Email: sivan@kasowitz.com
*TERMINATED: 11/17/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ThucMinh Nguyen**
Kasowitz Benson Torres LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
650−453−5420
Fax: 650−362−9302
Email: tnguyen@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Trevor J. Welch**
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
212−835−5067
Fax: 212−835−5067
Email: twelch@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andy W. Tindel**
Mann, Tindel & Thompson, Attorneys at
Law
112 East Line Street
Suite 304
Tyler, TX 75702
(903) 596−0900
Fax: (903) 596−0909
Email: atindel@andytindel.com
*TERMINATED: 04/09/2021*
*ATTORNEY TO BE NOTICED*

**Chen Jia**
Kasowitz Benson Torres LLP

4

333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
(650) 453−5170
Fax: (650) 453−5171
Email: cjia@kasowitz.com
*ATTORNEY TO BE NOTICED*

**Craig D. Cherry**
Cherry Johnson Siegmund James, PLLC
400 Austin Ave.
Ste 9th Floor
Waco, TX 76701
254−732−2242
Fax: 866−627−3509
Email: ccherry@cjsjlaw.com
*ATTORNEY TO BE NOTICED*

**G. Blake Thompson**
Mann, Tindel, Thompson
112 E. Line Street
Suite 304
Tyler, TX 75702
903−657−8540
Fax: 903−657−6003
Email: blake@themannfirm.com
*TERMINATED: 04/09/2021*
*ATTORNEY TO BE NOTICED*

**Raymond W Mort , III**
The Mort Law Firm, PLLC
501 Congress Ave, Suite 150
Austin, TX 78701
512−865−7950
Fax: 512−865−7950
Email: raymort@austinlaw.com
*ATTORNEY TO BE NOTICED*

**J. Mark Mann**
Mann Tindel Thompson
201 E. Howard Street
Henderson, TX 75654
903/657−8540
Fax: 903/657−6003
Email: mark@themannfirm.com
*TERMINATED: 04/09/2021*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Apple Inc.**                          represented by

5

Appx00103

**Claudia Wilson Frost**
Orrick, Herrington & Sutcliffe LLP
609 Main, 40th Floor
Houston, TX 77002
713−658−6460
Fax: 713−658−6401
Email: cfrost@orrick.com
*TERMINATED: 06/10/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin P. Gibson**
DLA Piper LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121−2133
858−677−1400
Fax: 858−677−1401
Email: erin.gibson@us.dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jessica Hannah**
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
415−836−2570
Fax: 415−659−7370
Email: jessica.hannah@us.dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Michael Guaragna**
DLA Piper LLP (US)
303 Colorado Street
Suite 3000
Austin, TX 78701
(512) 457−7125
Fax: 512/457−7001
Email: john.guaragna@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John R. Johnson**
Kelly Hart & Hallman LLP
303 Colorado, Suite 2000
Austin, TX 78701
512−495−6438
Email: jr.johnson@kellyhart.com
*TERMINATED: 03/16/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark D. Fowler**
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, CA 94303−2214
(650) 833−2000
Fax: (650) 833−2001
Email: mark.fowler@us.dlapiper.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul R. Steadman**
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
(312) 368−4000
Fax: (312) 236−7516
Email: paul.steadman@dlapiper.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Maggiore**
DLA Piper LLP (US)
4365 Executive Dr., Suite 1100
San Diego, CA 92121
(619) 699−2700
Fax: (619) 699−2701
Email: peter.maggiore@us.dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean C. Cunningham**
DLA Piper LLP (US)
4365 Executive Drive, Ste 1100
San Diego, CA 92121
858−677−1400
Fax: 858−677−1401
Email: sean.cunningham@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephanie Lim**
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
(312) 368−4000
Fax: (312) 236−7516
Email: stephanie.lim@us.dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Appx00105

**Travis Jensen**
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025−1015
650−614−7458
Fax: 650−614−7401
Email: tjensen@orrick.com
*TERMINATED: 06/10/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tyler S. Miller**
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
(212) 506−5000
Fax: (212) 506−5151
Email: tmiller@orrick.com
*TERMINATED: 06/10/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Loney**
DLA Piper LLP (US)
303 Colorado Street, Suite 3000
Austin, TX 78701
(512) 457−7203
Fax: (512) 721−2283
Email: zachary.loney@us.dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harry Lee Gillam , Jr**
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
903−934−8450
Fax: 903−934−9257
Email: gil@gillamsmithlaw.com
*ATTORNEY TO BE NOTICED*

**J. Stephen Ravel**
Kelly Hart & Hallman LLP
303 Colorado Street
Suite 2000
Austin, TX 78701
(512)495−6429
Fax: 512/495−6610
Email: steve.ravel@kellyhart.com
*ATTORNEY TO BE NOTICED*

**Jeffrey T. Quilici**

8

Orrick, Herrington & Sutcliffe LLP
300 W. 6th St., Suite 1850
Austin, TX 78701
512.582.6916
Email: jquilici@orrick.com
*TERMINATED: 06/10/2021*
*ATTORNEY TO BE NOTICED*

**Movant**

**Wells Fargo Bank, N.A.**                represented by    **Alex C. Wolens**
*TERMINATED: 06/23/2020*                                    Winston & Strawn LLP
                                                            2121 N. Pearl Street, Suite 900
                                                            Dallas, TX 75201
                                                            214−453−6485
                                                            Email: AWolens@winston.com
                                                            *TERMINATED: 06/23/2020*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **E. Danielle T. Williams**
                                                            Winston & Strawn LLP
                                                            300 S. Tryon Street, 16th Floor
                                                            Charlotte, NC 28202
                                                            (704) 350−7790
                                                            Fax: (704) 350−7800
                                                            Email: dwilliams@winston.com
                                                            *TERMINATED: 06/23/2020*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Thomas M. Melsheimer**
                                                            Winston & Strawn LLP
                                                            2121 N. Pearl Street
                                                            Ste. 900
                                                            Dallas, TX 75201
                                                            2144536500
                                                            Fax: 2144536400
                                                            Email: tmelsheimer@winston.com
                                                            *TERMINATED: 06/23/2020*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Movant**

**USAA FSB**                              represented by    **Theodore C. Schultz**
*TERMINATED: 06/23/2020*                                    Lindow Stephens Schultz LLP
                                                            One Riverwalk Place
                                                            700 N. St. Mary's St
                                                            Suite 1700
                                                            San Antonio, TX 78205
                                                            (210) 227−2200
                                                            Fax: (210) 227−4602

Email: tschultz@lstlaw.com
*TERMINATED: 06/23/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/21/2018 | 1 | COMPLAINT *for Patent Infringement* ( Filing fee $ 400 receipt number 0542−11584785), filed by Fintiv, Inc.. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(Mann, J.) (Entered: 12/21/2018) |
| 12/21/2018 | 2 | REQUEST FOR ISSUANCE OF SUMMONS by Fintiv, Inc.. (Mann, J.) (Entered: 12/21/2018) |
| 12/21/2018 |  | Case assigned to Judge Alan D Albright. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (tb) (Entered: 12/21/2018) |
| 12/21/2018 | 3 | Summons Issued as to Apple Inc. (tb) (Entered: 12/21/2018) |
| 12/21/2018 | 4 | Report on Patent/Trademark sent to U.S. Patent and Trademark Office. (lad) (Entered: 12/21/2018) |
| 12/21/2018 | 5 | Report on Patent/Trademark sent to U.S. Patent and Trademark Office. (tb) (Entered: 12/21/2018) |
| 12/31/2018 | 6 | NOTICE of Attorney Appearance by G. Blake Thompson on behalf of Fintiv, Inc. (Thompson, G.) (Entered: 12/31/2018) |
| 01/02/2019 | 7 | RULE 7 DISCLOSURE STATEMENT filed by Fintiv, Inc.. (Mann, J.) (Entered: 01/02/2019) |
| 01/14/2019 | 8 | SUMMONS Returned Executed by Fintiv, Inc.. Apple Inc. served on 1/4/2019, answer due 1/25/2019. (Mann, J.) (Entered: 01/14/2019) |
| 01/14/2019 | 9 | Unopposed MOTION for Extension of Time to File Answer by Apple Inc.. (Attachments: # 1 Proposed Order)(Frost, Claudia) (Entered: 01/14/2019) |
| 01/15/2019 | 10 | MOTION to Appear Pro Hac Vice by Claudia Wilson Frost *[Travis Jensen]* ( Filing fee $ 100 receipt number 0542−11646990) by on behalf of Apple Inc.. (Attachments: # 1 Proposed Order)(Frost, Claudia) (Entered: 01/15/2019) |
| 01/16/2019 | 11 | MOTION for Rodney R. Miller to Appear Pro Hac Vice on behalf of Fintiv, Inc. (klw) (Entered: 01/17/2019) |
| 01/16/2019 | 12 | MOTION for Jonathan K. Waldrop to Appear Pro Hac Vice on behalf of Fintiv, Inc. (klw) (Entered: 01/17/2019) |
| 01/16/2019 | 13 | MOTION for Darcy L. Jones to Appear Pro Hac Vice on behalf of Fintiv, Inc. (klw) (Entered: 01/17/2019) |
| 01/16/2019 | 14 | MOTION for John W. Downing to Appear Pro Hac Vice on behalf of Fintiv, Inc. (klw) (Entered: 01/17/2019) |
| 01/16/2019 | 15 | MOTION for Marcus A. Barber to Appear Pro Hac Vice on behalf of Fintiv, Inc. (klw) (Entered: 01/17/2019) |

| 01/16/2019 | 16 | MOTION for Daniel C. Miller to Appear Pro Hac Vice on behalf of Fintiv, Inc. (klw) (Entered: 01/17/2019) |
|---|---|---|
| 01/16/2019 | 17 | MOTION for Jack Shaw to Appear Pro Hac Vice on behalf of Fintiv, Inc. (klw) (Entered: 01/17/2019) |
| 01/16/2019 | 18 | MOTION for Heather S. Kim to Appear Pro Hac Vice on behalf of Fintiv, Inc. (klw) (Entered: 01/17/2019) |
| 01/16/2019 | 19 | MOTION for Gurtej Singh to Appear Pro Hac Vice on behalf of Fintiv, Inc.(klw) (Entered: 01/17/2019) |
| 01/17/2019 | 20 | Pro Hac Vice Filing fee received in the amount of $100, receipt number 600024221 for Motions to Appear Pro Hac Vice for Jonathan K. Waldrop, Darcy L. Jones, Daniel C. Miller, Marcus A. Barber, John W. Downing, Rodney R. Miller, Heather S. Kim, Jack Shaw and Gurtej Singh. (mc5) (Entered: 01/18/2019) |
| 01/18/2019 | 21 | ORDER GRANTING 9 Motion for Extension of Time to Answer; Apple Inc. answer due 2/25/2019. Signed by Judge Alan D Albright. (lad) (Entered: 01/18/2019) |
| 01/18/2019 | 22 | ORDER GRANTING 10 11 12 13 14 15 16 17 18 19 Motions to Appear Pro Hac Vice. Jonathan K. Waldrop, Rodney R. Miller, Darcy L. Jones, John W. Downing, Marcus A. Barber, Daniel C. Miller, Jack Shaw, Heather S. Kim, Gurtej Singh for Fintiv, Inc., Travis Jensen for Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (lad) (Entered: 01/18/2019) |
| 02/15/2019 | 23 | Unopposed MOTION for Extension of Time to File Answer by Apple Inc.. (Attachments: # 1 Proposed Order)(Frost, Claudia) (Entered: 02/15/2019) |
| 02/19/2019 | | Text Order GRANTING 23 Motion for Extension of Time to Answer entered by Judge Alan D Albright. Came on for consideration Defendant's Motion. Having considered the Motion, the Court finds it meritorious. Accordingly, it is ORDERED that Defendant shall have until March 12, 2019 to answer or otherwise respond to Plaintiff's Complaint. (This is a text−only entry generated by the court. There is no document associated with this entry.) (sb) (Entered: 02/19/2019) |
| 02/19/2019 | | Reset Deadlines: Apple Inc. answer due 3/12/2019. (lad) (Entered: 02/19/2019) |
| 03/12/2019 | 24 | ***WITHDRAWN per Text Order dated 8/2/19*** MOTION to Dismiss by Apple Inc.. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Frost, Claudia) Modified on 8/2/2019 (lad). (Entered: 03/12/2019) |
| 03/12/2019 | 25 | RULE 7 DISCLOSURE STATEMENT filed by Apple Inc.. (Frost, Claudia) (Entered: 03/12/2019) |
| 03/20/2019 | 26 | Unopposed MOTION for Extension of Time to File Response/Reply as to 24 MOTION to Dismiss , Unopposed MOTION for Extension of Time to Amend 1 Complaint by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Mann, J.) (Entered: 03/20/2019) |
| 03/21/2019 | 27 | ORDER GRANTING 26 Motion for Extension of Time to File Response; GRANTING 26 Motion for Extension of Time to Amend. Signed by Judge Alan D Albright. (lad) (Entered: 03/21/2019) |
| 04/09/2019 | 28 | |

11

| | | |
|---|---|---|
| | | AMENDED COMPLAINT against Apple Inc. amending 1 Complaint., filed by Fintiv, Inc.. (Attachments: # 1 Exhibit A−'125 Patent, # 2 Exhibit B−Certificate of Good Standing)(Waldrop, Jonathan) (Entered: 04/09/2019) |
| 04/09/2019 | 29 | Response in Opposition to Motion, filed by Fintiv, Inc., re 24 MOTION to Dismiss filed by Defendant Apple Inc. *Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 17(b), or, Alternatively, Motion For A More Definite Statement Pursuant to Rule 12(e)* (Waldrop, Jonathan) (Entered: 04/09/2019) |
| 04/09/2019 | 30 | AFFIDAVIT in Support of 29 Response in Opposition to Motion, *Declaration of Jonathan K. Waldrop In Support Of Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 17(b), or, Alternatively, Motion For A More Definite Statement Pursuant to Rule 12(e)* by Fintiv, Inc.. (Attachments: # 1 Exhibit A−Certificate of Good Standing)(Waldrop, Jonathan) (Entered: 04/09/2019) |
| 04/23/2019 | 31 | ANSWER to 28 Amended Complaint with Jury Demand by Apple Inc..(Frost, Claudia) (Entered: 04/23/2019) |
| 04/23/2019 | 32 | NOTICE *of Apple's Withdrawal of Its Motion to Dismiss* by Apple Inc. re 24 MOTION to Dismiss (Frost, Claudia) (Entered: 04/23/2019) |
| 04/25/2019 | 33 | NOTICE *of Readiness for Scheduling And/Or Management Conference* by Fintiv, Inc. (Mann, J.) (Entered: 04/25/2019) |
| 04/28/2019 | 34 | ORDER: Telephone Conference set for 5/30/2019 08:30 AM before Judge Alan D Albright. Signed by Judge Alan D Albright. (lad) (Entered: 04/29/2019) |
| 05/28/2019 | 35 | Proposed Scheduling Order *(Joint Motion to Enter Scheduling Order and Order Governing Proceedings)* by Apple Inc.. (Attachments: # 1 Attachment A − Proposed Scheduling Order Agreed to in Part, # 2 Attachment B − Agreed Order Governing Proceedings)(Frost, Claudia) (Entered: 05/28/2019) |
| 05/28/2019 | | JOINT MOTION to Enter Scheduling Order and Order Governing Proceedings (construed in 35 ) by Apple Inc., Fintiv, Inc. (mc5) (Entered: 05/29/2019) |
| 05/29/2019 | 36 | Minute Entry for proceedings held before Judge Alan D Albright: Telephone Conference held on 5/29/2019. Markman Hearing set on November 8, 2019 in Austin − Court suggested late October or November, 2020 for Jury Selection and Trial date. The trial date will be chosen at the Markman Hearing or before. There is 1 patent − 12 claims − 2 are independent. The Court notified counsel that he will rule on the claim terms at the Markman at the end of each argument. Each side has as much time as they wish at the Markman Hearing. Court asked them to be submitted one to two weeks prior to the Markman Hearing. The Court will decide if a tutorial is needed prior to the Markman. (Minute entry documents are not available electronically.) (Court Reporter Kristie Davis.)(lad) (Entered: 05/30/2019) |
| 06/05/2019 | 37 | Joint MOTION *To Enter Scheduling Order and Order Governing Proceedings* by Fintiv, Inc.. (Attachments: # 1 Attachment A − Agreed Scheduling Order Subsequent to Case Management Conference, # 2 Attachment B− Agreed Order Governing Proceedings)(Mann, J.) (Entered: 06/05/2019) |
| 06/07/2019 | | Notice of Correction. Document 38 was filed to this case in error and has been removed. (lad) (Entered: 06/07/2019) |

12

| 06/10/2019 | 38 | AGREED SCHEDULING ORDER SUBSEQUENT TO CASE MANAGEMENT CONFERENCE (Case Management Conference ("CMC") May 30, 2019). Signed by Judge Alan D Albright. (lad) (Entered: 06/10/2019) |
|---|---|---|
| 06/10/2019 | | Set Deadlines/Hearings: Markman Hearing set for 11/8/2019 09:00 AM in Austin before Judge Alan D Albright, Joinder of Parties due by 12/19/2019, Amended Pleadings due by 1/30/2020, Dispositive Motions due by 8/6/2020. (lad) (Entered: 06/10/2019) |
| 06/10/2019 | 39 | AGREED ORDER GOVERNING PROCEEDINGS. Signed by Judge Alan D Albright. (lad) (Entered: 06/10/2019) |
| 06/13/2019 | 40 | Opposed MOTION to Change Venue by Apple Inc.. (Attachments: # 1 Exhibit Ex. A − Jaynes Decl., # 2 Exhibit Ex. B − Frost Decl., # 3 Exhibit Ex. B−1, # 4 Exhibit Ex. B−2, # 5 Exhibit Ex. B−3, # 6 Exhibit Ex. B−4, # 7 Exhibit Ex. B−5, # 8 Exhibit Ex. B−6, # 9 Exhibit Ex. B−7, # 10 Exhibit Ex. B−8, # 11 Exhibit Ex. B−9, # 12 Exhibit Ex. B−10, # 13 Exhibit Ex. B−11, # 14 Exhibit Ex. B−12, # 15 Exhibit Ex. B−13, # 16 Exhibit Ex. B−14, # 17 Exhibit Ex. B−15, # 18 Exhibit Ex. B−16, # 19 Exhibit Ex. B−17, # 20 Proposed Order)(Frost, Claudia) (Entered: 06/13/2019) |
| 06/18/2019 | 41 | Unopposed MOTION for Extension of Time to File Response/Reply as to 40 Opposed MOTION to Change Venue by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Mann, J.) (Entered: 06/18/2019) |
| 06/19/2019 | | Text Order GRANTING 41 Motion for Extension of Time to File Response/Reply entered by Judge Alan D Albright. Came on for consideration Plaintiff's Motion. Noting that it is unopposed, the Court GRANTS the Motion. Plaintiff shall have until July 5, 2019, to respond to Defendant's Motion to Change Venue, and Defendant shall have until July 19, 2019, to reply to Plaintiff's response. (This is a text−only entry generated by the court. There is no document associated with this entry.) (sb) (Entered: 06/19/2019) |
| 07/03/2019 | 42 | **WITHDRAWN PER ORDER DATED 7/8/19**Response in Opposition to Motion, filed by Fintiv, Inc., re 40 Opposed MOTION to Change Venue filed by Defendant Apple Inc. (Waldrop, Jonathan) Modified on 7/8/2019 (mc5). (Entered: 07/03/2019) |
| 07/03/2019 | 43 | AFFIDAVIT in Support of 42 Response in Opposition to Motion / Declaration of David Gibson in Support of Plaintiff Fintiv, Inc.'s Opposition to Defendant Apple Inc.'s Motion to Transfer Venue by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 07/03/2019) |
| 07/03/2019 | 44 | AFFIDAVIT in Support of 42 Response in Opposition to Motion / Declaration of Jonathan K. Waldrop in Support of Plaintiff's Opposition to Defendant's Motion to Transfer Venue by Fintiv, Inc.. (Attachments: # 1 Exhibit A − Where Apple Has Quietly Built Its Biggest Campus − Fortune, # 2 Exhibit B − LinkedIn − Ruotao Wang, # 3 Exhibit C − Collection of Apple job postings, # 4 Exhibit D − Apple dives deeper into Austin's talent pool, # 5 Exhibit E LinkedIn − Srouji, # 6 Exhibit F − Apple to build new campus in Austin and add jobs across the US, # 7 Exhibit G − NXP in the United States, # 8 Exhibit H − STMicro Texas locations, # 9 Exhibit I − Frost Bank and USAA Headquarters, # 10 Exhibit J − Apple Pay participating banks, # 11 Exhibit K − iOS Security Guide, # 12 Exhibit L (Part 1 of 4) Teardowns, # 13 Exhibit L (Part 2 of 4) Teardowns, # 14 Exhibit L (Part 3 of 4) Teardowns, # 15 Exhibit L (Part 4 of 4) Teardowns, # 16 Exhibit M − Our Customers _ NXP, # 17 Exhibit N − Have you ever wondered what the company NXP makes, # 18 Exhibit O − LinkedIn − Kenny Huang, # 19 Exhibit P − LinkedIn − Ran Tang, # 20 Exhibit Q − |

| | | NXP employee profiles, # 21 Exhibit R − LinkedIn − Rick Clemmer, # 22 Exhibit S − iPhone XS packs chips for payments from NXP and ST, # 23 Exhibit T − STMicro employee profiles, # 24 Exhibit U − Coppell to WDTex, # 25 Exhibit V − Apple Pay, # 26 Exhibit W − Dallas Headquarters to WDTex, # 27 Exhibit X − Headquarters to WDTex, # 28 Exhibit Y − Apple employee Profiles, # 29 Exhibit Z − uscourts district profiles, # 30 Exhibit AA − Apple's Austin presence swells to nearly 7,000 workers News, # 31 Exhibit BB − Williamson tax incentives for Apple could double if project lives up to $1B billing, # 32 Exhibit CC − Data Scape v. Dell Transfer Order from Waco to Austin, # 33 Exhibit DD − Uniloc v. Samsung (EDTX) order denying transfer, # 34 Exhibit EE − Uniloc v. Apple transfer order)(Waldrop, Jonathan) (Entered: 07/03/2019) |
|---|---|---|
| 07/05/2019 | 45 | Response in Opposition to Motion, filed by Fintiv, Inc., re 40 Opposed MOTION to Change Venue filed by Defendant Apple Inc. (Attachments: # 1 Proposed Order)(Waldrop, Jonathan) (Entered: 07/05/2019) |
| 07/05/2019 | 46 | Unopposed MOTION to Withdraw *Plaintiff's Response in Opposition to Defendant's Motion to Change Venue 40 previously filed as Dkt. No. 42* by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Tindel, Andy) (Entered: 07/05/2019) |
| 07/08/2019 | 47 | ORDER GRANTING 46 Motion to Withdraw 42 Response in Opposition to Motion. Signed by Judge Alan D Albright. (mc5) (Entered: 07/08/2019) |
| 07/10/2019 | 48 | Agreed MOTION for Extension of Time to File Response/Reply *to Plaintiff's Response to Defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404(a)* by Apple Inc.. (Attachments: # 1 Proposed Order)(Frost, Claudia) (Entered: 07/10/2019) |
| 07/10/2019 | 49 | Pro Hac Vice Letter to Tyler S. Miller. (lad) (Entered: 07/10/2019) |
| 07/11/2019 | 50 | MOTION to Appear Pro Hac Vice by Claudia Wilson Frost *on behalf of Tyler S. Miller* ( Filing fee $ 100 receipt number 0542−12333628) by on behalf of Apple Inc.. (Attachments: # 1 Proposed Order)(Frost, Claudia) (Entered: 07/11/2019) |
| 07/11/2019 | | Text Order GRANTING 48 Motion for Extension of Time to File Response/Reply entered by Judge Alan D Albright. Came on for consideration Defendant's Motion. Noting that it is unopposed, the Court GRANTS the Motion. Defendant shall have until July 22, 2019, to reply to Plaintiff's Response.(This is a text−only entry generated by the court. There is no document associated with this entry.) (sb) (Entered: 07/11/2019) |
| 07/16/2019 | 51 | ORDER GRANTING 50 Motion to Appear Pro Hac Vice for Attorney Tyler S. Miller for Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (lad) (Entered: 07/16/2019) |
| 07/22/2019 | 52 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document Reply to Plaintiffs Response to Defendants Motion to Transfer Venue, # 2 Sealed Document Ex. A, # 3 Sealed Document Ex. B, # 4 Sealed Document Ex. C, # 5 Sealed Document Ex. C−1, # 6 Proposed Order) (Frost, Claudia) (Entered: 07/22/2019) |
| 07/23/2019 | | Text Order GRANTING 52 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (sb) (Entered: 07/23/2019) |

14

| 07/23/2019 | 53 | Sealed Document filed (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit C−1) (am) (Entered: 07/23/2019) |
|---|---|---|
| 07/23/2019 | 54 | Transcript filed of Proceedings held on 5−30−19, Proceedings Transcribed: Telephonic Scheduling Conference. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 8/13/2019, Redacted Transcript Deadline set for 8/23/2019, Release of Transcript Restriction set for 10/21/2019, (kd) (Entered: 07/23/2019) |
| 08/02/2019 | | Text Order WITHDRAWING 24 Motion to Dismiss entered by Judge Alan D Albright. Defendant withdrew the instant Motion. (This is a text−only entry generated by the court. There is no document associated with this entry.) (sb) (Entered: 08/02/2019) |
| 08/06/2019 | 55 | Agreed MOTION for Protective Order by Fintiv, Inc.. (Attachments: # 1 Proposed Order Agreed Protective Order)(Tindel, Andy) (Entered: 08/06/2019) |
| 08/07/2019 | 56 | AGREED PROTECTIVE ORDER REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS. Signed by Judge Alan D Albright. (bw) (Entered: 08/07/2019) |
| 08/08/2019 | 57 | NOTICE *of Compliance* by Fintiv, Inc. (Tindel, Andy) (Entered: 08/08/2019) |
| 08/13/2019 | 58 | MOTION to Withdraw as Attorney by Fintiv, Inc.. (Singh, Gurtej) (Entered: 08/13/2019) |
| 08/14/2019 | | Text Order GRANTING 58 Motion to Withdraw as Attorney. entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (sb) (Entered: 08/14/2019) |
| 08/20/2019 | 59 | ORDER Setting Pending Motion Hearing set for 8/29/2019 10:00 AM before Judge Alan D Albright. Signed by Judge Alan D Albright. (am) (Entered: 08/20/2019) |
| 08/22/2019 | 60 | NOTICE *of Compliance Regarding Disclosure of Preliminary Claim Constructions* by Fintiv, Inc. (Tindel, Andy) (Entered: 08/22/2019) |
| 08/28/2019 | 61 | NOTICE of Attorney Appearance by J. Stephen Ravel on behalf of Apple Inc.. Attorney J. Stephen Ravel added to party Apple Inc.(pty:dft) (Ravel, J.) (Entered: 08/28/2019) |
| 08/28/2019 | 62 | DEFICIENCY NOTICE: re 61 Notice of Appearance (am) (Entered: 08/28/2019) |
| 08/28/2019 | 63 | CORRECTED NOTICE of Attorney Appearance, by J. Stephen Ravel on behalf of Apple Inc. (Ravel, J.) Modified on 8/28/2019 (am). (Entered: 08/28/2019) |
| 08/28/2019 | 64 | ORDER Resetting Motion Hearing for 8/29/2019 09:00 AM before Judge Alan D Albright. Signed by Judge Alan D Albright. (sm3) (Entered: 08/28/2019) |
| 08/29/2019 | 65 | Minute Entry for proceedings held before Judge Alan D Albright: Motion Hearing held on 8/29/2019 re 40 Opposed MOTION to Change Venue filed by Apple Inc. Defendant made argument in favor of their motion to change venue. Plaintiff made |

15

| | | |
|---|---|---|
| | | their argument against motion. Defendant made rebuttal argument. Plaintiff made rebuttal argument. Both sides made closing remarks. Order will be forthcoming. (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(am) (Entered: 08/29/2019) |
| 09/04/2019 | 66 | Transcript filed of Proceedings held on 8−29−19, Proceedings Transcribed: Pending Motion Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 9/25/2019, Redacted Transcript Deadline set for 10/7/2019, Release of Transcript Restriction set for 12/3/2019, (kd) (Entered: 09/04/2019) |
| 09/06/2019 | 67 | ORDER RESETTING MARKMAN HEARING, Markman Hearing set for 11/7/2019 09:00 AM in Austin before Judge Alan D Albright. Signed by Judge Alan D Albright. (am) (Entered: 09/06/2019) |
| 09/07/2019 | 68 | MOTION for Leave to File Post−Hearing Brief in Support of Defendant's Motion to Transfer Venue by Apple Inc.. (Attachments: # 1 Proposed Order)(Ravel, J.) (Entered: 09/07/2019) |
| 09/07/2019 | 69 | BRIEF regarding 40 Opposed MOTION to Change Venue by Apple Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Ravel, J.) (Entered: 09/07/2019) |
| 09/10/2019 | 70 | Sealed Order. Signed by Judge Alan D Albright. (am) (Entered: 09/10/2019) |
| 09/10/2019 | | Text Order GRANTING 68 Motion for Leave to File entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 09/10/2019) |
| 09/12/2019 | 71 | BRIEF by Apple Inc.. (Attachments: # 1 Declaration of Travis Jensen, # 2 Exhibit 1 to Jensen Declaration, # 3 Exhibit 2 to Jensen Declaration, # 4 Exhibit 3 to Jensen Declaration, # 5 Exhibit 4 to Jensen Declaration, # 6 Exhibit 5 to Jensen Declaration, # 7 Exhibit 6 to Jensen Declaration, # 8 Exhibit 7 to Jensen Declaration, # 9 Exhibit 8 to Jensen Declaration, # 10 Exhibit 9 to Jensen Declaration, # 11 Exhibit 10 to Jensen Declaration, # 12 Exhibit 11 to Jensen Declaration, # 13 Exhibit 12 to Jensen Declaration, # 14 Exhibit 13 to Jensen Declaration, # 15 Exhibit 14 to Jensen Declaration, # 16 Exhibit 15 to Jensen Declaration, # 17 Exhibit 16 to Jensen Declaration, # 18 Exhibit 17 to Jensen Declaration, # 19 Exhibit 18 to Jensen Declaration, # 20 Exhibit 19 to Jensen Declaration, # 21 Exhibit 20 to Jensen Declaration)(Jensen, Travis) (Entered: 09/12/2019) |
| 09/12/2019 | 72 | BRIEF by Fintiv, Inc.. (Attachments: # 1 Declaration of Rodney R. Miller, # 2 Exhibit A to Declaration of Rodney R. Miller)(Tindel, Andy) (Entered: 09/12/2019) |
| 09/13/2019 | 73 | ORDER DENYING DEFENDANT APPLE'SMOTION TO TRANSFER VENUE UNDER 28 U.S.C. 1404(a) re 40 Opposed MOTION to Change Venue filed by Apple Inc.. Signed by Judge Alan D Albright. (am) (Entered: 09/13/2019) |
| 10/03/2019 | 74 | RESPONSE *CLAIM CONSTRUCTION BRIEF* to 72 Brief by Apple Inc.. (Attachments: # 1 Supplemental Declaration of Travis Jensen in Support of Apple Inc.s Responsive Claim Construction Brief, # 2 Exhibits 21−24 to the Supplemental |

16

| | | Declaration of Travis Jensen in Support of Apple Inc.s Responsive Claim Construction Brief, # 3 Declaration of Dr. Don Turnbull in Support of Apples Proposed Claim Construction, # 4 Exhibits A−L to the Declaration of Dr. Don Turnbull in Support of Apples Proposed Claim Construction)(Jensen, Travis) (Entered: 10/03/2019) |
|---|---|---|
| 10/03/2019 | 75 | RESPONSE *RESPONSIVE CLAIM CONSTRUCTION BRIEF* to 71 Brief,,, by Fintiv, Inc.. (Attachments: # 1 Declaration of Rodney R. Miller, # 2 Exhibit 1 to Miller Declaration, # 3 Exhibit 2 to Miller Declaration, # 4 Exhibit 3 to Miller Declaration)(Tindel, Andy) (Entered: 10/03/2019) |
| 10/17/2019 | 76 | RESPONSE *REPLY CLAIM CONSTRUCTION BRIEF* to 71 Brief,,, by Apple Inc.. (Jensen, Travis) (Entered: 10/17/2019) |
| 10/17/2019 | 77 | RESPONSE *REPLY CLAIM CONSTRUCTION BRIEF* to 72 Brief by Fintiv, Inc.. (Attachments: # 1 Declaration of Rodney R. Miller, # 2 Exhibit A to Declaration of Rodney R. Miller, # 3 Exhibit B to Declaration of Rodney R. Miller, # 4 Exhibit C to Declaration of Rodney R. Miller, # 5 Exhibit D to Declaration of Rodney R. Miller)(Tindel, Andy) (Entered: 10/17/2019) |
| 10/21/2019 | 78 | MOTION to Stay Case *Pending Mandamus Review* by Apple Inc.. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Ravel, J.) (Entered: 10/21/2019) |
| 10/22/2019 | | Text Order DENYING 78 Motion to Stay Case entered by Judge Alan D Albright. Before the Court is Apple's Motion to Stay Case Pending Mandamus Review. After consideration, Apple's Motion is DENIED with prejudice. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 10/22/2019) |
| 10/24/2019 | 79 | NOTICE of Filing Joint Claim Construction Statement by Fintiv, Inc. (Attachments: # 1 Exhibit A)(Tindel, Andy) (Entered: 10/24/2019) |
| 10/24/2019 | 80 | NOTICE *of Compliance Regarding Submission of Technology Tutorial* by Fintiv, Inc. (Tindel, Andy) (Entered: 10/24/2019) |
| 10/25/2019 | 81 | NOTICE *of Compliance Regarding Submission of Technology Tutorial* by Apple Inc. (Ravel, J.) (Entered: 10/25/2019) |
| 11/07/2019 | 82 | Minute Entry for proceedings held before Judge Alan D Albright: Markman Hearing held on 11/7/2019. Plaintiff gave tutorial for the Court and marked plaintiff #1 as David Tushie − expert cv. John Johnson/Don Turnbull gave tutorial for defendant. Tutorial concludes and Markman Hearing begins. After hearing argument court gave his definitions and requested the plaintiff write them up and provide to defendant to make sure both agree and then to provide it to the Court for signature. The Court set the jury trial date on November 16, 2020 with the jury being selected the Thursday or Friday the week before. Parties agreed that they are available. The Court, after discussion with the parties determined that there will be 8 jurors seated. (Minute entry documents are not available electronically.) (Court Reporter Kristie Davis.)(am) (Entered: 11/08/2019) |
| 11/12/2019 | 83 | Transcript filed of Proceedings held on 11−7−19, Proceedings Transcribed: Markman Hearing and Tutorials. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, |

| | | a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 12/3/2019, Redacted Transcript Deadline set for 12/13/2019, Release of Transcript Restriction set for 2/10/2020, (kd) (Entered: 11/12/2019) |
|---|---|---|
| 11/14/2019 | 84 | NOTICE *of Service of Initial Disclosures Pursuant to Rule 26(a)* by Fintiv, Inc. (Tindel, Andy) (Entered: 11/14/2019) |
| 11/26/2019 | 85 | NOTICE of Filing Joint Post−Markman Hearing Statement by Fintiv, Inc. (Tindel, Andy) (Entered: 11/26/2019) |
| 11/27/2019 | 86 | CLAIM CONSTRUCTION ORDER following Markman Hearing. Signed by Judge Alan D Albright. (lad) (Entered: 11/27/2019) |
| 12/20/2019 | 89 | ORDER from the United States Court of Appeals for the Federal Circuit regarding Apple Inc.'s petition for a Writ of Mandamus directing the United States District Court for the Western District of Texas to transfer this case to the United States District Court for the Northern District of California. Signed by Peter R. Marksteiner, Clerk of Court for the Federal Circuit. (klw) Modified on 1/23/2020 to correct signer's name. (klw). (Entered: 12/30/2019) |
| 12/23/2019 | | Case transferred in from Waco Division Division on 12/23/2019 Case Number 6:18−cv−372. Case assigned to Judge Alan D Albright., filed by Fintiv, Inc..(cj) (Entered: 12/23/2019) |
| 12/23/2019 | | Case assigned to Judge Alan D. Albright. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (cj) (Entered: 12/23/2019) |
| 12/23/2019 | | DEMAND for Trial by Jury by Apple Inc., Fintiv, Inc.. (cj) (Entered: 12/23/2019) |
| 12/23/2019 | 87 | Report on Patent sent to U.S. Patent and Trademark Office, along with a copy of the Transfer Order. (cj) (Entered: 12/23/2019) |
| 12/23/2019 | 88 | Case Transfer and Opening Letter sent to all Counsel. (cj) (Entered: 12/23/2019) |
| 01/23/2020 | 90 | RECEIVED Courtesy Copy of Motion for Rehearing En Banc filed in the U.S. Court of Appeals for the Federal Circuit. (td) (Entered: 01/24/2020) |
| 01/30/2020 | 91 | *Apple's First Amended Answer and Defenses to Fintiv's First Amended Complaint for Patent Infringement (ECF No. 28)* ANSWER to Complaint with Jury Demand by Apple Inc..(Frost, Claudia) (Entered: 01/30/2020) |
| 01/30/2020 | 92 | AMENDED COMPLAINT *Second Amended Complaint For Patent Infringement* against Apple Inc. amending 28 Amended Complaint., filed by Fintiv, Inc.. (Attachments: # 1 Exhibit A − '125 Patent, # 2 Exhibit B − Certificate of Good Standing)(Tindel, Andy) (Entered: 01/30/2020) |
| 02/13/2020 | 93 | Motion to Dismiss for Failure to State a Claim by Apple Inc.. (Attachments: # 1 Proposed Order)(Frost, Claudia) (Entered: 02/13/2020) |
| 02/14/2020 | 94 | Unopposed MOTION for Extension of Time to File Response/Reply as to 93 Motion to Dismiss for Failure to State a Claim by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Tindel, Andy) (Entered: 02/14/2020) |

18

| 02/15/2020 | | Text Order GRANTING 94 Motion for Extension of Time to File Response/Reply entered by Judge Alan D Albright. Came on for consideration is Plaintiff's Motion. Noting that it is unopposed, the Court GRANTS the Motion. Plaintiff shall have up to and including February 27, 2020 to respond/reply. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 02/15/2020) |
|---|---|---|
| 02/19/2020 | 95 | MOTION to Appear Pro Hac Vice by J. Mark Mann *for ThucMinh Nguyen* ( Filing fee $ 100 receipt number 0542−13230674) by on behalf of Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Mann, J.) (Entered: 02/19/2020) |
| 02/20/2020 | | Text Order GRANTING 95 Motion to Appear Pro Hac Vice. Before the Court is the Motion for Admission Pro Hac Vice. The Court, having reviewed the Motion, finds it should be GRANTED and therefore orders as follows: IT IS ORDERED the Motion for Admission Pro Hac Vice is GRANTED. IT IS FURTHER ORDERED that Applicant, if he/she has not already done so, shall immediately tender the amount of $100.00, made payable to: Clerk, U.S. District Court, in compliance with Local Rule AT−I (f)(2). Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 02/20/2020) |
| 02/21/2020 | 96 | ORDER, Telephone Discovery Hearing set for 2/24/2020 03:00 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 02/24/2020) |
| 02/24/2020 | 97 | Minute Entry for proceedings held before Judge Alan D Albright: Telephone Discovery hearing held on 2/24/2020 (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 02/25/2020) |
| 02/25/2020 | 98 | BRIEF regarding 97 Telephone Conference by Apple Inc.. (Ravel, J.) (Additional attachment(s) added on 2/26/2020: # 1 Sealed Document Exhibit A) (td). (Entered: 02/25/2020) |
| 02/25/2020 | 99 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document, # 2 Proposed Order) (Ravel, J.) (Entered: 02/25/2020) |
| 02/26/2020 | | Text Order GRANTING 99 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. The Court GRANTS the motion. The Clerk's Office is directed to file Exhibit A attached to Apple's Unopposed Motion under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 02/26/2020) |
| 02/26/2020 | 100 | Transcript filed of Proceedings held on 2−24−2020, Proceedings Transcribed: Telephonic Discovery Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 3/18/2020, Redacted Transcript Deadline set for 3/30/2020, Release of Transcript Restriction set for 5/26/2020, (kd) (Entered: 02/26/2020) |

| 02/26/2020 | 101 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Fintiv's Responsive Letter Brief re Source Code, # 2 Exhibit "A" to Responsive Letter Brief, # 3 Proposed Order Granting Fintiv's Motion for Leave to File Sealed Documents) (Tindel, Andy) (Entered: 02/26/2020) |
|---|---|---|
| 02/27/2020 | 102 | Unopposed MOTION for Extension of Time to File Response/Reply as to 93 Motion to Dismiss for Failure to State a Claim by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Tindel, Andy) (Entered: 02/27/2020) |
| 02/27/2020 | | Text Order GRANTING 101 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Came on for consideration is Plaintiff Fintiv, Inc.'s Unopposed Motion for Leave to File Sealed Documents. The Court GRANTS the motion. The Clerk's Office is directed to file Fintiv's Responsive Letter Brief and attached Exhibit A under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 02/27/2020) |
| 02/27/2020 | 103 | SEALED Responsive Letter Brief re Source Code by Fintiv, Inc. (Attachments: # 1 Exhibit A) (td) (Entered: 02/27/2020) |
| 02/27/2020 | | Text Order GRANTING 102 Motion for Extension of Time to File Response/Reply entered by Judge Alan D Albright. Came on for consideration is Plaintiff's Second Motion for Extension of Time. The Court GRANTS the motion. It is therefore ORDERED that Plaintiff Fintiv, Inc. shall have up to and including March 2, 2020 in which to file a response to Apple's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6). (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 02/27/2020) |
| 03/02/2020 | 104 | Response in Opposition to Motion, filed by Fintiv, Inc., re 93 Motion to Dismiss for Failure to State a Claim filed by Defendant Apple Inc. (Attachments: # 1 Proposed Order Denying Apple's Motion to Dismiss)(Tindel, Andy) (Entered: 03/02/2020) |
| 03/09/2020 | 105 | REPLY to Response to Motion, filed by Apple Inc., re 93 Motion to Dismiss for Failure to State a Claim filed by Defendant Apple Inc. (Jensen, Travis) (Entered: 03/09/2020) |
| 03/12/2020 | 106 | Unopposed MOTION to Withdraw as Attorney by Apple Inc.. (Attachments: # 1 Proposed Order)(Ravel, J.) (Entered: 03/12/2020) |
| 03/15/2020 | | Text Order GRANTING 106 Motion to Withdraw as Attorney. entered by Judge Alan D Albright. Before the Court is Defendant's Motion to Withdraw as Counsel. The Court GRANTS the Motion. It is therefore ORDERED that J.R. Johnson is withdrawn as counsel of record for Defendant. The Court directs the Clerk to remove J.R. Johnson from the Court's CM/ECF service list for this cause of action. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 03/15/2020) |
| 03/16/2020 | 107 | Third Party MOTION to Quash by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Melsheimer, Thomas) (Entered: 03/16/2020) |
| 03/17/2020 | | Notice of Correction to Thomas M. Melsheimer: re 107 Third Party MOTION to Quash . This document should have been filed in the traditional manner. Because the document is already on file, we will download and print the required paper copy for the Court. Please review the Administrative Policies and Procedures for Electronic Filing, Western District of Texas, Section 5, page 9. (td) (Entered: 03/17/2020) |
| 03/17/2020 | 108 | |

| | | |
|---|---|---|
| | | Amended MOTION to Quash by Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Melsheimer, Thomas) (Entered: 03/17/2020) |
| 03/18/2020 | 109 | NOTICE of Attorney Appearance by George Philip Cowden on behalf of Fintiv, Inc.. Attorney George Philip Cowden added to party Fintiv, Inc.(pty:pla) (Cowden, George) (Entered: 03/18/2020) |
| 03/23/2020 | 110 | Response in Opposition to Motion, filed by Fintiv, Inc., re 108 Amended MOTION to Quash filed by Movant Wells Fargo Bank, N.A.. (Attachments: # 1 Waldrop Decl. ISO Opposition to Motion to Quash Subpoena, # 2 Exhibit A − Wells Fargo Locations, # 3 Proposed Order Denying Wells Fargo's Motion to Quash Subpoena)(Tindel, Andy) (Entered: 03/23/2020) |
| 03/24/2020 | 111 | STANDING ORDER from U.S. District Judge Alan D. Albright regarding scheduled civil hearings. (tada) (Entered: 03/25/2020) |
| 03/25/2020 | 112 | MOTION for Protective Order by USAA FSB. (Schultz, Theodore) (Entered: 03/25/2020) |
| 03/25/2020 | 113 | SUPPLEMENT to 112 MOTION for Protective Order by USAA FSB. (Schultz, Theodore) (Entered: 03/25/2020) |
| 03/30/2020 | 114 | REPLY to Response to Motion, filed by Wells Fargo Bank, N.A., re 108 Amended MOTION to Quash filed by Movant Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit A)(Melsheimer, Thomas) (Entered: 03/30/2020) |
| 04/01/2020 | 115 | Response in Opposition to Motion, filed by Fintiv, Inc., re 112 MOTION for Protective Order filed by Movant USAA FSB (Attachments: # 1 Proposed Order Denying Non−Party USAA FSB's Motion for Protective Order)(Tindel, Andy) (Entered: 04/01/2020) |
| 04/06/2020 | 116 | ORDER, Set Telephonic Motion Hearing for 107 Third Party MOTION to Quash , 112 MOTION for Protective Order , 93 Motion to Dismiss for Failure to State a Claim , 108 Amended MOTION to Quash Telephonic Motion Hearing set for 4/7/2020 01:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 04/06/2020) |
| 04/07/2020 | 117 | MOTION to Appear Pro Hac Vice by Thomas M. Melsheimer *for Alex C. Wolens* ( Filing fee $ 100 receipt number 0542−13431336) by on behalf of Wells Fargo Bank, N.A.. (Melsheimer, Thomas) (Entered: 04/07/2020) |
| 04/07/2020 | 118 | MOTION to Appear Pro Hac Vice by Thomas M. Melsheimer *for E. Danielle T. Williams* ( Filing fee $ 100 receipt number 0542−13431389) by on behalf of Wells Fargo Bank, N.A.. (Melsheimer, Thomas) (Entered: 04/07/2020) |
| 04/07/2020 | | Text Order GRANTING 117 Motion to Appear Pro Hac Vice. Before the Court is the Motion for Admission Pro Hac Vice. The Court, having reviewed the Motion, finds it should be GRANTED and therefore orders as follows: IT IS ORDERED the Motion for Admission Pro Hac Vice is GRANTED. IT IS FURTHER ORDERED that Applicant, if he/she has not already done so, shall immediately tender the amount of $100.00, made payable to: Clerk, U.S. District Court, in compliance with Local Rule AT−I (f)(2). Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 04/07/2020) |

21

Appx00119

| 04/07/2020 | | Text Order GRANTING 118 Motion to Appear Pro Hac Vice. Before the Court is the Motion for Admission Pro Hac Vice. The Court, having reviewed the Motion, finds it should be GRANTED and therefore orders as follows: IT IS ORDERED the Motion for Admission Pro Hac Vice is GRANTED. IT IS FURTHER ORDERED that Applicant, if he/she has not already done so, shall immediately tender the amount of $100.00, made payable to: Clerk, U.S. District Court, in compliance with Local Rule AT−I (f)(2). Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 04/07/2020) |
|---|---|---|
| 04/07/2020 | 119 | REPLY to Response to Motion, filed by USAA FSB, re 112 MOTION for Protective Order filed by Movant USAA FSB (Schultz, Theodore) (Entered: 04/07/2020) |
| 04/07/2020 | 120 | Minute Entry for proceedings held before Judge Alan D Albright: Telephonic Motion Hearing held on 4/7/2020 re 112 MOTION for Protective Order filed by USAA FSB, 107 108 Amended MOTION to Quash filed by Wells Fargo Bank, N.A. (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 04/07/2020) |
| 04/07/2020 | 121 | Transcript filed of Proceedings held on 4−7−2020, Proceedings Transcribed: Telephonic Motion Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 4/28/2020, Redacted Transcript Deadline set for 5/8/2020, Release of Transcript Restriction set for 7/6/2020, (kd) (Entered: 04/07/2020) |
| 04/09/2020 | 122 | STANDNG ORDER REGARDING POST−MARKMAN PATENT CASES. Signed by Judge Alan D Albright. (td) (Entered: 04/09/2020) |
| 04/23/2020 | 123 | Joint MOTION to Extend Scheduling Order Deadlines *Joint Motion to Amend the Parties' Agreed Scheduling Order* by Apple Inc.. (Attachments: # 1 Proposed Order, # 2 Exhibit A)(Ravel, J.) (Entered: 04/23/2020) |
| 04/24/2020 | 124 | AGREED AMENDED SCHEDULING ORDER SUBSEQUENT TO CASE MANAGEMENT CONFERENCE. Pretrial Conference set for 3/1/2021 09:00 AM before Judge Alan D Albright, Jury Selection set for 3/4/2021 09:00AM before Judge Alan D Albright, Jury Trial set for 3/8/2021 09:00 AM before Judge Alan D Albright, Fact Discovery due by 8/25/2020, Expert Discovery due by 1/13/2020, Motions due by 12/2/2020. Signed by Judge Alan D Albright. (td) (Entered: 04/24/2020) |
| 05/06/2020 | 125 | Unopposed MOTION to Withdraw as Attorney *Rodney Miller* by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Tindel, Andy) (Entered: 05/06/2020) |
| 05/06/2020 | 126 | Unopposed MOTION to Withdraw as Attorney *Daniel C. Miller* by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Tindel, Andy) (Entered: 05/06/2020) |
| 05/07/2020 | | Text Order GRANTING 125 Motion to Withdraw as Attorney. entered by Judge Alan D Albright. On this day came on to be considered the Unopposed Motion to Withdraw |

| | | |
|---|---|---|
| | | Rodney Miller as Counsel filed by Fintiv, Inc. The Court GRANTS the motion. The Clerk's Office is directed to terminate CM/ECF notices to Rodney Miller in the above referenced action.(This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 05/07/2020) |
| 05/07/2020 | | Text Order GRANTING 126 Motion to Withdraw as Attorney. entered by Judge Alan D Albright. On this day came on to be considered the Unopposed Motion to Withdraw Daniel Miller as Counsel filed by Fintiv, Inc. The Court GRANTS the motion. The Clerk's Office is directed to terminate CM/ECF notices to Daniel Miller in the above referenced action.(This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 05/07/2020) |
| 06/03/2020 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Austin. (klw) (Entered: 06/03/2020) |
| 06/05/2020 | 127 | ORDER, Telephonic Discovery Hearing set for 6/8/2020 02:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 06/05/2020) |
| 06/08/2020 | 128 | Minute Entry for proceedings held before Judge Alan D Albright: Telephonic Discovery Hearing held on 6/8/2020 (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 06/08/2020) |
| 06/20/2020 | 129 | Transcript filed of Proceedings held on 6−8−20, Proceedings Transcribed: Telephonic Discovery Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 7/13/2020, Redacted Transcript Deadline set for 7/21/2020, Release of Transcript Restriction set for 9/18/2020, (kd) (Entered: 06/20/2020) |
| 06/23/2020 | 130 | MOTION to Appear Pro Hac Vice by Andy W. Tindel *for Trevor J. Welch* ( Filing fee $ 100 receipt number 0542−13689723) by on behalf of Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Tindel, Andy) (Entered: 06/23/2020) |
| 06/23/2020 | | Text Order MOOTING 107 Motion to Quash entered by Judge Alan D Albright. (This is a text−only entry generated by the court. In light of the telephonic hearing held by the Court, this Motion appears to be MOOT. There is no document associated with this entry.) (ms) (Entered: 06/23/2020) |
| 06/23/2020 | | Text Order MOOTING 108 Motion to Quash entered by Judge Alan D Albright. (This is a text−only entry generated by the court. In light of the telephonic hearing held by the Court, this Motion appears to be MOOT. There is no document associated with this entry.) (ms) (Entered: 06/23/2020) |
| 06/23/2020 | | Text Order MOOTING 112 Motion for Protective Order entered by Judge Alan D Albright. (This is a text−only entry generated by the court. In light of the telephonic hearing held by the Court, this Motion appears to be MOOT. There is no document associated with this entry.) (ms) (Entered: 06/23/2020) |
| 06/25/2020 | | Text Order GRANTING 130 Motion to Appear Pro Hac Vice. Before the Court is the Motion for Admission Pro Hac Vice. The Court, having reviewed the Motion, finds it should be GRANTED and therefore orders as follows: IT IS ORDERED the Motion |

| | | |
|---|---|---|
| | | for Admission Pro Hac Vice is GRANTED. IT IS FURTHER ORDERED that Applicant, if he/she has not already done so, shall immediately tender the amount of $100.00, made payable to: Clerk, U.S. District Court, in compliance with Local Rule AT−I (f)(2). Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 06/25/2020) |
| 06/25/2020 | 131 | ORDER DENYING DEFENDANT APPLE'S REQUEST FOR PLAINTIFF TO RE−SERVE ITS FINAL INFRINGEMENT CONTENTIONS. Signed by Judge Alan D Albright. (td) (Entered: 06/25/2020) |
| 07/02/2020 | 132 | ORDER, Telephone Conference set for 7/2/2020 02:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 07/02/2020) |
| 07/02/2020 | 133 | Minute Entry for proceedings held before Judge Alan D Albright: Telephone Conference held on 7/2/2020 (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 07/02/2020) |
| 07/05/2020 | 134 | Transcript filed of Proceedings held on 7−2−20, Proceedings Transcribed: Telephonic Discovery Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 7/27/2020, Redacted Transcript Deadline set for 8/5/2020, Release of Transcript Restriction set for 10/5/2020, (kd) (Entered: 07/05/2020) |
| 07/07/2020 | 135 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document Fintiv's Motion for Leave to Amend Final Infringement Contentions, # 2 Sealed Document Waldrop Decl ISO Fintiv's Motion for Leave to Amend Final Infringement Contentions, # 3 Sealed Document Exhibit 1, # 4 Sealed Document Exhibit 2, # 5 Sealed Document Exhibit 3, # 6 Sealed Document Exhibit 4, # 7 Sealed Document Exhibit 5, # 8 Sealed Document Exhibit 6, # 9 Sealed Document Exhibit 7, # 10 Sealed Document Exhibit 8, # 11 Sealed Document Exhibit 9, # 12 Sealed Document Exhibit 10, # 13 Sealed Document Exhibit 11, # 14 Sealed Document Exhibit 12, # 15 Sealed Document Exhibit 13, # 16 Sealed Document Exhibit 14, # 17 Sealed Document Exhibit 15, # 18 Sealed Document Exhibit 16, # 19 Sealed Document Exhibit 17, # 20 Sealed Document Exhibit 18, # 21 Proposed Order Granting Fintiv's Motion for Leave to Amend Final Infringement Contentions, # 22 Proposed Order Granting Fintiv's Unopposed Motion for Leave to File Sealed Documents) (Tindel, Andy) (Entered: 07/07/2020) |
| 07/08/2020 | | Text Order GRANTING 135 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Plaintiff Fintiv, Inc.'s Unopposed Motion for Leave to File Documents Under Seal. The Court GRANTS the motion. The Clerk's Office is directed to file Fintiv, Inc.'s Motion for Leave to Amend Final Disclosure of Asserted Claims, Accused Instrumentalities and Infringement Contentions and associated declaration andexhibits under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 07/08/2020) |

| 07/08/2020 | 136 | Sealed Motion for Leave to Amend Final Disclosure of Asserted Claims, Accused Instrumentalities, and Infringement Contentions. (Attachments: # 1 Waldrop Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Proposed Order) (td) (Entered: 07/09/2020) |
|---|---|---|
| 07/13/2020 | 137 | ORDER, Set Motion Hearing for 136 Sealed Motion filed, 93 Motion to Dismiss for Failure to State a Claim Motion Hearing set for 7/21/2020 01:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 07/13/2020) |
| 07/14/2020 | 138 | Unopposed MOTION for Leave to Exceed Page Limitation *for Fintiv, Inc.'s Motion for Leave to File Third Amended Complaint for Patent Infringement* by Fintiv, Inc.. (Attachments: # 1 Proposed Order Granting Leave to Exceed Page Limits)(Tindel, Andy) (Entered: 07/14/2020) |
| 07/14/2020 | 139 | Opposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document Fintiv's Opposed Motion for Leave to File Third Amended Complaint for Patent Infringement, # 2 Sealed Document Waldrop Declaration ISO of Fintiv's Opposed Motion to File Third Amended Complaint, # 3 Sealed Document Exhibit 1, # 4 Sealed Document Exhibit 2, # 5 Sealed Document Exhibit 3, # 6 Sealed Document Exhibit 4, # 7 Sealed Document Exhibit 5, # 8 Sealed Document Exhibit 6, # 9 Sealed Document Exhibit 7, # 10 Sealed Document Exhibit 8, # 11 Sealed Document [Proposed] Fintiv's Third Amended Complaint for Patent Infringement, # 12 Sealed Document Ex. A to Third Amended Complaint, # 13 Sealed Document Ex. B to Third Amended Complaint, # 14 Sealed Document Ex. C to Third Amended Complaint, # 15 Sealed Document Ex. D to Third Amended Complaint, # 16 Proposed Order Granting Fintiv's Opposed Motion for Leave to File Third Amended Compalint for Patent Infringement, # 17 Proposed Order Granting Fintiv's Opposed Motion to File Sealed Documents) (Tindel, Andy) (Entered: 07/14/2020) |
| 07/15/2020 | 140 | NOTICE *of Non−Opposition to Plaintiff's Sealed Filing* by Apple Inc. re 139 Opposed Motion for leave to File Sealed Document (Ravel, J.) (Entered: 07/15/2020) |
| 07/15/2020 | | Text Order GRANTING 138 Motion for Leave to File Excess Pages entered by Judge Alan D Albright. Before the Court is Plaintiff Fintiv, Inc.'s Unopposed Motion for Leave to Exceed Page Limits. The Court GRANTS the motion. It is therefore ORDERED that Fintiv's Opposed Motion For Leave To File Third Amended Complaint For Patent Infringement may exceed the applicable page limits by five (5) pages. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 07/15/2020) |
| 07/15/2020 | | Text Order GRANTING 139 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Plaintiff Fintiv, Inc.'s Opposed Motion for Leave to File Sealed Documents. In light of ECF No. 140, the Court GRANTS the motion. The Clerk's Office is directed to file Fintiv's Opposed Motion For Leave To File Third Amended Complaint and associated declaration and exhibits under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 07/15/2020) |
| 07/15/2020 | 142 | Motion for leave to File to File Third Amended Complaint (Attachments: # 1 Sealed Document Waldrop Declaration, # 2 Sealed Document Exhibit 1, # 3 Sealed Document Exhibit 2, # 4 Sealed Document Exhibit 3, # 5 Sealed Document Exhibit 4, # 6 Sealed Document Exhibit 5, # 7 Sealed Document Exhibit 6, # 8 Sealed Document |

| | | |
|---|---|---|
| | | Exhibit 7, # 9 Sealed Document Exhibit 8, # 10 Sealed Document Proposed Third Amended Complaint, # 11 Sealed Document Exhibit A to Third Amended Complaint, # 12 Sealed Document Exhibit B to Third Amended Complaint, # 13 Sealed Document Exhibit C to Third Amended Complaint, # 14 Sealed Document Exhibit D to Third Amended Complaint, # 15 Proposed Order) (td) (Entered: 07/16/2020) |
| 07/16/2020 | 141 | ORDER Cancelling Motion Hearing. Signed by Judge Alan D Albright. (td) (Entered: 07/16/2020) |
| 07/17/2020 | 143 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Proposed Order, # 2 Sealed Document, # 3 Sealed Document, # 4 Sealed Document Ex. 1, # 5 Sealed Document Ex. 2, # 6 Sealed Document Ex. 3, # 7 Sealed Document Ex. 4, # 8 Sealed Document Ex. 5, # 9 Sealed Document Ex. 6, # 10 Sealed Document Ex. 7, # 11 Sealed Document Ex. 8, # 12 Sealed Document Ex. 9, # 13 Sealed Document Ex. 10, # 14 Sealed Document Ex. 11, # 15 Sealed Document Ex. 12, # 16 Sealed Document Ex. 13, # 17 Sealed Document Ex. 14, # 18 Sealed Document Ex. 15, # 19 Sealed Document Ex. 16, # 20 Sealed Document Ex. 17, # 21 Sealed Document) (Jensen, Travis) (Entered: 07/17/2020) |
| 07/18/2020 | | Text Order GRANTING 143 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Defendant's Unopposed Motion for Leave for File Under Seal. The Court GRANTS the motion. The Clerk's Office is directed to file Defendant's Opposition, the Declaration of Travis Jensen, and Exhibits 1−17 attached thereto under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 07/18/2020) |
| 07/18/2020 | 144 | SEALED Response in Opposition to Motion to Amend (Attachments: # 1 Declaration of Travis Jensen, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Proposed Order) (td) (Additional attachment(s) added on 7/22/2020: # 20 Sealed Document Corrected Exhibit 7) (td). (Entered: 07/20/2020) |
| 07/20/2020 | 145 | Joint MOTION *to Enter Agreed Briefing Schedule and Page Limitations for Plaintiff's Opposed Motion for Leave to File Third Amended Complaint for Patent Infringement and for Plaintiff's Reply in Support of Motion for Leave to File Amended Final Infringement Contentions* by Apple Inc.. (Attachments: # 1 Proposed Order)(Ravel, J.) (Entered: 07/20/2020) |
| 07/21/2020 | 146 | ORDER GRANTING 145 Motion TO ENTER AGREED BRIEFING SCHEDULE AND PAGE LIMITATIONS FOR PLAINTIFFS OPPOSED MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND FOR PLAINTIFF FINTIV, INC.S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED FINAL INFRINGEMENT CONTENTIONS. Signed by Judge Alan D Albright. (td) (Entered: 07/21/2020) |
| 07/21/2020 | 147 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Proposed Order, # 2 Sealed Document Exhibit 07) (Ravel, J.) (Entered: 07/21/2020) |
| 07/22/2020 | | Text Order GRANTING 147 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Defendant's Unopposed Motion for Leave to File Certain Documents Under Seal. The Court GRANTS the motion. The Clerk's Office is directed to file corrected Exhibit 7 under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) |

| | | (Entered: 07/22/2020) |
|---|---|---|
| 07/27/2020 | 148 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document Fintiv's Reply in Support of Motion for Leave to File Amended Final Infringement Contentions, # 2 Sealed Document Waldrop Decl. ISO Fintiv's Reply ISO of Plaintiff's Unopposed Motion for Leave to File Amended Final Infringement Contentions, # 3 Sealed Document Exhibit 19, # 4 Sealed Document Exhibit 20, # 5 Sealed Document Exhibit 21, # 6 Sealed Document Exhibit 22, # 7 Sealed Document Exhibit 23, # 8 Sealed Document Exhibit 24, # 9 Sealed Document Exhibit 25, # 10 Sealed Document Exhibit 26, # 11 Sealed Document Exhibit 27, # 12 Sealed Document Exhibit 28, # 13 Sealed Document Exhibit 29, # 14 Proposed Order Granting Fintiv's Unopposed Motion for Leave to File Seal Documents) (Tindel, Andy) Modified on 7/28/2020 (td). (Entered: 07/27/2020) |
| 07/29/2020 | | Text Order GRANTING 148 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Plaintiff Fintiv, Inc.'s Unopposed Motion for Leave to File Sealed Documents. The Court GRANTS the motion. The Clerk's Office is directed to file Fintiv's Reply in Support of Motion For Leave to Amended Final Disclosures of Asserted Claims, Accused Instrumentalities, and Infringement Contentions and associated declaration and exhibits under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 07/29/2020) |
| 07/29/2020 | 149 | SEALED Response in Support of Motion for Leave to Amend Final Disclosure of Asserted Claims Accused Instrumentalities, and Infringement Contentions(Attachments: # 1 Waldrop Declaration, # 2 Exhibit 19, # 3 Exhibit 20, # 4 Exhibit 21, # 5 Exhibit 22, # 6 Exhibit 23, # 7 Exhibit 24, # 8 Exhibit 25, # 9 Exhibit 26, # 10 Exhibit 27, # 11 Exhibit 28, # 12 Exhibit 29, # 13 Proposed Order) (td) (Entered: 07/29/2020) |
| 07/29/2020 | 150 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document, # 2 Sealed Document, # 3 Sealed Document, # 4 Sealed Document, # 5 Sealed Document, # 6 Sealed Document, # 7 Sealed Document, # 8 Sealed Document, # 9 Sealed Document, # 10 Sealed Document, # 11 Sealed Document, # 12 Sealed Document) (Jensen, Travis) (Entered: 07/29/2020) |
| 07/30/2020 | 151 | NOTICE of Attorney Appearance by Jeffrey T. Quilici on behalf of Apple Inc.. Attorney Jeffrey T. Quilici added to party Apple Inc.(pty:dft) (Quilici, Jeffrey) (Entered: 07/30/2020) |
| 07/30/2020 | | Text Order GRANTING 150 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Defendant's motion for leave to file a sealed document. The Court GRANTS the motion. The Clerk's Office is directed to file Defendant's Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint for Patent Infringement and Exhibits G and H under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 07/30/2020) |
| 07/30/2020 | 152 | ORDER, Telephone Discovery Hearing set for 7/31/2020 10:00 AM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 07/30/2020) |
| 07/30/2020 | 153 | SEALED RESPONSE IN OPPOSITION TO FINTIV, INC.S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT (Attachments: # 1 Jensen Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Proposed |

27

| | | Order) (td) (Entered: 07/31/2020) |
|---|---|---|
| 07/31/2020 | 154 | Transcript filed of Proceedings held on 7−31−20, Proceedings Transcribed: Telephonic Discovery Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 8/21/2020, Redacted Transcript Deadline set for 8/31/2020, Release of Transcript Restriction set for 10/29/2020, (kd) (Entered: 07/31/2020) |
| 07/31/2020 | 155 | Minute Entry for proceedings held before Judge Alan D Albright: Discovery Hearing held on 7/31/2020 (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 07/31/2020) |
| 07/31/2020 | 156 | ORDER, Telephone Discovery Hearing set for 8/5/2020 10:00 AM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 07/31/2020) |
| 07/31/2020 | 157 | ORDERED that the above entitled and numbered case is reset for DISCOVERY HEARING HELD BY ZOOM on Wednesday, August 05, 2020 at 10:00 AM. The link to the hearing shall be sent out by separate e−mail. Signed by Judge Alan D Albright. (td) (Entered: 07/31/2020) |
| 08/03/2020 | 158 | MOTION to Appear Pro Hac Vice by Andy W. Tindel *for Paul G. Williams* ( Filing fee $ 100 receipt number 0542−13821600) by on behalf of Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Tindel, Andy) (Entered: 08/03/2020) |
| 08/04/2020 | 159 | ORDER GRANTING 158 Motion to Appear Pro Hac Vice by Paul G. Williams. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (td) (Entered: 08/04/2020) |
| 08/04/2020 | 160 | ORDER, Telephone Conference set for 8/7/2020 02:00 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 08/04/2020) |
| 08/04/2020 | 161 | ORDER Cancelling Telephone Discovery Hearing. Signed by Judge Alan D Albright. (td) (Entered: 08/04/2020) |
| 08/05/2020 | 162 | Minute Entry for proceedings held before Judge Alan D Albright: Discovery Hearing held on 8/5/2020 (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 08/05/2020) |
| 08/06/2020 | | Text Order GRANTING 136 Sealed Motion entered by Judge Alan D Albright. As described during the hearing (ECF No. 162), the Court GRANTS the motion. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 08/06/2020) |
| 08/06/2020 | 163 | Transcript filed of Proceedings held on 8−5−20, Proceedings Transcribed: Discovery Hearing (Zoom). Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, |

| | | a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 8/27/2020, Redacted Transcript Deadline set for 9/7/2020, Release of Transcript Restriction set for 11/4/2020, (kd) (Entered: 08/06/2020) |
|---|---|---|
| 08/10/2020 | 164 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document Fintiv's Reply ISO Motion for Leave to File Third Amended Complaint, # 2 Sealed Document Waldrop Decl. ISO Fintiv's Reply, # 3 Sealed Document Exhibit 1, # 4 Sealed Document Exhibit 2, # 5 Sealed Document Exhibit 3, # 6 Sealed Document Exhibit 4, # 7 Sealed Document Exhibit 5, # 8 Sealed Document Exhibit 6, # 9 Sealed Document Exhibit 7, # 10 Sealed Document Exhibit 8, # 11 Sealed Document Exhibit 9, # 12 Sealed Document Exhibit 10, # 13 Proposed Order Granting Unopposed Motion for Leave to File Sealed Documents) (Tindel, Andy) (Entered: 08/10/2020) |
| 08/11/2020 | | Text Order GRANTING 164 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Plaintiff's Motion for Leave to File Sealed Documents. The Court GRANTS the motion. The Clerk's Office is directed to file Plaintiff's Reply under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 08/11/2020) |
| 08/11/2020 | 165 | SEALED Reply Memorandum of Law in Support of Motion for Leave to File Third Amended Complaint (Attachments: # 1 Waldrop Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10) (td) (Entered: 08/11/2020) |
| 08/17/2020 | 166 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document, # 2 Sealed Document, # 3 Sealed Document, # 4 Sealed Document, # 5 Sealed Document, # 6 Sealed Document, # 7 Sealed Document) (Jensen, Travis) (Entered: 08/17/2020) |
| 08/18/2020 | | Text Order GRANTING 166 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Defendant's Motion for Leave to File a Sealed Document. The Court GRANTS the motion. The Clerk's Office is directed to file Defendant's Opposition, the Declaration of Travis Jensen, and Exhibits I through L under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 08/18/2020) |
| 08/18/2020 | 167 | SEALED SUR−REPLY IN OPPOSITION TO FINTIV, INC.S MOTION FOR LEAVETO FILE THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT (Attachments: # 1 Declaration, # 2 Exhibit I, # 3 Exhibit J, # 4 Exhibit K, # 5 Exhibit L) (td) (Entered: 08/19/2020) |
| 08/24/2020 | 168 | ORDER, Markman Hearing set for 8/28/2020 10:00 AM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 08/24/2020) |
| 08/24/2020 | 169 | ORDER, Set Motion Hearing for 93 Motion to Dismiss for Failure to State a Claim , 142 Motion for leave to File Sealed Document, Motion Hearing set for 9/1/2020 02:00 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 08/24/2020) |
| 08/24/2020 | 170 | BRIEF regarding 71 Brief,,, by Apple Inc.. (Attachments: # 1 Affidavit Turnbull Decl., # 2 Exhibit A, # 3 Affidavit Jensen Decl., # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Exhibit 8, # |

| | | |
|---|---|---|
| | | 12 Exhibit 9, # 13 Exhibit 10, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13, # 17 Exhibit 14, # 18 Exhibit 15, # 19 Exhibit 16, # 20 Exhibit 17, # 21 Exhibit 18, # 22 Exhibit 19, # 23 Exhibit 20, # 24 Exhibit 21, # 25 Exhibit 22, # 26 Exhibit 23, # 27 Exhibit 24, # 28 Exhibit 25)(Jensen, Travis) (Entered: 08/24/2020) |
| 08/24/2020 | 171 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document Fintiv's Sur−Sur−Reply ISO Motion for Leave to Amend Complaint, # 2 Sealed Document Waldrop Decl. ISO Fintiv's Sur−Sur−Reply, # 3 Sealed Document Exhibit A, # 4 Proposed Order Granting Fintiv's Motion for Leave to File Sealed Documents) (Tindel, Andy) (Entered: 08/24/2020) |
| 08/24/2020 | | Text Order GRANTING 171 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Fintiv's Unopposed Motion for Leave to File a Sealed Document. The Court GRANTS the motion. The Clerk's Office is directed to file Fintiv's Sur−Sur−Reply under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) (Entered: 08/24/2020) |
| 08/24/2020 | 172 | BRIEF by Fintiv, Inc.. (Attachments: # 1 Declaration of Ken Maliga, # 2 Delcaration of Jonathan K. Waldrop, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16)(Tindel, Andy) (Entered: 08/24/2020) |
| 08/24/2020 | 173 | SEALED Plaintiff's Sur−Sur−Reply Memorandum of Law in Support of Motion for Leave to File Third Amended Complaint for Patent Infringement (Attachments: # 1 Waldrop Declaration, # 2 Exhibit A) (td) (Entered: 08/25/2020) |
| 08/28/2020 | 174 | Minute Entry for proceedings held before Judge Alan D Albright: Markman Hearing held on 8/28/2020 in Waco. (Minute entry documents are not available electronically.) (Court Reporter Lily Reznik.)(lt) (Entered: 08/28/2020) |
| 09/01/2020 | 175 | Minute Entry for proceedings held before Judge Alan D Albright: Motion Hearing held on 9/1/2020 re 142 Motion for leave to File Sealed Document filed by Fintiv, Inc., 93 Motion to Dismiss for Failure to State a Claim filed by Apple Inc. (Minute entry documents are not available electronically.). (Court Reporter Lily Reznik.)(td) (Entered: 09/02/2020) |
| 09/04/2020 | 176 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document Fintiv's 2nd Supplemental Claim Construction Brief, # 2 Sealed Document Waldrop Decl. ISO Fintiv's 2nd Supplemental Claim Construction Brief, # 3 Sealed Document Exhibit 17, # 4 Sealed Document Exhibit 18, # 5 Sealed Document Exhibit 19, # 6 Sealed Document Exhibit 20, # 7 Proposed Order Granting Fintiv's Motion for Leave to File Documents Under Seal) (Tindel, Andy) (Entered: 09/04/2020) |
| 09/04/2020 | 177 | BRIEF by Apple Inc.. (Attachments: # 1 Affidavit T. Jensen Declaration, # 2 Exhibit 26, # 3 Exhibit 27, # 4 Exhibit 28, # 5 Exhibit 29)(Jensen, Travis) (Entered: 09/04/2020) |
| 09/05/2020 | | Text Order GRANTING 176 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Before the Court is Plaintiff's Motion for Leave to File a Sealed Document. The Court GRANTS the motion. The Clerk's Office is directed to file Fintiv's Supplemental Claim Construction Brief Regarding the Term "[A/The] Mobile Device" and associated exhibits under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) |

| | | (Entered: 09/05/2020) |
|---|---|---|
| 09/08/2020 | 178 | SEALED PLAINTIFF FINTIV, INC.S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF REGARDING THE TERM [A/THE] MOBILE DEVICE filed (Attachments: # 1 Waldrop Declaration, # 2 Exhibit 17, # 3 Exhibit 18, # 4 Exhibit 19, # 5 Exhibit 20) (td) (Entered: 09/08/2020) |
| 09/10/2020 | 179 | ANSWER to 92 Amended Complaint, with Jury Demand by Apple Inc..(Frost, Claudia) (Entered: 09/10/2020) |
| 09/25/2020 | 180 | ORDER, Telephonic Discovery Hearing set for 9/29/2020 02:00 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 09/25/2020) |
| 09/25/2020 | 181 | ORDER, Telephone Conference set for 10/6/2020 02:00 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 09/25/2020) |
| 09/29/2020 | 182 | Minute Entry for proceedings held before Judge Alan D Albright: Telephonic Discovery Hearing held on 9/29/2020 (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 09/29/2020) |
| 09/29/2020 | 183 | Transcript filed of Proceedings held on 9−29−20, Proceedings Transcribed: Telephonic Discovery Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 10/20/2020, Redacted Transcript Deadline set for 10/30/2020, Release of Transcript Restriction set for 12/28/2020, (kd) (Entered: 09/29/2020) |
| 09/30/2020 | | **VACATED PER ORDER # 184** Text Order DENYING 93 Motion to Dismiss for Failure to State a Claim entered by Judge Alan D Albright. As described in ECF No. 175 and at the hearing, the Court DENIES this motion. (This is a text−only entry generated by the court. There is no document associated with this entry.) (jy) Modified on 10/1/2020 (td). (Entered: 09/30/2020) |
| 09/30/2020 | 184 | ORDER re TEXT Order on Motion to Dismiss. ORDERED that the Court's September 30, 2020 text order denying Apples Motion to Dismiss is VACATED.FURTHER ORDERED that Apples Motion to Dismiss at ECF No. 93 is GRANTED. Signed by Judge Alan D Albright. (td) (Entered: 10/01/2020) |
| 10/16/2020 | 185 | ORDER, Markman Hearing set for 10/21/2020 03:15 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 10/16/2020) |
| 10/16/2020 | 186 | Opposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document, # 2 Sealed Document, # 3 Sealed Document, # 4 Sealed Document, # 5 Sealed Document, # 6 Sealed Document, # 7 Sealed Document, # 8 Sealed Document, # 9 Sealed Document, # 10 Sealed Document, # 11 Sealed Document, # 12 Sealed Document, # 13 Sealed Document, # 14 Sealed Document, # 15 Sealed Document, # 16 Sealed Document, # 17 Sealed Document, # 18 Sealed Document, # 19 Sealed Document) (Jensen, Travis) (Entered: 10/16/2020) |
| 10/21/2020 | 187 | Minute Entry for proceedings held before Judge Alan D Albright: Markman Hearing held on 10/21/2020 (Minute entry documents are not available electronically.). (Court |

| | | Reporter Kristie Davis.)(td) (Entered: 10/22/2020) |
|---|---|---|
| 10/22/2020 | 188 | Transcript filed of Proceedings held on 10−21−20, Proceedings Transcribed: Markman hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 11/12/2020, Redacted Transcript Deadline set for 11/23/2020, Release of Transcript Restriction set for 1/20/2021, (kd) (Entered: 10/22/2020) |
| 10/23/2020 | 189 | ORDER, Telephonic Discovery Hearing set for 10/29/2020 02:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 10/26/2020) |
| 10/28/2020 | 190 | ORDER, Telephonic Discovery Hearing reset for 11/2/2020 02:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 10/28/2020) |
| 10/30/2020 | 191 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document Fintiv's Opposition to Apple's Motion to Strike Amended Final Infringement Contentions, # 2 Sealed Document Waldrop Decl. ISO Fintiv's Opposition, # 3 Sealed Document Exhibit A, # 4 Sealed Document Exhibit B, # 5 Sealed Document Exhibit C, # 6 Sealed Document Exhibit D, # 7 Sealed Document Exhibit E, # 8 Sealed Document Exhibit F, # 9 Sealed Document Exhibit G, # 10 Sealed Document Exhibit H, # 11 Sealed Document Exhibit I, # 12 Sealed Document Exhibit J, # 13 Sealed Document Exhibit K, # 14 Sealed Document Exhibit L, # 15 Sealed Document Exhibit M, # 16 Sealed Document Exhibit N, # 17 Sealed Document Exhibit O, # 18 Sealed Document Exhibit P, # 19 Proposed Order Denying Apple's Motion to Strike Fintiv's Amended Final Infringement Contentions, # 20 Proposed Order Granting Fintiv's Motion for Leave to File Documents Under Seal) (Tindel, Andy) (Entered: 10/30/2020) |
| 11/02/2020 | 192 | Minute Entry for proceedings held before Judge Alan D Albright: Telephonic Discovery Hearing held on 11/2/2020 (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 11/02/2020) |
| 11/02/2020 | | Text Order GRANTING 191 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. ORDERED that Fintiv's Opposition to Defendant Apple Inc.'s Motion to Strike Fintiv's Amended Final Infringement Contentions and associated exhibits are to be filed under seal by the clerk of the court. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 11/02/2020) |
| 11/02/2020 | 193 | SEALED OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO STRIKE AMENDED FINAL INFRINGEMENT CONTENTIONS (Attachments: # 1 Waldrop Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Proposed Order) (td) (Entered: 11/03/2020) |
| 11/03/2020 | 194 | Transcript filed of Proceedings held on 11−2−20, Proceedings Transcribed: Telephonic Discovery Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased |

32

| | | from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 11/24/2020, Redacted Transcript Deadline set for 12/4/2020, Release of Transcript Restriction set for 2/1/2021, (kd) (Entered: 11/03/2020) |
|---|---|---|
| 11/05/2020 | 195 | ORDER, Telephone Conference set for 11/5/2020 02:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (td) (Entered: 11/05/2020) |
| 11/05/2020 | 196 | MOTION to Appear Pro Hac Vice by Andy W. Tindel *for Shelley Ivan* ( Filing fee $ 100 receipt number 0542−14151223) by on behalf of Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Tindel, Andy) (Entered: 11/05/2020) |
| 11/05/2020 | 197 | Minute Entry for proceedings held before Judge Alan D Albright: Telephonic Discovery Hearing held on 11/5/2020 (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(td) (Entered: 11/05/2020) |
| 11/06/2020 | 198 | ORDER GRANTING 196 Motion by Shelley Ivan to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (td) (Entered: 11/06/2020) |
| 11/06/2020 | 199 | Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document, # 2 Sealed Document) (Jensen, Travis) (Entered: 11/06/2020) |
| 11/09/2020 | | Text Order GRANTING 199 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 11/09/2020) |
| 11/09/2020 | 200 | Sealed REPLY IN SUPPORT OF APPLE INC.'S MOTION TO STRIKE FINTIV'S AMENDED FINAL INFRINGEMENT CONTENTIONS. (td) (Entered: 11/09/2020) |
| 11/12/2020 | 201 | Transcript filed of Proceedings held on 11−5−20, Proceedings Transcribed: Telephonic Hearing. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 12/3/2020, Redacted Transcript Deadline set for 12/14/2020, Release of Transcript Restriction set for 2/10/2021, (kd) (Entered: 11/12/2020) |
| 11/13/2020 | 202 | Transcript filed of Proceedings held on August 28, 2020, Proceedings Transcribed: Videoconference Markman Hearing. Court Reporter/Transcriber: Lily I. Reznik, Telephone number: 512−391−8792 or Lily_Reznik@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due |

| | | 12/4/2020, Redacted Transcript Deadline set for 12/14/2020, Release of Transcript Restriction set for 2/11/2021, (lr) (Entered: 11/13/2020) |
|---|---|---|
| 11/13/2020 | 203 | Transcript filed of Proceedings held on September 1, 2020, Proceedings Transcribed: Videoconference Motion Hearing. Court Reporter/Transcriber: Lily I. Reznik, Telephone number: 512−391−8792 or Lily_Reznik@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 12/4/2020, Redacted Transcript Deadline set for 12/14/2020, Release of Transcript Restriction set for 2/11/2021, (lr) (Entered: 11/13/2020) |
| 11/20/2020 | | Text Order MOOTING 142 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 11/20/2020) |
| 12/08/2020 | 204 | Joint MOTION *to Amend Scheduling Order* by Apple Inc.. (Attachments: # 1 Proposed Order)(Ravel, J.) (Entered: 12/08/2020) |
| 12/15/2020 | 205 | SCHEDULING ORDER: Pretrial Conference set for 7/30/2021 09:00 AM before Judge Alan D Albright, Jury Selection set for 8/6/2021 09:00AM before Judge Alan D Albright, Jury Trial set for 8/9/2021 09:00 AM before Judge Alan D Albright, Fact Discovery due by 12/18/2020, Expert Discovery due by 4/2/2021, Motions due by 4/22/2021. Signed by Judge Alan D Albright. (td) (Entered: 12/15/2020) |
| 12/15/2020 | | Set Hearings: Pretrial Conference set for 7/30/2021 09:00 AM before Judge Alan D Albright and Jury Selection / Trial set for 8/9/2021 09:00 AM before Judge Alan D Albright. (klw) (Entered: 12/16/2020) |
| 01/14/2021 | 206 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Sealed Document, # 2 Sealed Document, # 3 Sealed Document, # 4 Sealed Document, # 5 Sealed Document, # 6 Sealed Document, # 7 Sealed Document, # 8 Sealed Document, # 9 Sealed Document, # 10 Sealed Document, # 11 Sealed Document, # 12 Sealed Document, # 13 Sealed Document, # 14 Sealed Document, # 15 Sealed Document)(Quilici, Jeffrey) (Entered: 01/14/2021) |
| 01/20/2021 | | Text Order GRANTING 206 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Apples Exhibits A through H to Its Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement are hereby accepted for filing and entered into the record under seal. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 01/20/2021) |
| 01/20/2021 | | Text Order GRANTING 186 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. Apple's Motion to Strike Fintiv's Amended Final Infringement Contentions, the Declaration of Travis Jensen in Support of Apple's Motion to Strike Fintiv's Amended Final Infringement Contentions, and Exhibits 1−15 are hereby accepted for filing and entered into the record under seal. (This is a text−only entry by the court. There is no document associated with this entry.) (re) (Entered: 01/20/2021) |
| 01/20/2021 | 207 | Sealed Motion filed. Apple Inc's Opposed Motion to Strike Fintiv's Amended Final Infringement Contentions (Attachments: # 1 Declaration of Travis Jensen, # 2 Exhibit |

34

| | | |
|---|---|---|
| | | 1, # <u>3</u> Exhibit 2, # <u>4</u> Exhibit 3, # <u>5</u> Exhibit 4, # <u>6</u> Exhibit 5, # <u>7</u> Exhibit 6, # <u>8</u> Exhibit 7, # <u>9</u> Exhibit 8, # <u>10</u> Exhibit 9, # <u>11</u> Exhibit 10, # <u>12</u> Exhibit 11, # <u>13</u> Exhibit 12, # <u>14</u> Exhibit 13, # <u>15</u> Exhibit 14, # <u>16</u> Exhibit 15, # <u>17</u> Proposed Order) (lt) (Entered: 01/20/2021) |
| 01/20/2021 | <u>208</u> | Sealed Motion filed. Apple Inc's Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement (Attachments: # <u>1</u> Proposed Order, # <u>2</u> Declaration of Jeffry T. Quilici, # <u>3</u> Exhibit A, # <u>4</u> Exhibit B, # <u>5</u> Exhibit C, # <u>6</u> Exhibit D, # <u>7</u> Exhibit E, # <u>8</u> Exhibit F, # <u>9</u> Exhibit G, # <u>10</u> Exhibit H, # <u>11</u> Exhibit I, # <u>12</u> Exhibit J, # <u>13</u> Exhibit K) (lt) (Entered: 01/20/2021) |
| 01/22/2021 | <u>209</u> | Unopposed MOTION for Extension of Time to File Response/Reply as to <u>208</u> Sealed Motion filed *Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement* by Fintiv, Inc.. (Attachments: # <u>1</u> Proposed Order)(Tindel, Andy) (Entered: 01/22/2021) |
| 01/25/2021 | | Text Order GRANTING <u>209</u> Motion for Extension of Time to File Response/Reply entered by Judge Alan D Albright. Plaintiff Fintiv, Inc. shall have up to and including February 8, 2021 in which to file a response to Apple's Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 01/25/2021) |
| 02/02/2021 | <u>210</u> | Joint MOTION to Amend/Correct <u>205</u> Scheduling Order, *by Apple, Inc. and* by Fintiv, Inc.. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Proposed Order − Agreed Amended Scheduling Order)(Tindel, Andy) Modified on 2/2/2021 (lt). (Entered: 02/02/2021) |
| 02/03/2021 | | Text Order GRANTING IN PART <u>210</u> Motion to Extend Scheduling Order Deadlines entered by Judge Alan D Albright. The Court hereby ORDERS that the deadline to serve export reports is extended to February 10, 2021. This Order shall not be construed as altering any other deadline. Aside from this seven−day extension of the deadline for serving expert reports, the Scheduling Order <u>204</u> entered on December 15, 2020 will remain in effect. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 02/03/2021) |
| 02/08/2021 | <u>211</u> | Sealed Document. Plaintiff Fintiv, Inc.'s Opposition To Apple Inc.'s <u>208</u> Motion For Judgment On The Pleadings As To Pre−Suit Indirect Infringement (Attachments: # <u>1</u> Sealed Document Plaintiff Fintiv, Inc.'s Opposition To Apple Inc.'s Motion For Judgment On The Pleadings As To Pre−Suit Indirect Infringement, # <u>2</u> Sealed Document Declaration of Jonathan Waldrop, # <u>3</u> Sealed Document Exhibit 1, # <u>4</u> Sealed Document Exhibit 2, # <u>5</u> Sealed Document Exhibit 3, # <u>6</u> Sealed Document Exhibit 4, # <u>7</u> Sealed Document Exhibit 5, # <u>8</u> Sealed Document Exhibit 6, # <u>9</u> Sealed Document Exhibit 7, # <u>10</u> Sealed Document Proposed Order Denying Defendant Apple Inc.s Motion For Judgment On The Pleadings As To Pre−Suit Indirect Infringement, # <u>11</u> Proposed Order) (Waldrop, Jonathan) Modified on 4/15/2021 to convert from Motion for Leave to File Under Seal to Sealed Document per chambers following Standing Order (lt). (Entered: 02/08/2021) |
| 02/11/2021 | <u>212</u> | AGREED AMENDED SCHEDULING ORDER: Expert Discovery due by 5/24/2021, Dispositive and *Daubert* Motions due by 6/14/2021, Final Pretrial Conference set for 9/24/2021, Jury Selection set for 10/1/2021, Jury Trial set for 10/4/2021. Signed by Judge Alan D Albright. (lt) (Entered: 02/11/2021) |
| 02/16/2021 | <u>213</u> | Unopposed MOTION for Extension of Time to File Response/Reply as to <u>208</u> Sealed Motion filed *a Reply in Support of its Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement* by Apple Inc.. (Attachments: # <u>1</u> Proposed |

| | | Order)(Ravel, J.) (Entered: 02/16/2021) |
|---|---|---|
| 02/19/2021 | 214 | REPLY to Response to Motion, filed by Apple Inc., re 208 Sealed Motion filed filed by Defendant Apple Inc. (Attachments: # 1 Affidavit J. Quilici Declaration, # 2 Exhibit M)(Frost, Claudia) (Entered: 02/19/2021) |
| 02/19/2021 | 215 | Sealed Document. *Exhibit L to Apple Inc's Reply in Support of its Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement* (Attachments: # 1 Sealed Document) (Frost, Claudia) Modified on 2/22/2021 (lt). (Entered: 02/19/2021) |
| 02/22/2021 | | Text Order GRANTING 213 Motion for Extension of Time to File Response/Reply entered by Judge Alan D Albright. It is ORDERED that Defendant Apple Inc.'s motion is GRANTED, and Defendants deadline to file a reply in support of its Motion for Judgment on the Pleadings as to Pre−Suit Indirect Infringement is hereby extended through and including February 19, 2021. Accordingly, the reply was timely filed. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 02/22/2021) |
| 02/24/2021 | 216 | ORDER RESETTING Jury Trial for 10/4/2021 09:00 AM before Judge Alan D Albright. Signed by Judge Alan D Albright. (bot1) (Entered: 02/25/2021) |
| 03/10/2021 | 217 | AMENDED ORDER RESETTING Jury Trial for 10/4/2021 at 09:00 AM before Judge Alan D Albright. Signed by Judge Alan D Albright. (lt) (Entered: 03/10/2021) |
| 03/22/2021 | 218 | Sealed Motion. Fintiv's Motion for Leave to Amend Infringement Contentions (Attachments: # 1 Sealed Document Fintiv's Motion for Leave to Amend Infringement Contentions, # 2 Sealed Document Waldrop Decl. ISO Fintiv's Motion for Leave to Amend Infringement Contentions, # 3 Sealed Document Exhibit A (1 of 2), # 4 Sealed Document Exhibit A (2 of 2), # 5 Sealed Document Exhibit B, # 6 Sealed Document Exhibit F, # 7 Sealed Document Exhibit G, # 8 Sealed Document Exhibit H, # 9 Sealed Document Exhibit I, # 10 Sealed Document Exhibit J, # 11 Sealed Document Exhibit K, # 12 Sealed Document Exhibit L, # 13 Proposed Order Granting Fintiv's Motion for Leave to Amend Infringement Contentions, # 14 Proposed Order Granting Fintiv's Motion for Leave to File Sealed Documents) (Tindel, Andy) Modified on 3/22/2021 (lt). (Entered: 03/22/2021) |
| 03/22/2021 | 219 | ATTACHMENT *Exhibit C* to 218 Unopposed Motion for leave to File Sealed Document by Fintiv, Inc.. (Attachments: # 1 Exhibit D, # 2 Exhibit E)(Tindel, Andy) (Entered: 03/22/2021) |
| 03/22/2021 | 220 | DEFICIENCY NOTICE: re 219 Attachment (lt) (Entered: 03/22/2021) |
| 03/22/2021 | 221 | Corrected Submission of Exhibits C, D and E to 218 Sealed Motion by Fintiv, Inc.. (Attachments: # 1 Exhibit C, # 2 Exhibit D, # 3 Exhibit E)(Tindel, Andy) Modified on 3/22/2021 (lt). (Entered: 03/22/2021) |
| 03/24/2021 | 222 | ORDER Setting Zoom Motion Hearing for 4/8/2021 02:00 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (bot2) (Entered: 03/24/2021) |
| 03/29/2021 | 223 | Unopposed MOTION to Withdraw as Attorney by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Mann, J.) (Entered: 03/29/2021) |
| 03/29/2021 | 224 | Unopposed MOTION for Extension of Time to File Response/Reply as to 218 Sealed Motion by Apple Inc.. (Attachments: # 1 Proposed Order)(Quilici, Jeffrey) (Entered: 03/29/2021) |

| 04/02/2021 | 225 | Sealed Document: *Apple Inc.'s Opposition to Fintiv, Inc.'s Motion for Leave to Amend Infringement Contentions* of 218 Sealed Motion by Apple Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 6, # 4 Exhibit 7, # 5 Exhibit 9, # 6 Exhibit 10) (Quilici, Jeffrey) (Entered: 04/02/2021) |
|---|---|---|
| 04/02/2021 | 226 | ATTACHMENT *Nonconfidential Exhibits to Apple Inc.'s Opposition to Fintiv, Inc.'s Motion for Leave to Amend Infringement Contentions* to 225 Sealed Document, by Apple Inc.. (Attachments: # 1 Exhibit 3, # 2 Exhibit 4, # 3 Exhibit 5, # 4 Exhibit 8, # 5 Exhibit 11)(Quilici, Jeffrey) (Entered: 04/02/2021) |
| 04/06/2021 | 227 | Unopposed MOTION for Extension of Time to File Response/Reply as to 218 Sealed Motion / *Plaintiff Fintiv, Inc.s Unopposed Motion For Extension Of Time To File A Reply In Support Of Its Motion For Leave To Amend Infringement Contentions* by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Waldrop, Jonathan) (Entered: 04/06/2021) |
| 04/09/2021 | | Text Order GRANTING 223 Motion to Withdraw as Attorney entered by Judge Alan D Albright. Before the Court is the unopposed motion of Movants − J. Mark Mann, Andy Tindel and G. Blake Thompson of Mann | Tindel | Thompson − to allow them to withdraw as Plaintiff's attorneys. After considering the motion to withdraw, the Court GRANTS the motion and ORDERS that they be withdrawn as local counsel for Plaintiff Fintiv, Inc., and be removed from the official service list in this case. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 04/09/2021) |
| 04/09/2021 | | Text Order GRANTING 224 Motion for Extension of Time to File Response/Reply entered by Judge Alan D Albright. Having reviewed the Motion, this Court concludes that the Motion should be GRANTED. Accordingly, Apple's deadline to file its response to Fintiv's Motion for Leave to Amend Infringement Contentions was April 2, 2021, and the Response was timely filed. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 04/09/2021) |
| 04/09/2021 | | Text Order GRANTING 227 Motion for Extension of Time to File Response/Reply entered by Judge Alan D Albright. It is hereby ORDERED that Plaintiff Fintiv, Inc.'s motion is GRANTED, and Plaintiff's deadline to file its reply in support of its Motion for Leave to Amend Infringement Contentions is hereby extended through and including April 13, 2021. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 04/09/2021) |
| 04/09/2021 | 228 | MOTION *For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports* by Fintiv, Inc.. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Proposed Order)(Waldrop, Jonathan) (Additional attachment(s) added on 4/13/2021: # 6 Sealed Document Exhibit 1 Filed Under Seal) (lt). (Entered: 04/09/2021) |
| 04/09/2021 | 229 | Unopposed Motion for leave to File Sealed Document (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Waldrop, Jonathan) (Entered: 04/09/2021) |
| 04/13/2021 | | Text Order GRANTING 229 Motion for Leave to File Sealed Document entered by Judge Alan D Albright. It is hereby ORDERED that Exhibit 1 to the Declaration of Jonathan K. Waldrop In Support of Plaintiff Fintiv, Inc.'s Motion for a Ruling That Certain Discovery Material Is Not Entitled to Confidentiality Protection Under the Agreed Protective Order and For Leave to File Supplemental Expert Reports is to be filed under seal by the clerk of the court. (This is a text−only entry generated by the |

| | | court. There is no document associated with this entry.) (re) (Entered: 04/13/2021) |
|---|---|---|
| 04/13/2021 | 230 | Sealed Document Filed. Plaintiff Fintiv, Inc.'s Reply In Support Of its 218 Motion For Leave To Amend Infringement Contentions (Attachments: # 1 Sealed Document Plaintiff Fintiv, Inc.'s Reply In Support Of Motion For Leave To Amend Infringement Contentions, # 2 Sealed Document Declaration of Jonathan Waldrop, # 3 Sealed Document Ex. A, # 4 Sealed Document Ex. B, # 5 Sealed Document Ex. C, # 6 Sealed Document Ex. D, # 7 Sealed Document Ex. E, # 8 Proposed Order) (Waldrop, Jonathan) Modified on 4/14/2021 per chambers following Standing Order (lt). (Entered: 04/13/2021) |
| 04/16/2021 | 231 | Response in Opposition to Motion, filed by Apple Inc., re 228 MOTION *For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports* filed by Plaintiff Fintiv, Inc. (Attachments: # 1 Affidavit Decl. − Lynne J. Weber, Ph.D., # 2 Affidavit Decl. − Jeff Quilici, # 3 Exhibit A)(Quilici, Jeffrey) (Entered: 04/16/2021) |
| 04/16/2021 | 232 | NOTICE of Attorney Appearance by John Michael Guaragna on behalf of Apple Inc.. Attorney John Michael Guaragna added to party Apple Inc.(pty:dft) (Guaragna, John) (Entered: 04/16/2021) |
| 04/16/2021 | 233 | MOTION to Appear Pro Hac Vice by John Michael Guaragna *for Sean C. Cunningham* ( Filing fee $ 100 receipt number 0542−14709621) by on behalf of Apple Inc.. (Guaragna, John) (Entered: 04/16/2021) |
| 04/16/2021 | 234 | MOTION to Appear Pro Hac Vice by John Michael Guaragna *for Mark Fowler* ( Filing fee $ 100 receipt number 0542−14709633) by on behalf of Apple Inc.. (Guaragna, John) (Entered: 04/16/2021) |
| 04/16/2021 | 235 | MOTION to Appear Pro Hac Vice by John Michael Guaragna *for Erin P. Gibson* ( Filing fee $ 100 receipt number 0542−14709645) by on behalf of Apple Inc.. (Guaragna, John) (Entered: 04/16/2021) |
| 04/16/2021 | 236 | MOTION to Appear Pro Hac Vice by John Michael Guaragna *for Stephanie Lim* ( Filing fee $ 100 receipt number 0542−14709656) by on behalf of Apple Inc.. (Guaragna, John) (Entered: 04/16/2021) |
| 04/16/2021 | 237 | MOTION to Appear Pro Hac Vice by John Michael Guaragna *for Peter Maggiore* ( Filing fee $ 100 receipt number 0542−14709662) by on behalf of Apple Inc.. (Guaragna, John) (Entered: 04/16/2021) |
| 04/16/2021 | 238 | MOTION to Appear Pro Hac Vice by John Michael Guaragna *for Paul R. Steadman* ( Filing fee $ 100 receipt number 0542−14709667) by on behalf of Apple Inc.. (Guaragna, John) (Entered: 04/16/2021) |
| 04/19/2021 | 239 | ORDER GRANTING 233 Motion for Sean C. Cunningham to Appear Pro Hac Vice on behalf of Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (lt) (Entered: 04/19/2021) |
| 04/19/2021 | 240 | ORDER GRANTING 234 Motion for Mark D. Fowler to Appear Pro Hac Vice on behalf of Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed |

| | | by Judge Alan D Albright. (lt) (Entered: 04/19/2021) |
|---|---|---|
| 04/19/2021 | 241 | ORDER GRANTING 235 Motion for Erin P. Gibson to Appear Pro Hac Vice on behalf of Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (lt) (Entered: 04/19/2021) |
| 04/19/2021 | 242 | ORDER GRANTING 236 Motion for Stephanie Lim to Appear Pro Hac Vice on behalf of Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (lt) (Entered: 04/19/2021) |
| 04/19/2021 | 243 | ORDER GRANTING 237 Motion for Peter Maggiore to Appear Pro Hac Vice on behalf of Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (lt) (Entered: 04/19/2021) |
| 04/19/2021 | 244 | ORDER GRANTING 238 Motion for Paul R. Steadman to Appear Pro Hac Vice on behalf of Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (lt) (Entered: 04/19/2021) |
| 04/19/2021 | 245 | ORDER Setting Motion Hearing by Zoom for 4/30/2021 at 01:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (lt) (Entered: 04/19/2021) |
| 04/19/2021 | 246 | MOTION to Appear Pro Hac Vice by John Michael Guaragna *for Zachary Loney* ( Filing fee $ 100 receipt number 0542−14713176) by on behalf of Apple Inc.. (Guaragna, John) (Entered: 04/19/2021) |
| 04/20/2021 | 247 | ORDER GRANTING 246 Motion for Zachary Loney to Appear Pro Hac Vice on behalf of Apple Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (lt) (Entered: 04/20/2021) |
| 04/21/2021 | 248 | NOTICE of Attorney Appearance by Raymond W Mort, III on behalf of Fintiv, Inc.. Attorney Raymond W Mort, III added to party Fintiv, Inc.(pty:pla) (Mort, Raymond) (Entered: 04/21/2021) |
| 04/23/2021 | 249 | Sealed Document: Plaintiff Fintiv, Inc.'s Reply In Support Of Motion For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports of 228 MOTION *For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports* by Fintiv, Inc. (Attachments: # 1 Proposed Order) (Waldrop, Jonathan) (Entered: 04/23/2021) |
| 04/23/2021 | 250 | Declaration Of Jonathan K. Waldrop In Support Of Plaintiff Fintiv, Inc.'s Reply In Support Of 228 Motion For A Ruling That Certain Discovery Material Is Not Entitled To Confidentiality Protection Under The Agreed Protective Order And For Leave To File Supplemental Expert Reports. (Attachments: # 1 Exhibit 1)(Waldrop, Jonathan) |

| | | Modified on 4/23/2021 (lt). (Entered: 04/23/2021) |
|---|---|---|
| 04/23/2021 | 251 | Unopposed MOTION *for Extension of Time to Serve Rebuttal Expert Reports* by Apple Inc.. (Attachments: # 1 Proposed Order)(Guaragna, John) (Entered: 04/23/2021) |
| 04/29/2021 | | Text Order GRANTING 251 Motion entered by Judge Alan D Albright. It is hereby ORDERED that Defendant's Unopposed Motion for Extension of Time toServe Rebuttal Expert Reports is GRANTED. The parties will have through May 6, 2021 to serve their Rebuttal Expert Reports. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 04/29/2021) |
| 04/30/2021 | 252 | Minute Entry for proceedings held before Judge Alan D Albright: Motion Hearing held on 4/30/2021. (Minute entry documents are not available electronically.) (Court Reporter Lily Reznik.)(lt) (Entered: 04/30/2021) |
| 05/03/2021 | 253 | ORDER that this action is no longer automatically assigned to Magistrate Judge Andrew Austin for future consents and/or referral matters. Signed by Judge Alan D Albright. (lt) (Entered: 05/03/2021) |
| 05/12/2021 | 254 | Minute Entry for proceedings held before Judge Alan D Albright: Discovery Hearing held on 5/12/2021. (Minute entry documents are not available electronically.) (Court Reporter Lily Reznik.)(lt) (Entered: 05/12/2021) |
| 05/18/2021 | 255 | Unopposed MOTION to Withdraw as Attorney by Apple Inc.. (Attachments: # 1 Proposed Order)(Frost, Claudia) (Entered: 05/18/2021) |
| 05/25/2021 | 256 | Unopposed MOTION to Extend Scheduling Order Deadlines by Apple Inc.. (Attachments: # 1 Proposed Order)(Guaragna, John) (Entered: 05/25/2021) |
| 06/04/2021 | 257 | Unopposed MOTION to Extend Scheduling Order Deadlines by Apple Inc.. (Attachments: # 1 Proposed Order)(Guaragna, John) (Entered: 06/04/2021) |
| 06/10/2021 | | Text Order GRANTING 255 Motion to Withdraw as Attorney entered by Judge Alan D Albright. After considering the motion to withdraw, the Court GRANTS the motion and ORDERS that they be withdrawn as counsel for Defendant Apple Inc. and be removed from the official service list in this case. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 06/10/2021) |
| 06/10/2021 | 258 | ORDER GRANTING 257 Unopposed Motion to Extend Certain Deadlines Dispositive and *Daubert* Motions due by 6/28/2021. Signed by Judge Alan D Albright. (lt) (Entered: 06/10/2021) |
| 06/15/2021 | 259 | Transcript filed of Proceedings held on April 30, 2021, Proceedings Transcribed: Videoconference Motion Hearing. Court Reporter/Transcriber: Lily I. Reznik, Telephone number: 512−391−8792 or Lily_Reznik@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 7/6/2021, Redacted Transcript Deadline set for 7/16/2021, Release of Transcript Restriction set for 9/13/2021, (lr) (Entered: 06/15/2021) |

| 06/15/2021 | 260 | Transcript filed of Proceedings held on May 12, 2021, Proceedings Transcribed: Videoconference Discovery Hearing. Court Reporter/Transcriber: Lily I. Reznik, Telephone number: 512−391−8792 or Lily_Reznik@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 7/6/2021, Redacted Transcript Deadline set for 7/16/2021, Release of Transcript Restriction set for 9/13/2021, (lr) (Entered: 06/15/2021) |
|---|---|---|
| 06/16/2021 | 261 | Standing Order regarding Scheduling Order. Signed by Judge Alan D Albright. (Entered: 06/25/2021) |
| 06/28/2021 | 262 | Sealed Motion Plaintiff Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 263 | Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 264 | Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. (Attachments: # 1 Cunningham Decl., # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Proposed Order) (Guaragna, John) (Entered: 06/28/2021) |
| 06/28/2021 | 265 | ATTACHMENT *Exhibit 4* to 264 Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. by Apple Inc.. (Attachments: # 1 Exhibit 4)(Guaragna, John) (Entered: 06/28/2021) |
| 06/28/2021 | 266 | Sealed Motion Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 267 | Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 268 | Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report Regarding Damages Of W. Christopher Bakewell by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |

| 06/28/2021 | 269 | Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
|---|---|---|
| 06/28/2021 | 270 | Sealed Motion for Summary Judgment of Noninfringement by Apple Inc. (Attachments: # 1 Cunningham Decl., # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) (Guaragna, John) (Entered: 06/28/2021) |
| 06/28/2021 | 271 | Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 272 | Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 273 | ATTACHMENT *Exhibits 1, 9, 10, 11* to 270 Sealed Motion for Summary Judgment of Noninfringement by Apple Inc. by Apple Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 9, # 3 Exhibit 10, # 4 Exhibit 11)(Guaragna, John) (Entered: 06/28/2021) |
| 06/28/2021 | 274 | Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12 Part 1 of 4, # 14 Exhibit 12 Part 2 of 4, # 15 Exhibit 12 Part 3 of 4, # 16 Exhibit 12 Part 4 of 4, # 17 Exhibit 13, # 18 Exhibit 14, # 19 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 275 | Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude The Disclosure And Declaration And Testimony Of Ahmer Khan by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 276 | Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of Dr. Lynne Weber's Opening Expert Report And W. Christopher Bakewell's Opening Expert Report by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 277 | Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/28/2021 | 278 | |

42

| | | Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
|---|---|---|
| 06/28/2021 | 279 | Sealed Motion Plaintiff Fintiv, Inc.'s Omnibus Motion For Partial Summary Judgment by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Proposed Order) (Waldrop, Jonathan) (Entered: 06/28/2021) |
| 06/30/2021 | 280 | CORRECTED Sealed Motion / Plaintiff Fintiv, Inc.'s Corrected Omnibus Motion for Partial Summary Judgment (Dkt. 279) by Fintiv, Inc. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Proposed Order) (Waldrop, Jonathan) (Entered: 06/30/2021) |
| 07/02/2021 | 281 | MOTION to Strike / Plaintiff Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan (PUBLIC VERSION of Dkt. 262) by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 2, # 3 Exhibit 6, # 4 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 282 | MOTION to Strike / Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus (PUBLIC VERSION of Dkt. 263) by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 2, # 3 Exhibit 6, # 4 Exhibit 8, # 5 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 283 | MOTION to Strike / Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus (PUBLIC VERSION of Dkt. 266) by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 10, # 3 Exhibit 13, # 4 Exhibit 16, # 5 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 284 | MOTION to Exclude / Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus (PUBLIC VERSION of Dkt. 267) by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 285 | MOTION to Strike / Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report Regarding Damages Of W. Christopher Bakewell (PUBLIC VERSION of Dkt. 268) by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 286 | MOTION to Strike / Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, PH.D (PUBLIC VERSION of Dkt. 269) by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 |

43

| | | Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
|---|---|---|
| 07/02/2021 | 287 | MOTION to Strike / *Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell (PUBLIC VERSION of Dkt. 271)* by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 7, # 3 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 288 | MOTION to Strike / *Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D (PUBLIC VERSION of Dkt. 272)* by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 289 | MOTION to Exclude / *Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus (PUBLIC VERSION of Dkt. 274)* by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 290 | MOTION to Exclude / *Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude The Disclosure And Declaration And Testimony Of Ahmer Khan (PUBLIC VERSION of Dkt. 275)* by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 5, # 3 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 291 | MOTION to Exclude / *Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of Dr. Lynne Weber's Opening Expert Report And W. Christopher Bakewell's Opening Expert Report (PUBLIC VERSION of Dkt. 276)* by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 4, # 3 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 292 | MOTION to Exclude / *Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell (PUBLIC VERSION of Dkt. 277)* by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 293 | MOTION to Exclude / *Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D (PUBLIC VERSION of Dkt. 278)* by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/02/2021 | 294 | MOTION for Partial Summary Judgment / *Plaintiff Fintiv, Inc.'s Corrected Omnibus Motion for Partial Summary Judgment (PUBLIC VERSION of Dkt. 280)* by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 11, # 3 Exhibit 12, # 4 Proposed Order)(Waldrop, Jonathan) (Entered: 07/02/2021) |
| 07/09/2021 | 295 | Redacted Copy *Public Version* of 264 Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. by Apple Inc.. (Guaragna, John) (Entered: 07/09/2021) |
| 07/09/2021 | 296 | Redacted Copy *Public Version* of 270 Sealed Motion for Summary Judgment of Noninfringement by Apple Inc. by Apple Inc.. (Guaragna, John) (Entered: 07/09/2021) |
| 07/22/2021 | 297 | Unopposed MOTION for Extension of Time to File Response/Reply *to Extend Certain Deadlines* by Fintiv, Inc.. (Attachments: # 1 Proposed Order Granting Unopposed Motion for Extension of Time to Extend Certain Deadlines)(Waldrop, Jonathan) Modified on 7/22/2021 (lt). Modified on 8/16/2021 (lt). (Entered: |

| | | 07/22/2021) |
|---|---|---|
| 07/23/2021 | 298 | ORDER Appointing Technical Advisor. Signed by Judge Alan D Albright. (lt) (Entered: 07/23/2021) |
| 07/27/2021 | 299 | Sealed Document: Plaintiff Fintiv, Inc.s Opposition To Defendant Apple Inc.s Motion To Exclude The Opinions Of Fintivs Damages Expert Roy Weinstein of 264 Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Proposed Order) (Waldrop, Jonathan) (Entered: 07/27/2021) |
| 07/27/2021 | 300 | Sealed Document: Plaintiff Fintiv, Inc.s Opposition To Defendant Apple Inc.s Motion For Summary Judgment of 270 Sealed Motion for Summary Judgment of Noninfringement by Apple Inc. by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Proposed Order) (Waldrop, Jonathan) (Entered: 07/27/2021) |
| 07/27/2021 | 301 | Sealed Document: Apple Inc.'s Opposition to Motion to Strike of 262 Sealed Motion Plaintiff Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | 302 | Sealed Document: Apple Inc.'s Opposition to Daubert Motion of 267 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | 303 | Sealed Document: Apple Inc.'s Opposition to Daubert Motion to Exclude of 275 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude The Disclosure And Declaration And Testimony Of Ahmer Khan by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | 304 | Sealed Document: Apple Inc.'s Opposition to Daubert Motion to Exclude of 276 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of Dr. Lynne Weber's Opening Expert Report And W. Christopher Bakewell's Opening Expert Report by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | 305 | Sealed Document: Apple Inc.'s Opposition to Moton to Strke and Exclude of 266 Sealed Motion Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | 306 | Sealed Document: Apple Inc.'s Opposition to Motion to Exclude of 274 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | 307 | |

45

| | | |
|---|---|---|
| | | Sealed Document: Apple Inc.'s Opposition to Motion to Strike and Exclude of <u>269</u> Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | <u>308</u> | Sealed Document: Apple Inc.'s Opposition to Motion to Strike and Exclude of <u>272</u> Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | <u>309</u> | Sealed Document: Apple Inc.'s Opposition to Daubert Motion of <u>278</u> Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | <u>310</u> | Sealed Document: Apple Inc.'s Opposition to Daubert Motion of <u>277</u> Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | <u>311</u> | Sealed Document: Apple Inc.'s Opposition to Motion to Strike of <u>268</u> Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report Regarding Damages Of W. Christopher Bakewell by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | <u>312</u> | Sealed Document: Apple Inc.'s Opposition to Corrected Omnibus Motion of <u>280</u> CORRECTED Sealed Motion / Plaintiff Fintiv, Inc.'s Corrected Omnibus Motion for Partial Summary Judgment (Dkt. 279) by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | <u>313</u> | Sealed Document: Apple Inc.'s Opposition to Motion to Strike of <u>271</u> Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | <u>314</u> | Sealed Document: Apple Inc.'s Opposition to Motion to Strike of <u>263</u> Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 07/27/2021) |
| 07/27/2021 | <u>315</u> | Sealed Document: Appendix of Exhibits of <u>314</u> Sealed Document, <u>301</u> Sealed Document, <u>303</u> Sealed Document, <u>305</u> Sealed Document, <u>306</u> Sealed Document, <u>313</u> Sealed Document, <u>302</u> Sealed Document, <u>311</u> Sealed Document, <u>312</u> Sealed Document, <u>308</u> Sealed Document, <u>310</u> Sealed Document, <u>309</u> Sealed Document, <u>304</u> Sealed Document, <u>307</u> Sealed Document, by Apple Inc. (Attachments: # <u>1</u> Cunningham Decl., # <u>2</u> Exhibit A, # <u>3</u> Exhibit B, # <u>4</u> Exhibit C, # <u>5</u> Exhibit D, # <u>6</u> Exhibit E, # <u>7</u> Exhibit F, # <u>8</u> Exhibit G, # <u>9</u> Exhibit H, # <u>10</u> Exhibit I, # <u>11</u> Exhibit J, # <u>12</u> Exhibit K, # <u>13</u> Exhibit L, # <u>14</u> Exhibit M, # <u>15</u> Exhibit N, # <u>16</u> Exhibit O, # <u>17</u> Exhibit P, # <u>18</u> Exhibit Q, # <u>19</u> Exhibit R, # <u>20</u> Exhibit S, # <u>21</u> Exhibit T, # <u>22</u> Exhibit U, # <u>23</u> Exhibit V, # <u>24</u> Exhibit W, # <u>25</u> Exhibit X, # <u>26</u> Exhibit Y, # <u>27</u> Exhibit Z, # <u>28</u> Exhibit AA, # <u>29</u> Exhibit BB, # <u>30</u> Exhibit CC, # <u>31</u> Exhibit DD, # <u>32</u> Exhibit EE, # <u>33</u> Exhibit FF, # <u>34</u> Exhibit GG, # <u>35</u> Exhibit HH, # <u>36</u> Exhibit II, # <u>37</u> Exhibit JJ, # <u>38</u> Exhibit KK, # <u>39</u> Exhibit LL, # <u>40</u> Exhibit MM, # <u>41</u> Exhibit NN, # <u>42</u> Exhibit OO, # <u>43</u> Exhibit PP, # <u>44</u> Exhibit QQ, # <u>45</u> Exhibit RR, # <u>46</u> Exhibit SS) (Guaragna, John) (Entered: 07/27/2021) |

| 08/03/2021 | 316 | Response in Opposition to Motion, filed by Fintiv, Inc., re 264 Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. filed by Defendant Apple Inc. / *Plaintiff Fintiv, Inc.'s Opposition to Defendant Apple Inc.'s Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein (PUBLIC VERSION of Dkt. 299)* (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 5, # 3 Exhibit 6, # 4 Exhibit 8, # 5 Exhibit 9, # 6 Exhibit 10, # 7 Exhibit 11, # 8 Proposed Order)(Waldrop, Jonathan) (Entered: 08/03/2021) |
| --- | --- | --- |
| 08/03/2021 | 317 | Response in Opposition to Motion, filed by Fintiv, Inc., re 270 Sealed Motion for Summary Judgment of Noninfringement by Apple Inc. filed by Defendant Apple Inc. / *Plaintiff Fintiv, Inc.'s Opposition to Defendant Apple Inc.'s Motion for Summary Judgment (PUBLIC VERSION of Dkt. 300)* (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 6, # 4 Exhibit 7, # 5 Exhibit 13, # 6 Exhibit 14, # 7 Exhibit 16, # 8 Exhibit 19, # 9 Exhibit 26, # 10 Proposed Order)(Waldrop, Jonathan) (Entered: 08/03/2021) |
| 08/13/2021 | 318 | Redacted Copy of 301 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 319 | Redacted Copy of 302 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 320 | Redacted Copy of 303 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 321 | Redacted Copy of 304 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 322 | Redacted Copy of 305 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 323 | Redacted Copy of 306 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 324 | Redacted Copy of 307 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 325 | Redacted Copy of 308 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 326 | Redacted Copy of 309 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 327 | Redacted Copy of 310 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 328 | Redacted Copy of 311 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 329 | Redacted Copy of 312 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 330 | Redacted Copy of 313 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |
| 08/13/2021 | 331 | Redacted Copy of 314 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/13/2021) |

| 08/13/2021 | 332 | ORDER GRANTING 297 Unopposed Motion for Extension of Time to Extend Certain Deadlines. Dispositive and *Daubert* Motions due by 8/17/2021. Signed by Judge Alan D Albright. (lt) (Entered: 08/16/2021) |
|---|---|---|
| 08/17/2021 | 333 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply In Further Support* of 262 Sealed Motion Plaintiff Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 334 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply in Further Support* of 263 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus by Fintiv, Inc. by Fintiv, Inc. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1) (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 335 | Sealed Document: Reply in Further Support of 266 Sealed Motion Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus by Fintiv, Inc. by Fintiv, Inc. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1) (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 336 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply In Further Support* of 267 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus by Fintiv, Inc. by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3) (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 337 | Sealed Document: Reply in Further Support of 275 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude The Disclosure And Declaration And Testimony Of Ahmer Khan by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 338 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply In Further Support* of 274 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus by Fintiv, Inc. by Fintiv, Inc. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3) (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 339 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply In Further Support* of 276 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of Dr. Lynne Weber's Opening Expert Report And W. Christopher Bakewell's Opening Expert Report by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 340 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply In Further Support* of 268 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report Regarding Damages Of W. Christopher Bakewell by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 341 | Sealed Document: Reply in Further Support of 269 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The March 22, 2021 Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 342 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply In Further Support* of 278 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Rebuttal |

| | | |
|---|---|---|
| | | Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 343 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply In Further Support* of 272 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Rebuttal Expert Report Of Lynne J. Weber, PH.D by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 344 | Sealed Document: *Plaintiff Fintiv, Inc.'s Reply In Further Support* of 271 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 345 | Sealed Document: Reply in Further Support of 277 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of W. Christopher Bakewell by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/17/2021 | 346 | NOTICE of Attorney Appearance by Harry Lee Gillam, Jr on behalf of Apple Inc.. Attorney Harry Lee Gillam, Jr added to party Apple Inc.(pty:dft) (Gillam, Harry) (Entered: 08/17/2021) |
| 08/17/2021 | 347 | Sealed Document: Reply In Support of 264 Sealed Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. by Apple Inc. (Attachments: # 1 Cunningham Decl., # 2 Exhibit 2, # 3 Exhibit 5) (Guaragna, John) (Entered: 08/17/2021) |
| 08/17/2021 | 348 | Sealed Document: Reply In Support of 270 Sealed Motion for Summary Judgment of Noninfringement by Apple Inc. by Apple Inc. (Guaragna, John) (Entered: 08/17/2021) |
| 08/17/2021 | 349 | Sealed Document: Plaintiff Fintiv, Inc.'s Reply Memorandum Of Law In Further Support Of Its Corrected Omnibus Motion For Partial Summary Judgment (Dkt. 280) of 280 CORRECTED Sealed Motion / Plaintiff Fintiv, Inc.'s Corrected Omnibus Motion for Partial Summary Judgment (Dkt. 279) by Fintiv, Inc. by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3) (Waldrop, Jonathan) (Entered: 08/17/2021) |
| 08/19/2021 | 350 | Sealed Motion in Limine by Apple Inc. (Attachments: # 1 Maggiore Decl., # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 10, # 9 Exhibit 15, # 10 Exhibit 16, # 11 Exhibit 17, # 12 Exhibit 18, # 13 Exhibit 19, # 14 Exhibit 20, # 15 Exhibit 22) (Guaragna, John) (Entered: 08/19/2021) |
| 08/19/2021 | 351 | Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 1 To Exclude References To Fintiv As A Non−Practicing Entity, Pejorative Description Of Fintiv, Prior Litigations And Investigations, Employment And Payroll Disputes Or Financial Status Of Fintiv Or Related Entities, Absence Of Inventors, Witness Testimony Instructed Not To Answer Or Not Provided, Its Agreements And Payments To Counsel, And Fintiv's Selection Of This Venue by Fintiv, Inc. (Attachments: # 1 Proposed Order) (Waldrop, Jonathan) (Entered: 08/19/2021) |
| 08/19/2021 | 352 | ATTACHMENT *(Non−Confidential Exhibits)* to 350 Sealed Motion in Limine by Apple Inc. by Apple Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 9, # 4 Exhibit 11, # 5 Exhibit 12, # 6 Exhibit 13, # 7 Exhibit 14, # 8 Exhibit 21)(Guaragna, John) (Entered: 08/19/2021) |
| 08/19/2021 | 353 | |

49

| | | |
|---|---|---|
| | | Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 2 To Exclude References To Certain Arguments Relating To Apples Reputation, Third− Party Witnesses, Damages Awards, And Prior Judicial Opinions by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Proposed Order) (Waldrop, Jonathan) (Entered: 08/19/2021) |
| 08/19/2021 | 354 | Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 3 To Exclude Certain References To Arguments Relating To Non−Infringement And Invalidity by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Proposed Order) (Waldrop, Jonathan) (Entered: 08/19/2021) |
| 08/23/2021 | 355 | Minute Entry for proceedings held before Judge Alan D Albright: Status Conference held on 8/23/2021. (Minute entry documents are not available electronically.) (Court Reporter Kristie Davis.)(lt) (Entered: 08/23/2021) |
| 08/24/2021 | 356 | Redacted Copy *(Public Version)* of 347 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 08/24/2021) |
| 08/24/2021 | 357 | Redacted Copy *(Public Version)* of 348 Sealed Document by Apple Inc.. (Guaragna, John) (Entered: 08/24/2021) |
| 08/24/2021 | 358 | Transcript filed of Proceedings held on 8−23−21, Proceedings Transcribed: Status Conference. Court Reporter/Transcriber: Kristie Davis, Telephone number: 254−340−6114. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 9/14/2021, Redacted Transcript Deadline set for 9/24/2021, Release of Transcript Restriction set for 11/22/2021, (kd) (Entered: 08/24/2021) |
| 08/24/2021 | 359 | Redacted Copy *PUBLIC VERSION* of 262 Sealed Motion Plaintiff Fintiv Inc.'s Motion To Strike The Rule 26 Disclosure And Declaration, And Exclude Portions Of The Testimony, Of Ahmer Khan by Fintiv, Inc. by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 360 | Redacted Copy *PUBLIC VERSION* of 263 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus by Fintiv, Inc. by Fintiv, Inc.. (Attachments: # 1 Declaration Of Jonathan K. Waldrop)(Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 361 | Redacted Copy *PUBLIC VERSION* of 266 Sealed Motion Fintiv, Inc.'s Motion To Strike And Exclude Portions Of The Opening Expert Report And Testimony Of Henry Dreifus by Fintiv, Inc. by Fintiv, Inc.. (Attachments: # 1 Declaration Of Jonathan K. Waldrop)(Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 362 | Redacted Copy *PUBLIC VERSION* of 267 Sealed Motion Plaintiff Fintiv, Inc.'s Daubert Motion To Exclude Portions Of The Expert Rebuttal Report And Testimony Of Henry Dreifus by Fintiv, Inc. by Fintiv, Inc.. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1)(Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 363 | |

| | | |
|---|---|---|
| | | Redacted Copy *PUBLIC VERSION* of 337 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 364 | Redacted Copy *PUBLIC VERSION* of 338 Sealed Document, by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan Waldrop)(Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 365 | Redacted Copy *PUBLIC VERSION* of 339 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 366 | Redacted Copy *PUBLIC VERSION* of 340 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 367 | Redacted Copy *PUBLIC VERSION* of 341 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 368 | Redacted Copy *PUBLIC VERSION* of 342 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 369 | Redacted Copy *PUBLIC VERSION* of 343 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 370 | Redacted Copy *PUBLIC VERSION* of 344 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 371 | Redacted Copy *PUBLIC VERSION* of 345 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/24/2021 | 372 | Redacted Copy *PUBLIC VERSION* of 349 Sealed Document, by Fintiv, Inc.. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 2)(Waldrop, Jonathan) (Entered: 08/24/2021) |
| 08/27/2021 | 373 | Unopposed Sealed Motion Plaintiff Fintiv, Inc.'s Unopposed Motion For Leave To File Sur−Reply To Defendant Apple Inc.'s Motion To Exclude The Opinions Of Fintiv's Damages Expert Roy Weinstein by Fintiv, Inc. (Attachments: # 1 Exhibit A, # 2 Declaration Of Roy Weinstein, # 3 Proposed Order) (Waldrop, Jonathan) (Entered: 08/27/2021) |
| 08/30/2021 | | Text Order GRANTING 373 Sealed Motion entered by Judge Alan D Albright. Having considered Plaintiff Fintiv, Inc.'s Unopposed Motion for Leave to File Sur−reply to Defendant Apple Inc.'s Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein ("Motion"), the Court hereby GRANTS the Motion. It is therefore ORDERED that the Clerk of Court shall file Plaintiff's Sur−reply attached as Exhibit A to the Motion. (This is a text−only entry generated by the court. There is no document associated with this entry.) (re) (Entered: 08/30/2021) |
| 08/30/2021 | 374 | Sealed Document. PLAINTIFF FINTIV, INC.'S SUR−REPLY TO DEFENDANT APPLE INC.'S 264 MOTION TO EXCLUDE THE OPINIONS OF FINTIV'S DAMAGES EXPERT ROY WEINSTEIN (Attachments: # 1 Declaration of Roy Weinstein) (lt) (Entered: 08/30/2021) |
| 08/30/2021 | 375 | Redacted Copy *(Public Version)* of 350 Sealed Motion in Limine by Apple Inc. by Apple Inc.. (Guaragna, John) (Entered: 08/30/2021) |
| 08/31/2021 | 376 | Sealed Document: Plaintiff Fintiv, Inc.'s Omnibus Opposition To Defendant Apple Inc.'s Motions In Limine (Dkt. 350) of 350 Sealed Motion in Limine by Apple Inc. by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 |

| | | |
|---|---|---|
| | | Exhibit 2, # 4 Exhibit 3 Part 1 of 2, # 5 Exhibit 3 Part 2 of 2, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8 Part 1 of 6, # 11 Exhibit 8 Part 2 of 6, # 12 Exhibit 8 Part 3 of 6, # 13 Exhibit 8 Part 4 of 6, # 14 Exhibit 8 Part 5 of 6, # 15 Exhibit 8 Part 6 of 6, # 16 Exhibit 9 Part 1 of 7, # 17 Exhibit 9 Part 2 of 7, # 18 Exhibit 9 Part 3 of 7, # 19 Exhibit 9 Part 4 of 7, # 20 Exhibit 9 Part 5 of 7, # 21 Exhibit 9 Part 6 of 7, # 22 Exhibit 9 Part 7 of 7, # 23 Exhibit 10, # 24 Exhibit 11 Part 1 of 2, # 25 Exhibit 11 Part 2 of 2, # 26 Exhibit 12, # 27 Exhibit 13, # 28 Exhibit 14, # 29 Exhibit 15, # 30 Exhibit 16, # 31 Exhibit 17, # 32 Exhibit 18, # 33 Exhibit 19, # 34 Exhibit 20, # 35 Exhibit 21, # 36 Exhibit 22, # 37 Exhibit 23, # 38 Exhibit 24, # 39 Exhibit 25, # 40 Exhibit 26, # 41 Exhibit 27, # 42 Exhibit 28, # 43 Exhibit 29, # 44 Exhibit 30, # 45 Exhibit 31, # 46 Exhibit 32, # 47 Proposed Order) (Waldrop, Jonathan) (Entered: 08/31/2021) |
| 08/31/2021 | 377 | Sealed Document: Apple's Opposition to Plaintiff's Motion in Limine No. 1 of 351 Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 1 To Exclude References To Fintiv As A Non−Practicing Entity, Pejorative Description Of Fintiv, Prior Litigations And Investigations, Employment And Payroll Disputes Or Financial Status by Apple Inc. (Attachments: # 1 Gibson Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E) (Guaragna, John) (Entered: 08/31/2021) |
| 08/31/2021 | 378 | Sealed Document: Apple's Opposition to Plaintiff's Motion in Limine No. 2 of 353 Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 2 To Exclude References To Certain Arguments Relating To Apples Reputation, Third− Party Witnesses, Damages Awards, And Prior Judicial Opinions by Fintiv, Inc. by Apple Inc. (Attachments: # 1 Cunningham Decl., # 2 Exhibit A, # 3 Exhibit B) (Guaragna, John) (Entered: 08/31/2021) |
| 08/31/2021 | 379 | Sealed Document: Apple's Opposition to Plaintiff's Motion in Limine No. 3 of 354 Sealed Motion Plaintiff Fintiv, Inc.'s Motion In Limine No. 3 To Exclude Certain References To Arguments Relating To Non−Infringement And Invalidity by Fintiv, Inc. by Apple Inc. (Attachments: # 1 Cunningham Decl., # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H) (Guaragna, John) (Entered: 08/31/2021) |
| 08/31/2021 | 380 | NOTICE of Unopposed Extension of Deadline to File Joint Pretrial Order and Pretrial Submissions by Apple Inc. (Guaragna, John) (Entered: 08/31/2021) |
| 09/01/2021 | 381 | Sealed Document: Proposed Joint Final Pretrial Order by Fintiv, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20) (Waldrop, Jonathan) (Entered: 09/01/2021) |
| 09/03/2021 | 382 | Redacted Copy of 373 Unopposed Sealed Motion Plaintiff Fintiv, Inc.'s Unopposed Motion For Leave To File Sur−Reply To Defendant Apple Inc.'s Motion To Exclude The Opinions Of Fintiv's Damages Expert Roy Weinstein by Fintiv, Inc. by Fintiv, Inc.. (Attachments: # 1 Exhibit A, # 2 Declaration Of Roy Weinstein, # 3 Proposed Order)(Waldrop, Jonathan) (Entered: 09/03/2021) |
| 09/07/2021 | 383 | Redacted Copy of 376 Sealed Document,,,,, by Fintiv, Inc.. (Attachments: # 1 Declaration of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 17, # 4 Exhibit 18, # 5 Exhibit 19, # 6 Exhibit 22, # 7 Exhibit 23, # 8 Exhibit 26, # 9 Exhibit 27, # 10 Exhibit |

| | | 28, # 11 Exhibit 30, # 12 Proposed Order)(Waldrop, Jonathan) (Entered: 09/07/2021) |
|---|---|---|
| 09/07/2021 | 384 | Unopposed Sealed Motion for Leave to File Response to Fintiv's Sur−Reply to Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. (Attachments: # 1 Exhibit 1, # 2 Proposed Order) (Guaragna, John) (Entered: 09/07/2021) |
| 09/08/2021 | 385 | Redacted Copy *PUBLIC VERSION* of 381 Sealed Document, by Fintiv, Inc.. (Attachments: # 1 Exhibit 5, # 2 Exhibit 6, # 3 Exhibit 7, # 4 Exhibit 8, # 5 Exhibit 9, # 6 Exhibit 10, # 7 Exhibit 11, # 8 Exhibit 12, # 9 Exhibit 13, # 10 Exhibit 14, # 11 Exhibit 15, # 12 Exhibit 16)(Waldrop, Jonathan) (Entered: 09/08/2021) |
| 09/08/2021 | 386 | ***VACATED per 411 Federal Circuit Order*** ORDER TRANSFERRING this case back to the Waco Division. Signed by Judge Alan D Albright. (lt) Modified on 10/4/2021 (lad). (Entered: 09/09/2021) |
| 09/09/2021 | 387 | Report on Patent sent to U.S. Patent and Trademark Office. (lt) (Entered: 09/09/2021) |
| 09/09/2021 | 388 | Sealed Document: Proposed Joint Final Pretrial Order − Supplemental And Amended Exhibits of 381 Sealed Document, by Fintiv, Inc. (Attachments: # 1 Exhibit A: Fintivs Supplemental Trial Witness List, # 2 Exhibit B: Apples Supplemental Trial Witness List, # 3 Exhibit C: Fintivs Second Amended Trial Exhibit List, # 4 Exhibit D: Apples Fourth Amended Trial Exhibit List, # 5 Exhibit E: Fintivs First Amended Proposed Voir Dire Statement, # 6 Exhibit F: Apples First Amended Proposed Voir Dire Statement) (Waldrop, Jonathan) (Entered: 09/09/2021) |
| 09/13/2021 | 389 | Redacted Copy *of Apple's Opposition to Fintiv's Motion in Limine No. 1* of 377 Sealed Document,, by Apple Inc.. (Guaragna, John) (Entered: 09/13/2021) |
| 09/13/2021 | 390 | Redacted Copy *of Apple's Opposition to Fintiv's Motion in Limine No. 2* of 378 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 09/13/2021) |
| 09/13/2021 | 391 | Redacted Copy *of Apple's Opposition to Fintiv's Motion in Limine No. 3* of 379 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 09/13/2021) |
| 09/13/2021 | 392 | Redacted Copy of 384 Unopposed Sealed Motion for Leave to File Response to Fintiv's Sur−Reply to Motion to Exclude the Opinions of Fintiv's Damages Expert Roy Weinstein by Apple Inc. by Apple Inc.. (Attachments: # 1 Exhibit 1)(Guaragna, John) (Entered: 09/13/2021) |
| 09/14/2021 | 393 | Sealed Document: *Attachment [Amended] Exhibit C to the Proposed Joint Final Pretrial Order − Supplemental and Amended Exhibits [DKT. 388−3]* of 388 Sealed Document,, by Fintiv, Inc. (Attachments: # 1 Exhibit C − Fintiv's Third Amended Trial Exhibit List) (Waldrop, Jonathan) (Entered: 09/14/2021) |
| 09/15/2021 | 394 | Opposed MOTION to Continue *(Emergency Motion for a Continuance or, in the Alternative, a Stay Pending Mandamus)* by Apple Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Proposed Order)(Guaragna, John) (Entered: 09/15/2021) |
| 09/16/2021 | 395 | MOTION to Appear Pro Hac Vice by Jonathan K. Waldrop *as to Marc E. Kasowitz* ( Filing fee $ 100 receipt number 0542−15232635) by on behalf of Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 09/16/2021) |
| 09/16/2021 | 396 | ORDER GRANTING 394 Motion to Continue: The Court will continue this trial for one week, with a new trial date of October 12, 2021. Further, re−setting this trial to |

| | | October 12, 2021 allows Mr. Dreifus to testify in this case after he testifies in the Eastern District case. Accordingly, it is ORDERED that jury selection and trial for this case is reset to start on October 12, 2021 at 9:00AM in the Waco courthouse. Signed by Judge Alan D Albright. (jc5) (Entered: 09/17/2021) |
|---|---|---|
| 09/17/2021 | 397 | Sealed Document: Joint Notice Identifying Remaining Objections To Pretrial Disclosures And Disputes On Motions In Limine by Fintiv, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) (Waldrop, Jonathan) (Entered: 09/17/2021) |
| 09/20/2021 | 398 | ORDER GRANTING 395 Motion to Appear Pro Hac Vice for Attorney Marc E. Kasowitz. Attorney added for Fintiv, Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order, **if he/she has not previously done so for a prior case in this District**. Signed by Judge Alan D Albright. (jkda) (Entered: 09/20/2021) |
| 09/21/2021 | 399 | ORDER, (Pretrial Conference set for 9/23/2021 09:30 AM before Judge Alan D Albright). Signed by Judge Alan D Albright. (bot1) (Entered: 09/21/2021) |
| 09/22/2021 | 400 | ORDER, (Pretrial Conference RESET for 9/23/2021 08:30 AM before Judge Alan D Albright). Signed by Judge Alan D Albright. (bot1) (Entered: 09/22/2021) |
| 09/23/2021 | 401 | Minute Entry for Pre−Trial Conference by Zoom − proceedings held before Judge Alan D Albright: Pretrial Conference held on 9/23/2021. Case called for pre− trial conference by Zoom. The Court heard argument on various pending issues. The Court Denied the Plaintiff's Omnibus Motion for Summary Judgment, Granted in part the Defendants Motion to Exclude Weinstein and Denied in Part the Defendant's Motion to Exclude Weinstein. The Court denied the defendant motion to exclude Dreifus' report and the Court denied the defendant's motion for Summary Judgment (ECF #270). There were many other issues to be handled so the Court set another zoom hearing to handle those for tomorrow at 9:00 am. There will be an Order forthcoming with the Court's rulings. (Minute entry documents are not available electronically). (Court Reporter Kristie Davis.)(jc5) (Entered: 09/23/2021) |
| 09/23/2021 | 402 | ORDER, (Pretrial Conference set for 9/24/2021 09:00 AM before Judge Alan D Albright). Signed by Judge Alan D Albright. (bot1) (Entered: 09/23/2021) |
| 09/23/2021 | 403 | ORDER, (Pretrial Conference RESET for 9/24/2021 01:00 PM before Judge Alan D Albright). Signed by Judge Alan D Albright. (bot1) (Entered: 09/23/2021) |
| 09/24/2021 | 404 | 9−23−21 Pretrial Conference Sealed Transcript filed (This transcript is not available electronically) (kd) (Entered: 09/24/2021) |
| 09/24/2021 | 405 | Minute Entry for proceedings held before Judge Alan D Albright: Continued Pretrial Conference held on 9/24/2021. Case called for a continuation of Pretrial Conference. The Court heard further pending motions/issues and made rulings. The Court will be issuing an Order on rulings. (Minute entry documents are not available electronically.) (Court Reporter Kristie Davis.)(jc5) (Entered: 09/24/2021) |
| 09/24/2021 | 406 | 9−24−21 Pretrial Conference Sealed Transcript filed (This transcript is not available electronically) (kd) (Entered: 09/24/2021) |
| 09/26/2021 | 407 | Sealed Document: Supplemental Briefing in Support of Apple's Motion in Limine No. 8 of 350 Sealed Motion in Limine by Apple Inc. by Apple Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Guaragna, John) (Entered: 09/26/2021) |

| 09/27/2021 | 408 | Sealed Document: Fintiv, Inc.'s Supplemental Opposition To Apple Inc.'s Motion In Limine No. 8 of 350 Sealed Motion in Limine by Apple Inc. by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2) (Waldrop, Jonathan) (Entered: 09/27/2021) |
|---|---|---|
| 09/28/2021 | 409 | Sealed Document: Apple's Supplemental Brief on Fintiv's Untimely OTA Proxy Theory of 263 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus by Fintiv, Inc. by Apple Inc. (Guaragna, John) (Entered: 09/28/2021) |
| 09/29/2021 | 410 | Sealed Document: Fintiv, Inc.'s Supplemental Brief On OTA Proxy of 263 Sealed Motion Plaintiff Fintiv, Inc.'s Motion To Strike Portions Of The Expert Rebuttal Report And Exclude Portions Of The Testimony Of Henry Dreifus by Fintiv, Inc. by Fintiv, Inc. (Waldrop, Jonathan) (Entered: 09/29/2021) |
| 10/01/2021 | 411 | Federal Circuit ORDER granting Petition for Writ of Mandamus filed by Petitioner Apple Inc. the district courts September 8, 2021 order 386 re−transferring the trial from Austin to Waco is vacated and we remand with instructions that this action shall proceed in the Austin Division of the United States District Court for the Western District of Texas.; denying as moot motion for stay pending appeal under Rule 8/18 filed by Petitioner Apple Inc. (lad) (Entered: 10/04/2021) |
| 10/04/2021 | 412 | ORDER − case is TRANSFERRED to the Austin Division of the Western District of Texas. It is FURTHER ORDERED that this case is set for jury trial starting on January 10, 2022 at 9:00AM. Signed by Judge Alan D Albright. (jc5) (Main Document 412 replaced on 10/5/2021) (jc5). (Entered: 10/05/2021) |
| 10/04/2021 | | Case transferred to District of Austin, Texas. (jc5) (Entered: 10/05/2021) |
| 10/05/2021 | | Case TRANSFERRED and assigned to Judge Alan D. Albright. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (cj) (Entered: 10/05/2021) |
| 10/05/2021 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Howell (cj) (Entered: 10/05/2021) |
| 10/05/2021 | 413 | Report on Patent sent to U.S. Patent and Trademark Office, along with a copy of the transfer order. (cj) (Entered: 10/05/2021) |
| 10/05/2021 | 414 | Case Transfer and Opening Letter sent to all Counsel. (cj) (Entered: 10/05/2021) |
| 10/06/2021 | 415 | ORDER, ( Jury Trial set for 1/10/2022 at 09:00 AM before Judge Alan D Albright,). Signed by Judge Alan D Albright. (dm) (Entered: 10/06/2021) |
| 10/06/2021 | 416 | Redacted Copy PUBLIC VERSION of 410 Sealed Document, by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 10/06/2021) |
| 10/06/2021 | 417 | Redacted Copy of Apple's Supplemental Briefing in Support of Motion in Limine No. 8 of 407 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 10/06/2021) |
| 10/06/2021 | 418 | Redacted Copy of Apple's Supplemental Brief on Fintiv's Untimely OTA Proxy Theory of 409 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 10/06/2021) |
| 10/07/2021 | 419 | ORDER, ( Jury Selection set for 1/6/2022 at 09:30AM before Judge Dustin M. Howell,). Signed by Judge Dustin M. Howell. (dm) (Entered: 10/07/2021) |

| 10/08/2021 | 420 | Standing Order Regarding Order Governing Proceedings Patent Cases. Signed by Judge Alan D Albright. (Entered: 10/13/2021) |
|---|---|---|
| 12/09/2021 | 421 | Unopposed MOTION to Withdraw as Attorney *[Jack Shaw]* by Fintiv, Inc.. (Mort, Raymond) (Entered: 12/09/2021) |
| 12/10/2021 | | Text Order GRANTING 421 Motion to Withdraw as Attorney entered by Judge Alan D Albright. It is ORDERED that Jack Shaw is no longer counsel of record for Plaintiff. (This is a text−only entry generated by the court. There is no document associated with this entry.) (RRlc) (Entered: 12/10/2021) |
| 12/28/2021 | 422 | ORDER Cancelling Jury Selection & Trial set for 01/10/22 until further order of the court. Signed by Judge Alan D Albright. (klw) (Entered: 12/28/2021) |
| 01/25/2022 | 423 | ORDER, ( Jury Selection and Trial set for 6/21/2022 at 09:00 AM before Judge Alan D Albright,). Signed by Judge Alan D Albright. (dm) (Entered: 01/25/2022) |
| 03/17/2022 | 424 | CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF. Signed by Judge Alan D Albright. (dm) (Entered: 03/18/2022) |
| 03/17/2022 | 425 | ORDER to Pay Technical Advisor. Signed by Judge Alan D Albright. (dm) (Entered: 03/18/2022) |
| 04/14/2022 | 426 | Standing Order Regarding Order Governing Proceedings Patent Cases. Signed by Judge Alan D Albright. (Entered: 04/14/2022) |
| 05/09/2022 | 427 | ORDER SETTING VOIR DIRE AND PRE−VOIR DIRE CONFERENCE ( Video Conference set for 6/14/2022 at 02:00 PM before Judge Derek T. Gilliland,, Voir Dire set for 6/16/2022 at 09:00 AM before Judge Derek T. Gilliland,). Signed by Judge Derek T. Gilliland. (dm) Modified on 5/12/2022 (dm). (Entered: 05/10/2022) |
| 05/17/2022 | 428 | NOTICE of Attorney Appearance by Chen Jia on behalf of Fintiv, Inc.. Attorney Chen Jia added to party Fintiv, Inc.(pty:pla) (Jia, Chen) (Entered: 05/17/2022) |
| 06/03/2022 | 429 | NOTICE to Attorneys regarding Jury Evidence Recording System (JERS) Instructions. (dm) (Entered: 06/03/2022) |
| 06/06/2022 | 430 | MOTION to Appear Pro Hac Vice by Jonathan K. Waldrop */ Motion For Admission Pro Hac Vice of Julianne Laporte* ( Filing fee $ 100 receipt number 0542−16111003) by on behalf of Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 06/06/2022) |
| 06/06/2022 | 431 | Sealed Motion Plaintiff Fintiv, Inc.'s Emergency Motion For Reopening Of Discovery, Trial Continuance, And Sanctions by Fintiv, Inc. (Attachments: # 1 Declaration Of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Declaration Of George Eubank, # 22 Exhibit A, # 23 Exhibit B, # 24 Exhibit C) (Waldrop, Jonathan). Added MOTION for Discovery, MOTION for Sanctions on 6/7/2022 (klw). (Entered: 06/06/2022) |
| 06/07/2022 | 432 | ORDER GRANTING 430 Motion for Julianne Laporte to Appear Pro Hac Vice on behalf of Fintiv. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Alan D Albright. (klw) (Entered: 06/07/2022) |

| 06/07/2022 | 433 | ORDER GRATING Plaintiff's 431 Sealed Motion for Trial Continuance. ORDER VACATING jury selection set for Thursday, June 16, 2022 and trial set for Tuesday, June 21, 2022. Signed by Judge Alan D Albright. (klw) (Entered: 06/07/2022) |
|---|---|---|
| 06/13/2022 | 434 | NOTICE *Notice of Agreed Briefing Schedule* by Apple Inc and Fintiv, Inc. (Ravel, J.) Modified on 6/14/2022 to add filer (klw). (Entered: 06/13/2022) |
| 06/13/2022 | 435 | Redacted Public Version of 431 Sealed Motion Plaintiff Fintiv, Inc.'s Emergency Motion For Reopening Of Discovery, Trial Continuance, And Sanctions by Fintiv, Inc. MOTION for Discovery MOTION for Sanctions by Fintiv, Inc.. (Attachments: # 1 Exhibit Declaration of Jonathan K. Waldrop, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit Declaration of George Eubank, # 22 Exhibit A, # 23 Exhibit B, # 24 Exhibit C)(Waldrop, Jonathan) (Entered: 06/13/2022) |
| 06/21/2022 | 436 | ORDER Setting Zoom Motion Hearing for 6/24/2022 02:00 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (bot3) (Entered: 06/21/2022) |
| 06/23/2022 | 437 | Sealed Document: Opposition *to* of 431 Sealed Motion Plaintiff Fintiv, Inc.'s Emergency Motion For Reopening Of Discovery, Trial Continuance, And Sanctions by Fintiv, Inc. MOTION for Discovery MOTION for Sanctions by Apple Inc. (Attachments: # 1 Exhibit A) (Guaragna, John) (Entered: 06/23/2022) |
| 06/23/2022 | 438 | Redacted Copy of 437 Sealed Document, by Apple Inc.. (Guaragna, John) (Entered: 06/23/2022) |
| 06/24/2022 | 440 | Minute Entry for proceedings held before Judge Alan D Albright: Miscellaneous Hearing held on 6/24/2022. Written order forthcoming. (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(dm) (Entered: 06/27/2022) |
| 06/25/2022 | 439 | 6–24–22 Motion Hearing Sealed Transcript filed (This transcript is not available electronically) (kd) (Entered: 06/25/2022) |
| 07/05/2022 | 441 | ORDER ON EMERGENCY MOTION [ECF NO. 431]. Signed by Judge Alan D Albright. (dm) (Entered: 07/05/2022) |
| 08/08/2022 | 442 | STATUS REPORT *(Joint Status Report)* by Apple Inc.. (Guaragna, John) (Entered: 08/08/2022) |
| 08/31/2022 | 443 | STATUS REPORT *(Joint)* by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 08/31/2022) |
| 09/16/2022 | | Parties shall comply with Judge Albright's updated standing orders available by clicking the included hyperlinks.<br><br>The updated orders are as follows:<br>1. Standing Order Governing Proceedings Patent Cases,<br>2. Amended Standing Order On Pretrial Procedures and Requirements in Civil Cases. (bot4) (Entered: 09/17/2022) |
| 11/16/2022 | 444 | Unopposed MOTION to Withdraw as Attorney *as to Shelley Ivan* by Fintiv, Inc.. (Attachments: # 1 Proposed Order)(Waldrop, Jonathan) (Entered: 11/16/2022) |
| 11/17/2022 | | |

| | | |
|---|---|---|
| | | Text Order GRANTING 444 Motion to Withdraw as Attorney. Came on for consideration is Plaintiffs' Motion to Allow Shelley Ivan (Ms. Ivan) to Withdraw As Counsel. Noting that it is unopposed, the Court GRANTS the motion. It is therefore ORDERED that Ms. Ivan is hereby withdrawn as counsel of record for Plaintiffs. It is further ORDERED that the docket be amended to reflect that Ms. Ivan has withdrawn as counsel for Plaintiffs and that she no longer needs to be noticed of any pleadings, motions, or other documents filed or served in this case. Entered by Judge Alan D Albright. (This is a text−only entry generated by the court. There is no document associated with this entry.) (NMlc) (Entered: 11/17/2022) |
| 12/06/2022 | 445 | ORDER Setting Zoom Discovery for 12/16/2022 03:00 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (bot2) (Entered: 12/06/2022) |
| 12/06/2022 | 446 | ORDER, ( Discovery Hearing reset for 12/13/2022 at 01:30 PM before Judge Alan D Albright,). Signed by Judge Alan D Albright. (dm) (Entered: 12/06/2022) |
| 12/13/2022 | 447 | ORDER, ( Discovery Hearing reset for 12/13/2022 at 03:00 PM before Judge Alan D Albright,). Signed by Judge Alan D Albright. (dm) (Entered: 12/13/2022) |
| 12/13/2022 | 448 | Minute Entry for proceedings held before Judge Alan D Albright: Sealed Proceeding held on 12/13/2022. (Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(dm) (Entered: 12/14/2022) |
| 12/15/2022 | 449 | 12−13−22 Discovery Hearing Sealed Transcript filed (This transcript is not available electronically) (kd) (Entered: 12/15/2022) |
| 12/21/2022 | 450 | Sealed Order Regarding the December 13, 2022 Discovery Dispute Hearing. Signed by Judge Alan D Albright. (jv2) (Entered: 12/21/2022) |
| 12/21/2022 | 451 | Public Version of re 450 Sealed Order Regarding the December 13, 2022 Discovery Dispute Hearing. Signed by Judge Alan D Albright. (jv2) (Entered: 12/29/2022) |
| 02/16/2023 | 452 | NOTICE of Change of Address by Sean C. Cunningham (Cunningham, Sean) (Entered: 02/16/2023) |
| 03/06/2023 | 453 | MOTION to Appear Pro Hac Vice by John Michael Guaragna *for Jessica Hannah* ( Filing fee $ 100 receipt number ATXWDC−17162746) by on behalf of Apple Inc.. (Guaragna, John) (Entered: 03/06/2023) |
| 03/07/2023 | 454 | ORDER GRANTING 453 Motion to Appear Pro Hac Vice as to Jessica Hannah. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center Signed by Judge Alan D Albright. (dm) (Entered: 03/07/2023) |
| 04/04/2023 | | Parties shall comply with Judge Albright's updated Standing Order Governing Proceedings − Patent Cases available by clicking the hyperlink.<br><br>(bot2) (Entered: 04/05/2023) |
| 04/21/2023 | 455 | ORDER, ( Settlement Conference set for 6/8/2023 at 09:00 AM before Judge Alan D Albright,). Signed by Judge Alan D Albright. (dm) Modified to correct judge for hearing on 6/14/2023 (lad). (Entered: 04/21/2023) |
| 04/21/2023 | | |

| | | Reset Hearings: Settlement Conference set for 6/8/2023 09:00 AM before Judge Jeffrey C. Manske (correcting setting for 455 ) (lad) (Entered: 06/14/2023) |
|---|---|---|
| 04/24/2023 | 456 | ORDER SETTING HEARING, ( Pre−Mediation Conference (via Zoom) set for 5/11/2023 at 11:30 AM before Judge Jeffrey C. Manske,). Signed by Judge Jeffrey C. Manske. (dm) (Entered: 04/24/2023) |
| 04/24/2023 | 457 | ORDER SETTING HEARING, ( Mediation Conference set for 6/8/2023 at 09:00 AM before Judge Jeffrey C. Manske,). Signed by Judge Jeffrey C. Manske. (dm) (Entered: 04/24/2023) |
| 05/11/2023 | 458 | Minute Entry for proceedings held before Judge Jeffrey C. Manske: Status Conference held on 5/11/2023 (Minute entry documents are not available electronically.). (Court Reporter FTR.)(dm) (Entered: 05/15/2023) |
| 05/22/2023 | 459 | TRANSCRIPT REQUEST by Fintiv, Inc. for proceedings held on 5/11/2023. Proceedings Transcribed: Status Conference. Court Reporter: FTR. (Waldrop, Jonathan) (Entered: 05/22/2023) |
| 05/23/2023 | | Parties shall comply with Judge Albright's updated Standing Orders: Order Regarding Court Docket Management and Amended Standing Order for Pretrial Procedure. Both orders are available by clicking the hyperlink.<br><br>(bot2) (Entered: 05/24/2023) |
| 06/07/2023 | 460 | ORDER Setting Zoom Pretrial Conference for 6/13/2023 01:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (bot1) (Entered: 06/07/2023) |
| 06/07/2023 | 461 | ORDER, ( Jury Selection and Trial set for 7/10/2023 at 09:00 AM before Judge Alan D Albright,). Signed by Judge Alan D Albright. (dm) (Entered: 06/08/2023) |
| 06/09/2023 | 462 | ORDER RESETTING Zoom Pretrial Conference for 6/13/2023 01:30 PM before Judge Alan D Albright. Signed by Judge Alan D Albright. (bot2) (Entered: 06/09/2023) |
| 06/12/2023 | 463 | Sealed Order CONCERNING PRETRIAL CONFERENCE MOTIONS. Signed by Judge Alan D Albright. (lad) (Entered: 06/12/2023) |
| 06/13/2023 | 464 | TRANSCRIPT REQUEST by Fintiv, Inc. for proceedings held on June 13, 2023. Proceedings Transcribed: Pretrial Conference.. (Waldrop, Jonathan) (Entered: 06/13/2023) |
| 06/13/2023 | 465 | Minute Entry for proceedings held before Judge Alan D Albright: Pretrial Conference held on 6/13/2023. STATEMENTS AND ARGUMENTS OF COUNSEL HEARD, MOTION FOR SUMMARY JUDGMENT GRANTED, WRITTEN ORDER FORTHCOMING, THE TRIAL WILL BE REMOVED FROM THE COURT'S DOCKET.(Minute entry documents are not available electronically.). (Court Reporter Kristie Davis.)(lad) (Entered: 06/13/2023) |
| 06/13/2023 | 466 | ORDER CANCELLING JURY SELECTION AND TRIAL on July 10, 2023. Signed by Judge Alan D Albright. (lad) (Entered: 06/13/2023) |
| 06/21/2023 | 467 | Sealed Order : Defendant Apples Motion for Summary Judgment of Non−Infringement 270 is GRANTED. Signed by Judge Alan D Albright. (lad) (Entered: 06/21/2023) |
| 06/28/2023 | 468 | Redacted Copy of 467 Sealed Order Granting 270 . (lad) (Entered: 06/28/2023) |

| 06/29/2023 | 469 | FINAL JUDGMENT in favor of Defendant against Plaintiff.. Signed by Judge Alan D Albright. (lad) (Entered: 06/29/2023) |
|---|---|---|
| 06/29/2023 | 470 | Report on Patent/Trademark sent to U.S. Patent and Trademark Office. (bot2) (Entered: 06/29/2023) |
| 06/30/2023 | 471 | Sealed Document: Plaintiff Fintiv, Inc.'s Notice Of Filing Demonstratives by Fintiv, Inc. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Waldrop, Jonathan) (Entered: 06/30/2023) |
| 07/13/2023 | 472 | BILL OF COSTS by Apple Inc.. (Attachments: # 1 Bill of Costs (Form AO 133))(Guaragna, John) (Entered: 07/13/2023) |
| 07/13/2023 | 473 | Memorandum in Support of 472 Bill of Costs by Apple Inc.. (Attachments: # 1 Exhibit A to Memorandum ISO Bill of Costs, # 2 Exhibit B to Memorandum ISO Bill of Costs, # 3 Exhibit C to Memorandum ISO Bill of Costs, # 4 Exhibit D to Memorandum ISO Bill of Costs, # 5 Exhibit E to Memorandum ISO Bill of Costs, # 6 Exhibit F to Memorandum ISO Bill of Costs, # 7 Exhibit G to Memorandum ISO Bill of Costs)(Guaragna, John) (Entered: 07/13/2023) |
| 07/20/2023 | 474 | MOTION / *Plaintiff Fintiv Inc.'s Motion Objecting To Apple Inc.'s Bill Of Costs* re 472 Bill of Costs by Fintiv, Inc.. (Waldrop, Jonathan) (Entered: 07/20/2023) |
| 07/21/2023 | 475 | DEFICIENCY NOTICE: re 474 MOTION / *Plaintiff Fintiv Inc.'s Motion Objecting To Apple Inc.'s Bill Of Costs* re 472 Bill of Costs (lad) (Entered: 07/21/2023) |
| 07/21/2023 | 476 | Appeal of Final Judgment 469 by Fintiv, Inc.. ( Filing fee $ 505 receipt number ATXWDC−17687059) (Waldrop, Jonathan) (Entered: 07/21/2023) |
| 07/21/2023 | | Notice of Appeal to the Federal Circuit following 476 Notice of Appeal (E−Filed) by Fintiv, Inc. ROA sent via email. (lad) (Entered: 07/24/2023) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **FINTIV, INC.,** | § | **Civil Action No.: 6:18-cv-372** |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **APPLE INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fintiv, Inc. ("Fintiv"), by and through its attorneys, for its Complaint against

Defendant Apple Inc. ("Apple"), hereby alleges the following:

**I.     NATURE OF THE ACTION**

1.     This is a patent infringement action to end Defendant's unauthorized and infringing

manufacture, use, sale, offering for sale, and/or importation of methods and products incorporating

Plaintiff's patented inventions.

2.     Fintiv is the owner of all right, title, and interest in and to United States Patent No.

8,843,125 (the "'125 Patent"), issued September 23, 2014 and titled "System and Method for

Managing Mobile Wallet and its Related Credentials."  A true and correct copy of the '125 Patent

is attached hereto as Exhibit A.

3.     Apple manufactures, provides, sells, offers for sale, imports, and/or distributes

products and services which directly infringe the '125 Patent.  Further, Apple indirectly infringes

the '125 Patent by inducing and/or contributing to infringement by others, including Apple device users, card issuers, and card issuer's authorized service providers.

4.      Fintiv seeks monetary damages and prejudgment interest for Defendant's past and continuing infringement of the '125 Patent.

## II.      PARTIES

5.      Plaintiff Fintiv, Inc. is a Delaware corporation having a principal place of business at 801 Barton Springs, Austin, Texas 78703.

6.      Defendant Apple Inc. is a corporation organized and existing under the laws of California and has a regular and established places of business at 12535 Riata Vista Circle and 5501 West Parmer Lane, Austin, Texas.  Apple employs thousands of people, including hundreds of engineers, who work at these locations in Texas.  The work done at these Apple locations in Texas includes work related to Apple's iPhones and Apple Watch products. Apple can electronically access documents at its facilities in California and elsewhere from these locations in Austin, Texas, as found, inter alia, in *e-Watch Inc. v. Apple Inc.*, No. 2:13-CV-01061-JRG-RSP, 2016 WL 7338342, at *2 (E.D. Tex. Dec. 19, 2016) and *TracBeam, LLC v. Apple Inc.*, No. 6:14-CV-680, 2015 WL 5786449 (E.D. Tex. Sept. 29, 2015).

7.      Apple also operates brick-and-mortar Apple Stores at Barton Creek Square, Austin, Texas and at Apple Domain Northside, Austin, Texas.  *See* www.apple.com/retail/.  Apple uses, offers for sale and sells iPhones and Apple Watch products that include Apple's Wallet functionality at these Apple Stores.  Apple may be served with process through its registered agent for service in Texas:  CT Corporation System, 1999 Bryant Street, Suite 900, Dallas, Texas 75201.

### III.   JURISDICTION AND VENUE

8.      This is an action for patent infringement, which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 282, 284, and 285.  The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Apple because it has committed acts giving rise to this action within Texas and within this judicial district.  Defendant also regularly does business or solicits business in this District and in Texas, engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided in this District and in Texas, and has purposefully established substantial, systematic, and continuous contacts within this District and should reasonably expect to be sued in a court in this District.  For example, Apple has offices in this District and has a Texas registered agent for service.  Apple operates a website that solicits sales of the infringing products by consumers in this District and in Texas, has entered into partnerships with numerous resellers and distributors to sell and offer for sale the infringing products to consumers in this District and in Texas, both online and in stores, and offers support service to customers in this District and Texas.  Given these contacts, the Court's exercise of jurisdiction over Apple will not offend traditional notions of fair play and substantial justice.

10.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and l400(b) because Apple has an established place of business in this District, including at 12535 Riata Vista Circle and 5501 West Parmer Lane, Austin, Texas, has committed acts within this judicial district giving rise to this action, and Apple continues to conduct business in this judicial district, including one or more acts of making, selling, using, importing and/or offering for sale infringing products or providing support service to Apple's customers in this District.

## IV.     THE PATENT-IN-SUIT

11.     The '125 Patent relates to management of virtual cards stored on mobile devices and discloses provisioning a contactless card in a mobile device with a mobile wallet application.

12.     The specification of the '125 Patent identifies technical problems in the prior art and claims improvement to these problems.  For instance, the specification explains that prior art lacked "an effective means to manage various payment applets residing within the mobile device." ('125 Patent at 1:63-67.)  Moreover, prior art implementations did not enable a user to "view any account specific information stored within the SE [Secure Element] or manage such applications with or without the use of POS [Point of Sale] equipment."  *Id*. at 2:19-29.  The specification further explains that "[a]nother limitation of current mobile wallet applications is the lack of support providing for such technology. . . . Accordingly, users may often be bombarded with various applications that may be inapplicable to the user, making the process more difficult than necessary."  *Id*. at 2:30-44.  Finally, the prior art did not allow for an easy way to update information:  "As various service providers operate independently from one another, when an update is required by a particular service provider, each individual application is typically updated separately."  *Id*. at 2:45-52.  In essence, the '125 Patent claims a technical solution to these problems through a mobile wallet application and mobile wallet management system to store contactless cards in a secure element.  The claimed technical solution is further incorporated in at least claims 11, 18, and 23 of the '125 patent.

13.     Fintiv owns all substantial and material rights to and interests in the '125 Patent, including the right to recover damages for all past and future infringement thereof.

14.     The '125 Patent is valid and enforceable.

**COUNT I:    INFRINGEMENT OF THE '125 PATENT**

15.    Fintiv incorporates paragraphs 1 through 15 herein by reference.

16.    **Direct Infringement.**  Apple, without authorization or license from Fintiv, has been and is presently directly infringing at least claim 11, 18, and 23 of the '125 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling, offering for sale, and/or importing infringing products.  Apple is thus liable for direct infringement of the '125 Patent pursuant to 35 U.S.C. § 271(a).  Exemplary infringing products include Apple iPhone devices (including, at least, iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, 7 Plus, 8, 8 Plus, X, XR, XS, XS Max), Apple Watch devices (including, at least, Series 1, Series 2, Series 3, and Series 4), and the Apple Wallet Application (collectively, "the Apple Devices").

17.    Claim 11, for example, recites:

A method for provisioning a contactless card applet in a mobile device comprising a mobile wallet application, the method comprising:

activating the mobile wallet application;

connecting to a Trusted Service Manager (TSM) system;

synchronizing the mobile wallet application with the TSM system;

displaying a contactless card applet based on attributes of the mobile device;

receiving a selection of a contactless card applet;

retrieving a widget and a wallet management applet (WMA) corresponding to the contactless card applet; and

provisioning the selected contactless card applet, the widget, and the WMA.

18.    As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to provision a contactless card in a mobile device that includes a mobile wallet application.  All of this functionality is disclosed in at least claim 11 of the '125 patent.



https://www.apple.com/apple-pay/ (last visited on 11/6/2018).

> **Wallet:** Wallet is used to add and manage credit, debit, and store cards and to make payments with Apple Pay. Users can view their cards and may be able to view additional information provided by their card issuer, such as their card issuer's privacy policy, recent transactions, and more in Wallet. Users can also add cards to Apple Pay in:
>
> - Setup Assistant and Settings for iOS
> - The Watch app for Apple Watch
> - The Wallet & Apple Pay system preference pane for Mac.
>
> In addition, Wallet allows users to add and manage transit cards, rewards cards, boarding passes, tickets, gift cards, student ID cards, and more.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf   at   p.   47   (last   visited 11/6/2018).

     19.    As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to activate a mobile wallet application.  All of this functionality is disclosed in at least claim 11 of the '125 patent.



https://www.apple.com/apple-pay/ (last accessed on 11/6/2018).

**Wallet:** Wallet is used to add and manage credit, debit, and store cards and to make payments with Apple Pay. Users can view their cards and may be able to view additional information provided by their card issuer, such as their card issuer's privacy policy, recent transactions, and more in Wallet. Users can also add cards to Apple Pay in:

- Setup Assistant and Settings for iOS
- The Watch app for Apple Watch
- The Wallet & Apple Pay system preference pane for Mac.

In addition, Wallet allows users to add and manage transit cards, rewards cards, boarding passes, tickets, gift cards, student ID cards, and more.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf   at   p.   47   (last   visited   11/6/2018).

20.     As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to connect to a Trusted Service Manager (TSM) system.  All of this functionality is disclosed in at least claim 11 of the '125 Patent.

## When you add credit, debit, prepaid, or transit cards

When you add a credit, debit, prepaid, or transit card (where available) to Apple Pay, information that you enter on your device is encrypted and sent to Apple servers. If you use the camera to enter the card information, the information is never saved on your device or photo library.

Apple decrypts the data, determines your card's payment network, and re-encrypts the data with a key that only your payment network (or any providers authorized by your card issuer for provisioning and token services) can unlock.

Information that you provide about your card, whether certain device settings are enabled, and device use patterns—such as the percent of time the device is in motion and the approximate number of calls you make per week—may be sent to Apple to determine your eligibility to enable Apple Pay. Information may also be provided by Apple to your card issuer, payment network, or any providers authorized by your card issuer to enable Apple Pay, to determine the eligibility of your card, to set up your card with Apple Pay, and to prevent fraud.

After your card is approved, your bank, your bank's authorized service provider, or your card issuer creates a device-specific Device Account Number, encrypts it, and sends it along with other data (such as the key used to generate dynamic security codes that are unique to each transaction) to Apple. The Device Account Number can't be decrypted by Apple but is stored in the Secure Element—an industry-standard, certified chip designed to store your payment information safely—on your device. Unlike with usual credit or debit card numbers, the card issuer can prevent its use on a magnetic stripe card, over the phone, or on websites. The Device Account Number in the Secure Element is isolated from iOS, watchOS, and macOS, is never stored on Apple servers, and is never backed up to iCloud.

https://support.apple.com/en-us/HT203027 (last accessed on 9/5/2018).

**Secure Enclave:** On iPhone, iPad, and Apple Watch, the Secure Enclave manages the authentication process and enables a payment transaction to proceed.

On Apple Watch, the device must be unlocked, and the user must double-click the side button. The double-click is detected and passed to the Secure Element or Secure Enclave where available, directly without going through the application processor.

**Apple Pay servers:** The Apple Pay servers manage the setup and provisioning of credit, debit, transit, and student ID cards in Wallet and the Device Account Numbers stored in the Secure Element. They communicate both with the device and with the payment network or card issuer servers. The Apple Pay servers are also responsible for re-encrypting payment credentials for payments within apps.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf at p. 47 (last visited 11/6/2018).

## Credit, debit, and prepaid card provisioning

When a user adds a credit, debit, or prepaid card (including store cards) to Wallet, Apple securely sends the card information, along with other information about user's account and device, to the card issuer or card issuer's authorized service provider. Using this information, the card issuer will determine whether to approve adding the card to Wallet.

Apple Pay uses three server-side calls to send and receive communication with the card issuer or network as part of the card provisioning process: *Required Fields, Check Card,* and *Link and Provision.* The card issuer or network uses these calls to verify, approve, and add cards to Wallet. These client-server sessions are encrypted using TLS v1.2.

Full card numbers aren't stored on the device or on Apple servers. Instead, a unique Device Account Number is created, encrypted, and then stored in the Secure Element. This unique Device Account Number is encrypted in such a way that Apple can't access it. The Device Account Number is unique and different from usual credit or debit card numbers; the card issuer or payment network can prevent its use on a magnetic stripe card, over the phone, or on websites. The Device Account Number in the Secure Element is isolated from iOS and watchOS, is never stored on Apple servers, and is never backed up to iCloud.

Cards for use with Apple Watch are provisioned for Apple Pay using the Apple Watch app on iPhone, or within a card issuer's iPhone app. Adding a card to Apple Watch requires that the watch be within Bluetooth communications range. Cards are specifically enrolled for use with Apple Watch and have their own Device Account Numbers, which are stored within the Secure Element on the Apple Watch.

When credit, debit, or prepaid cards (including store cards) are added, they will appear in a list of cards during setup assistant on devices that are signed in to the same iCloud account. These cards remain in this list for as long as they are active on at least one device. Cards are removed from this list after they have been removed from all devices for seven days. This feature requires two-factor authentication to be enabled on the respective iCloud account.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf at p. 48-49 (last visited 11/6/2018).

21.    As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to synchronize the mobile wallet application with the TSM system.  All of this functionality is disclosed in at least claim 11 of the '125 Patent.

## When you add credit, debit, prepaid, or transit cards

When you add a credit, debit, prepaid, or transit card (where available) to Apple Pay, information that you enter on your device is encrypted and sent to Apple servers. If you use the camera to enter the card information, the information is never saved on your device or photo library.

Apple decrypts the data, determines your card's payment network, and re-encrypts the data with a key that only your payment network (or any providers authorized by your card issuer for provisioning and token services) can unlock.

Information that you provide about your card, whether certain device settings are enabled, and device use patterns—such as the percent of time the device is in motion and the approximate number of calls you make per week—may be sent to Apple to determine your eligibility to enable Apple Pay. Information may also be provided by Apple to your card issuer, payment network, or any providers authorized by your card issuer to enable Apple Pay, to determine the eligibility of your card, to set up your card with Apple Pay, and to prevent fraud.

After your card is approved, your bank, your bank's authorized service provider, or your card issuer creates a device-specific Device Account Number, encrypts it, and sends it along with other data (such as the key used to generate dynamic security codes that are unique to each transaction) to Apple. The Device Account Number can't be decrypted by Apple but is stored in the Secure Element—an industry-standard, certified chip designed to store your payment information safely—on your device. Unlike with usual credit or debit card numbers, the card issuer can prevent its use on a magnetic stripe card, over the phone, or on websites. The Device Account Number in the Secure Element is isolated from iOS, watchOS, and macOS, is never stored on Apple servers, and is never backed up to iCloud.

https://support.apple.com/en-us/HT203027 (last accessed on 9/5/2018).

### Credit, debit, and prepaid card provisioning

When a user adds a credit, debit, or prepaid card (including store cards) to Wallet, Apple securely sends the card information, along with other information about user's account and device, to the card issuer or device's authorized service provider. Using this information, the card issuer will determine whether to approve adding the card to Wallet.

Apple Pay uses three server-side calls to send and receive communication with the card issuer or network as part of the card provisioning process: *Required Fields, Check Card,* and *Link and Provision.* The card issuer or network uses these calls to verify, approve, and add cards to Wallet. These client-server sessions are encrypted using TLS v1.2.

Full card numbers aren't stored on the device or on Apple servers. Instead, a unique Device Account Number is created, encrypted, and then stored in the Secure Element. This unique Device Account Number is encrypted in such a way that Apple can't access it. The Device Account Number is unique and different from usual credit or debit card numbers; the card issuer or payment network can prevent its use on a magnetic stripe card, over the phone, or on websites. The Device Account Number in the Secure Element is isolated from iOS and watchOS, is never stored on Apple servers, and is never backed up to iCloud.

Cards for use with Apple Watch are provisioned for Apple Pay using the Apple Watch app on iPhone, or within a card issuer's iPhone app. Adding a card to Apple Watch requires that the watch be within Bluetooth communications range. Cards are specifically enrolled for use with Apple Watch and have their own Device Account Numbers, which are stored within the Secure Element on the Apple Watch.

When credit, debit, or prepaid cards (including store cards) are added, they will appear in a list of cards during setup assistant on devices that are signed in to the same iCloud account. These cards remain in this list for as long as they are active on at least one device. Cards are removed from this list after they have been removed from all devices for seven days. This feature requires two-factor authentication to be enabled on the respective iCloud account.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf at p. 48-49 (last visited 11/6/2018).

**Adding a credit or debit card manually to Apple Pay**

To add a card manually, the name, card number, expiration date, and CVV are used to facilitate the provisioning process. From within Settings, the Wallet app, or the Apple Watch app, users can enter that information by typing, or using the camera on the device. When the camera captures the card information, Apple attempts to populate the name, card number, and expiration date. The photo is never saved to the device or stored in the photo library. After all the fields are filled in, the Check Card process verifies the fields other than the CVV. They are encrypted and sent to the Apple Pay Server.

If a terms and conditions ID is returned with the Check Card process, Apple downloads and displays the terms and conditions of the card issuer to the user. If the user accepts the terms and conditions, Apple sends the ID of the terms that were accepted as well as the CVV to the Link and Provision process. Additionally, as part of the Link and Provision process, Apple shares information from the device with the card issuer or network, like information about your iTunes and App Store account activity (for example, whether you have a long history of transactions within iTunes), information about your device (for example, phone number, name, and model of your device plus any companion iOS device necessary to set up Apple Pay), as well as your approximate location at the time you add your card (if you have Location Services enabled). Using this information, the card issuer will determine whether to approve adding the card to Apple Pay.

As the result of the Link and Provision process, two things occur:

• The device begins to download the Wallet pass file representing the credit or debit card.
• The device begins to bind the card to the Secure Element.

The pass file contains URLs to download card art, metadata about the card such as contact information, the related issuer's app, and supported features. It also contains the pass state, which includes information such as whether the personalizing of the Secure Element has completed, whether the card is currently suspended by the card issuer, or whether additional verification is required before the card can make payments with Apple Pay.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf    at    p.    49    (last    visited    11/6/2018).

22.    As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to display a contactless card applet based on attributes of the mobile device.  All of this functionality is disclosed in at least claim 11 of the '125 Patent.

**Wallet:** Wallet is used to add and manage credit, debit, and store cards and to make payments with Apple Pay. Users can view their cards and may be able to view additional information provided by their card issuer, such as their card issuer's privacy policy, recent transactions, and more in Wallet. Users can also add cards to Apple Pay in:

- Setup Assistant and Settings for iOS
- The Watch app for Apple Watch
- The Wallet & Apple Pay system preference pane for Mac.

In addition, Wallet allows users to add and manage transit cards, rewards cards, boarding passes, tickets, gift cards, student ID cards, and more.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf    at    p.    47    (last    visited    11/6/2018).

## How Apple Pay uses the Secure Element

The Secure Element hosts a specially designed applet to manage Apple Pay. It also includes applets certified by payment networks or card issuers. Credit, debit, or prepaid card data is sent from the payment network or card issuer encrypted to these applets using keys that are known only to the payment network or card issuer and the applets' security domain. This data is stored within these applets and protected using the Secure Element's security features. During a transaction, the terminal communicates directly with the Secure Element through the Near Field Communication (NFC) controller over a dedicated hardware bus.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf    at    p.    48    (last    visited    11/6/2018).

## Credit, debit, and prepaid card provisioning

When a user adds a credit, debit, or prepaid card (including store cards) to Wallet, Apple securely sends the card information, along with other information about user's account and device, to the card issuer or card issuer's authorized service provider. Using this information, the card issuer will determine whether to approve adding the card to Wallet.

Apple Pay uses three server-side calls to send and receive communication with the card issuer or network as part of the card provisioning process: *Required Fields*, *Check Card*, and *Link and Provision*. The card issuer or network uses these calls to verify, approve, and add cards to Wallet. These client-server sessions are encrypted using TLS v1.2.

Full card numbers aren't stored on the device or on Apple servers. Instead, a unique Device Account Number is created, encrypted, and then stored in the Secure Element. This unique Device Account Number is encrypted in such a way that Apple can't access it. The Device Account Number is unique and different from usual credit or debit card numbers; the card issuer or payment network can prevent its use on a magnetic stripe card, over the phone, or on websites. The Device Account Number in the Secure Element is isolated from iOS and watchOS, is never stored on Apple servers, and is never backed up to iCloud.

Cards for use with Apple Watch are provisioned for Apple Pay using the Apple Watch app on iPhone, or within a card issuer's iPhone app. Adding a card to Apple Watch requires that the watch be within Bluetooth communications range. Cards are specifically enrolled for use with Apple Watch and have their own Device Account Numbers, which are stored within the Secure Element on the Apple Watch.

When credit, debit, or prepaid cards (including store cards) are added, they will appear in a list of cards during setup assistant on devices that are signed in to the same iCloud account. These cards remain in this list for as long as they are active on at least one device. Cards are removed from this list after they have been removed from all devices for seven days. This feature requires two-factor authentication to be enabled on the respective iCloud account.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf at p. 48-49 (last visited 11/6/2018).

23.     As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to receive a selection of a contactless card applet.  All of this functionality is disclosed in at least claim 11 of the '125 Patent.

## When you add credit, debit, prepaid, or transit cards

When you add a credit, debit, prepaid, or transit card (where available) to Apple Pay, information that you enter on your device is encrypted and sent to Apple servers. If you use the camera to enter the card information, the information is never saved on your device or photo library.

Apple decrypts the data, determines your card's payment network, and re-encrypts the data with a key that only your payment network (or any providers authorized by your card issuer for provisioning and token services) can unlock.

Information that you provide about your card, whether certain device settings are enabled, and device use patterns—such as the percent of time the device is in motion and the approximate number of calls you make per week—may be sent to Apple to determine your eligibility to enable Apple Pay. Information may also be provided by Apple to your card issuer, payment network, or any providers authorized by your card issuer to enable Apple Pay, to determine the eligibility of your card, to set up your card with Apple Pay, and to prevent fraud.

After your card is approved, your bank, your bank's authorized service provider, or your card issuer creates a device-specific Device Account Number, encrypts it, and sends it along with other data (such as the key used to generate dynamic security codes that are unique to each transaction) to Apple. The Device Account Number can't be decrypted by Apple but is stored in the Secure Element—an industry-standard, certified chip designed to store your payment information safely—on your device. Unlike with usual credit or debit card numbers, the card issuer can prevent its use on a magnetic stripe card, over the phone, or on websites. The Device Account Number in the Secure Element is isolated from iOS, watchOS, and macOS, is never stored on Apple servers, and is never backed up to iCloud.

https://support.apple.com/en-us/HT203027 (last accessed on 9/5/2018).

### Credit, debit, and prepaid card provisioning

When a user adds a credit, debit, or prepaid card (including store cards) to Wallet, Apple securely sends the card information, along with other information about user's account and device, to the card issuer or card issuer's authorized service provider. Using this information, the card issuer will determine whether to approve adding the card to Wallet.

Apple Pay uses three server-side calls to send and receive communication with the card issuer or network as part of the card provisioning process: *Required Fields*, *Check Card*, and *Link and Provision*. The card issuer or network uses these calls to verify, approve, and add cards to Wallet. These client-server sessions are encrypted using TLS v1.2.

Full card numbers aren't stored on the device or on Apple servers. Instead, a unique Device Account Number is created, encrypted, and then stored in the Secure Element. This unique Device Account Number is encrypted in such a way that Apple can't access it. The Device Account Number is unique and different from usual credit or debit card numbers; the card issuer or payment network can prevent its use on a magnetic stripe card, over the phone, or on websites. The Device Account Number in the Secure Element is isolated from iOS and watchOS, is never stored on Apple servers, and is never backed up to iCloud.

> Cards for use with Apple Watch are provisioned for Apple Pay using the Apple Watch app on iPhone, or within a card issuer's iPhone app. Adding a card to Apple Watch requires that the watch be within Bluetooth communications range. Cards are specifically enrolled for use with Apple Watch and have their own Device Account Numbers, which are stored within the Secure Element on the Apple Watch.
>
> When credit, debit, or prepaid cards (including store cards) are added, they will appear in a list of cards during setup assistant on devices that are signed in to the same iCloud account. These cards remain in this list for as long as they are active on at least one device. Cards are removed from this list after they have been removed from all devices for seven days. This feature requires two-factor authentication to be enabled on the respective iCloud account.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf   at   p.   48-49   (last   visited   11/6/2018).

> **Adding a credit or debit card manually to Apple Pay**
>
> To add a card manually, the name, card number, expiration date, and CVV are used to facilitate the provisioning process. From within Settings, the Wallet app, or the Apple Watch app, users can enter that information by typing, or using the camera on the device. When the camera captures the card information, Apple attempts to populate the name, card number, and expiration date. The photo is never saved to the device or stored in the photo library. After all the fields are filled in, the Check Card process verifies the fields other than the CVV. They are encrypted and sent to the Apple Pay Server.
>
> If a terms and conditions ID is returned with the Check Card process, Apple downloads and displays the terms and conditions of the card issuer to the user. If the user accepts the terms and conditions, Apple sends the ID of the terms that were accepted as well as the CVV to the Link and Provision process. Additionally, as part of the Link and Provision process, Apple shares information from the device with the card issuer or network, like information about your iTunes and App Store account activity (for example, whether you have a long history of transactions within iTunes), information about your device (for example, phone number, name, and model of your device plus any companion iOS device necessary to set up Apple Pay), as well as your approximate location at the time you add your card (if you have Location Services enabled). Using this information, the card issuer will determine whether to approve adding the card to Apple Pay.
>
> As the result of the Link and Provision process, two things occur:
> - The device begins to download the Wallet pass file representing the credit or debit card.
> - The device begins to bind the card to the Secure Element.
>
> The pass file contains URLs to download card art, metadata about the card such as contact information, the related issuer's app, and supported features. It also contains the pass state, which includes information such as whether the personalizing of the Secure Element has completed, whether the card is currently suspended by the card issuer, or whether additional verification is required before the card can make payments with Apple Pay.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf   at   p.   49   (last   visited   11/6/2018).

24.     As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to retrieve a widget and a wallet management applet (WMA) corresponding to the contactless card applet.  All of this functionality is disclosed in at least claim 11 of the '125 Patent.

**Adding a credit or debit card manually to Apple Pay**

To add a card manually, the name, card number, expiration date, and CVV are used to facilitate the provisioning process. From within Settings, the Wallet app, or the Apple Watch app, users can enter that information by typing, or using the camera on the device. When the camera captures the card information, Apple attempts to populate the name, card number, and expiration date. The photo is never saved to the device or stored in the photo library. After all the fields are filled in, the Check Card process verifies the fields other than the CVV. They are encrypted and sent to the Apple Pay Server.

If a terms and conditions ID is returned with the Check Card process, Apple downloads and displays the terms and conditions of the card issuer to the user. If the user accepts the terms and conditions, Apple sends the ID of the terms that were accepted as well as the CVV to the Link and Provision process. Additionally, as part of the Link and Provision process, Apple shares information from the device with the card issuer or network, like information about your iTunes and App Store account activity (for example, whether you have a long history of transactions within iTunes), information about your device (for example, phone number, name, and model of your device plus any companion iOS device necessary to set up Apple Pay), as well as your approximate location at the time you add your card (if you have Location Services enabled). Using this information, the card issuer will determine whether to approve adding the card to Apple Pay.

As the result of the Link and Provision process, two things occur:

- The device begins to download the Wallet pass file representing the credit or debit card.
- The device begins to bind the card to the Secure Element.

The pass file contains URLs to download card art, metadata about the card such as contact information, the related issuer's app, and supported features. It also contains the pass state, which includes information such as whether the personalizing of the Secure Element has completed, whether the card is currently suspended by the card issuer, or whether additional verification is required before the card can make payments with Apple Pay.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf    at    p.    49    (last    visited 11/6/2018).

**Adding credit or debit cards from a card issuer's app**

When the app is registered for use with Apple Pay, keys are established for the app and the card issuer's server. These keys are used to encrypt the card information that's sent to the card issuer, which prevents the information from being read by the iOS device. The provisioning flow is similar to that used for manually added cards, described previously, except one-time passwords are used in lieu of the CVV.

**Additional verification**

A card issuer can decide whether a credit or debit card requires additional verification. Depending on what is offered by the card issuer, the user may be able to choose between different options for additional verification, such as a text message, email, customer service call, or a method in an approved third-party app to complete the verification. For text messages or email, the user selects from contact information the issuer has on file. A code will be sent, which must be entered into Wallet, Settings, or the Apple Watch app. For customer service or verification using an app, the issuer performs their own communication process.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf   at   p.   50   (last   visited 11/6/2018).

25.      As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to provision the selected contactless card applet, the widget, and the WMA.  All of this functionality is disclosed in at least claim 11 of the '125 Patent.

### Adding a credit or debit card manually to Apple Pay

To add a card manually, the name, card number, expiration date, and CVV are used to facilitate the provisioning process. From within Settings, the Wallet app, or the Apple Watch app, users can enter that information by typing, or using the camera on the device. When the camera captures the card information, Apple attempts to populate the name, card number, and expiration date. The photo is never saved to the device or stored in the photo library. After all the fields are filled in, the Check Card process verifies the fields other than the CVV. They are encrypted and sent to the Apple Pay Server.

If a terms and conditions ID is returned with the Check Card process, Apple downloads and displays the terms and conditions of the card issuer to the user. If the user accepts the terms and conditions, Apple sends the ID of the terms that were accepted as well as the CVV to the Link and Provision process. Additionally, as part of the Link and Provision process, Apple shares information from the device with the card issuer or network, like information about your iTunes and App Store account activity (for example, whether you have a long history of transactions within iTunes), information about your device (for example, phone number, name, and model of your device plus any companion iOS device necessary to set up Apple Pay), as well as your approximate location at the time you add your card (if you have Location Services enabled). Using this information, the card issuer will determine whether to approve adding the card to Apple Pay.

As the result of the Link and Provision process, two things occur:

- The device begins to download the Wallet pass file representing the credit or debit card.
- The device begins to bind the card to the Secure Element.

The pass file contains URLs to download card art, metadata about the card such as contact information, the related issuer's app, and supported features. It also contains the pass state, which includes information such as whether the personalizing of the Secure Element has completed, whether the card is currently suspended by the card issuer, or whether additional verification is required before the card can make payments with Apple Pay.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf at p. 49 (last visited 11/6/2018).

### Adding credit or debit cards from a card issuer's app

When the app is registered for use with Apple Pay, keys are established for the app and the card issuer's server. These keys are used to encrypt the card information that's sent to the card issuer, which prevents the information from being read by the iOS device. The provisioning flow is similar to that used for manually added cards, described previously, except one-time passwords are used in lieu of the CVV.

### Additional verification

A card issuer can decide whether a credit or debit card requires additional verification. Depending on what is offered by the card issuer, the user may be able to choose between different options for additional verification, such as a text message, email, customer service call, or a method in an approved third-party app to complete the verification. For text messages or email, the user selects from contact information the issuer has on file. A code will be sent, which must be entered into Wallet, Settings, or the Apple Watch app. For customer service or verification using an app, the issuer performs their own communication process.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf at p. 50 (last visited 11/6/2018).

26.     **Indirect Infringement.** At least since Apple's receipt of notice and/or the filing of this Complaint, Apple and its partners and service operators, including merchants and end-users, that use the Apple Devices that include the Apple infringing embedded technology, without authorization or license from Fintiv, have been and are presently directly infringing at least claims 11, 18, and 23 of the '125 Patent.  Such partners and service operators include hundreds of banks in the United States.  *See* https://support.apple.com/en-us/HT204916 (last visited 11/6/2018). Apple is contributing to the infringement by others and/or inducing infringement by others, by, among other things, providing a mobile wallet that enables the provisioning of contactless cards. Apple has also contributed and/or induced, and continues to contribute and/or induce the infringement of at least claims 11, 18, and 23 of the '125 Patent by contributing to and/or inducing its partners and service operators to use Apple's products, such as the Apple Devices, in an infringing manner as described above, including encouraging and instructing its partners and service operators through software and documentation provided by Apple.  *See* https://developer.apple.com/wallet/ (last visited 12/20/2018).  *See also* https://developer.apple.com/library/archive/documentation/UserExperience/Conceptual/PassKit_ PG/index.html#//apple_ref/doc/uid/TP40012195 (last visited 12/20/2018).  Apple has specifically intended that its partners and service operators use its products that infringe at least claims 11, 18, and 23 of the '125 Patent by, at a minimum, providing access to support, training, and instructions for its infringing products to its partners and service operators to enable them to infringe at least claims 11, 18, and 23 of the '125 Patent, as described above.

27.    Fintiv is entitled to recover damages from Apple to compensate it for Apple's infringement, as alleged above, in an amount measured by no less than a reasonable royalty under 35 U.S.C. § 284.

### V.    DEMAND FOR JURY TRIAL

Fintiv demands a trial by jury of any and all issues triable of right before a jury.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fintiv respectfully requests that the Court:

A.    Enter a judgment that Apple directly infringes, contributorily infringes, and/or induces infringement of one or more claims of the '125 Patent;

B.    Enter a judgment awarding Plaintiff Fintiv all damages adequate to compensate it for Defendant Apple's direct or contributory infringement of, or inducement to infringe, the '125 Patent, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

C.    Declare this case exceptional pursuant to 35 U.S.C. §285; and

D.    Award Plaintiff Fintiv its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: December 21, 2018

RESPECTFULLY SUBMITTED,

By: */s/ J. Mark Mann*_____
J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, Texas 75652
913 Franklin Ave., Suite 201
Waco, Texas 76701
Telephone: (903) 657-8540
Facsimile: (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

Jonathan K. Waldrop (CA Bar No. 297903)
(*pro hac vice forthcoming*)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
(*pro hac vice forthcoming*)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(*pro hac vice forthcoming*)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(*pro hac vice forthcoming*)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(*pro hac vice forthcoming*)
hkim@kasowitz.com
Jack Shaw (CA Bar No. 309382)
(*pro hac vice forthcoming*)
jshaw@kasowitz.com
Gurtej Singh (CA Bar No. 286547)
(*pro hac vice forthcoming*)
gsingh@kasowitz.com

**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Daniel C. Miller (NY Bar No. 4232773)
(*pro hac vice forthcoming*)
**KASOWITZ BENSON TORRES LLP**
1399 New York Avenue NW, Suite 201
Washington, DC  20005
Telephone:  (202) 760-3400
Facsimile:   (202) 760-3401
Email: dcmiller@kasowitz.com

Rodney R. Miller (Texas Bar No. 24070280)
(*pro hac vice forthcoming*)
**KASOWITZ BENSON TORRES LLP**
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081
Email: rmiller@kasowitz.com

**Attorneys for Plaintiff
FINTIV, INC.**

Case 6:18-cv-00372-ADA   Document 1-1   Filed 12/21/18   Page 1 of 15

# EXHIBIT A

Case 6:18-cv-00372-ADA   Docum

US008843125B2

(12) **United States Patent**
    Kwon et al.

(10) **Patent No.:**     **US 8,843,125 B2**
(45) **Date of Patent:**      **Sep. 23, 2014**

(54) **SYSTEM AND METHOD FOR MANAGING MOBILE WALLET AND ITS RELATED CREDENTIALS**

(75) Inventors: **Yongsung Kwon**, Seongnam-si (KR); **Hyungjoon Hong**, Seoul (KR); **Jiwon Kang**, Seoul (KR); **Hyunjin Kim**, Yongin-si (KR)

(73) Assignee: **SK C&C**, Seongnam, Gyeonggi-Do (KR)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 446 days.

(21) Appl. No.: **13/310,091**

(22) Filed: **Dec. 2, 2011**

(65) **Prior Publication Data**
    US 2012/0172026 A1      Jul. 5, 2012

**Related U.S. Application Data**

(60) Provisional application No. 61/428,846, filed on Dec. 30, 2010, provisional application No. 61/428,851, filed on Dec. 30, 2010, provisional application No. 61/428,852, filed on Dec. 30, 2010, provisional application No. 61/428,853, filed on Dec. 30, 2010.

(51) **Int. Cl.**
    *H04W 4/00*      (2009.01)
    *H04W 12/04*      (2009.01)
    *H04L 29/06*      (2006.01)
    *H04W 12/06*      (2009.01)

(52) **U.S. Cl.**
    CPC .............. *H04W 12/06* (2013.01); *H04W 12/04* (2013.01); *H04L 63/067* (2013.01)
    USPC ......................................... **455/419**; 455/410

(58) **Field of Classification Search**
    USPC ......... 455/410, 418, 419, 558; 705/16, 39, 41
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,221,838 | A | 6/1993 | Gutman et al. |
| 6,199,762 | B1 | 3/2001 | Hohle |
| 6,480,957 | B1 | 11/2002 | Liao et al. |
| 6,487,403 | B2 | 11/2002 | Carroll |
| 6,950,939 | B2 | 9/2005 | Tobin |
| 7,024,390 | B1 | 4/2006 | Mori et al. |
| 7,065,341 | B2 | 6/2006 | Kamiyama et al. |
| 7,146,159 | B1 | 12/2006 | Zhu |
| 7,149,545 | B2 | 12/2006 | Hurst et al. |
| 7,155,411 | B1 | 12/2006 | Blinn et al. |
| 7,197,297 | B2 | 3/2007 | Myles et al. |

(Continued)

OTHER PUBLICATIONS

GlobalPlatform, Card Specification, Version 2.2, published Mar. 2006.

*Primary Examiner* — Sam Bhattacharya
(74) *Attorney, Agent, or Firm* — Lowe Hauptman & Ham, LLP

(57) **ABSTRACT**

A method for provisioning a contactless card applet in a mobile device with a mobile wallet application, including activating the mobile wallet application, connecting to a Trusted Service Manager (TSM) system, synchronizing the mobile wallet application with the TSM system, displaying a contactless card applet based on attributes of the mobile device, receiving a selection of a contactless card applet, retrieving a widget and a wallet management applet (WMA) corresponding to the contactless card applet, and provisioning the selected contactless card applet, the widget, and the WMA. A wallet management system (WMS) in a non-transitory storage medium to store and manage mobile wallet account information including a wallet client management component, a widget management component, a device profile management component, and a rule engine.

**25 Claims, 5 Drawing Sheets**



**US 8,843,125 B2**

Page 2

---

(56)        **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 7,233,785 | B2 | 6/2007 | Yamagishi et al. |
| 7,233,926 | B2 | 6/2007 | Durand et al. |
| 7,236,742 | B2 | 6/2007 | Hall et al. |
| 7,286,818 | B2 | 10/2007 | Rosenberg |
| 7,389,123 | B2 | 6/2008 | Rydgren et al. |
| 7,415,721 | B2 | 8/2008 | Fransdonk |
| 7,447,494 | B2 | 11/2008 | Law et al. |
| 7,454,233 | B2 | 11/2008 | Lu et al. |
| 7,469,151 | B2 | 12/2008 | Khan et al. |
| 7,490,775 | B2 | 2/2009 | Biderman |
| 7,527,208 | B2 | 5/2009 | Hammad et al. |
| 7,628,322 | B2 | 12/2009 | Holtmanns et al. |
| 7,689,205 | B2 | 3/2010 | Toy et al. |
| 7,689,508 | B2 | 3/2010 | Davis et al. |
| 7,707,113 | B1 | 4/2010 | DiMartino et al. |
| 7,708,194 | B2 | 5/2010 | Vawter |
| 7,711,392 | B2 | 5/2010 | Brown et al. |
| 7,819,307 | B2 | 10/2010 | Lyons et al. |
| 7,822,439 | B2 | 10/2010 | Teicher |
| 7,822,688 | B2 | 10/2010 | Labrou et al. |
| 2008/0010215 | A1 | 1/2008 | Rackley III et al. |
| 2008/0040265 | A1 | 2/2008 | Rackley III et al. |
| 2008/0208742 | A1 | 8/2008 | Arthur et al. |
| 2009/0124234 | A1 | 5/2009 | Fisher et al. |
| 2009/0307139 | A1 | 12/2009 | Mardikar et al. |
| 2009/0307140 | A1 | 12/2009 | Mardikar |
| 2010/0125495 | A1 | 5/2010 | Smith et al. |
| 2010/0125508 | A1 | 5/2010 | Smith |
| 2010/0138518 | A1 | 6/2010 | Aiglstorfer et al. |
| 2010/0145835 | A1 | 6/2010 | Davis et al. |
| 2010/0205432 | A1 | 8/2010 | Corda et al. |
| 2010/0211507 | A1 | 8/2010 | Aabye et al. |
| 2010/0275242 | A1 | 10/2010 | Raffard et al. |
| 2010/0275269 | A1 | 10/2010 | Vilmos et al. |
| 2010/0291904 | A1 | 11/2010 | Musfeldt et al. |
| 2010/0306107 | A1 | 12/2010 | Nahari |
| 2010/0330958 | A1 | 12/2010 | Corda et al. |
| 2011/0078081 | A1 | 3/2011 | Pirzadeh et al. |
| 2014/0089185 | A1 * | 3/2014 | Desai et al. .................. 705/41 |

* cited by examiner



Fig. 1

Case 6:18-cv-00372-ADA   Document 1-1   Filed 12/21/18   Page 5 of 15

U.S. Patent          Sep. 23, 2014          Sheet 2 of 5          US 8,843,125 B2



Fig. 2. Install Wallet Application



U.S. Patent        Sep. 23, 2014        Sheet 4 of 5        US 8,843,125 B2



Case 6:18-cv-00372-ADA   Document 1-1   Filed 12/21/18   Page 8 of 15



Fig. 5. Synchronization

US 8,843,125 B2

**1**

# SYSTEM AND METHOD FOR MANAGING MOBILE WALLET AND ITS RELATED CREDENTIALS

## CROSS REFERENCE TO RELATED APPLICATION

This application claims priority from and the benefit under 35 U.S.C. §119(a) of U.S. Provisional Patent Application No. 61/428,846, filed on Dec. 30, 2010, which is incorporated by reference for all purposes as if fully set forth herein. Also, the present application is related to U.S. Provisional Patent Application No. 61/428,851 filed on Dec. 30, 2010; U.S. Provisional Patent Application No. 61/428,852, filed on December 30; and U.S. Provisional Patent Application No. 61/428,853, filed on December 30. Applicant hereby incorporates by reference the above-mentioned provisional applications, which are not admitted to be prior art with respect to the present invention by their mention here or in the background section that follows.

## BACKGROUND OF THE INVENTION

1. Field

The following description relates to management of virtual cards stored on mobile devices.

2. Discussion of the Background

With the advent of advancing mobile technology, more features have been integrated into mobile devices. From GPS applications to mobile office products, mobile devices, such as mobile communicative terminals, have practically become a necessity for everyday needs. In order to further utilize mobile technology to better cater to a user's daily requirements, attempts have been made to provide for a mobile financial management system to replace conventional physical wallets. Specifically, this mobile wallet functionality was sought to be realized through provisioning of card issuer's account information directly into a secure element (SE) of the mobile device equipped with Near Field Communication (NFC) chipset. The SE may be a smart card chip capable of storing multiple applications, including of account specific information that may not be easily accessed by external parties. The model mobile wallet application may have the same composition as a conventional wallet, which may contain payment cards, member cards, transportation cards, and loyalty cards.

Further, to make the wallet function more convenient to the owners of the mobile device, a method of providing contactless payment (NFC-based applications) through provisioning account specific information within the secure domain of the mobile device's SE has been provided. More specifically, user financial credentials, such as credit card numbers, may be provisioned onto mobile devices equipped with Near Field Communication chipset (NFC enabled) to make payments. Once the user financial credentials have been provisioned onto the NFC enabled mobile device, the provisioned NFC enabled device may transfer information or make payments to another NFC compatible device by coming near within a few centimeters of one another without physically contacting each other. This type of technology is conventionally referred to as "contactless" technology and a payment made with this technology is referred to as "contactless" payment.

However, regardless of benefits that may be obtained through integrating wallet functionality into mobile device, prevailing technology still lacks an effective means to manage various payment applets residing within the mobile device.

**2**

With the advent of NFC-based contactless payment applications, users were provided a way to select a contactless payment applet (i.e., contactless payment virtual card) from various contactless payment applets stored in the mobile device for payment at corresponding point-of-sale (POS) devices. However, while these contactless payment applets may be selected to make a purchase, the management of payment applets may be limited. For example, a user may be limited to view the contactless payment applets stored in the user's mobile device when interacting with a POS device. Further, even if the user is able to view the various contactless payment applets stored in the mobile device with or without the POS device, the user may be unable to view the details related to the contactless payment applets (e.g., account number, expiration date, security code, balance and the like). Accordingly, users may be unable to effectively manage or keep track of various contactless payment applets stored in their respective mobile devices.

Typically, the contactless card applets may be stored within a specific compartment, or a secured domain, of the SE to be accessed during an interaction with the POS device. Moreover, even when such payment applications are accessed, since these applications are managed through industry standard Payment Procedure Secure Elements (PPSE) that only provide for application identification (ID) and label, a limited generic description may be provided to the user. Accordingly, the user may be unable to view any account specific information stored within the SE or manage such applications with or without the use of POS equipment.

Another limitation of current mobile wallet applications is the lack of support providing for such technology. With such focus on mobile commerce, many competing service providers seek delivering their services to the users. However, such services may be offered to the users without regard to the mobile device capabilities or mobile service providers utilized by the user. Due to technical or business compatibility, there may be numerous applications that may be inapplicable to the user's individual attributes (e.g., bank membership, mobile service provider, manufacturer of a mobile device owned by the user, type of secure element installed in the mobile device, operating system of the mobile device, and the like). Accordingly, users may often be bombarded with various applications that may be inapplicable to the user, making the process more difficult than necessary.

Another issue with the current mobile wallet application is its ability to update its information. As various service providers operate independently from one another, when an update is required by a particular service provider, each individual application is typically updated separately. Such inefficiency may dissuade users from obtaining crucial updates that may be necessary to a particular application.

## SUMMARY

Exemplary embodiments of the present invention provide a mobile device to store a mobile wallet application and a wallet management system (WMS) to store corresponding wallet application information. Exemplary embodiments of the present invention provide a method for provisioning a wallet application, a contactless card applet, a wallet management applet (WMA), and a widget. Exemplary embodiments of the present invention provide a method for synchronizing a mobile wallet application with the WMS.

Additional features of the invention will be set forth in the description which follows, and in part will be apparent from the description, or may be learned by practice of the invention.

US 8,843,125 B2

**3**

Exemplary embodiments of the present invention provide a method for installing a wallet application in a mobile device including requesting, by the mobile device, a mobile wallet application comprising a corresponding Over-the-Air (OTA) proxy; receiving mobile wallet application installation information; installing the mobile wallet application in the mobile device; capturing mobile device information by using the OTA proxy, the mobile device information comprising secure element (SE) information; and transmitting the mobile device information for registering the installed mobile wallet application.

Exemplary embodiments of the present invention provide a method for managing mobile wallet accounts installed on a mobile devices including receiving a request for a mobile wallet application from a mobile device; transmitting the mobile wallet application to the mobile device; receiving mobile device information, the mobile device information comprising SE information; and registering the mobile device and the corresponding mobile wallet application in a trusted service manager (TSM).

Exemplary embodiments of the present invention provide method for provisioning a contactless card applet in a mobile device comprising a mobile wallet application including activating the mobile wallet application; connecting to a TSM system; synchronizing the mobile wallet application with the TSM system; displaying a contactless card applet based on attributes of the mobile device; receiving a selection of a contactless card applet; retrieving a widget and a WMA corresponding to the contactless card applet; and provisioning the selected contactless card applet, widget, and the WMA.

Exemplary embodiments of the present invention provide a WMS in a non-transitory storage medium to store and manage mobile wallet account information including a wallet client management component to store and to manage a mobile wallet application; a widget management component to store and to manage widgets; a device profile management component to store mobile device information; and a rule engine to filter a widget based on the mobile device information.

Exemplary embodiments of the present invention provide a mobile device including a SE; a mobile wallet application to store a widget corresponding to a contactless card applet, wherein the contactless card applet is stored in the SE; a WMA corresponding to the contactless card applet, wherein WMA is stored in the SE; and an OTA proxy to provision the contactless card applet, a widget corresponding to the contactless card applet, and the WMA.

It is to be understood that both foregoing general descriptions and the following detailed description are exemplary and explanatory and are intended to provide further explanation of the invention as claimed. Other features and aspects will be apparent from the following detailed description, the drawings, and the claims.

### BRIEF DESCRIPTION OF THE DRAWINGS

The accompanying drawings, which are included to provide a further understanding of the invention and are incorporated in and constitute a part of this specification, illustrate embodiments of the invention, and together with the description serve to explain the principles of the invention.

FIG. **1** is a system diagram of a mobile wallet application and associated integration in accordance with an exemplary embodiment of the present invention.

FIG. **2** is a system diagram illustrating a system and method for provisioning mobile card wallet management application along with supporting applications, mobile card

**4**

widgets, contactless card applets, and related credentials in accordance with an exemplary embodiment of the present invention.

FIG. **3** is a system diagram illustrating a system and method for provisioning service provider specific mobile card widgets, contactless card applets, and wallet management application account information in accordance with an exemplary embodiment of the present invention.

FIG. **4** is a system diagram illustrating a system and method for dynamically filtering applicable mobile wallet service provider specific widgets based upon user account attributes in accordance with an exemplary embodiment of the present invention.

FIG. **5** is a system diagram illustrating a system and method for synchronizing mobile wallet application with the master mobile wallet configuration server to provide a most current version of the mobile wallet application in accordance with an exemplary embodiment of the present invention.

### DETAILED DESCRIPTION OF THE ILLUSTRATED EMBODIMENTS

The invention is described more fully hereinafter with references to the accompanying drawings, in which exemplary embodiments of the invention are shown. This invention may, however, be embodied in many different forms and should not be construed as limited to the embodiments set forth herein. Rather, these exemplary embodiments are provided so that this disclosure is thorough, and will fully convey the scope of the invention to those skilled in the art. It will be understood that for the purposes of this disclosure, "at least one of each" will be interpreted to mean any combination the enumerated elements following the respective language, including combination of multiples of the enumerated elements. For example, "at least one of X, Y, and Z" will be construed to mean X only, Y only, Z only, or any combination of two or more items X, Y, and Z (e.g. XYZ, XZ, YZ). Throughout the drawings and the detailed description, unless otherwise described, the same drawing reference numerals are understood to refer to the same elements, features, and structures. The relative size and depiction of these elements may be exaggerated for clarity, illustration, and convenience.

FIG. **1** is a system diagram of a mobile wallet system and associated integration, according to an exemplary embodiment of the present invention.

As shown in FIG. **1**, an example system utilizing mobile wallet technology may include a mobile device **100**, mobile wallet management system (WMS) **110**, supporting Trusted Service Manager (TSM) system **120**, Mobile Network Operator (MNO) **130**, and Service Provider (SP) **140**.

WMS **110** includes a wallet client management component **111**, widget management component **112**, device profile management component **113**, user profile management component **114**, data management component **115**, and rule engine **116**.

In particular, wallet client management component **111** is responsible for the wallet application itself (referred as the container), which may house the individual widgets (e.g., applications stored at the application level related to a financial institution, transportation account, and the like). The wallet client management component **111** may store container specific information, including the type of wallet application and manufacturer. For example, wallet client management component **111** may recognize a user John has a mobile wallet application manufactured by Google® and has specified set of known functionalities. By managing the type of

US 8,843,125 B2

**5**

wallet application the user has on the mobile device, it may be possible to provide the same wallet application when necessary.

Widget management component **112** on the other hand is responsible for the individual widgets stored within the wallet container. Widgets may be an application configured to interface with a user of the mobile device. In an example, widgets may refer to individual payment applications, transportation applications, and other related applications. Device Profile management component **113** houses a memory to store one or more programs, such as applications, and other related information. Device Profile management component **113** may store device specific information, such as information related to the mobile device itself including type of mobile device, supporting operating system (OS), mobile service provider, and other relevant information. User Profile management component **114** captures user identifying information such as name, address, birthday, phone number, and the like. Data Management component **115** allows further expansion of data management services offered by a mobile WMS (e.g., transaction history, user preferences, loyalty programs, digital receipts, digital coupons and the like). Rule engine **116** may filter widgets based on information related to the mobile device. Although various components were illustrated to be included in the WMS **110**, the configuration of WMS **110** is not limited thereto. The illustrated components may be included within the WMS **110** or external to the WMS **110**.

The disclosed WMS **110** may reside within TSM system **120** or independent of the TSM system **120**. For the purposes of this disclosure, it will be assumed that the WMS **110** is housed within the TSM system **120**. Like the TSM system **120**, WMS **110** may interact with MNO **130** to transmit and receive billing related information. Further, WMS **110** may interact with SP **140** to receive and transmit SP payment card information.

The TSM system **120** may refer to a third party entity positioned to consolidate various information from various service providers including, financial institutions, MNOs, handset manufacturers, and card manufacturers. As TSM system **120** may hold various information from various parties, the mobile device may interact with the TSM system individually rather than various discrete entities. Accordingly, the described TSM system **120** may act as an integration point for all of the external parties the mobile device may deal with, providing for a seamless and more efficient operation of mobile services.

A method for installing a mobile wallet application and associated management applet in a secure element (SE) is described below in reference to FIG. **2**. FIG. **2** is a system diagram illustrating a system and method for installing a mobile wallet application on the mobile device and correlating wallet management applet in the SE of the mobile device in accordance with an exemplary embodiment of the present invention.

As shown in FIG. **2**, in step **201**, the mobile device **100** requests a new mobile wallet application **24**. In an alternative flow, a SP **140** may request installation of the mobile wallet application **24** from the TSM system **120**. When requesting installation of mobile wallet application **24** from the TSM system **120**, the TSM system **120** may wait for the mobile device **100** to connect to the TSM system **120** before installing the mobile wallet application **24**. The TSM system **120** may install the mobile wallet application **24** directly upon connection to the mobile device **100** or wait until the user approves the request to install the mobile wallet application **24**. If installation is executed, a corresponding widget representing a virtual card, such as a virtual credit card, may be

**6**

provisioned to reside within the respective mobile wallet application **24**. In an example, the widget representing the virtual card may reside within the mobile wallet application **24**.

Once request is made, in step **202**, the TSM system **120** receives the mobile wallet application installation request and corresponding identification information and checks for duplicate records existing in the TSM system **120**. If it is determined that the requesting customer is a new customer, a new record is created within the TSM system **120**. If the customer information already exists, TSM system **120** may verify the existing customer and update the customer's information, if applicable.

After a customer account has been created or updated, if it is determined that the mobile wallet application **24** is not installed on the mobile device **100**, the TSM system **120** will confirm the mobile wallet application installation request and initiate the wallet application installation process. The installation process may be initiated by transmitting a Wireless Application Protocol (WAP) message with an embedded Uniform Resource Locator (URL) to the Short Message Service (SMS) platform in step **203**, which relays the message to the mobile device **100** in step **204**. However, the mobile wallet application **24** may be obtained in various other ways as well and is not limited to the WAP message method as described above. The mobile wallet application **24** may be downloaded directly to the requesting mobile device **100**, sent to the user in a physical medium storing the application, or by other suitable methods for providing software applications.

The user, upon receipt of the installation message from the SMS platform, may initiate the actual installation process by sending a request to the TSM system **120** in step **205**.

In response, TSM system **120** transmits the requested mobile wallet application **24** to mobile device **100** for installation and an accompanying over-the-air (OTA) proxy program to allow OTA provisioning in step **206**. Although mobile wallet application **24** and OTA proxy are shown as being part of mobile device **100**, an ordinarily skilled artisan understands that these elements may not be present on mobile device **100** until they are installed.

Once the mobile wallet application **24** and accompanying OTA proxy program have been downloaded, the mobile wallet application **24** may be launched by the requesting user in step **207**. Alternatively, the mobile wallet application **24** may be launched automatically once it is downloaded. Also, in the event OTA proxy is already downloaded or installed, the mobile wallet application **24** may be downloaded independently of the OTA proxy. Although not illustrated, the accompanying OTA proxy may be included in the mobile wallet application **24**.

In step **208**, the OTA proxy captures the mobile device information (e.g. International Mobile Equipment Identity (IMEI)/Mobile Equipment Identifier (MEID), Mobile Subscriber Integrated Services Digital Network Number (MSISDN)), including SE information (e.g. Card Production Life Cycle (CPLC), Card Serial Number (CSN), Card Image Number (CIN), Integrated Circuit Card Identification (IC-CID)), which may be stored in a device memory component of the mobile device **100**. The OTA proxy may be a separate component from the mobile wallet application **24**, or may be included in the mobile wallet application **24**.

Afterwards, in step **209**, the OTA proxy sends the captured SE and mobile device information to the TSM system **120**, which may house a WMS **110** (as shown in FIG. **2**) or be in communication with an external WMS **110** (as shown in FIG. **1**).

US 8,843,125 B2

**7**

The WMS **110**, upon receipt of the information provided by the OTA proxy, creates a Mobile identification (ID) for the installed mobile wallet application **24** in step **210**. Once the mobile ID has been created, the WMS **110** requests TSM system **120** to provision a corresponding wallet management applet (WMA) **21** with the following information via OTA proxy: CPLC or CSN, CIN, Mobile ID and WMA personalization data. In an example, WMA **21** may include both a WMA **21** container and one or more WMA **21** applets. WMA **21** container may manage the information stored in the WMA **21** applets. WMA **21** container may be installed in the mobile device **100** when WMA **21** applet is requested to be installed, or when the mobile wallet application is installed, or separately without regard to either the WMA **21** applet or the mobile wallet application.

The WMA **21** container is a software application that may reside within the SE of the mobile device **100** to manage account information related to the contactless card applet **23** (i.e. WMA **21** applet) that may be typically inaccessible by the user. In an example, the SE may store one or more contactless card applets that may be used through a mobile device **100** with NFC capability, but the contactless card applets may largely be inaccessible by the user. More specifically, during a financial transaction, the NFC enabled mobile device may transmit contactless card information, which may include account specific information to a POS device to complete the transaction. However, even during this transaction, the user is typically limited to the selection of a generic logo corresponding to the contactless card applet being used in the transaction, but no account specific information may be accessed by the user of the mobile device **100**. In an example, account specific information may include credit card number, expiration date, security code (e.g., a combination of numbers typically found on back of credit cards), personal identification number (PIN) (e.g., a combination of numbers typically used to conduct financial transactions with the user's financial institution), and other related information.

To provide the user of the mobile device with the account specific information related to contactless card applets, separate account information associated with the corresponding contactless card applet **23** (e.g. credit card number, expiration date, security code, PIN, etc.) may be provisioned into the SE as WMA **21** applets. The respective account information or WMA **21** applet may be provided by duplicating the account information associated with the contactless card when the TSM system receives contactless card applets from SPs to provision into the mobile device **100**. Alternatively, SP providing the contactless card applet may provide the account related information separately to the TSM system for provisioning.

In step **211**, TSM system **120** sends a wake up message to the mobile push server (e.g. Cloud to Device Messaging (C2DM)) with a mobile device identifier to wake up OTA proxy residing in the requesting mobile device **100**.

The mobile push server routes the received message to the mobile wallet application **24**, which in turn sends the request to OTA proxy and wakes OTA proxy in step **212**.

In step **213**, the OTA proxy gathers mobile device and SE specific information such as MSISDN and CIN and sends it over to TSM system **120**. In an example, OTA proxy gathers mobile device and SE specific information to send to TSM system **120** every time it is woken up. Alternatively, this step may be skipped and the mobile device and SE information provided in step **209** to register the mobile device **100** and the wallet application may be used.

Once TSM system **120** receives the information sent by OTA Proxy in step **213**, TSM system **120** processes the infor-

**8**

mation and converts the identifying information along with the request to provision WMA **21** container into Application Protocol Data Unit (APDU) commands in step **214** and sends them over to OTA proxy in step **215**.

Next, in step **216**, OTA proxy receives the APDU commands to install WMA **21** container and relays them to the SE, which processes the APDU commands to install the requested WMA **21** container and its associated credentials. SE then responds back with the result of each command request in step **217**. Although WMA **21** container, PPSE **22**, and Contactless Card Applet **23** are shown as being part of mobile device **100**, an ordinarily skilled artisan understands that these elements may not be present on the SE of the mobile device **100** until they are installed.

Subsequently, OTA Proxy relays the result back to the TSM system **120** in step **218**, and the TSM system **120** updates its system with the result.

Once the mobile wallet application **24** has been successfully installed in the mobile device **100**, the user may provision SP **140** specific contactless card applets **23**, and its corresponding widget applications and WMA **21** applet onto mobile device **100**.

FIG. **3** is a system diagram illustrating a method for installing a mobile widget into the mobile wallet application **24** and its corresponding contactless card applet and account information into the SE of the requesting mobile device in accordance with an exemplary embodiment of the present invention.

In step **301**, the user logs into the mobile wallet application **24** to start the mobile wallet application **24** for use. Once started, the mobile wallet application **24** connects to the TSM system **120**, which may house WMS **110**, for synchronization in step **302**. A more detailed description of how this synchronization process operates is provided below with reference to FIG. **5**.

TSM system **120** checks for any updated information made by external parties (e.g. SP **140**, user by web access, TSM system **120** administrator, and/or etc.) and sends the list of waiting updates to the mobile wallet application **24** in step **303**. Further, additional applications that user may be interested in may be displayed for download through dynamic filtering. The applicable applications based on user attributes will be displayed through this filtering process. A more detailed description of how this dynamic filtering works is provided below with reference to FIG. **4**.

The mobile device user is prompted to decide whether to update the mobile wallet application **24** with the changes made at the TSM system **120**, if any, in step **304**. Alternatively, the mobile device may update the mobile wallet application **24** automatically with the respective changes in step **304**.

When the mobile device **100** updates the mobile wallet application **24** or downloads a new application, a request is made to the TSM system **120**/WMS **110** to provision the updates and/or selected card applications in step **305**. If a request to update requires updating of account specific information, such as change in account number or expiration date, the process to update the application will follow the same steps regardless of the information being updated.

Further, if a request to provision the selected contactless card applet **23** is made, such as a "VISA®" contactless card applet, a corresponding widget and WMA **21** applet may be programmed to be provisioned automatically. The corresponding widget may reside in the mobile wallet application **24**, at the application level, to provide an interface to the user. The corresponding WMA **21** applet, which may include account specific information of the contactless card apple

US 8,843,125 B2

9

(e.g. credit card number, expiration date, security code, PIN, etc.), may be provisioned into the SE. By installing both the WMA 21 applet and the widget, the user may view and manage the information stored in the WMA 21 applet through the corresponding widget.

TSM system 120 processes the provisioning request and sends a wake up message request to the mobile push server in step 306, and the push server proceeds to relay the request the mobile wallet application 24, which in turn sends the message to OTA proxy, thereby waking OTA proxy in step 307.

In step 308, OTA proxy wakes up and gathers mobile device and SE specific information, such as MSISDN and CIN, and sends the collected information to TSM system 120.

Once TSM system 120 receives the information sent by OTA Proxy, TSM system 120 processes the received information along with the provisioning command and converts both the received information along with the provisioning command into APDU commands to send to OTA proxy in step 309. When sending the APDU commands, the contactless card applet and the corresponding WMA 21 applet are sent to OTA proxy for provisioning into the SE. However, since the widget is provisioned at the application level and not into the SE, the widget may be provisioned through the OTA proxy or through a wireless network.

Next, in step 310, OTA proxy receives the APDU commands from the TSM system 120 to install requested issuer contactless applets 23 and correlating WMA 21 applet to be provisioned. In an example, contactless applets 23 and correlating WMA 21 applet are provided in different domains of the same SE. In response, SE processes the APDU commands for both the contactless applet and the WMA 21 applet and sends back the result of each command request in step 311. As APDU commands may be processed one at a time, multiple communications may be passed back and forth between the OTA proxy and the SE.

Subsequently, OTA Proxy relays the result back to the TSM system 120 in step 312, and the TSM system 120 updates its system with the result of the request in step 313. Once information is updated, notification of the results is sent to SP 140 in step 314. Similarly, the mobile wallet application 24 notifies TSM system 120 of the result of the widget installation. For example, the mobile wallet application 24 will notify the TSM system 120 whether the widget installation was a success or a failure.

Once account specific information is installed into WMA 21 container as WMA 21 applet, the respective mobile device 100 may access the information periodically for required updates. For example, the mobile device 100 may access the information stored in the WMA 21 applet using the mobile wallet application 24 to check for the expiration dates of the contactless card applets 23 stored within the mobile device 100 and prompt user for updates as necessary. Alternatively, the mobile wallet application 24 may check for updates automatically. In addition, the user may also gain access to the account number, security code, and corresponding expiration date as necessary to make purchases online for further utility. In an example, the information stored in the WMA 21 applet may allow the mobile device 100 to check the expiration date of the contactless card applet 23 and request update when the card applet expires.

WMA 21 container may, however, limit amount of change requests to the WMA 21 applet as they contain account specific information. For example, the number of times expiration date may be changed with a reference time period may be limited, or changes to the credit card numbers may be prohibited. In addition, WMA 21 container may prevent user from making changes directly in the WMA 21 applet but

10

allow request for modification to the TSM system 120, which in turn will make the request to the relevant external parties. While the described process illustrates a preferred embodiment of the present invention, the amount of modification allowed by the WMA 21 container is not limited to what has been described. In some instances, WMA 21 container may allow direct modification to the account specific information as dictated by business needs.

FIG. 4 is a system diagram illustrating a method for dynamically filtering a list of mobile widget applications that are available for installation based upon corresponding mobile device attributes in accordance with an exemplary embodiment of the present invention.

In step 401, the user logs into the mobile wallet application 24, which seeks to connect with the TSM system 120/WMS 110.

The TSM system 120 receives the connection request through a mobile gateway residing within the TSM system 120 and relays the request to a Rule Engine in TSM system 120 in step 402. The TSM system 120 queries the user account in its system in step 403 for equipment information, MNO, SP accounts, and any other relevant information. Based on the mobile device 100 attributes, a filtered list of downloadable applications from the TSM system 120 may be displayed to the mobile device. In an example, mobile device 100 attributes may include, without limitation, the mobile network provider of the mobile device 100 (e.g. "Sprint®," "Verizon®," "AT&T®", etc.), financial institutions associated with the contactless card applets stored (e.g. "Wachovia®," "Bank of America®," "Chase®", etc.), mobile device 100 manufacturer (e.g. "HTC®", "Motorola®", "Apple®", etc.), and mobile device 100 hardware specifications (i.e. hardware, software, operating system, etc.).

Here, TSM system 120 may house a large list of available applications, including contactless card applets 23, as illustrated in FIG. 4. TSM system 120 may house various applications without regard to the device capabilities, SPs' relationship with other SPs, or other limitations that may be inherent in the business or technical environments. However, as an individual user connects with the TSM system 120 to download new applications, TSM system 120 may dynamically filter the list of available applications based upon the mobile device attributes described above.

As many mobile devices operate with various operating systems and standards, not all of the applets provided by the SP may be compatible with the user mobile device or user's MNO. Because of lack of standardization of hardware and software on mobile devices, an efficient method to filter only the relevant applets is helpful. Along with these technical limitations, many MNOs and SPs may decide not to provide their services to each other for business reasons. As the general public may not be familiar with such knowledge, an additional filtering mechanism may be provided to provide only the applicable applets to the requesting user. In an example, all of the provided limitations may be managed and applied by the Rule Engine in the TSM system 120. The Rule Engine may be housed in the TSM system 120 or may exist as an external entity, which interacts with TSM system 120 through a network. Further, the Rule Engine may be a combination of software and hardware, software to apply and manage the rules and hardware to store the relevant rules. Accordingly, by providing an active dynamic filtering mechanism at the TSM system 120 level, all of the parties involved in such transaction need to make only a general request to the TSM system 120 to access and to provide customer specific services.

US 8,843,125 B2

**11**

Once the list of applicable applets have been dynamically filtered, TSM system **120** sends the list of applets to display to the mobile gateway in step **404**, which relays it back to the mobile wallet application **24** in step **405**.

In FIG. **5**, a state diagram is provided for synchronizing the mobile wallet application residing within the mobile device with the TSM system in accordance with an exemplary embodiment of the present invention. As with many electronic devices that may be prone to damage and wear, or often misplaced, a centralized management or storage may be beneficial to maintain a master file of the user wallet configuration.

In step **501**, multiple external parties, such as credit card service providers as illustrated in FIG. **5**, may send a request for changes to be made to the user's mobile wallet configuration directly to the TSM system **120**/WMS **110**, which may store the master configuration of the respective mobile wallet application **24**. In addition, TSM system **120** administrators and the user themselves may access the TSM system **120** via web access or any other remote access functionality. As the mobile wallet application **24** may not always be on, a central repository allows external parties to make the necessary requests without regard to user's mobile wallet application **24**'s operating status. For example, SPs **140** may request an additional contactless card applet **23** to be provisioned to the user's SE on their own time without regard to the mobile wallet application **24**'s operating status. Similarly, TSM system **120** itself may recognize that the expiration date of the respective application is coming up and prompt the user to update the card for provisioning when the mobile wallet application **24** connects to the system.

While only TSM system **120** administrator, SP **140**, and the user were displayed, the requesting party may be any external party to the TSM system **120**.

Subsequently, in step **502**, when the user logs into the mobile wallet application **24**, the mobile wallet application **24** checks with the TSM system **120**/WMS **110** for any modifications to the wallet configuration since the last login by the user. As the mobile wallet application **24** synchronizes every time the application is logged into, the user can be sure that the user has access to the most current information during use. In addition, by limiting synchronization events to access of mobile wallet application **24**, secure access to sensitive information is provided only when the user is utilizing the mobile wallet application **24**. However, if desired, mobile wallet application **24** may always be in sync by automatically whenever mobile device is on and has mobile signal.

Any updates made in the WMS **110** while mobile wallet application **24** was offline will be prompted for the user to make the updates in step **503**. User may update one application at a time or all at once if such is desired. Also, the user may set the application to automatically update every change made in the TSM system **120**/WMS **110** at synchronization.

In step **504**, while mobile wallet application **24** is still active, any modifications that are made in the mobile wallet application **24** itself will be updated in the WMS **110** in step **505** as synchronization is a continuous one during usage. For example, if the user changes a user preference on the mobile wallet application **24**, changes to the user preference may be updated into the WMS **110** in real time. Similarly, if the mobile device **110** prompts the user to update the expiration date of the contactless applet and the user agrees, user's request will be submitted to TSM system **120**, which will process the request and route it to SP **140** for processing.

It will be apparent to those skilled in the art that various modifications and variation can be made in the present invention without departing from the spirit or scope of the inven-

**12**

tion. Thus, it is intended that the present invention cover the modifications and variations of this invention provided they come within the scope of the appended claims and their equivalents.

What is claimed is:

**1**. A method for installing a wallet application in a mobile device, comprising:

   requesting, by the mobile device, a mobile wallet application comprising a corresponding Over-the-Air (OTA) proxy;

   receiving mobile wallet application installation information;

   installing the mobile wallet application in the mobile device;

   capturing mobile device information by using the OTA proxy, the mobile device information comprising secure element (SE) information; and

   transmitting the mobile device information for registering the installed mobile wallet application.

**2**. The method of claim **1**, wherein installing the mobile wallet application in the mobile device comprises automatically installing upon receipt of the mobile wallet application installation information.

**3**. The method of claim **1**, further comprising provisioning a wallet management applet (WMA) container into the SE of the mobile device.

**4**. The method of claim **1**, wherein receiving mobile wallet application installation information comprises:

   receiving a Wireless Application Protocol (WAP) message with an embedded Uniform Resource Locator (URL) from a Short Message Service (SMS) platform.

**5**. The method of claim **1**, wherein capturing mobile device information comprises:

   capturing at least one of an International Mobile Equipment Identity (IMEI), a Mobile Equipment Identifier (MEID), a Mobile Subscriber Integrated Services Digital Network Number (MSISDN), a Card Production Life Cycle (CPLC), a Card Serial Number (CSN), a Card Image Number (CIN), and an Integrated Circuit Card Identification (ICCID).

**6**. The method of claim **3**, wherein provisioning a WMA container into the SE comprises:

   transmitting a request to provision the WMA container; and

   receiving the WMA container installation information in Application Protocol Data Unit (APDU) commands; and

   provisioning the converted APDU commands to the SE.

**7**. A method for managing mobile wallet accounts installed on mobile devices, comprising:

   receiving a request for a mobile wallet application from a mobile device;

   transmitting the mobile wallet application to the mobile device;

   receiving mobile device information, the mobile device information comprising secure element (SE) information; and

   registering the mobile device and the corresponding mobile wallet application in a trusted service manager (TSM).

**8**. The method of claim **7**, wherein registering the mobile device and the corresponding mobile wallet application in a TSM comprises:

   checking for registered account information corresponding to the requesting mobile device in the TSM system; and

   registering the mobile device in the TSM system in response to no corresponding registered account infor-

US 8,843,125 B2

13

mation being found in the TSM system, or updating account information in response to finding the corresponding registered account information in the TSM system.

**9**. The method of claim **7**, further comprising transmitting an accompanying over-the-air (OTA) proxy application to the mobile device.

**10**. The method of claim **8**, wherein registering the mobile device comprises:

creating a mobile identifier for the installed mobile wallet application;

storing the mobile device information; and

connecting the mobile device information with the mobile identifier.

**11**. A method for provisioning a contactless card applet in a mobile device comprising a mobile wallet application, the method comprising:

activating the mobile wallet application;

connecting to a Trusted Service Manager (TSM) system;

synchronizing the mobile wallet application with the TSM system;

displaying a contactless card applet based on attributes of the mobile device;

receiving a selection of a contactless card applet;

retrieving a widget and a wallet management applet (WMA) corresponding to the contactless card applet; and

provisioning the selected contactless card applet, the widget, and the WMA.

**12**. The method of claim **11**, wherein synchronizing the mobile wallet application with the TSM system comprises:

receiving a change made to a mobile wallet application user account on the TSM system; and

provisioning the changed information.

**13**. The method of claim **11**, wherein synchronizing the mobile wallet application with the TSM system comprises:

checking for a change made to a configuration of the mobile wallet application; and

transmitting the change to the TSM system.

**14**. The method of claim **11**, wherein displaying a contactless card applet based on attributes of the mobile device comprises:

retrieving mobile device information comprising SE information;

transmitting the mobile device information; and

receiving filtered contactless card applet for provisioning, wherein the contactless card applet is filtered based on the mobile device information.

**15**. The method of claim **14**, wherein displaying the contactless card applet further comprises:

receiving filtered contactless card applet for provisioning, wherein the contactless card applet is filtered based on the business rules.

**16**. The method of claim **11**, wherein provisioning the selected contactless card applet, WMA and widget comprises:

transmitting a request for installation of the contactless applet and the corresponding widget and WMA to be installed, wherein the WMA is a software application configured to store account specific information and the widget is an application configured to interface with a user of the mobile device; and

14

receiving the contactless applet, the WMA, and the widget information through OTA proxy.

**17**. The method of claim **16**, wherein account specific information comprises at least one of a payment card number, a security code, an expiration date, and a personal identification number (PIN).

**18**. A wallet management system (WMS) in a non-transitory storage medium to store and manage mobile wallet account information, comprising:

a wallet client management component configured to store and to manage a mobile wallet application;

a widget management component configured to store and to manage widgets;

a device profile management component configured to store mobile device information; and

a rule engine configured to filter a widget based on the mobile device information,

wherein said wallet management system is configured to receive the mobile device information from a mobile device and store the mobile device information in the device profile management component, and

wherein said wallet management system is configured to register the mobile device and the mobile wallet application in a Trusted Service Manager (TSM) system.

**19**. The WMS of claim **18**, wherein the wallet client management component further stores wallet application specific information comprising at least wallet application type and wallet application manufacturer information.

**20**. The WMS of claim **18**, wherein the mobile device information comprises at least one of a mobile device type, a supporting Operating System (OS), a mobile service provider, a mobile device manufacturer, and a secure element (SE) type.

**21**. The WMS of claim **18**, further comprising a user profile management component to capture and manage user identifying information.

**22**. The WMS of claim **18**, wherein the WMS is hosted on the TSM system.

**23**. A mobile device, comprising:

a secure element (SE);

a mobile wallet application configured to store a widget corresponding to a contactless card applet, wherein the contactless card applet is stored in the SE;

a wallet management applet (WMA) corresponding to the contactless card applet, wherein the WMA is stored in the SE; and

an over-the-air (OTA) proxy configured to provision the contactless card applet, a widget corresponding to the contactless card applet, and the WMA,

wherein said OTA proxy is configured to capture mobile device information comprising SE information; and

wherein said OTA proxy is configured to transmit the mobile device information for registering the mobile wallet application.

**24**. The mobile device of claim **23**, wherein WMA is configured to store account information associated with the contactless card applet, and the widget is configured to include a user interface.

**25**. The mobile device of claim **24**, wherein the account information comprises at least one of a card number to access financial information, a security code, a personal identification number (PIN), and an expiration date.

\* \* \* \* \*

JS 44 (Rev. 08/18)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Fintiv, Inc. | Apple Inc. |

| **(b)** County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____ <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |
|---|---|
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br> J. Mark Mann, Mann Tindel Thompson, 300 West Main St. <br> Henderson, Texas 75652 (903) 657-8540 | Attorneys *(If Known)* |

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff* 
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury <br> ☐ 362 Personal Injury – Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury – Product Liability <br> ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 690 Other <br><br> **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Management Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br><br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☒ 830 Patent <br> ☐ 835 Patent – Abbreviated New Drug Application <br> ☐ 840 Trademark <br><br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 485 Telephone Consumer Protection Act <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information Act <br> ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision <br> ☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 445 Amer. w/Disabilities– Employment <br> ☐ 446 Amer. w/Disabilities– Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee – Conditions of Confinement | **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(Specify)*
- ☐ 6 Multidistrict Litigation– Transfer
- ☐ 8 Multidistrict Litigation – Direct File

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: <br> 35 U.S.C. §§ 271, 281, 282, 284, and 285 <br> Brief description of cause: <br> Patent Infringement |
|---|---|

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: <br> JURY DEMAND:   ☒ Yes  ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions:)*   JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|

DATE  12/21/18        SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

Appx00296

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44
### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **FINTIV, INC.,** | § | |
| | § | **Civil Action No.: 6:18-CV-372-ADA** |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **APPLE INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fintiv, Inc. ("Fintiv"), by and through its attorneys, for its First Amended Complaint against Defendant Apple Inc. ("Apple"), hereby alleges the following:

### I.     NATURE OF THE ACTION

1.     This is a patent infringement action to end Defendant's unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of methods and products incorporating Plaintiff's patented inventions.

2.     Fintiv is the owner of all right, title, and interest in and to United States Patent No. 8,843,125 (the "'125 Patent"), issued September 23, 2014 and titled "System and Method for Managing Mobile Wallet and its Related Credentials."  A true and correct copy of the '125 Patent is attached hereto as Exhibit A.

3.     Apple manufactures, provides, sells, offers for sale, imports, and/or distributes products and services which directly infringe the '125 Patent.  Further, Apple indirectly infringes

24.    As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to retrieve a widget and a wallet management applet (WMA) corresponding to the contactless card applet. All of this functionality is disclosed in at least claim 11 of the '125 Patent.

**Adding a credit or debit card manually to Apple Pay**

To add a card manually, the name, card number, expiration date, and CVV are used to facilitate the provisioning process. From within Settings, the Wallet app, or the Apple Watch app, users can enter that information by typing, or using the camera on the device. When the camera captures the card information, Apple attempts to populate the name, card number, and expiration date. The photo is never saved to the device or stored in the photo library. After all the fields are filled in, the Check Card process verifies the fields other than the CVV. They are encrypted and sent to the Apple Pay Server.

If a terms and conditions ID is returned with the Check Card process, Apple downloads and displays the terms and conditions of the card issuer to the user. If the user accepts the terms and conditions, Apple sends the ID of the terms that were accepted as well as the CVV to the Link and Provision process. Additionally, as part of the Link and Provision process, Apple shares information from the device with the card issuer or network, like information about your iTunes and App Store account activity (for example, whether you have a long history of transactions within iTunes), information about your device (for example, phone number, name, and model of your device plus any companion iOS device necessary to set up Apple Pay), as well as your approximate location at the time you add your card (if you have Location Services enabled). Using this information, the card issuer will determine whether to approve adding the card to Apple Pay.

As the result of the Link and Provision process, two things occur:

- The device begins to download the Wallet pass file representing the credit or debit card.
- The device begins to bind the card to the Secure Element.

The pass file contains URLs to download card art, metadata about the card such as contact information, the related issuer's app, and supported features. It also contains the pass state, which includes information such as whether the personalizing of the Secure Element has completed, whether the card is currently suspended by the card issuer, or whether additional verification is required before the card can make payments with Apple Pay.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf    at    p.    49    (last    visited 11/6/2018).

**Adding credit or debit cards from a card issuer's app**

When the app is registered for use with Apple Pay, keys are established for the app and the card issuer's server. These keys are used to encrypt the card information that's sent to the card issuer, which prevents the information from being read by the iOS device. The provisioning flow is similar to that used for manually added cards, described previously, except one-time passwords are used in lieu of the CVV.

**Additional verification**

A card issuer can decide whether a credit or debit card requires additional verification. Depending on what is offered by the card issuer, the user may be able to choose between different options for additional verification, such as a text message, email, customer service call, or a method in an approved third-party app to complete the verification. For text messages or email, the user selects from contact information the issuer has on file. A code will be sent, which must be entered into Wallet, Settings, or the Apple Watch app. For customer service or verification using an app, the issuer performs their own communication process.

https://www.apple.com/business/site/docs/iOS_Security_Guide.pdf     at     p.     50     (last     visited 11/6/2018).

25.     As reflected in Apple's own product literature illustrated below, the Apple Devices are enabled to provision the selected contactless card applet, the widget, and the WMA.  All of this functionality is disclosed in at least claim 11 of the '125 Patent.

# EXHIBIT B-3

4/23/2019

**Patent eBusiness**

**Patent Application Information Retrieval**

⊕ Global Dossier    ⓘ Order Certified Application As Filed    ⊕ Order Certified File Wrapper    ⊕ View Order List

Patent Application Information Retrieval    (/pair/PAIRPrintServlet)

- ➕ Electronic Filing
- ➕ Patent Application Information (PAIR)
- ➕ Patent Ownership
- ➕ Fees
- ➕ Supplemental Resources & Support

| Select New Case | Application Data | Transaction History | Image File Wrapper | Continuity Data | Patent Term Adjustments | Fees | Published Documents | Address & Attorney/Agent | Assignments | Display References |

**13/310,091    SYSTEM AND METHOD FOR MANAGING MOBILE WALLET AND ITS RELATED CREDENTIALS    20533.8a.1**

**Patent Information**

Patent Guidance and General Info (http://www.uspto.gov/patents/index.jsp)
- ➕ Codes, Rules & Manuals
- ➕ Employee & Office Directories
- ➕ Resources & Public Notices

**Patent Searches**

Patent Official Gazette (http://www.uspto.gov/news/og/patent_og/index.jsp)
- ➕ Search Patents & Applications
- ➕ Search Biological Sequences
- ➕ Copies, Products & Services

**Other**

Copyrights (http://www.uspto.gov/main/profiles/copyright.htm)
Trademarks (http://www.uspto.gov/trademarks/index.jsp)
Policy & Law (http://www.uspto.gov/main/policy.htm)
Reports (http://www.uspto.gov/main/checkstatus.htm)

**Assignments Data**

## Patent Assignment Abstract of Title

**Total Assignments: 3**

**Application #:**13310091    **Filing Dt:**12/02/2011    **Patent #:**9843125    **Issue Dt:**09/23/2014
**PCT #:**NONE    **Intl Reg #:**    **Publication #:**US20120172026    **Pub Dt:**07/05/2012
**Inventors:**Yongsung KWON, Jiwon KANG, Hyunjin KIM, Hyungbon HONG
**Title:**SYSTEM AND METHOD FOR MANAGING MOBILE WALLET AND ITS RELATED CREDENTIALS

**Assignment: 1**

**Reel/Frame:**027879 / 0479    **Received:**03/16/2012    **Recorded:**03/16/2012    **Mailed:**03/19/2012    **Pages: 4**
**Conveyance:**ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
**Assignors:**KWON, YONGSUNG    **Exec Dt:**12/01/2011
HONG, HYUNGBON    **Exec Dt:**12/01/2011
KANG, JIWON    **Exec Dt:**12/01/2011
KIM, HYUNJIN    **Exec Dt:**12/01/2011
**Assignee:**SK C&C
SK U-TOWER, 25-1 JEONGJA-DONG
BUNDANG-GU, GYEONGGI-DO
SEONGNAM, KOREA, REPUBLIC OF 463-844
**Correspondent:**H.C. PARK & ASSOCIATES, PLC
8500 LEESBURG PIKE, SUITE 7500
VIENNA, VA 22182

**Assignment: 2**

**Reel/Frame:**035405 / 0582    **Received:**04/14/2015    **Recorded:**04/14/2015    **Mailed:**04/15/2015    **Pages: 6**
**Conveyance:**ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
**Assignor:**SK C&C CO., LTD.    **Exec Dt:**12/17/2014
**Assignee:**MOZIDO CORFIRE - KOREA, LTD.
9, 3438EON-GIL, SUNGNAMDAE-RO, BOONDANG-GU
SUNGNAM-SI, KYUNGGI-DO, KOREA, REPUBLIC OF 463-844
**Correspondent:**JOHN SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVE, NW
WASHINGTON, DC 20037

**Assignment: 3**

**Reel/Frame:**047816 / 0919    **Received:**12/19/2018    **Recorded:**12/19/2018    **Mailed:**12/20/2018    **Pages: 4**
**Conveyance:**ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
**Assignor:**MOZIDO CORFIRE - KOREA, LTD.    **Exec Dt:**12/18/2018
**Assignee:**FIMTIV, INC.
1717 WEST 6TH STREET
#380
AUSTIN, TEXAS 78703
**Correspondent:**JOHN C. STRINGHAM
60 EAST SOUTH TEMPLE
SUITE 1000
SALT LAKE CITY, UT 84111

Search Results as of 04/23/2019 11:00:00 AM

4/23/2019

***Disclaimer:***
*Assignment information on the assignment database reflects assignment documents that have been actually recorded.*
*If the assignment for a patent was not recorded, the name of the assignee on the patent application publication or patent may be different.*
*If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 571-272-3350*

*If you need help:*
- *Contact the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov (mailto:EBC@uspto.gov) for specific questions about Patent Application Information Retrieval (PAIR).*
- *If you experience technical difficulties or problems with PAIR outside normal Patent Electronic Business Center hours (M-F, 6AM to 12AM ET), please call 1 800-786-9199.*
- *Send general questions about USPTO programs to the USPTO Contact Center (UCC) (http://www.uspto.gov/web/menu/feedback.html) .*

(http://www.uspto.gov/)

BROWSE BY TOPIC

ABOUT THIS SITE

USPTO BACKGROUND

FEDERAL GOVERNMENT

# EXHIBIT B-11

6/11/2019

2,003 views  |  Mar 25, 2019, 11:29am

# Once-Hot Startup At Center Of Fraud Allegations Changes Its Strategy—And Its Name



**Nathan Vardi** Forbes Staff

Hedge Funds & Private Equity

*Following the money trail*



Michael Liberty outside the federal district courthouse in Portland, Maine, March 14, 2019. Liberty is accused of securities and wire fraud.  SHAWN PATRICK OUELLETTE/PORTLAND PRESS HERALD VIA GETTY IMAGES

In December 2018, a company called Fintiv filed a lawsuit against Apple claiming the tech giant had infringed on a patent for a mobile wallet management system.

Based in Austin, Texas, Fintiv is a virtually unknown entity in the tech world, describing itself as being in the business of mobile payments and marketing campaigns. But Fintiv used to be known by a different name, Mozido, a once-hot

Appx00507

mobile payments startup at the center of a large alleged investment fraud and criminal prosecution.

According to an amended certificate of incorporation filed with Delaware's secretary of state, Mozido has changed its name to Fintiv. Adolfo Salume, Fintiv's chairman, confirmed to *Forbes* that "Mozido is now doing business as Fintiv" and that the company is actively working to enforce its broad patent portfolio.

In February, two months after Fintiv sued Apple, federal prosecutors in Maine indicted Michael Liberty, accusing the founder of Mozido of orchestrating an investment fraud in connection with his fundraising activity around Mozido, the company he once claimed would revolutionize global payments. Mozido itself was not charged.

The name change occurred after securities regulators accused Liberty of perpetrating an investment scam in 2018. Charlie Wiggs, president of Fintiv, signed the Delaware filing changing Mozido's name to Fintiv a few days after the Securities & Exchange Commission charged Liberty last year of defrauding 200 individual investors. The SEC claimed Liberty raised $55 million from individuals who thought they were investing in Mozido and diverted a large portion of those funds for his personal use. Again, Mozido itself was not accused of any wrongdoing by the SEC.

Liberty, who has pleaded not guilty to the criminal charges filed against him and has previously denied wrongdoing, is one of Fintiv's shareholders. Other shareholders include funds managed by financial giant Wellington Management and hedge fund legend Julian Robertson.

Mozido raised $300 million from big investors to build a mobile payments company and was valued at about $5.6 billion when it purchased PayEase, a Chinese payment processor that generated the vast majority of Mozido's revenue. In addition, Liberty raised some $55 million from individual investors for Mozido, most of which was transferred using shell companies to fund other Liberty companies, payments to his ex-wife and interior decorating, federal prosecutors claim. He is even accused of using some of the money he raised for

Mozido to pay a discouragement penalty issued by a federal judge against Liberty related to a previous Liberty investment scheme that resulted in an SEC enforcement action years ago. Liberty's lawyer declined to comment.

The individual investors from whom Liberty raised money started to ask Liberty questions about their Mozido investment following the publication of news articles in 2016, federal prosecutors claim. *Forbes* published a detailed article about Mozido in July 2016 calling the company "the financial industry's Theranos."

Mozido sold its most meaningful unit, PayEase, last year to pay back a large debt obligation that was partly used to repay employees for unpaid work. Mike Love, who played a big management role at Mozido for years and worked closely with Liberty, is a director of Fintiv. So is Michael Liberty's cousin, Stan Liberty. In its lawsuit against Apple, Fintiv is represented by the law firm headed by Marc Kasowitz, who for years represented Mozido.

Some of the money Liberty raised was used by Mozido to acquire and develop patents. Liberty showed a keen interest in patents and once bragged that Mozido had collected 100 of them. The patent Fintiv is using to sue Apple lists inventors in South Korea, and Mozido acquired the patent when it purchased the South Korean entity that owned it in 2014.

"We have the mobile wallet patent for the banked and unbanked," Liberty touted in an interview with *Forbes* in 2016. It is an "extensive portfolio."

Adolfo Salume, Fintiv's chairman, says the company has formed a division to consolidate its patents and enforce them, preferably through licensing. Salume added that Fintiv also continues to offer its mobile payments and loyalty marketing products. He said Fintiv's policy is to not comment on the criminal and regulatory actions against Michael Liberty.

"We have decided to pursue our interest in terms of defending our intellectual property. ... Our first inclination is to have a private negotiation like we did with Apple, and a lawsuit is only a product of the refusal to have a private negotiation," Salume said. "There are other companies using our technology without a license

so part of the task of our board is to protect the value of the investors in the company and we do have a strategy, not for lawsuits but for licenses ... a last resort is a lawsuit."

*Follow me on* *Twitter*.

---



**Nathan Vardi** Forbes Staff

I am a senior editor at Forbes who likes digging into Wall Street, hedge funds and private equity firms, looking for both the good and the bad. I also focus on the inte... **Read More**

---

Case 2:19-cr-00030-JAW   Document 1   Filed 02/27/19   Page 1 of 15   PageID #: 1

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

    v.

MICHAEL A. LIBERTY,
PAUL E. HESS,
          Defendants.

Crim. No. 2:19CR30 JAW

VIOLATIONS: Title 18, U.S.C.,
Sections 1349, 1343, 1956(h), 1957 & 2

Title 15, U.S.C., Sections 78j(b) &
78ff(a)

2019 FEB 27 P 12: 43

DEPUTY CLERK

**INDICTMENT**

The Grand Jury charges that at all times relevant to this Indictment:

**GENERAL ALLEGATIONS**

**The Defendants and Related Individuals**

1.    Defendant MICHAEL A. LIBERTY was a citizen and resident of the United States. LIBERTY maintained residences in Florida and Maine and purported to be an independently-wealthy businessman. LIBERTY, with the help of others, solicited individuals to invest in various shell companies that he controlled (the "Liberty Pass-Through Companies") on the basis that their investments would be passed on to fund the business operations of a company named Mozido.

2.    Defendant PAUL E. HESS was a citizen and resident of the United States. HESS was a Certified Financial Planner ("CFP") and resided in Massachusetts. HESS was friends and business associates with LIBERTY. HESS solicited groups of individuals, including his friends and family, to invest in Mozido.

3.    INDIVIDUAL-1 was a citizen and resident of the United States. INDIVIDUAL-1 resided in Maine and was an attorney at a law firm based in Portland, Maine. As an attorney, INDIVIDUAL-1 represented LIBERTY and various entities controlled by LIBERTY, including,

-1-

but not limited to, the Liberty Pass-Through Companies.

<div align="center">**Relevant Entities**</div>

4.      Mozido, LLC was a limited liability company based in Austin, Texas that was founded in 2008 by LIBERTY and others under a different name and took the name Mozido, LLC in 2009.  Mozido, LLC was a financial technology start-up company whose business involved developing mobile payment platforms that would allow individuals without regular access to the banking system to conduct financial transactions using their mobile phone.  Mozido, Inc. was formed in 2013 and in November 2013 acquired substantially all of Mozido, LLC's assets representing its core business in exchange for Mozido, Inc. stock.  In March 2015, Mozido LLC was renamed MDO, LLC.  In this Indictment, unless a specific reference is made to Mozido, LLC, Mozido, Inc., or MDO, LLC, the reference to "Mozido" refers to the entity owning the assets representing the core business at the relevant point in time.

5.      The Liberty Pass-Through Companies were shell companies that LIBERTY established and controlled.  As relevant to this Indictment, the Liberty Pass-Through Companies issued convertible promissory notes in exchange for investor funds which were then diverted for LIBERTY's personal use.  Investors were told by LIBERTY and HESS that they had the right to convert their notes into an ownership interest in Mozido.  The Liberty Pass-Through Companies included, but were not limited to, Mozido Investments, LLC; Mozido Invesco, LLC; Brentwood Financial, LLC; Brentwood Investments, LLC (which was later renamed BRTMDO, LLC); and Family Mobile LLC.

<div align="center">**THE SCHEME TO DEFRAUD**</div>

<div align="center">**Purpose of the Conspiracy**</div>

6.      The purpose of the conspiracy was for LIBERTY, HESS, and their co-conspirators to enrich themselves by making material misrepresentations to investors and potential investors in

<div align="center">-2-</div>

the Liberty Pass-Through Companies including, among other things, misrepresentations regarding how investors' funds would be used.

### Manner and Means of the Conspiracy

7.    In furtherance of this conspiracy, and to accomplish its object, beginning in about July 2010 and continuing until about 2017 (the "Relevant Period"), LIBERTY, HESS, and their co-conspirators deceived and induced investors to invest in the Liberty Pass-Through Companies by making material misrepresentations including, among other things, misrepresentations regarding the manner in which investors' money would be used.

8.    Beginning in about 2010, LIBERTY and HESS began to identify and solicit individuals to make investments that purportedly would fund Mozido's business operations. LIBERTY and HESS instructed the investors not to send their money directly to Mozido, however, but rather to purchase convertible promissory notes issued by the Liberty Pass-Through Companies.

9.    A "convertible promissory note" is a debt instrument that an investor receives in exchange for loaning money to the entity issuing the note. After a set amount of time passes, the convertible promissory note gives the investor an option either to receive repayment on the loan plus interest, or to convert debt into equity in the underlying entity. "Equity" refers generally to stock or other instruments that give an investor an ownership interest in the entity itself.

10.    In obtaining convertible promissory notes issued by the Liberty Pass-Through Companies, investors did not receive a direct interest in Mozido, but instead received the opportunity to obtain equity in Mozido through a conversion.

11.    LIBERTY and HESS made a series of material misstatements when they solicited investors and potential investors in the Liberty Pass-Through Companies, including (1) that the money investors paid to purchase convertible promissory notes issued by the Liberty Pass-Through

-3-

Companies would be used by Mozido to fund its business operations; and (2) that HESS received no commissions based on the amount of convertible promissory notes issued by the Liberty Pass-Through Companies that the investors purchased.

12.    Less than half of funds received from investors were ever transferred to Mozido. LIBERTY and his associates, to include his wife, used a majority of investor funds for, among other things, personal expenses and business expenses unrelated to Mozido.  Such personal expenses included payments to LIBERTY's ex-wife, interior decorating, and payment of a disgorgement amount that had been levied against LIBERTY in a securities fraud lawsuit in Philadelphia.  Such business expenses included payments to cash-strapped businesses, other than Mozido, that were owned and/or controlled by LIBERTY.  In addition, LIBERTY used the investors' funds to make payments to HESS, to include commissions on convertible promissory notes sold to investors solicited by HESS.

13.    When sending money to invest in the Liberty Pass-Through Companies, most investors wired the money to an account held at Norway Savings Bank and the Interest on Lawyers Trust Account ("IOLTA") for the law firm where INDIVIDUAL-1 worked as a partner and that served as counsel for the Liberty Pass-Through Companies.  From there, INDIVIDUAL-1 caused a substantial portion of these investor funds to be paid to LIBERTY's friends and family or deposited into accounts controlled by LIBERTY.  Once deposited into LIBERTY-controlled accounts, LIBERTY and his associates used a substantial portion of these investments for, among other things, personal expenses.

14.    LIBERTY and HESS also made misrepresentations to investors and potential investors regarding, among other things, the general financial condition of Mozido.  Further, investors were misled into believing that they were protected by a "personal guaranty" from

-4-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| FINTIV, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 6:18-cv-372-ADA |
| APPLE, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## AGREED PROTECTIVE ORDER
## REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS

Plaintiff Fintiv, Inc. ("Plaintiff") and Defendant Apple Inc. ("Defendant") (collectively the "Parties" or singularly "Party") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

**AGREED PROTECTIVE ORDER – PAGE 1**

1.  **PURPOSES AND LIMITATIONS**

(a)    Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(b)    The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a).  Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below.  If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

2.  **DEFINITIONS**

(a)    "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

(b)    "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this case.

(c)    "Patents-in-suit" means U.S. Patent No. 8,843,125, and any other patent asserted in this case, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

**AGREED PROTECTIVE ORDER – PAGE 2**

(d)      "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e)      "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in this case.

(f)      "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," as provided for in this Order. Protected Material shall not include:  (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

(g)      "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h)      "Source Code" means computer code, scripts, assembly, binaries, object code, source code listings and descriptions of source code, object code listings and descriptions of object code, Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, and Computer Aided Design (CAD) files that describe the hardware design of any component.

3.      **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

**AGREED PROTECTIVE ORDER – PAGE 3**

4.    **SCOPE**

(a)    The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

(b)    Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material.

(c)    Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with the consent of the Producing Party or by order of the Court, including sealed filings authorized by Paragraph 15(b) of this Order.

(d)    This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

5.    **DURATION**

Even after Final Disposition of this case, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

6.    **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)    <u>Basic Principles</u>.  All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without

**AGREED PROTECTIVE ORDER – PAGE 4**

limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

      (b)   <u>Patent Prosecution Bar</u>.  Absent the written consent of the Producing Party, any person on behalf of the Receiving Party who receives one or more items designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" by the Producing Party shall not be involved, directly or indirectly, in any of the following activities:  (i) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of mobile payment hardware or software, before any foreign or domestic agency, including the United States Patent and Trademark Office; and (ii) the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to the functionality, operation, and design of mobile payment hardware or software.  These prohibitions are not intended to and shall not preclude counsel from participating in proceedings on behalf of a Party challenging the validity of any patent, including reexamination, inter partes review, covered business method review, or any post-grant review proceedings in the United States Patent and Trademark Office or elsewhere ("Post-Grant Activity").  These prohibitions are not intended to and shall not preclude Plaintiff's litigation counsel from participating in any Post-Grant Activity, except that Plaintiff's litigation counsel may not advise on, consult on, prepare, prosecute, draft, edit, and/or amend patent claims, or otherwise advise on or affect the scope of claims in patents or patent applications relating to the functionality, operation, and design of mobile payment hardware or software, before any foreign

**AGREED PROTECTIVE ORDER – PAGE 5**

or domestic agency, including the United States Patent and Trademark Office. These prohibitions shall begin when access to "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" are first received by the affected individual, and shall end two (2) years after the Final Disposition of this case, including all appeals.

      (c)   Secure Storage, No Export. Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order. To ensure compliance with applicable United States Export Administration Regulations, Protected Material may not be exported outside the United States or released to any foreign national (even if within the United States).

      (d)   Legal Advice Based on Protected Material. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

      (e)   Limitations. Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material. Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed, and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to an order of the Court.

**AGREED PROTECTIVE ORDER – PAGE 6**

7.  **DESIGNATING PROTECTED MATERIAL**

(a)  <u>Available Designations</u>.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein:  "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

(b)  <u>Written Discovery and Documents and Tangible Things</u>.  Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Paragraph 7(a) may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.  In the event that original documents are produced for inspection, the original documents shall be presumed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" during the inspection and re-designated, as appropriate during the copying process.

(c)  Native Files.  Where electronic files and documents are produced in native electronic format, such electronic files and documents shall be designated for protection under this Order by appending to the file names or designators information indicating whether the file contains  "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," material, or shall use any other reasonable method for so designating Protected Materials produced in electronic format. When electronic files or documents are printed for use at deposition, in a court

**AGREED PROTECTIVE ORDER – PAGE 7**

proceeding, or for provision in printed form to an expert or consultant pre-approved pursuant to

Paragraph 12, the Party printing the electronic files or documents shall affix a legend to the printed

document corresponding to the confidentiality designation of the Producing Party and include the

production number and designation associated with the native file. No one shall seek to use in this

case a .tiff, .pdf or other image format version of a document produced in native file format without

also providing a copy of the image format version to the Producing Party so that the Producing

Party can review the image to ensure that no information has been altered.

        (d)    <u>Depositions and Testimony</u>.  Parties or testifying persons or entities may

designate depositions and other testimony with the appropriate confidentiality designation by

indicating on the record at the time the testimony is given or by sending written notice of how

portions of the transcript of the testimony is designated within thirty (30) days of receipt of the

transcript of the testimony.  If no confidentiality designation on the record is made, all information

disclosed during a deposition shall be deemed "CONFIDENTIAL – ATTORNEYS' EYES

ONLY" until the thirty (30) day time period in which it may be appropriately designated, as

provided for herein, has passed.  Any Protected Material that is used in the taking of a deposition

shall remain subject to the provisions of this Protective Order, along with the transcript pages of the

deposition testimony dealing with such Protected Material.  In such cases the court reporter shall

be informed of this Protective Order and shall be required to operate in a manner consistent with

this Protective Order.  In the event the deposition is videotaped, the original and all copies of the

videotape shall be marked by the video technician to indicate that the contents of the videotape are

subject to this Protective Order, substantially along the lines of "This videotape contains

confidential testimony used in this case and is not to be viewed or the contents thereof to be

displayed or revealed except pursuant to the terms of the operative Protective Order in this

**AGREED PROTECTIVE ORDER – PAGE 8**

matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

8. **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a) A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b) Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i) The Receiving Party's Outside Counsel, such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii) Not more than three (3) representatives of the Receiving Party who are officers or employees of the Receiving Party, who may be, but need not be, in-house counsel for the Receiving Party, as well as their immediate paralegals and staff, to whom disclosure is reasonably necessary for this case, provided that: (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

**AGREED PROTECTIVE ORDER – PAGE 9**

(iii)    Any outside expert or consultant retained by the Receiving Party to assist in this case, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iv)    Court reporters, stenographers, and videographers retained to record testimony taken in this case;

(v)    The Court, jury, and court personnel;

(vi)    Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vii)    Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(viii)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(ix)    Any other person with the prior written consent of the Producing Party.

**AGREED PROTECTIVE ORDER – PAGE 10**

9.     **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY"**

(a)     A Producing Party may designate Discovery Material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party. The Parties agree that the following information, if non-public, shall be presumed to merit the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation:  trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)     The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Any outside expert or consultant retained by the Receiving Party to assist in this case, provided that disclosure is only to the extent necessary to perform such work; and provided that:  (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time

**AGREED PROTECTIVE ORDER – PAGE 11**

of retention to become an officer, director, or employee of a Party or of a competitor of a Party;

(c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (d) such expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (e) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iii)     Court reporters, stenographers and videographers retained to record testimony taken in this case;

(iv)     The Court, jury, and court personnel;

(v)     Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vi)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vii)     Any other person with the prior written consent of the Producing Party.

10.     **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"**

(a)     To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

**AGREED PROTECTIVE ORDER – PAGE 12**

(b)      Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this case, or to obligate any Party to produce any Source Code.

(c)      Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be subject to the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 11 below, solely to:

(i)      The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)      Any outside expert or consultant retained by the Receiving Party to assist in this case, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

**AGREED PROTECTIVE ORDER – PAGE 13**

(iii)     Court reporters, stenographers and videographers retained to record testimony taken in this case;

(iv)     The Court, jury, and court personnel;

(v)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vi)     Any other person with the prior written consent of the Producing Party.

11.     **DISCLOSURE AND REVIEW OF SOURCE CODE**

(a)     Any Source Code that is produced by Plaintiff shall be made available for inspection in electronic format at the Redwood Shores office of its outside counsel, Kasowitz Benson Torres LLP, or any other location mutually agreed by the Parties.  Any Source Code that is produced by Defendant will be made available for inspection at the Menlo Park, CA office of its outside counsel, Orrick, Herrington & Sutcliffe LLP, or any other location mutually agreed by the Parties.  Source Code will be made available for inspection between the hours of 8 a.m. and 6 p.m. local time on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

(b)     Prior to the first inspection of any requested Source Code, the Receiving Party shall provide fourteen (14) days' notice of the Source Code that it wishes to inspect.  The Receiving Party shall provide five (5) business days' notice prior to any additional inspections.

(c)     Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

**AGREED PROTECTIVE ORDER – PAGE 14**

(i)      All Source Code shall be made available by the Producing Party to the Receiving Party's outside counsel and/or experts in a secure room on a secured computer without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal, or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the software tools do not permit the compiling (running) of Source Code and the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least five (5) business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.

(ii)      No recordable media or recordable devices, including without limitation sound recorders, computers, except as provided in Paragraph 11(c)(iii), personal digital assistants (PDAs, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of

**AGREED PROTECTIVE ORDER – PAGE 15**

any kind, (e.g., USB memory sticks and portable hard drives), shall be permitted into the Source Code Review Room.

(iii)    The Receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(iv)    The Producing Party may visually monitor the activities of the Receiving Party's representatives in the Source Code Review Room during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way. During the Receiving Party's review of the Source Code, the Producing Party shall not otherwise interfere with the Receiving Party's review of the Source Code and shall not be permitted access to the Receiving Party's notes, work product, or discussions inside the review room or following each day's inspection of the Source Code. During the Source Code review, the Producing Party agrees to provide a "break-out" room for the Receiving Party's Source Code reviewer(s) to make phone calls and work. To the extent such a break-out room is not reasonably available, the Producing Party agrees to so notify the Receiving Party at least three (3) business days in advance of any day on which the Receiving Party's Source Code reviewers are expected to inspect the Source Code.

(v)    No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein. The Producing Party shall make available a laser printer with commercially reasonable printing speeds for on-site printing during inspection of the Source Code. The Receiving Party

**AGREED PROTECTIVE ORDER – PAGE 16**

may print limited portions of the Source Code only when necessary to prepare court filings or
pleadings or other papers (including a testifying expert's expert report). Any printed portion that
consists of more than twenty (20) pages of a continuous block of Source Code shall be presumed
to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a
printed copy.  The Receiving Party may print out no more than 250 pages total.  The Receiving
Party shall not print Source Code in order to review blocks of Source Code elsewhere in the first
instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code
Computer, as the Parties acknowledge and agree that the purpose of the protections herein would
be frustrated by printing portions of code for review and analysis elsewhere, and that printing is
permitted only when necessary to prepare court filings or pleadings or other papers (including a
testifying expert's expert report).  Upon printing any such portions of Source Code, the printed
pages shall be collected by the Producing Party.  The Producing Party shall Bates number, copy,
and label "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" any
pages printed by the Receiving Party.  Within  five (5) business days, the Producing Party shall
either (i) provide one copy set of such pages to the Receiving Party or confirm that the copy has been
sent to the Receiving Party via courier for two day delivery with a tracking number or (ii) inform the
Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted
purpose.  The Parties shall meet and confer within two (2) business day of any such objection.  If
after meeting and conferring the Parties cannot resolve the objection, the objection may be jointly
submitted to the Court for resolution within three (3) business days of the meet and confer.  The
burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is
reasonably necessary for a permitted purpose and not merely printed for the purposes of review and

**AGREED PROTECTIVE ORDER – PAGE 17**

analysis elsewhere. The printed pages shall constitute part of the Source Code produced by the Producing Party in this case.

(vi)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code.  Such identification shall be in addition to any other disclosure required under this Order. All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart.  The Producing Party shall be entitled to a copy of the log upon one (1) day's advance notice to the Receiving Party.

(vii)     Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room.  The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.  Proper identification of all authorized persons shall be provided prior to any access to the Source Code Review Room or the Source Code Computer.  Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the Source Code Review Room or the Source Code Computer may be denied, at the discretion of the Producing Party, to any individual who fails to provide proper identification.

**AGREED PROTECTIVE ORDER – PAGE 18**

(viii)   Other than as provided above, the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Source Code Computer including, without limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device.  The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities or the offices of its Outside Counsel.

(ix)    The Receiving Party's Outside Counsel may make no more than three (3) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(c)(v), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code.  The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored.  Upon one (1) day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(x)     The Receiving Party's Outside Counsel and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.  No more than a total of ten (10) individuals identified by the Receiving Party shall have access to the printed portions of Defendant's Source Code (except insofar as such code appears in any court filing or expert report).

(xi)    The Receiving Party may bring three (3) copies of the printed Source Code to the deposition unless the Producing Party notifies the Receiving Party in advance of the deposition that the Producing Party will provide a Source Code computer at the deposition containing all of the Source Code the Receiving Party previously printed, in computer-searchable

**AGREED PROTECTIVE ORDER – PAGE 19**

format. Further, the Receiving Party may bring to the deposition copies of any expert reports or

pleadings containing source code, including any annotated copies of such documents containing

source code. Only persons permitted to see the Source Code under the provisions of this Order

shall be allowed to attend any deposition where Source Code is disclosed or discussed. Copies of

Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or

attached to deposition transcripts; rather, the deposition record will identify the exhibit by its

production numbers. All paper copies of Source Code brought to the deposition shall remain with

the Producing Counsel's outside counsel for secure destruction in a timely manner following the

deposition.

      (xii)    Except as provided in this sub-paragraph, absent express written

permission from the Producing Party, the Receiving Party may not create electronic images, or

any other images, or make electronic copies, of the Source Code from any paper copy of Source

Code for use in any manner (including by way of example only, the Receiving Party may not scan

the Source Code to a PDF or photograph the code). Images or copies of Source Code shall not be

included in correspondence between the Parties (references to production numbers shall be used

instead), and shall be omitted from pleadings and other papers whenever possible. If a Party

reasonably believes that it needs to submit a portion of Source Code as part of a filing with the

Court, the Parties shall meet and confer as to how to make such a filing while protecting the

confidentiality of the Source Code and such Source Code will not be filed absent agreement from

the Producing Party that the confidentiality protections will be adequate. If a Producing Party

agrees to produce an electronic copy of all or any portion of its Source Code or provide written

permission to the Receiving Party that an electronic or any other copy needs to be made for a Court

filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic

**AGREED PROTECTIVE ORDER – PAGE 20**

files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Order. Where the Producing Party has provided the express written permission required under this provision for a Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored. Additionally, any such electronic copies must be labeled "CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE" as provided for in this Order.

12. **NOTICE OF DISCLOSURE**

(a)    Prior to disclosing any Protected Material to any person described in Paragraphs 8(b)(ii), 8(b)(iii), 9(b)(ii), or 10(c)(ii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i) the name of the Person;

(ii) an up-to-date curriculum vitae of the Person;

(iii) the present employer and title of the Person;

(iv) an identification of the past ten (10) years of the Person's past and current employment and consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person, including but not limited to an identification of any individual or entity with or for whom the Person is employed or to whom the person provides consulting services relating to the design,

**AGREED PROTECTIVE ORDER – PAGE 21**

development, operation, or patenting of mobile payment hardware or software, or relating to the acquisition of intellectual property assets relating to mobile payment hardware or software;

(v) an identification of all pending patent applications on which the Person is named as an inventor or in which the Person has any ownership interest, or as to which the Person has had any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

(vi) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. During the pendency of this case, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of mobile payment hardware or software, or the acquisition of intellectual property assets relating to mobile payment hardware or software.

(b) Within fourteen (14) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the fourteen (14) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this fourteen (14) day period. If the Producing Party objects to disclosure to the

**AGREED PROTECTIVE ORDER – PAGE 22**

Person within such fourteen (14) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis.  If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  If relief is not sought from the Court within that time, the objection shall be deemed withdrawn.  If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

       (c)      For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Protected Material in a way or ways that are inconsistent with the provisions contained in this Order.

       (d)      Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

       (e)      An initial failure to object to a Person under this Paragraph 12 shall not preclude the nonobjecting Party from later objecting to continued access by that Person for good cause.  If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally.  If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection.  If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court resolves the matter or the Producing Party withdraws its objection.  Notwithstanding the

**AGREED PROTECTIVE ORDER – PAGE 23**

foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Material may thereafter be provided to the Person.

13.    **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)    A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)    Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection.  Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)    The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute.  The Producing Party shall have the burden of justifying the disputed designation;

(ii)    Failing agreement, the Receiving Party may bring a motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation.  The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)    Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the

**AGREED PROTECTIVE ORDER – PAGE 24**

following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

14.    **SUBPOENAS OR COURT ORDERS**

(a)    If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

15.    **FILING PROTECTED MATERIAL**

(a)    Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested Parties or non-parties, a Receiving Party may not file or disclose in the public record any Protected Material.

(b)    In lieu of Local Rule 5.2, any Party may file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order, provided that the opposing Party may challenge the propriety of sealing with seven (7) days of the sealed filing. However, nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

16.    **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)    The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to

**AGREED PROTECTIVE ORDER – PAGE 25**

production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)    Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)    Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

17.    **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)    The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties. Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

**AGREED PROTECTIVE ORDER – PAGE 26**

(b)    A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless the Receiving Party knows that the document was inadvertently not designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 17(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)    Notwithstanding the above, a subsequent designation of "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials while the materials were not marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 6(b).

18.    **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)    In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all

**AGREED PROTECTIVE ORDER – PAGE 27**

reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no

further or greater unauthorized disclosure and/or use thereof is made.

      (b)      Unauthorized or inadvertent disclosure does not change the status of

Discovery Material or waive the right to hold the disclosed document or information as Protected

Material.

      19.     **FINAL DISPOSITION**

      (a)      Not later than ninety (90) days after the Final Disposition of this case, each

Party shall return all Discovery Material of a Producing Party to the respective outside counsel of

the Producing Party or destroy such Material, at the option of the Producing Party.  For purposes

of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating

the above-captioned case with prejudice, including all appeals.

      (b)      All Parties that have received any such Discovery Material shall certify in

writing that all such materials have been returned to the respective outside counsel of the Producing

Party or destroyed.  Notwithstanding the provisions for return or destruction of Discovery Material,

outside counsel may retain one set of pleadings, correspondence and attorney and consultant work

product (but not document productions) for archival purposes, but must return any pleadings,

correspondence, and consultant work product that contain Source Code.

      20.     **DISCOVERY FROM EXPERTS OR CONSULTANTS**

      (a)      Absent good cause, drafts of reports of testifying experts, and reports and

other written materials, including drafts, of consulting experts, shall not be discoverable.

      (b)      Reports and materials exempt from discovery under the foregoing

Paragraph shall be treated as attorney work product for the purposes of this case and Protective

Order.

**AGREED PROTECTIVE ORDER – PAGE 28**

21.    **MISCELLANEOUS**

(a)    <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)    <u>Termination of Matter and Retention of Jurisdiction</u>.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned case.  The Court shall retain jurisdiction after Final Disposition of the above-captioned case to hear and resolve any disputes arising out of this Protective Order.

(c)    <u>Successors</u>.  This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d)    <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.  This Order shall not constitute a waiver of the right of any Party to claim in this case or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this case or any other proceeding.

(e)    <u>Burdens of Proof</u>.  Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level

**AGREED PROTECTIVE ORDER – PAGE 29**

of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f)    <u>Modification by Court</u>.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the Western District of Texas is responsible for the interpretation and enforcement of this Order.  All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Western District of Texas.

(g)    <u>Discovery Rules Remain Unchanged</u>.  Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Western District of Texas, or the Court's own orders. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Western District of Texas, or the Court's own orders.

**SO ORDERED.**

Signed this 7th day of August, 2019.

_____
Alan D Albright

**AGREED PROTECTIVE ORDER – PAGE 30**

## EXHIBIT A

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Fintiv, Inc. v. Apple, Inc.*, United States District Court, Western District of Texas, Waco Division, Civil Action No. 6:18-cv-372-ADA. Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address:_____

Dated: _____

_____
[Signature]

**AGREED PROTECTIVE ORDER – PAGE 31**

1                IN THE UNITED STATES DISTRICT COURT

2               FOR THE WESTERN DISTRICT OF TEXAS

3                        WACO DIVISION

4   FINTIV, INC.                    *
                                    *
5   VS.                             * CIVIL ACTION NO. W-18-CV-372
                                    *
6   APPLE, INC.                     *    August 29, 2019

7       BEFORE THE HONORABLE ALAN D ALBRIGHT, JUDGE PRESIDING
                     PENDING MOTION HEARING

8

    APPEARANCES:
9
    For the Plaintiff:          Andy W. Tindel, Esq.
10                              Mann Tindel Thompson
                                300 W. Main St.
11                              Henderson, TX 75652

12                              Jonathan K. Waldrop, Esq.
                                Kasowitz Benson Torres LLP
13                              1349 West Peachtree Street N.W.
                                Suite 1500
14                              Atlanta, GA 30309

15                              Heather S. Kim, Esq.
                                Kasowitz Benson Torres, LLP
16                              333 Twin Dolphin Drive, Suite 200
                                Redwood Shores, CA 94065
17
                                Justin Allen, Esq.
18                              Haley & Olson, P.C.
                                100 N Ritchie Road, Suite 200
19                              Waco, TX 76712

20  For the Defendant:          J. Stephen Ravel, Esq.
                                John R. Johnson, Esq.
21                              Kelly Hart & Hallman LLP
                                303 Colorado, Suite 2000
22                              Austin, TX 78701

23                              Travis Jensen, Esq.
                                Orrick, Herrington & Sutcliffe LLP
24                              1000 Marsh Road
                                Menlo Park, CA 94025-1015

25

2

1  Court Reporter:              Kristie M. Davis
                                United States District Court
2                               PO Box 20994
                                Waco, Texas 76702-0994
3

4      Proceedings recorded by mechanical stenography, transcript

5  produced by computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   (August 29, 2019, 9:04 a.m.)

2        THE BAILIFF:  All rise.

3        (Call to Order of the Court)

4        THE BAILIFF:  Please be seated.

5        THE COURT:  Good morning, everyone.

6        DEPUTY CLERK:  Pending motion hearing in Civil Action

7   W-18-CV-372, styled Fintiv, Incorporated vs. Apple,

8   Incorporated.

9        THE COURT:  Good morning, ladies and gentlemen.  If you

10  all would be so kind as to introduce yourself on the record and

11  let me know who's going to be speaking primarily.

12        Mr. Tindel, good morning.

13        MR. TINDEL:  Good morning, Your Honor.  Andy Tindel.  I'm

14  here on behalf of the plaintiff Fintiv, Inc., and with me this

15  morning is our lead counsel Jonathan Waldrop and with his firm

16  Heather Kim and we also have Justin Allen from the Haley Olson

17  firm, and Mr. Waldrop will be making the argument for the

18  plaintiff this morning.

19        THE COURT:  Very good.  Thank you.  And welcome back.

20        MR. WALDROP:  Thank you, Your Honor.

21        THE COURT:  Mr. Ravel?

22        MR. RAVEL:  Your Honor, Steve Ravel from Kelly Hart

23  Austin.  Pleased and proud Apple, Inc.  On my team today is the

24  brains of the operation J.R. Johnson, Travis Jensen from the

25  Orrick firm.  Sven Stricker is on graphics today, and from the

```
 1   client is Jessica Hannah and Natalie Post, and I will be making

 2   the argument primarily.

 3        THE COURT:  Very good.  Thank you.  So are you going to be

 4   starting, Mr. Ravel?

 5        MR. RAVEL:  I am.

 6        THE COURT:  Mr. Ravel, when they heard you were speaking,

 7   all my clerks, we had a lottery.  I could only let two of the

 8   three in here and these two won, and one is having to sit in

 9   the back and actually keep working, but these two paid the most

10   money to get to come out and watch you.

11        MR. RAVEL:  Well, we can pipe it back for them.

12        (Laughter.)

13        THE COURT:  Suzanne?

14        (Off-the-record discussion.)

15        MR. RAVEL:  Thank you, Judge.  I hope I'll live up to

16   that.

17        May it please the Court.  May I begin by saying that Apple

18   believes strongly that this case belongs in Northern

19   California, and to that end the Orrick firm put together a

20   beautiful record of facts that I will be previewing and

21   discussing with you here today.  It puts the front guy in the

22   enviable position of having a slide deck that has a record

23   reference for every factual assertion it's made in it and it

24   allows one to be kind of an unequivocal and active voice

25   without talking loud and waving their arms.
```

—28—

1  done here in Austin.  I think they'd put the best face on if

2  they could, but I just don't think you can -- you can't square

3  a circle like that.  It isn't true so you can't prove that it's

4  true.  So --

5      THE COURT:  If the plaintiff had included NXP as a party

6  which makes it easier for one to require witnesses to show in

7  the same case, but everything else were the same, all the NXP

8  employees who would be involved are in California, then your

9  argument under Public Factor 2 would still be as strong though,

10 right?  I mean, your argument would still be, okay.  NXP is

11 also a party.  That doesn't change the fact on Slide 32 that

12 everything's done in California.

13     MR. RAVEL:  Right.  And I don't -- and I -- exactly right,

14 Judge.  I don't think NXP as a party would change the argument

15 or dilute it in any way.

16     THE COURT:  Let me ask you this:  You know, let's go to

17 where -- you had a slide, didn't you, where you were discussing

18 the security feature.

19     MR. RAVEL:  The secure element?

20     THE COURT:  Yeah.

21     MR. RAVEL:  There were several.

22     Let's go back to the beginning of the claim in the Claim

23 23 and we'll find it for the Judge.

24     I can -- if you can tell me a little more about it, I can

25 show you which one.

—29—

1        THE COURT:  Well, what I want to go into is I'd like for

2   you to put on the record -- oh, here it is on Slide 6 under

3   Mr. Dachs.

4        MR. RAVEL:  Yes, sir.

5        THE COURT:  The fact that he is in charge of the secure

6   element or the NFC component, what -- how does that feature

7   relate to the patents that are involved in the case?

8        MR. RAVEL:  I can demonstrate that, Judge, with the next

9   slide.

10        THE COURT:  Okay.

11        MR. RAVEL:  7.  And I'm going to walk over to it.

12        The secure element which NXP provides embodies just about

13   every accused step.  Notice the last words:  Stored in the SE.

14   NXP gives us a turn key product that has the terms that has the

15   widget, the apps, the applet in it.

16        THE COURT:  And does hardware perform any of the security?

17        MR. RAVEL:  I don't know that answer for sure.  I think --

18        THE COURT:  Does anyone at your table?

19        MR. RAVEL:  Mr. Jensen?

20        MR. JENSEN:  It's primarily the software, Your Honor.

21        THE COURT:  Primarily the software?

22        MR. JENSEN:  That's correct.

23        THE COURT:  And who is it -- who is it that does the

24   software?  Who makes the software?  Is it Apple or is it some

25   other third party?

1     MR. JENSEN:  It's primarily NXP.

2     THE COURT:  Who does the software for the security?

3     MR. JENSEN:  Who does the software for the secure element?

4  It has its own operating system that is provided by NXP.

5     THE COURT:  And the software that's done by NXP, those

6  engineers are also all in California?

7     MR. JENSEN:  Or Europe.

8     THE COURT:  Or Europe.  Okay.

9     MR. RAVEL:  Your Honor, unless you or Dr. Yi have any more

10  questions, I'm going to leave it there for now.

11     THE COURT:  Why don't you -- we'll finish with you.  I'll

12  hear from opposing counsel and then before you get back up I'll

13  take a short break and find out if there's anything I haven't

14  asked you that I should have, and when we come back out I'll

15  let -- I'll have more to ask.

16     Mr. Waldrop?

17     MR. WALDROP:  Thank you, sir.

18     THE COURT:  Thank you, Mr. Ravel.

19     MR. RAVEL:  Thank you, Judge.

20     THE COURT:  Y'all should note that Mr. Tindel's tie

21  reflects confidence.

22     (Laughter.)

23     MR. WALDROP:  Very strong, Your Honor.  It's very strong.

24     MR. TINDEL:  Are you making fun of me, Your Honor?

25     THE COURT:  No.  I'm jealous that you -- you know, I may

1  go out and buy a tie just like it.

2      MR. TINDEL:  I'm used to that from Judge Davis but not

3  you.  I may have to get used to it.

4      MR. WALDROP:  Bear with us, Your Honor.  I think we're

5  just pulling up the slides.

6      THE COURT:  Okay.

7      MR. WALDROP:  What we can do, Your Honor, is we can just

8  go ahead with the paper copies, Your Honor, if that's okay.

9      THE COURT:  I'm good.  Mr. Ravel is more of a showman and

10 he wanted the screen.  I'm pretty good if you just tell me what

11 page you're on.  I can usually follow along.

12     MR. WALDROP:  Thank you, Your Honor.

13     May it please the Court.

14     THE COURT:  Yes, sir.

15     MR. WALDROP:  My name is Jonathan Waldrop.  I'm with the

16 law firm of Kasowitz Benson Torres on behalf of the plaintiff

17 Fintiv, Inc. in this case against Apple, Your Honor.

18     THE COURT:  Yes, sir.

19     MR. WALDROP:  This is a case in which Apple has not and

20 cannot meet its heavy burden of showing that the Northern

21 District of California is clearly more convenient than the

22 Western District of Texas, and this makes sense, Your Honor, in

23 the real world today as we stand here in the Western District

24 for four important reasons that I will discuss throughout my

25 presentation.

1          First, Your Honor, the majority of the identified to this

2     date third party witnesses are located in the Western District

3     of Texas, and when I mean identified, particular names of

4     witnesses have been identified by the plaintiff.

5          Two, Your Honor, Apple's significant presence and

6     investment in the Western District of Texas along with the

7     plaintiff.

8          Three, Your Honor, Fintiv's long standing presence almost

9     over a decade in the Western District of Texas, the location of

10    its employees and the locus of facts and circumstances

11    regarding its presence in Texas are here.

12         And, finally, Your Honor, the significant local interest

13    and the resolution of this dispute.

14         The major parties all involved in this dispute have large

15    undisputed presences here which make the resolution of the case

16    in this district the most efficient and the best and reasonable

17    forum for the resolution of this case.

18         Now, as an aside, Your Honor, I've been involved in many

19    motions to transfer both on the plaintiff's side and the

20    defendant's side.  And under facts like these where both the

21    parties -- Apple has thousands of employees here, NXP, a

22    relevant third party, has thousands of employees here.  The

23    plaintiff has a long standing presence in the district.  The

24    way to defeat a motion to transfer has not been carried by

25    Apple.  The relevant things that you would focus on to me in

past, the patent says, users were "unable to view the details" of the CCAs, such as their account specific information. '125, 2:8-15. As a result, users were said to be "unable to effectively manage or keep track of various contactless payment applets stored in their respective mobile devices." *Id.*, 2:16-18. Only when the account specific information is duplicated in the WMA is the mobile device, via the wallet application, able to "access the information." *Id.*, 9:45-48; *see also* '851, ¶89 ("as mobile devices cannot access the payment applets directly, a separate WMA 501 is required for the management of mobile wallet cards stored within mobile wallet application"); '853, ¶78; '846, ¶59. Like the Federal Circuit in *In re Abbott*, which looked to the purpose of the patent to inform the construction of the disputed term, the Court's construction of WMA should reflect that one important purpose of the invention of the '125 patent is to store duplicate account specific information that can be accessed by the mobile wallet application.

The term "wallet management applet (WMA)" is not a term of art and has no plain and ordinary meaning. The overwhelming weight of the intrinsic record supports Apple's proposed construction for WMA as a "software application for storing duplicate account specific information accessible to the mobile wallet application." And only Apple's proposed construction reflects that the WMA fulfills the necessary role prescribed to it by the '125 patent.

**Fintiv's Alternative Construction.** Fintiv's proposed construction—"integrated functionality that enables management of a wallet related applet"—fails to provide any explanation as to what a WMA actually is or does and raises more questions than it answers. An "applet" is not a mere "functionality," and defining it as such is incorrect and confusing. As explained in numerous places throughout the specification, a WMA is a software application. *See*, *e.g.*, '125, 7:16-19; '846, ¶42. It can be downloaded and installed into a mobile device. *See*, *e.g.*, '125, claim 11 (connecting to a TSM and "retrieving…a wallet management applet (WMA)"); *see also* '125, 7:12-15; 9:2-5; 9:25-28. An "integrated functionality" is not something that can be downloaded and installed and would thus exclude numerous embodiments from the specification. *See*, *e.g.*, *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("[w]e normally do not interpret claim terms in a way that excludes embodiments disclosed in

the specification"). Fintiv ascribes no meaning to the structural term "applet," and seeks to remove that aspect from the term "wallet management *applet*" completely.

Moreover, the phrase "integrated functionality" is vague and confusing because it is unclear what the WMA is integrated into. To the extent Fintiv's construction is read to mean that the WMA must be integrated into a mobile device (or secure element within a mobile device), this ignores that fact that a WMA is still a WMA even when it resides on a server prior to download. *See, e.g.*, '125, 7:66-8:14, 9:14-35. But Fintiv's construction fails to account for this. Beyond the mere location of the WMA, what does it mean to be integrated into something? Is an application "integrated" when it is installed onto a mobile device, or is something more required? Fintiv's proposed construction provides no answers to these questions.

The remainder of Fintiv's alternative construction, "that enables management of a wallet related applet," is also unhelpful and incorrect for three reasons. First, it ignores the very thing that the specification says makes the WMA "unique"—*i.e.* storing duplication account specific information. '846, ¶42. Second, the construction fails to explain what a "wallet related applet" is. Is the mobile wallet application itself a "wallet related applet?" Does the WMA manage itself? As the claims themselves recite, for every contactless card applet, there is a "widget and a wallet management applet (WMA) corresponding to the contactless card applet." '125, claim 11. Does a particular WMA manage the "wallet related" CCAs or widgets that it does not "correspond" to? Fintiv's construction provides no answers to any of these questions.

Third, Fintiv's construction suggests that the WMA performs any kind of wallet management activity, as opposed to the specific role of the WMA described throughout the specification. The '125 patent explains that there are wallet management activities performed by *other* aspects of the wallet management system. *See, e.g.*, '125, 3:31-37 (server-side "wallet client management component to store and to manage a mobile wallet application; a widget management component to store and to manage widgets; a device profile management component to store mobile device information"); 9:2-5 (the "user may view and *manage* the information stored in the WMA21 applet *through the corresponding widget*"); 10:56-57 ("all of

the provided limitations may be managed and applied by the Rule Engine in the TSM system 120") . Fintiv's construction improperly ascribes these roles to the WMA.

### C.   "Widget" (claims 11, 18, and 23)

| Apple's Proposed Construction | Fintiv's Proposed Construction |
|---|---|
| "user interface software application" | Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "integrated functionality that relates to applications related to a financial institution transportation account, and the like." |

As with WMA, the parties dispute whether the term "widget" requires construction. To a lay person, the term "widget" generically refers to an undefined article and is largely synonymous with terms like gadget, gizmo, or thingamabob. Ex. 7. As evidenced by its alternate construction, even Fintiv agrees that widget means something else in the context of the '125 patent. This term requires construction because, if left unconstrued, the jury will be confused as to what a widget is or does and run a significant risk of misinterpreting the term differently from how it is used in the asserted claims. *See, e.g.*, *Whirlpool*, 2016 WL 3959811, at *11 ("[t]hese disputed terms are technical terms and are potentially confusing, so '[t]he Court believes that some construction of the disputed claim language will assist the jury to understand the claims'") (citing *TQP Dev.*, 2012 WL 1940849, at *2.

A person of ordinary skill in the art would understand widget in the '125 patent to be a "user interface software application." There is no dispute that a "widget" can be a software application. If there is any dispute as to whether a widget *must* be a software application, the intrinsic evidence answers this question the affirmative. Claim 11, directed to a "method for provisioning a contactless card applet in a mobile device," is instructive. The mobile device connects to a TSM and, after the user selects a CCA, the mobile device "retriev[es] a widget…corresponding to the [CCA]" and "provision[s] the selected [CCA and] the widget." *See also* claim 18 (widget management component stores widgets for downloading).

The specification compels the same conclusion that a widget is a software application. The technical documents explaining the operation of the SK C&C wallet that are incorporated into the '125 patent make clear that a widget is a software application. For example, the '851 provisional repeatedly refers to the widget as a "widget binary file." '851, Requirements Use Cases document at pp. 18-19, 44. Similarly, the glossary[4] in the '853 provisional describes the widget as a "downloadable sub module of a wallet client," and the wallet client in turn is a "downloaded mobile application." '853, Business Requirements document at p. 30.

Indeed, the widget is described as a software application in every embodiment of the '125 patent. A widget is "an application configured to interface with a user of the mobile device." '125, 5:4-9; *see also, e.g., id.*, 8:19-22 (CCAs and "corresponding widget applications" provisioned onto the mobile device); *id.*, 10:10-14 ("filtering a list of mobile widget applications that are available for installation"); '846, ¶30 ("[w]idgets represent individual payment applications, transportation applications, and other related applications"); '852, ¶77 ("widget application will be installed in the SK C&C wallet for graphic display of the installed account").

A widget is more than just any software application, it is a "*user interface* software application." The specification of the '125 patent states that a widget resides within a mobile wallet application "to provide an interface to the user." '125, 8:63-65. The '125 patent explains why the widget application must act as a user interface, and it is fundamental to the stated purpose of the alleged invention and the purported problem sought to be solved. *See, e.g.*, '125, 2:13-29. As noted above in the WMA discussion, the WMA stores a duplicate copy of account specific information (*e.g.* a credit card account number) corresponding to a CCA. The corresponding widget provides the interface necessary for a user to access the account specific information stored in the WMA. *See generally id.*, 8:60-9:5 ("By installing both the WMA 21 applet and the widget, the user may view and manage the information stored in the WMA21

---

[4] Where a specification incorporates product documentation for a commercial embodiment that includes a glossary, the glossary is relevant (but not dispositive) to claim construction. *See In re Google Litig.*, No. 08-cv-03172-RMW, 2011 U.S. Dist. LEXIS 98469, at *34-35 (N.D. Cal. Aug. 31, 2011).

applet through the corresponding widget."); *see also* '846, ¶53 ("when a request to provision the selected contactless card applet 23 is made, a corresponding WMA 21 information and widget (user display for the contactless card application 23 stored in the WMA 21) are also requested to be provisioned automatically"). For instance, a user may provision a Visa credit card CCA, and when she does so, both a corresponding widget and WMA are also provisioned. *Id.,* 8:60-62. The user is able to "view and manage" the Visa card information only through the use of the duplicate copy in the WMA, which unlike the CCA, is able to be displayed to the user by the widget user interface application. *Id.*, 9:2-5.

The understanding that a widget is a user interface application is also confirmed by the extrinsic evidence, including contemporaneous dictionary definitions and technical references that predate the '125 patent by decades. For instance, the 2010 New Oxford American Dictionary defines "widget" in the computing field as "an application, or a component of an interface, that enables a user to perform a function or access a service." Ex. 7. At least 20 years prior to the filing of the '125 patent, companies such as IBM and Fuji Xerox used the term widget to refer to user interface application software. *See*, *e.g.*, Ex. 12, U.S. Pat. 5,664,130 at 5:8-11 ("The program takes the form of an image display widget which is part of a graphics software toolkit package designed to interface application programs."); Ex. 13, U.S. Pat. 6,023,274 at 3:13-23 ("FIG. 3 shows a typical view of the display…Control panel window 90 includes widgets, such as, button windows 100, by means of which the user can interact with the application in a manner well known in the art."); *see also* Ex. 14, U.S. Pat. 5,335,320 at 5:12-39.

Because the '125 patent (including the claims, specification, and provisional applications) "repeatedly, consistently, and exclusively" uses the term "widget" to refer to a user interface software application, it should be construed commensurate with that description. *In re Abbott*, 696 F.3d at 1149-51; *see*, *e.g.*, '125, claims 16, 24; 2:13-29, 8:60-9:5; '846, ¶53. And, as in *In re Abbott*, Apple's proposed construction reflects the purported inventive concept of displaying account specific information stored in a CCA to the user. *See, e.g.*, '125, 2:8-18. The widget thus must be an application that acts as a user interface for this information for the invention to

have meaning.  For at least these reasons, "widget" should be construed as "user interface software application."

**Fintiv's Alternative Construction**.  Fintiv's alternative construction, "integrated functionality that relates to applications related to a financial institution transportation account, and the like," should not be adopted for at least three reasons.

First, as explained above for Fintiv's alternative construction of WMA, the language "integrated functionality" is vague, confusing, and inappropriately non-structural.  This is apparent from usage of the term widget in claim 18, which recites "a widget management component configured to store and to manage widgets."  The idea of a component that stores "integrated functionality" simply makes no sense.

Second, Fintiv's phrasing "that relates to applications related to a financial institution transportation account" is vague, confusing, and overbroad.  By layering two levels of "relates to" language on top of one another, Fintiv's construction fails to describe in any meaningful way, much less in a way that is helpful to the jury, what constitutes a "widget."  The twice-removed "relates to" language leaves to the imagination far too many possibilities about what functionalities are circumscribed by the term widget.  For example, applications that allow users to locate an ATM or branch office on their phone are "applications related to a financial institution" that have nothing to do with the concept of a widget as described in the '125 patent but are encompassed by Fintiv's overbroad construction.

Third, the phrase "and the like" is unhelpful because it leaves open and unexplained what things are "like" a financial institution or a transportation account and what things are not, rendering the construction even more improperly open-ended.  Such open-ended language is not helpful because it fails to tell the jury what will or will not satisfy the claims *in addition to* the enumerated list of items.  *See, e.g.*, *Affinity Labs of Texas, LLC v. Clear Channel Broad., Inc.*, No. 1:12-cv-205-LY, 2014 WL 1699063, at *11 (W.D. Tex. Apr. 29, 2014) (rejecting proposed construction "inserting an open-ended list"); *Express Mobile, Inc. v. Svanaco, Inc.*, No. 2:17-cv-

00130-JRG-RSP, 2018 WL 746472, at *10 (E.D. Tex. Feb. 7, 2018). A construction that creates new ambiguities, like Fintiv's, should not be adopted.

**D. "Mobile Wallet Application" (claims 11, 18, and 23)**

| Apple's Proposed Construction | Fintiv's Proposed Construction |
|---|---|
| "mobile wallet software application capable of being independently downloaded and installed" | Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "application that provides wallet functionality on the mobile device." |

The parties dispute whether the phrase "mobile wallet application" requires construction. Because the parties dispute the meaning of "mobile wallet application" as that term was used in the asserted patent in 2010, the Court should construe the term. *O2 Micro*, 521 F.3d at 1361. Moreover, this is a technical term that lay jurors are unlikely to be familiar with and construction is appropriate to assist the jury. *Iridescent Networks*, 2019 WL 3770833, at *6.

The primary dispute between the parties is whether a mobile wallet application must be "capable of being independently downloaded and installed." The intrinsic evidence compels the conclusion that it does. Claim 18 is directed to a "wallet management system (WMS)" on a server which includes "a wallet client management component configured to store and to manage a mobile wallet application." Thus, the claims themselves reflect that a "mobile wallet application" is "store[d]" on a server from which it can be downloaded.



This is illustrated in Fig. 1 of the '125 patent (see above) which shows the "wallet client management component" where the various "mobile wallet applications" are stored. *See* '125, 4:52-59.

The '125 patent explains that mobile wallet applications were available from different providers. *See, e.g.,* '851, ¶84 ("Mobile wallet application 41, such as a SK C&C wallet"); '125, 4:64-67 ("mobile wallet application manufactured by Google®"); and '851, Requirements Use Cases document at p. 41 ("The system shall check what type of wallet has been used (either SK C&C wallet or the third-party wallet.)"). Indeed, storing various mobile wallet applications on the server for filtering (*viz.,* screening based on mobile device properties such as operating system and hardware configuration) is central to the patent's proposed solution to the prior art problem of users being "bombarded" with incompatible or irrelevant applications.

Both the claims and the specification repeatedly describe the downloading and installation of mobile wallet applications. The fact that mobile wallet applications are capable of being downloaded is reflected by the glossary entry in the '853 provisional which states that a "Mobile Wallet" is "*[a] downloadable mobile application* for mobile commerce service in the user's handset." '853, Business Requirements document, p. 30. "Exemplary embodiments of the present invention provide a method for installing a wallet application in a mobile device including requesting, by the mobile device, a mobile wallet application…, receiving mobile wallet application installation information; installing the mobile wallet application in the mobile device." '125, 3:1-7. Fig. 2 of the '125 patent is "[a] method for installing a mobile wallet application and associated management applet in a secure element (SE)." *Id*., 5:47-49. "[T]he TSM system 120 will confirm the mobile wallet application installation request and initiate the wallet application installation process." *Id.,* 6:17-19. "TSM system 120 transmits the requested mobile wallet application 24 to mobile device 100 for installation." *Id.,* 6:34-36. Claim 1 further confirms that the mobile wallet application must be capable of being downloaded and installed. Claim 1 is directed to "[a] method for installing a wallet application in a mobile device." The mobile device "request[s]…a mobile wallet application," "receiv[es] mobile wallet application

Attorney Docket No P4302USPR

process may be initiated by pushing a WAP message with an embedded URL to the SMS platform in step 203, which relays the message to the mobile device in step 204.    However, the mobile wallet application may be obtained in various other ways as well and are not limited to the WAP message method as described above.  The specified applications may be downloaded directly to the requesting mobile device, sent to the user in a physical medium storing the applications, or by other conventional methods for providing software applications.

**[0036]** The user upon receipt of the installation message may initiate the actual installation process by sending a request to the TSM system in step 205.

**[0037]** TSM system in response will begin installing the requested wallet application and an accompanying OTA proxy program to allow OTA provisioning in step 206.

**[0038]**  Once the mobile wallet application an accompanying OTA proxy program have been downloaded, the mobile wallet application is launched by the requesting user in step 207.

**[0039]** In step 208, the wallet application through OTA proxy captures the mobile device information (e.g. IMEI/MEID, MSISDN), including SE information (e.g. CPLC, CSN, CIN, ICCID).

**[0040]** Afterwards, in step 209, the OTA proxy sends the captured SE and mobile device information to the TSM, which houses a WMS system.

**[0041]** The TSM/WMS system, upon receipt of the information provided by the OTA proxy, creates a Mobile ID for the installed wallet application in step 210.  Once the mobile ID has been generated, a WMS system, such as Mobile wallet platform 200 described in FIG. 2, requests TSM system to provision a corresponding wallet management applet (WMA) 21 with the following information via OTA proxy: CPLC or CSN, CIN, Mobile ID and WMA personalization data.

9

Attorney Docket No P4302USPR

[0042] The WMA 21 is a software application to reside within the within the secure element of the mobile device which stores account specific information such as a credit card number.  WMA 21 is unique in that, its primary purpose is to cause contactless card applet 23 account information to be stored within the mobile device's SE separate from the contactless card applets 23.  As the issuers of contactless card applets23 do not allow direct access into the applets themselves, duplicate account information may be stored separately within the WMA 21 in order for the mobile wallet application to view account specific information (e.g. credit card number, security code, PIN, expiration date, and etc.).

[0043] In step 211, TSM sends a wake up message to the mobile push server (e.g. C2DM) with a mobile device identifier to wake up OTA proxy residing in the requesting mobile device.

[0044] The push server sends the request to OTA proxy and wakes the application in step 212.

[0045] In step 213, the OTA proxy gathers mobile device and SE specific information such as MSISDN and CIN and sends it over to TSM.  In an example, OTA proxy gathers mobile device and SE specific information to send to TSM every time it is woken up.

[0046] Once TSM receives the information sent by OTA Proxy, TSM processes the information and converts the identifying information along with the request to provision WMA 21 into APDU commands in step 214 and sends them over to OTA proxy in step 215.

[0047] Next, in step 216, OTA proxy receives the APDU commands to install WMA 21 and relays them to the SE, which will process APDU commands to install the requested WMA 21 application and its associated credentials.  SE will then respond back with the result of each command request in step 217.

10

Attorney Docket No P4302USPR

[0048] Subsequently, OTA Proxy relays the result back to the TSM in step 218 and the TSM will update its system with the result of the request.

[0049] Once the user has successfully installed the mobile wallet application, the user may desire to provision SP specific contactless card applets 23, or widget applications onto his or her mobile device. FIG. 3 is a system diagram illustrating a method for installing a mobile widget into the mobile wallet application and its corresponding contactless card applet and account information into the SE of the requesting mobile device in accordance with an exemplary embodiment of the present invention.

[0050] In step 1, the user logs into the mobile wallet application to start the mobile wallet application for use. Once started, the wallet application connects to the TSM/WMS system for synchronization in step 2. A more detailed description of how this synchronization process operates is provided below with reference to FIG. 5.

[0051] TSM will check for any updated information made by external parties (e.g. SP, user by web access, TSM administrator, and/or etc.) and sends the list of waiting updates for the customer to the wallet application in step 3. In addition, additional applications that user may be interested in may be displayed for download through dynamic filtering. Only the applicable applications based on user attributes will be displayed through this filtering process. A more detailed description of how this dynamic filtering works is provided below with reference to FIG. 4.

[0052] The mobile device user is prompted to decide whether to update the wallet application with the changes made at the TSM system, if any, in step 4.

[0053] When the user decides to update the wallet application or download new application, a request is made to the TSM/WMS system to provision the updates and/or selected

11

# Mobile Wallet Ecosystem



1) UMS : USIM Management System

2) New SIM-OTA : TSM에서 SIM Applet Provisioning을 위해 도입되는 기존 Legacy OTA가 커버하지 못했던 OTA 기술

3) CAMS : Card & Applet Management System

4) KMS : Key Management System

5) PAMS : Phone Application Management System

# Business Requirements

## for SK C&C m-Commerce Platform

## Version 0.3



*Issue Date: Aug. 5, 2010*

*Copyright © 2010 by SK C&C. Permission is not permitted without written consent to use, modify, and/or distribute this document.*

push-mechanism. After invoked, the OTA proxy shall process the related jobs by interfacing with TSM. And also, the OTA proxy shall provide the APIs for the mobile wallet to interface with the SE.

The OTA proxy shall provide a retry mechanism for stable data transmission. In case of error during the transmission to the server or in case the ACK from the server is not received within the defined time period, OTA proxy shall be able to re-transmit the data.

### 3.1.3  Web application for partners

The web application, named *Service Portal*, shall be provided to the partners (e.g., service providers, MNOs, or etc.) contracted to use the MCP service. Each partner shall have one more login account which should be controlled by Roll-based Access Control (RBAC)

The Service Portal shall provide the following features.

- ➢ Service Registration and Management
- ➢ Subscriber Management
- ➢ Statistics and Analytics

### 3.1.4  Open APIs for partners

The Open APIs for the communication with the systems of the partners (e.g., service providers, MNOs, or etc.) shall be provided. The Open APIs shall not depend on any particular platform using the general-purpose protocols such as HTTP or XML. The API access control for each individual partner shall be possible and the security of data and communication channel shall be guaranteed.

### 3.1.5  Web application for service administrators

The web application, named *Service Portal OM&A*, shall be provided as the MCP service administration tool. The administrators shall be able to manage the general configurations of MCP system, access control, codes and messages, and so on. And also, the Service Portal OM&A should provide the monitoring and auditing features.

Web application for service administrators should supports functions as follows:

- ➢ Service Registration and Management
- ➢ Subscriber Management
- ➢ Partner Management
- ➢ SE/Card Applet/Key/Handset profile Management
- ➢ Statistics and Analytics
- ➢ System and Service Monitoring

### 3.1.6  Web application for end-customer

The web application, named *User Web*, should be provided to end-customers. The User Web should be a stand-alone web application or be served as an ASP (Application Service Provider) for Service Providers.

Web application for end-customers should supports functions as follows:

*Copyright © 2010 by SK C&C. Permission is not permitted without written consent to use, modify, and/or distribute this document.*

> ➢ Wallet download and service provisioning
> ➢ Wallet management
> ➢ Customer Service
>   - ○ Self-care
>   - ○ FAQ
>   - ○ Etc.

### 3.1.7  SMS notification for all users

When a particular event occurs, the event for subscribers, partners, and service administrators should be delivered to the SMS notification. The event shall be configurable.

### 3.1.8  Email for all users

When a particular event occurs, the event for subscribers, partners, and service administrators should be delivered to the Email notification. The event shall be configurable.

### 3.1.9  IVR for end-customers

The IVR interfacing should be provided for an end-customer to use the customer service.  The feature of IVR interfacing would need to be defined in the future.

## 3.2  Secure Element

The MCP should support any type of SE developed Java card COS and Global Platform basis (e.g., UICC, MicroSD, Embedded SE).

## 3.3  Mobile Devices and browsers

The mobile client should support various mobile platforms as follows:

> ➢ Android
> ➢ Blackberry
> ➢ iPhone
> ➢ J2ME
> ➢ Windows Mobile
> ➢ Palm-pre

The platform should be compatible with the below browsers (including mobile versions) and also have backward compatibility with at least previous 2 release versions. There should be a continuous process to review the compatibility and should be part of maintenance process

> ➢ Internet Explorer
> ➢ FireFox

*Copyright © 2010 by SK C&C. Permission is not permitted without written consent to use, modify, and/or distribute this document.*

*Mobile Commerce Platform Business Requirements*
*SK C&C*                                                                          *Page 7*

> ➢ Chrome
> ➢ Safari
> ➢ Opera

## 3.4  Carriers

The MCP should be basically independent on the carriers and be able to interface with the carrier's systems as Open APIs according to the carrier's requirement.

## 3.5  Language

The service channel (e.g., mobile client, web application, SMS, email, and etc) for the users shall support multi-language feature. Basically the following two languages should be supported.

> ➢ English (default)
> ➢ Spanish

The MCP should be added in other languages according to the requirements of clients in addition to the above two languages, the source code of the MCP without a big change with the addition of the language of the resource should be available.

The following items should support multi-language feature:

> ➢ Text and images for UI
> ➢ Confirmation and Error message for UI
> ➢ User input text
> ➢ SMS text
> ➢ Email text

The users shall be able to set the preferred language, and depending on the selected language, as well as text, images and other resource should be changed if they are related. If there is no appropriate resource for the user's preferred language, it shall not be an error and each resource shall be replaced with the default language (English).

## 3.6  Security Requirements

The services provided by Mobile Commerce Platform should deal very critical data to provide not only financial services and non-financial services. Therefore, the MCP shall have the security model complying with the related compliance and regulation.

This security requirement includes user authentication method, secure communication between client device and server, secure storage for client devices, and user accountability and auditing requirements.

### 3.6.1  Key and Data Encryption

- It should never display account numbers in the clear.  Any time an account number is shown, only the last FOUR digits should be displayed – the number is truncated (Ex: 1234).

*Copyright © 2010 by SK C&C. Permission is not permitted without written consent to use, modify, and/or distribute this document.*

9:5; 9:25-35, and 9:61-10:9.

**B.    "widget" (all asserted claims)**

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning.  To the extent the Court requires construction, the plain and ordinary meaning is "integrated functionality that relates to applications related to a financial institution, transportation account, and the like." | "user interface software application" |

The term "widget" does not require construction as a person of ordinary skill in the art would have reasonable certainty about the meaning and scope of the term from its context in the claims and specification.  *Pisony*, 2019 WL 928406, at *1.  The specification provides various examples of what can constitute a "widget."  For instance, the specification teaches that "applications stored at the application level related to a financial institution, transportation account, and the like" are examples of widgets that may be housed in the wallet application.  ('125 Patent at 4:57-61.)  The specification also provides an example for which the "widget" represents "a virtual card" that resides "within the respective mobile wallet application."  *Id*. at 5:66-6:4.

Apple's proposal that the term "widget" be construed to mean "user interface software application" is another attempt by Apple to improperly narrow the claim to a specific embodiment and improperly attempts to read specific examples into the claim language.  For instance, the specification teaches that "[w]idgets **may** be an application configured to interface with a user of the mobile device" and further identifies "individual payment applications, transportation applications, and other related applications" as example of widgets.  *Id*. at 5:6-9 (emphasis added). In other words, the '125 Patent does not require that the "widget" be a "user interface" as proposed by Apple.

Additionally, Apple's proposal would violate the doctrine of claim differentiation.  For

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **FINTIV, INC.,** | § | **Civil Action No.: 6:18-CV-372-ADA** |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| **v.** | § | |
| | § | |
| **APPLE INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF FINTIV, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Apple also cites to *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014) for a similar position and again mischaracterizes the holding in that case. A full reading of this decision reveals that the court determined the term "***unobtrusive*** manner" was a "purely subjective claim phrase" that required a review of the intrinsic evidence in order to ascertain the boundaries of the claim. *Id.* at 1371. (Emphasis added.)

Here, since the term "wallet management applet" does not contain a term of degree (*e.g.*, high or low) or a purely subjective phrase (*e.g.*, expensive or efficient), Apple's reliance on these cases to support its "coined term" argument is misplaced. Specifically, the Court should reject Apple's attempt to mischaracterize the holdings of these cases in order to substitute for the fact that it has failed to provide evidence of disclaimer or disavowal of claim scope by the patentee.

### 3.      Fintiv's Proposal Should be Adopted

Fintiv's position is that no claim construction is necessary. If the Court finds that the claim term should be construed, Fintiv's proposed construction—"integrated functionality that enables management of a wallet related applet"—affords the claim term its plain and ordinary meaning.

The intrinsic evidence confirms that the term "wallet management applet (WMA)" should alternatively be construed as "integrated functionality that enables management of a wallet related applet." For instance, the specification provides a specific, non-limiting example of "wallet management applet (WMA)":

> In an example, **WMA 21 may include both a WMA 21 container and one or more WMA applets**. WMA 21 container ***may manage the information stored in the WMA 21 applets***. WMA 21 container may be installed in the mobile device 100 when WMA 21 applets is requested to be installed, or when the mobile wallet application is installed, or separately without regard to either the WMA 21 applet or the mobile wallet application.

('125 Patent at 7:7-15 (emphasis added).) The specification further provides that "[b]y installing both the WMA 21 applet and the widget, the user may view and manage the information stored in

the WMA 21 applet through the corresponding widget." *Id.* at 9:2-5.

The specification further provides examples of wallet related applets (*e.g.*, account specific information) that can be managed:

> To provide the user of the mobile device with the account specific information related to contactless card applets, separate account information associated with the corresponding contactless card applet 23 (**e.g. credit card number, expiration date, security code, PIN, etc.**) may be provisioned in the SE as WMA 21 applets.

*Id.* at 7:38-43 (emphasis added). And "[o]nce account specific information is installed into WMA 21 container as WMA 21 applet, the respective mobile device 100 may access the information periodically for required updates." *Id.* at 9:45-48.

Accordingly, "wallet management applet" should be given its plain and ordinary meaning, or alternatively be construed to mean "integrated functionality that enables management of a wallet related applet."

**B.** **"widget" (claims 11, 18, and 23)**

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "integrated functionality that relates to applications related to a financial institution, transportation account, and the like." | "user interface software application" |

**1.** **Apple's Construction is Improper and Should be Rejected**

As explained in Fintiv's Opening Brief, Apple's proposed construction for "widget" imports the limitation "user interface software application" and should be rejected as it violates some of the basic tenets of claim construction. (D.I. 72 at 10-11). Apple does not argue that the patentee acted as his own lexicographer or disclaimed claim scope. (D.I. 71 at 16-19). Rather, Apple argues that based on a few mischaracterized portions of the '125 Patent specification, the term "widget" should be limited to "user interface software application." *Id.* For instance, Apple

asserts that "[a] widget *is* 'an application configured to interface with a user of the mobile device.'" (*Id*. at 17 (citing '125 Patent at 5:4-9) (emphasis added). Instead, the specification teaches that "[w]idgets *may* be an application configured to interface with a user of the mobile device" and further identifies "individual payment applications, transportation applications, and other related applications" as example of widgets. *Id*. at 5:6-9 (emphasis added). In other words, the '125 Patent does not require that the "widget" be a "user interface" as asserted by Apple. In fact, the intrinsic evidence cited by Apple belies its position that the "widget" is required to be a user interface software application.

Apple's proposed construction, nevertheless, attempts to read the "user interface software application" embodiment from the specification into the claims. Such a construction is impermissible unless there is unmistakable evidence that the patentee disclaimed claim scope. *See*, *e.g.*, *Teleflex, Inc.*, 299 F.3d at 1325; *Thorner*, 669 F.3d at 1366. Apple, however, cites to no clear disavowal or lexicography in the intrinsic record to justify such a departure from the plain and ordinary meaning of the term "widget" as understood by a person of ordinary skill in the art.

As explained in Fintiv's Opening Brief, Apple's proposal would violate the doctrine of claim differentiation. For example, dependent claim 24, which depends on independent claim 23, requires that "the widget is configured to include a *user interface*" and dependent claim 16, which depends on independent claim 11, requiring that "the widget is an application configured to *interface with a user* of the mobile device." Claim differentiation requires that claims 16 and 24 be narrower in scope than the claims from which they depend. *See Liebel-Flarsheim Co.*, 358 F.3d at 910 ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest".) Apple's proposed construction would violate this requirement and, as a consequence, renders claims such

as claims 16 and 24 superfluous.  As such, Apple's proposed construction should be rejected.

### 2.     Fintiv's Proposal Should be Adopted

Fintiv's position is that no claim construction is necessary.  If the Court finds that the claim term should be construed, Fintiv's proposed construction—"integrated functionality that relates to applications related to a financial institution, transportation account, and the like"—affords the claim term its plain and ordinary meaning.

The intrinsic evidence confirms that the term "widget" should alternatively be construed as "integrated functionality that relates to applications related to a financial institution, transportation account, and the like."  For instance, the specification provides specific examples of an individual "widget":

> In particular, wallet client management component 111 is responsible for the wallet application itself (referred as the container), which may house the **individual widgets (e.g., applications stored at the application level related to a financial institution, transportation account, and the like**).

('125 Patent at 4:59-61 (emphasis added).)  The specification further explains that the widget includes integrated functionality as it "correspond[s] to a contactless card applet" (*id*. at 3:42) and "may be an application configured to interface with a user of the mobile device" (*id*. at 5:6-7).

Accordingly, "widget" should be given its plain and ordinary meaning, or alternatively be construed to mean "integrated functionality that relates to applications related to a financial institution, transportation account, and the like."

### C.     "mobile wallet application" (all asserted claims)

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning.  To the extent the Court requires construction the plain and ordinary meaning is "application that provides wallet functionality on the mobile device." | "mobile wallet software application capable of being independently downloaded and installed" |

### 1. Apple's Construction is Improper and Should be Rejected

As explained in Fintiv's Opening Brief, Apple's proposed construction for "mobile wallet application" improperly imports the limitation "software application capable of being independently downloaded and installed" and should be rejected as it violates basic tenets of claim construction.  (D.I. 72 at 11-13).

Apple again does not argue that the patentee acted as his own lexicographer or disclaimed claim scope.  (D.I. 71 at 20-22).  Rather, Apple attempts to circumvent its burden to show that the patentee disclosed claim scope by using selective citations from the '125 Patent and the provisional application as though they should be added to the claims.  *See Info-Hold, Inc.*, 783 F.3d at 1267 ("we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment") (quotation omitted).  However, the '125 Patent specification explicitly provides that the invention is not limited to being independently downloaded and installed as asserted by Apple:

> After a customer account has been created or updated, if it is determined that the mobile wallet application 24 is not installed on the mobile device 100, the TSM system 120 will confirm the mobile wallet application installation request and initiate the wallet application installation process. The installation process may be initiated by transmitting a Wireless Application Protocol (WAP) message with an embedded Uniform Resource Locator (URL) to the Short Message Service (SMS) platform in step 203, which relays the message to the mobile device 100 in step 204. However, **the mobile wallet application 24 may be obtained in various other ways as well and** *is not limited* **to the WAP message method as described above. The mobile wallet application 24** *may* **be downloaded directly to the requesting mobile device 100,** *sent to the user in a physical medium storing the application,* *or by other suitable methods for providing software applications*.

('125 Patent at 6:14-30 (emphasis added).)  In other words, the '125 Patent expressly states that other variations or modifications for providing the "mobile wallet application" may occur to those with skill in the art.  Accordingly, by the explicit terms of the '125 Patent's specification, the claims are not in any way limited to a description of an embodiment.  As a result, Apple's proposed

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **FINTIV, INC.,** | § | |
| | § | **Civil Action No.: 6:18-CV-372-ADA** |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **APPLE INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**<u>PLAINTIFF FINTIV, INC.'S REPLY CLAIM CONSTRUCTION BRIEF</u>**

**2.     Apple's proposed claim construction seeks to impermissibly narrow the claim scope**

Even if this term should be construed (it should not), Apple's proposed claim construction is improper for several reasons as discussed in Fintiv's Claim Construction Briefs and further expanded below.  First, Apple has not provided any justification for the need to change "wallet management applet (WMA)" into "software application" by equating these two phrases.  (D.I. 71 at 11-12; D.I. 74 at 11-12.)  What's more, equating the two phrases would be contrary to the specification that also discloses embodiments where "wallet management applet (WMA)" is also implemented using an applet, not a "software application."  (*See* '125 Patent at 7:8-9 & 7:42-43; *see also* D.I. 72 at 7-8.)  Moreover, a POSITA at the time of the invention would understand that there was a difference between a "wallet management applet (WMA)" and "software application." (*See* Tushie Decl. at ¶ 30.)

Further, Apple's proposed claim construction would ultimately violate the principle that limitations from the patent specification (or the related provisional applications) should not be improperly imported into the claim language, unless there is unmistakable evidence that the patentee disclaimed claim scope through clear disavowal or by acting as its own lexicographer. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 229 F.3d 1313, 1325 (Fed. Cir. 2002).  Such special circumstances do not exist here.  Apple argues that the patent specification defines the claim term by implication because, allegedly, the specification "so repeatedly and consistently uses the term WMA to refer to a software application for storing duplicate account specific information accessible to the mobile wallet application."  (D.I. 74 at 11.)  Yet the passages relied upon by Apple do not show this alleged repeated and consistent usage of the term, and in fact do not require "storing duplicate account specific information accessible to the mobile wallet application."  (*Id.*) To the contrary, these passages demonstrate potential embodiments, as exhibited by using the

permissive language of "may":

> "Once account specific information is installed into WMA **21** container as WMA **21** applet, the respective mobile device **100 may** access the information periodically for required updates." ('125 Patent at 9:45-48 (emphasis added));

> "As the issuers of contactless card applets 23 do not allow direct access into the applets themselves, duplicate account information **may** be stored separately within the WMA 21 in order for the mobile wallet application to view account specific information (e.g. credit card number, security code, PIN, expiration date, and etc.)" (Ex. B, U.S. Provisional Application No. 61/428,846 ("'846") at ¶ 42 (emphasis added));

> "During the provisioning process, WMA 501 will store duplicate payment applet account information so that mobile wallet application **may** access the account specific information stored within the SE." (Ex. C, U.S. Provisional Application No. 61/428,851 ("'851") at ¶ 90 (emphasis added)); and

> "During the provisioning process, WMA will store duplicate account information as the payment applet, so that mobile wallet application **may** access the account specific information stored within the SE." (Ex. D, U.S. Provisional Application No. 61/428,853 ("'853") at ¶ 78 (emphasis added).)

Moreover, Apple's proposed claim construction also improperly injects into the claim language the word "for," which implies that the only objective of "wallet management applet (WMA)" is to store "duplicate account specific information accessible to the mobile wallet application." This clearly limits the claim in an unwarranted manner, and contradicts an embodiment disclosed in the very passage of the '125 Patent's specification cited by Apple at 8:60-9:5, which discloses that the "wallet management applet (WMA)" may also be used for the user to "**view and manage**" information. (D.I. 74 at 9 (emphasis added).)

Apple also insists on injecting "storing duplicate account specific information" in the claim language. (*See* D.I. 74 at 12-14.) Relying on a passage from one of the provisional applications ('846 at ¶ 42) that states that "WMA 21 is unique in that, its primary purpose is to cause contactless card applet 23 account information to be stored within the mobile device's SE separate from the contactless card applets 23," Apple argues the "precise thing" that makes the WMA unique is that

it stores "duplicate account information," and therefore the term needs to be construed to add the "duplicate account specific information" language.  (D.I. 74 at 12.)  However, the very next sentence in that same paragraph continues by stating that storing separately within the WMA is permissive, or optional, and is not required.

> "As the issuers of contactless card applets 23 do not allow direct access into the applets themselves, duplicate account information **may** be stored separately within the WMA 21 in order for the mobile wallet application to view account specific information (e.g. credit card number, security code, PIN, expiration date, and etc.)."

('846 at ¶42 (emphasis added).)

Moreover, as explained in Fintiv's Responsive Brief, Apple's attempt to construe "wallet management applet (WMA)" to add "software application" and "storing duplicate account specific information" also violates the doctrine of claim differentiation as claim 16, which depends on claim 11, recites, in part, "wherein the WMA is a *software application* configured *to store account specific information*."  (*See* D.I. 75 at 7.)

If the Court finds that the "software application for storing duplicate account specific information accessible to the mobile wallet application" term should be construed, Fintiv's alternative proposed construction should be adopted for at least the reasons explained in Fintiv's Responsive Brief.  (D.I. 75 at 10-11; Tushie Decl. at ¶ 28.)

Accordingly, "wallet management applet" should be given its plain and ordinary meaning, or alternatively be construed to mean "integrated functionality that enables management of a wallet related applet."

**B.**    **"widget" (claims 11, 18, and 23)**

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning.  To the extent the Court requires construction the plain and ordinary meaning is "integrated functionality that relates to applications related to a | "user interface software application" |

| financial institution, transportation account, and the like." | |
|---|---|

### 1.   "widget" should have its plain and ordinary meaning

Contrary to Apple's and its expert's assertions, the '125 Patent specification and related provisional applications do not indicate that the meaning of the claimed "widget" should be different from its plain and ordinary meaning.  Rather, the term "widget" does not require construction because a person of skill in the art would reasonably understand the meaning and scope of the term in the context of the claims and specification.  (*See* Tushie Decl. at ¶¶ 33-37.)  Further, Apple has failed to demonstrate the need to deviate from the plain and ordinary meaning of "widget" in its briefs.  Indeed, Apple has not shown that it can overcome the heavy presumption in favor of the plain and ordinary meaning of "widget."  *See Meetrix IP, LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191, at *2 (W.D. Tex. Dec. 1, 2017) (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)) ("The Federal Circuit has reaffirmed that a departure from the ordinary and customary meaning is the exception, not the rule.").  Apple has also failed to explain how a construction would assist the jury to understand the term.

### 2.   Apple's proposed claim construction is improper

Even if this term should be construed (it should not), Apple's proposed claim construction is improper for several reasons as discussed in Fintiv's Opening and Responsive Briefs and further elaborated below.  First, as explained in Fintiv's briefs, Apple's proposed construction for "widget" imports the limitation "user interface software application."  (*See* D.I. 72 at 10-11; D.I. 75 at 11-13.)  Apple simply chooses to ignore the various patent specification disclosures indicating that "widget" may, but does not have to, be a "user interface."  But, other embodiments exist, as shown below:

"Widgets **may** be an application configured to interface with a user of the mobile device. In an example, **widgets may** refer to individual payment applications, transportation applications, and other related applications." ('125 Patent at 5:6-9 (emphasis added).)

"If installation is executed, a corresponding widget representing a virtual card, such as a virtual credit card, **may** be provisioned to reside within the respective mobile wallet application 24. In an example, the widget representing the virtual card **may** reside within the mobile wallet application 24." ('125 Patent at 5:66-6:4 (emphasis added).)

"The corresponding widget **may** reside in the mobile wallet application 24, at the application level, to provide an interface to the user." ('125 Patent at 8:63-65 (emphasis added).)

Apple also attempts to again cite to related provisional applications to support its position that "the specification 'repeatedly and consistently' describes widget as user interface software application." (D.I. 74 at 15.)  However, there is no such repetitiveness or consistency from the provisional applications cited by Apple that a "widget" must be a "user interface." (*See* '851, Requirements Use Cases at pp. 18-19, 44; '853, Business Requirements at p. 30.)

Moreover, Apple's request that the Court ignore the doctrine of claim differentiation is misplaced. (D.I. 74 at 16.)  As explained in Fintiv's briefs, Apple's proposed construction would violate the doctrine of claim differentiation because dependent claim 24, which depends on independent claim 23, requires that "the widget is configured to include a user interface" and dependent claim 16, which depends on independent claim 11, requires that "the widget is an application configured to interface with a user of the mobile device." (D.I. 75 at 12-13.)  Apple has not cited to any evidence that would overcome the presumption of claim differentiation. (D.I. 74 at 16.)  Specifically, Apple has not demonstrated that the '125 Patent's written description and its prosecution history require that the only embodiment of "widget" is a "user interface software application." *Seachange Int'l., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (the presumption created by the doctrine of claim construction will be overcome by a contrary

construction dictated by the written description or prosecution history). Rather, as discussed above, the specification teaches that "[w]idgets *may* be an application configured to interface with a user of the mobile device" and further identifies "individual payment applications, transportation applications, and other related applications" as examples of widgets. (*See*, *e.g.*, '125 Patent at 5:6-9 (emphasis added).)

If the Court finds that "widget" should be construed, Fintiv's alternative proposed construction should be adopted for at least the reasons explained in Fintiv's Responsive Brief. (D.I. 75 at 13.)

Accordingly, "widget" should be given its plain and ordinary meaning, or alternatively be construed to mean "integrated functionality that relates to applications related to a financial institution, transportation account, and the like."

C.     **"mobile wallet application" (all asserted claims)**

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "application that provides wallet functionality on the mobile device." | "mobile wallet software application capable of being independently downloaded and installed" |

1.     **"mobile wallet application" should have its plain and ordinary meaning**

With respect to "mobile wallet application," Apple again asks this Court to consider intrinsic evidence that allegedly supports Apple's position that a construction is required without first addressing the need for any disavowal of or deviation from the plain and ordinary meaning. Rather, Apple argues that the Court is required to construe this term because there is a dispute regarding the claim scope and because the jury is not likely to understand the term without a construction. (D.I. 74 at 18.) However, the meaning of the disputed term, "mobile wallet application," is clear and unambiguous to begin with, and *O2 Micro* is therefore inapposite to the

dispute here.  (*See* Tushie Decl. at ¶¶ 38-41.)  Additionally, Apple has failed to explain why its proposal, "mobile wallet software application capable of being independently downloaded and installed," which includes all of the words of the term in dispute and also adds extraneous language, would assist the jury to understand the term.

### 2.   Apple's proposed claim construction is improper

Even if this term should be construed (it should not), Apple's proposed claim construction is improper as it attempts to import limitations into claim language that is otherwise clear and unambiguous, as discussed in Fintiv's Claim Construction Briefs.  (D.I. 72 at 12-13; D.I. 75 at 14-15.)  The patent specification discloses that no independent download or independent installation is necessary for some embodiments:

> "The mobile wallet application 24 may be **downloaded** directly to the requesting mobile device 100, sent to the user in a physical medium storing the application, or by other suitable methods for providing software applications."  ('125 Patent at 6:27-30 (emphasis added).)

> "Once the mobile wallet application 24 and accompanying OTA proxy program have been **downloaded**, the mobile wallet application 24 may be launched by the requesting user in step 207. Alternatively, the mobile wallet application 24 may be launched automatically once it is **downloaded**."  ('125 Patent at 6:42-46 (emphasis added).)

> "Exemplary embodiments of the present invention provide a method for **installing a wallet application** in a mobile device including requesting, by the mobile device, a mobile wallet application comprising a corresponding Over-the-Air (OTA) proxy; receiving mobile wallet application installation information; **installing the mobile wallet application** in the mobile device; capturing mobile device information by using the OTA proxy, the mobile device information comprising secure element (SE) information; and transmitting the mobile device information for registering the installed mobile wallet application."  ('125 Patent at 3:1-11 (emphasis added).)

> "As shown in FIG. 2, in step 201, the mobile device 100 requests a new mobile wallet application 24. In an alternative flow, a SP 140 may request **installation of the mobile wallet application** 24 from the TSM system 120. When requesting installation of mobile wallet application 24 from the TSM system 120, the TSM system 120 may wait for the mobile device 100 to connect to the TSM system 120 before **installing the mobile wallet application 24**. The TSM system 120 may

**install the mobile wallet application 24** directly upon connection to the mobile device 100 or wait until the user approves the request to install the mobile wallet application 24." ('125 Patent at 5:55-66 (emphasis added).)

"After a customer account has been created or updated, if it is determined that the mobile wallet application 24 is not installed on the mobile device 100, the TSM system 120 will confirm the mobile wallet application **installation request** and initiate the **wallet application installation process**. The **installation process** may be initiated by transmitting a Wireless Application Protocol (WAP) message with an embedded Uniform Resource Locator (URL) to the Short Message Service (SMS) platform in step 203, which relays the message to the mobile device 100 in step 204. However, the mobile wallet application 24 **may be obtained in various other ways as well** and is not limited to the WAP message method as described above." ('125 Patent at 6:15-27 (emphasis added).)

"The user, upon receipt of the installation message from the SMS platform, may **initiate the actual installation process** by sending a request to the TSM system 120 in step 205." ('125 Patent at 6:31-33 (emphasis added).)

The passages are devoid of any indication of any independent download or independent installation that is associated with the "mobile wallet application."  Therefore, the term in dispute is not limited by the extra "being independently downloaded and installed" language that Apple seeks to inject.  Moreover, injecting the qualifier, "capable of," into the claim language is also unwarranted because it adds an extraneous quality or ability to "mobile wallet application," which is a term that is clear and unambiguous.

It is also problematic to inject "independently" into the claim language as Apple proposes.  The word "independently" in the context of Apple's proposed construction would add ambiguity to the scope of the claim language as it is unclear what "independently" means.

If the Court finds that "mobile wallet application" should be construed, Fintiv's alternative proposed construction should be adopted for at least the reasons explained in Fintiv's Responsive Brief.  (D.I. 75 at 15.)

Accordingly, "mobile wallet application" should be given its plain and ordinary meaning, or alternatively be construed to mean "application that provides wallet functionality on the mobile

1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE WESTERN DISTRICT OF TEXAS

3                        WACO DIVISION

4    FINTIV, INC.                    *
                                     *
5    VS.                             *  CIVIL ACTION NO. W-18-CV-372
                                     *
6    APPLE, INC.                     *    November 7, 2019

7       BEFORE THE HONORABLE ALAN D ALBRIGHT, JUDGE PRESIDING
                    TUTORIALS AND MARKMAN HEARING
8

     APPEARANCES:
9
     For the Plaintiff:          J. Mark Mann, Esq.
10                               Andy W. Tindel, Esq.
                                 Mann Tindel Thompson
11                               300 W. Main St.
                                 Henderson, TX 75652
12
                                 Jonathan K. Waldrop, Esq.
13                               Rodney R. Miller, Esq.
                                 Kasowitz Benson Torres LLP
14                               1349 West Peachtree Street N.W.
                                 Suite 1500
15                               Atlanta, GA 30309

16                               Daniel C. Miller, Esq.
                                 Kasowitz Benson Torres, LLP
17                               1399 New York Avenue, Suite 201
                                 Washington, DC 20005
18
     For the Defendant:          Claudia Wilson Frost, Esq.
19                               Jeff Quiliri, Esq.
                                 Orrick, Herrington & Sutcliffe LLP
20                               609 Main, 40th Floor
                                 Houston, TX 77002
21
                                 J. Stephen Ravel, Esq.
22                               John R. Johnson, Esq.
                                 Kelly Hart & Hallman LLP
23                               303 Colorado, Suite 2000
                                 Austin, TX 78701
24

25

 1  functionality.

 2       THE COURT:  Okay.

 3       MR. DANIEL MILLER:  I think an additional thing to

 4  consider is that Apple's proposed construction does harm to the

 5  doctrine of claim differentiation where there is a dependent

 6  claim for both -- for these claims.  There are two dependent

 7  claims that say that the widget is user interface, right?  And

 8  the dependent claim can't be --

 9       THE COURT:  Yeah.  I'm not very persuaded by that either.

10  So, I mean, I don't --

11       MR. DANIEL MILLER:  Not persuaded by the doctrine of claim

12  differentiation?

13       THE COURT:  I'm a fan of that, but I don't -- I'm saying I

14  don't think it's a big winner here for you.

15       MR. DANIEL MILLER:  Okay.  Well, I think the other thing

16  to keep in mind --

17       THE COURT:  I mean, I get what you're saying, but I

18  don't -- my feeling is that the way it's used -- the fact that

19  it's used in the dependent claim does not mean that it would

20  not be an appropriate way of construing widget in the

21  independent claim.  I don't think -- I personally don't think,

22  and we may disagree, that the claim differentiation gets you

23  where you want it to in this case.

24       MR. DANIEL MILLER:  So I actually would disagree.  Let's

25  just take a look at one of these claims.

1        THE COURT:  And that's why you're here.

2        MR. DANIEL MILLER:  Okay.  There are a couple of things I

3   want to talk about.  Let's start with one, the use of

4   permissive language in the context of the specification.  It

5   never says a widget must be user interface, correct?  And if we

6   turn to the '125 patent Column 5, Lines 6 through 9, it starts

7   out, the widget may be an application configured to interface

8   with the user of the mobile device, right?  Person of ordinary

9   skill in the art would understand that if it may be a user

10  interface, it may also not be.  It may be other functionality.

11  And if the Court needs some help understanding that --

12       THE COURT:  I fully understand that.

13       MR. DANIEL MILLER:  Okay.  All right.  So there can be

14  background functionality that is never displayed to the user.

15       THE COURT:  And I fully understand the different positions

16  that you and Apple are taking with respect to what the word

17  "may" means.

18       MR. DANIEL MILLER:  Okay.  And I will point out --

19       THE COURT:  You all basically -- you all are at maybe

20  capable of and they are at must be capable of.  So I think

21  I'm -- I'm in good shape at understanding that one.

22       MR. DANIEL MILLER:  Okay.  And if I could just point out.

23       THE COURT:  Sure.

24       MR. DANIEL MILLER:  In the patent itself Column 5 at Line

25  28 there's some language that says the disclosed WMS 110 may

 1  reside within the TSM system 120 or independent of the TSM

 2  system 120.  "May" there certainly doesn't mean that it must be

 3  in both places.

 4       THE COURT:  I got it.

 5       MR. DANIEL MILLER:  All right.  So I would argue that a

 6  person of ordinary skill in the art would understand what a

 7  widget was.  We have a definition.  I would argue that widget

 8  is some discrete functionality that doesn't necessarily require

 9  that it be limited to user interface.  And I think the -- if we

10  look to the claim language itself which I promised we would do

11  and I have not done.

12       THE COURT:  And I've been through the claim language

13  myself.

14       MR. DANIEL MILLER:  So you --

15       THE COURT:  I've got that as well.

16       MR. DANIEL MILLER:  So if I say it again, it won't matter?

17       THE COURT:  It won't.

18       MR. DANIEL MILLER:  Okay.

19       (Laughter.)

20       MR. DANIEL MILLER:  Do you have any other questions?

21       THE COURT:  No, sir.

22       MR. DANIEL MILLER:  All right, Your Honor.

23       THE COURT:  Mr. Jensen, anything else you wanted to say?

24       MR. JENSEN:  No, Your Honor.

25       THE COURT:  Okay.  The Court is going to construe the term

1   "widget" to be plain and ordinary meaning, and the plain and

2   ordinary meaning of it is going to be software that is either

3   an application or works with an application and which may have

4   a user interface.

5        Why don't we do this?  I'd like to get one more claim term

6   in before we break for lunch.  My sense is -- and I could be

7   wrong.  My sense is that we could do provisioning relatively

8   quickly.  Are you all in agreement?  I mean, you all know how

9   much you want to say about it?  Is it something we could get

10  done within a half hour?

11       MR. JENSEN:  Yes, Your Honor.

12       THE COURT:  If it is, then -- and I will tell you I

13  already have a pretty good idea -- I'm going to -- in fact, I'm

14  going to try something different on this one.  This is

15  basically what I am most likely going to give with regard to

16  provisioning, and if someone wants to argue why it's -- I'm

17  incorrect, I'm happy to hear whatever arguments you want to

18  make.  My construction -- my most likely construction for

19  provisioning will be plain and ordinary meaning, which the

20  Court takes to mean as making available for use.

21       So if someone wants to argue why that's wrong, I invite

22  you to do so.

23       MR. JOHNSON:  Apple's fine with that construction, Your

24  Honor.  This is J.R. Johnson from Kelly Hart.

25       THE COURT:  Well, that went awfully quick.  Okay.  I think

1    we still have time for something else then.

2        (Laughter.)

3        THE COURT:  So as between -- I just think -- it seems to

4    me mobile wallet application might take a bit.  So I'm -- I'm

5    trying to avoid that one.

6        What about with --

7        (Conference between the Court and Mr. Yi.)

8        THE COURT:  We're of one mind.

9        Why don't we take up mobile device information if you all

10   think we could get that done relatively quickly?  And I don't

11   mean to push you.  If we can't, I'm happy to wait.  It's

12   just I'm trying to figure out how to get one in.

13       Yes, sir.

14       MR. JOHNSON:  I think we can.

15       THE COURT:  Okay.  Then let's do that one.

16       MR. JOHNSON:  Again, this is J.R. Johnson from Kelly Hart

17   on behalf of Apple.

18       THE COURT:  Yes, sir.

19       MR. JOHNSON:  So what we're really talking about with

20   mobile device information is the information that's used to

21   perform the filtering function you've already heard quite a bit

22   about today.

23       THE COURT:  Yes, sir.

24       MR. JOHNSON:  This is how the term is used within the

25   context of the claims.

1        THE COURT:  And you would do well to cite to which slides

2   you're on because when we go back and look through them,

3   sometimes -- while we're here, we know what you're on, but

4   when -- on the record we don't.

5        MR. JOHNSON:  Yes, Your Honor.  On Slide 85, and for that

6   matter 86, that demonstrates how the term is used within the

7   context of the claims, mobile device information is retrieved,

8   transmitted and then used for filtering.

9        THE COURT:  Could you help me out here?  I don't have it

10  right in front of me, but I'm sure one of your slides does.

11  Which slide has the competing constructions on it?

12        MR. JOHNSON:  The competing constructions, Your Honor, are

13  on Slide 84.

14        THE COURT:  Okay.  Let me turn -- give me one second,

15  please.  Okay.  And if you'll just give me one second.

16        Okay.  Thank you.  You may continue with where you were.

17        MR. JOHNSON:  It's likely easily divined from the

18  previously slide we were looking at, but Slide 87 contains the

19  summary of the parties' dispute which fundamentally boils down

20  to Apple's contention that was read in the context of the

21  patent.  Mobile device information means hardware or software

22  properties relating to the mobile device.  Fintiv disagrees.

23  And the patent itself contains quite a bit of information about

24  what is and just as importantly what is not mobile device

25  information.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| FINTIV, INC., | § | |
| | § | Civil Action No.: 6:18–CV–372–ADA |
| | § | |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| v. | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**JOINT POST-*MARKMAN* HEARING STATEMENT**

Pursuant to the Court's instruction during the *Markman* hearing on Nov. 7, 2019, Plaintiff

Fintiv, Inc. ("Fintiv") and Defendant Apple Inc. ("Apple") (collectively the "Parties") submit this

Joint Post-*Markman* Hearing Statement.  *See Markman* Tr. at pg. 81.  The asserted patent in this

case is U.S. Patent No. 8,843,125 (the "'125 Patent") and the asserted claims are 11, 13-14, 16-18,

and 20-25.

For the following five claim terms, the Parties agree that the Court issued the oral claim

construction rulings below at the *Markman* hearing:

| Claim Term | Court's Oral Ruling |
|---|---|
| "wallet management applet (WMA)" (Claims 11 and 23) | Software that enables management of an electronic wallet including, but not limited to, the functionality of storing account specific information. |
| "widget" (claims 11, 18, and 23) | Plain and ordinary meaning which is software that is either an application or works with an application and which may have a user interface. |
| "SE information" (Claims 14 and 23) | (Court will issue an order providing a construction for this term.) |
| "over-the-air (OTA) proxy" (Claim 23) and "OTA proxy" (claim 16) | Software, in conjunction with relevant hardware, that provisions contactless card applets, gathers mobile device information |

1

| Claim Term | Court's Oral Ruling |
|---|---|
|  | (including SE information), transmits data (mobile device and SE specific information) to the TSM system, and receives APDU commands from the TSM and appropriately forwards them. |
| "provision[ing]" (Claims 11 and 23) | Plain and ordinary meaning which the Court takes to mean as making available for use. |

The Parties have conflicting interpretations of the Court's claim construction rulings on the

following two terms:

| Claim Term | Fintiv's Interpretation | Apple's Interpretation |
|---|---|---|
| "mobile wallet application" (all asserted claims) | Plain and ordinary meaning. *See Markman* Tr. (Dkt. 83) at pgs. 122-123. | Plain and ordinary meaning (but a decision regarding the disputed issues of downloading and installation is reserved for later in the case). *See Markman* Tr. (Dkt. 83) at pgs. 122-123. |
| "mobile device information" (Claims 14, 18, and 23) | Plain and ordinary meaning. *See Markman* Tr. (Dkt. 83) at pg. 100. | Plain and ordinary meaning (but subject to further argument at the summary judgment or *Daubert* stage). *See Markman* Tr. (Dkt. 83) at pg. 100. |

Appx03155

Dated:  November 26, 2019

RESPECTFULLY SUBMITTED,

By:  */s/ Andy Tindel*

    J. Mark Mann (Texas Bar No. 12926150)
    mark@themannfirm.com
    G. Blake Thompson (Texas Bar No. 24042033)
    blake@themannfirm.com
    **MANN | TINDEL | THOMPSON**
    300 W. Main Street
    Henderson, Texas 75652
    913 Franklin Ave., Suite 201
    Waco, Texas 76701
    Telephone:  (903) 657-8540
    Facsimile: (903) 657-6003

    Andy Tindel (Texas Bar No. 20054500)
    atindel@andytindel.com
    **MANN | TINDEL | THOMPSON**
    112 E. Line Street, Suite 304
    Tyler, Texas 75702
    Telephone: (903) 596-0900
    Facsimile: (903) 596-0909

    Craig D. Cherry (Texas Bar No. 24012419)
    ccherry@haleyolson.com
    **HALEY & OLSON, P.C.**
    100 N. Ritchie Road, Suite 200
    Waco, Texas 76712
    Telephone: (254) 776-3336
    Facsimile: (254) 776-6823

    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Darcy L. Jones (CA Bar No. 309474)
    (Admitted in this District)
    djones@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    Jack Shaw (CA Bar No. 309382)
    (Admitted in this District)
    jshaw@kasowitz.com

RESPECTFULLY SUBMITTED,

By:  */s/ Travis Jensen*

    J. Stephen Ravel
    Bar No. 16584975
    John R. Johnson
    State Bar No. 24070000
    **KELLY HART & HALLMAN LLP**
    303 Colorado, Suite 2000
    Austin, Texas 78701
    Tel: (512) 495-6429
    Email: steve.ravel@kellyhart.com
    Email: jr.johnson@kellyhart.com

    Claudia Wilson Frost
    State Bar No. 21671300
    **ORRICK, HERRINGTON &**
    **SUTCLIFFE LLP**
    609 Main, 40th Floor
    Houston, TX 77002
    Telephone: 713.658.6400
    Facsimile: 713.658.6401
    Email: cfrost@orrick.com

    Travis Jensen
    (CA Bar No. 259925)
    **ORRICK, HERRINGTON &**
    **SUTCLIFFE LLP**
    1000 Marsh Rd.
    Menlo Park, CA 942025
    Telephone: 650.614.7400
    Facsimile: 650.614.7401
    Email: tjensen@orrick.com

    Tyler S. Miller
    (NY Bar No. 5122262)
    **ORRICK, HERRINGTON &**
    **SUTCLIFFE LLP**
    51 West 52nd Street
    New York, NY 10019
    Telephone: 212.506.5338
    Facsimile: 212.506.5151
    Email: tmiller@orrick.com

    **Attorneys for Defendant**
    **Apple, Inc.**

3

**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Daniel C. Miller (NY Bar No. 4232773)
(Admitted in this District)
**KASOWITZ BENSON TORRES LLP**
1399 New York Avenue NW, Suite 201
Washington, DC  20005
Telephone:  (202) 760-3400
Facsimile:   (202) 760-3401
Email: dcmiller@kasowitz.com

Rodney R. Miller (Texas Bar No. 24070280)
(Admitted in this District)
**KASOWITZ BENSON TORRES LLP**
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081
Email: rmiller@kasowitz.com

**Attorneys for Plaintiff**
**FINTIV, INC.**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically

via U.S. District Court [LIVE] —  Document Filing System, to all counsel of record, on this 26th

day of November, 2019.

*/s/ Andy Tindel*
Andy Tindel

Appx03157

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE WESTERN DISTRICT OF TEXAS

 3                        WACO DIVISION

 4   FINTIV, INC.                 *
                                  *
 5   VS.                          * CIVIL ACTION NO. A-19-CV-1238
                                  *
 6   APPLE, INC.                  *    February 24, 2020

 7      BEFORE THE HONORABLE ALAN D ALBRIGHT, JUDGE PRESIDING
                  TELEPHONIC DISCOVERY HEARING
 8
     APPEARANCES:
 9
     For the Plaintiff:         J. Mark Mann, Esq.
10                              Andy W. Tindel, Esq.
                                Mann Tindel Thompson
11                              300 W. Main St.
                                Henderson, TX 75652
12
                                Jonathan K. Waldrop, Esq.
13                              Kasowitz Benson Torres LLP
                                1349 West Peachtree Street N.W.
14                              Suite 1500
                                Atlanta, GA 30309
15
                                Jack Shaw, Esq.
16                              Kawowitz Benson Torres, LLP
                                333 Twin Dolphin Drive, Suite 200
17                              Redwood Shores, CA 94065

18   For the Defendant:         Claudia Wilson Frost, Esq.
                                Orrick, Herrington & Sutcliffe LLP
19                              609 Main, 40th Floor
                                Houston, TX 77002
20
                                J. Stephen Ravel, Esq.
21                              Kelly Hart & Hallman LLP
                                303 Colorado, Suite 2000
22                              Austin, TX 78701

23                              Travis Jensen, Esq.
                                Orrick, Herrington & Sutcliffe LLP
24                              1000 Marsh Road
                                Menlo Park, CA 94025-1015
25
```

03:13   1   protective order to see that information.  That is exactly what

03:14   2   happened here.  If Fintiv had complied with the protective

03:14   3   order and used Bates numbers instead of actual source code

03:14   4   itself, that dissemination would have been substantially

03:14   5   harmless.  So that's reason number one.

03:14   6        Reason number two is that they included a number of source

03:14   7   code file names and function calls which have not been printed

03:14   8   for use in the case.  The protective order contains an

03:14   9   aggregate limit on the total number of source code pages which

03:14   10  could be printed and used in the case of 250 pages.  If they're

03:14   11  allowed to include, for example, in their infringement

03:14   12  contentions, their expert reports or anything else, whatever

03:14   13  source code they want without printing it, that would render

03:14   14  the printing restrictions and limitations of the protective

03:14   15  order nugatory.  They would be worthless if they can use

03:14   16  however much they want.

03:14   17       Lastly, on the point of the number of printed pages, we

03:14   18  have discussed that with Fintiv.  To date they've printed 126

03:15   19  out of their 250 pages.  We don't think there's a real issue

03:15   20  with respect to the 250 page limit since they have only used

03:15   21  half of the number of pages so far.

03:15   22       But to come back to your main point, the two reasons why

03:15   23  we're concerned about this are, one, the very thing that

03:15   24  happened in this case Apple's source code was sent to a third

03:15   25  party and, number two, they're circumventing the printing

12

```
03:15   1   limits.
03:15   2        THE COURT:  Remember this:  I think we talked about this.
03:15   3   I could get my cases confused, but I think it was in this case
03:15   4   we talked about this, that the printing limits are -- were and
03:15   5   are in my opinion an estimate just a dart against the wall of
03:15   6   the appropriate number of pages that might be necessary to
03:15   7   allow the plaintiffs sufficient number and to protect the
03:15   8   defendant from too many, but it's -- there's no magic in my
03:16   9   opinion with 250.  And so if the plaintiffs need to have a
03:16  10   larger number of pages because that's what it takes to inform
03:16  11   you of what infringes -- that goes in the infringement
03:16  12   contentions, then I'm going to give them more pages to do that.
03:16  13   I'm not going to restrict them, them being the plaintiffs, from
03:16  14   being able to give you -- to identify for you what they believe
03:16  15   is infringing if that's what it takes to do.  So let's set
03:16  16   aside any argument that there is a hard page limit if it -- if
03:16  17   the plaintiff is -- I mean, Mr. Waldrop can tell me if I'm
03:16  18   misunderstanding this, but if Mr. Waldrop confirms that he
03:17  19   needs additional pages to be able to provide to Apple all the
03:17  20   information it needs to -- in the plaintiff's infringement
03:17  21   contentions, there's a pretty good chance, a very good chance
03:17  22   and almost 100 percent chance that they are going to get to use
03:17  23   whatever they need to do to do that or they can't prove their
03:17  24   infringement.
03:17  25        So let me start out with Mr. Waldrop.  Mr. Waldrop, am I
```

03:17  1   accurately stating on the record what it is that you all are

03:17  2   doing?

03:17  3       MR. WALDROP:  Yes.  That's right, Your Honor.  Exactly.

03:17  4       THE COURT:  Okay.  So I guess ultimately here's what I'm

03:17  5   left with, Mr. Jensen.  If Apple wants to stick by -- I don't

03:17  6   get it, I will tell you, your concern, given the restrictions

03:17  7   that are placed on it; however, you keep repeating, correctly,

03:18  8   that you've already -- there's already been one mistake that's

03:18  9   been made in this case where something got done that could have

03:18  10  damaged Apple.  So if you want me to order the plaintiff to go

03:18  11  through and basically swap all this stuff out and do it in the

03:18  12  manner that you're suggesting, I guess I'll do that, but I'm

03:18  13  certainly not going to put any limit on the number of pages

03:18  14  that they have to get it done.  So because I -- I'm going to

03:18  15  allow them to reference either in an encoded fashion or however

03:18  16  you guys want it to be done as much source code as they need to

03:18  17  set forth their infringement contentions.  So, Mr. Jensen, I'll

03:18  18  let you tell me what you want me to do and then I'll hear from

03:18  19  Mr. Waldrop in response.

03:18  20      MR. JENSEN:  Yes, Your Honor.  That's correct.  That's the

03:19  21  relief that we had requested from Fintiv is that they simply

03:19  22  reserve their contentions by using the Bates numbers instead of

03:19  23  the actual code itself, and if I might just add one further

03:19  24  point on that that I do think that there's a fundamental

03:19  25  disagreement between the parties here as to what constitutes

03:19  1   source code, and I want to make sure we're clear about this.

03:19  2   The Paragraph 2(h) of the protective order provides an express

03:19  3   definition of source code, and part of that definition includes

03:19  4   source code listings and descriptions of source code.  So I

03:19  5   think we'd like some clarification and an order that reflects

03:19  6   that source code file names as well as the actual function

03:19  7   calls of the code themselves are deemed source code under this

03:19  8   protective order, and I don't think there should be a real

03:19  9   dispute about this.  When plaintiffs served their infringement

03:19  10  contentions in the first instance, they did designate them as

03:20  11  source code confidential.  So I don't understand where -- you

03:20  12  know, if there's a dispute there, but if there is, we'd like to

03:20  13  resolve that, and certainly you're correct that, yes.  We would

03:20  14  like Fintiv to be required to reserve their contentions in

03:20  15  compliance with the protective order.

03:20  16          THE COURT:  Okay.  So before Mr. Waldrop gets a chance to

03:20  17  speak, let me say this.  For the last issue that you just

03:20  18  discussed, I would like for you to -- you know, I don't know

03:20  19  how much the -- how on fire your hair is about this in terms of

03:20  20  what everything you all are doing.  So the quicker you need me

03:20  21  to do what you just suggested, let that be your guide, but I

03:20  22  need as soon as you can get it to me -- tomorrow would be

03:20  23  great, given the impressive lawyer talent you have.  Just

03:21  24  having Mr. Ravel alone is, you know, worth ten other lawyers,

03:21  25  but if you all will get me a letter that sets out exactly what

03:21  1  it is you want me to clarify and what you want it to say, I

03:21  2  will then -- I would like a letter back in a 24-hour turnaround

03:21  3  and with the ample legal talent of, you know, Mr. Mann and Mr.

03:21  4  Tindel and everyone they have, that should be no problem.  If

03:21  5  you -- if you guys -- by you guys I mean the plaintiff's

03:21  6  attorneys -- are okay with that redefinition, let me know.  If

03:21  7  you are not, tell me what you think is appropriate from no

03:21  8  change to something else and then probably what I will do big

03:21  9  picture is take a look at the protective order itself to make

03:21  10  sure what's in there is what I want to be in there.  I know you

03:22  11  guys signed off on it, but let me again make clear the

03:22  12  following that, you know, I am going to do my very best on the

03:22  13  one hand to protect Apple as much as I can in terms of the

03:22  14  amount of source code that is put at risk through this

03:22  15  litigation, but I am going to be -- that's going to be offset

03:22  16  by lawyers that I have great respect for on the plaintiff's

03:22  17  side if they tell me -- whatever they tell me they need to have

03:22  18  access to to satisfy the infringement contentions, they're

03:22  19  probably going to get in this case, and if we have to do

03:22  20  something extra special to protect -- to satisfy Apple in terms

03:22  21  of the protection of the source code that's being used, we'll

03:23  22  address that independently of this hearing, but, you know, I'm

03:23  23  going to let the plaintiffs prosecute their case, and that will

03:23  24  be of priority to me, and if we need to do something to protect

03:23  25  that priority in terms of confidentiality, I'll be as involved

03:23  1    as you all want me to be to make sure that that takes place,

03:23  2    because, you know, I obviously don't want Apple to be concerned

03:23  3    that their source code is going to be disclosed because of this

03:23  4    litigation.

03:23  5        So having rambled on for a good while, I promised myself I

03:23  6    wouldn't do that when I took the job, but I failed pretty

03:23  7    miserably in that goal.

03:23  8        Mr. Jensen, do you have anything you'd like to add?

03:23  9        MR. JENSEN:  No, other than to say that we printed all the

03:23  10   source code that has been requested, and I think that if we

03:24  11   printed everything that was in their infringement contentions,

03:24  12   it would still fall below the 250 page, you know, guideline in

03:24  13   the protective order.  So we view the number of pages as sort

03:24  14   of, you know, premature at this point but appreciate your

03:24  15   guidance on that topic.

03:24  16       THE COURT:  Okay.  And like I said, let me make clear.  I

03:24  17   will be happy to take whatever steps we can and need to to

03:24  18   protect Apple and their source code.  I completely understand

03:24  19   Apple's concern.  And so I don't want that to be lost on

03:24  20   anyone.

03:24  21       Mr. Waldrop, did you have anything else you wanted to add?

03:24  22       MR. WALDROP:  No, Your Honor, other than we agree with you

03:24  23   completely.  We don't want to do anything to harm Apple or its

03:24  24   source code, but we do have a disagreement with respect to what

03:24  25   source code was and we'll let the Court resolve that.  We don't

03:24  1   think that anything that we did was a description of source

03:24  2   code or source code listing.  There were function callouts and

03:24  3   file names, but we leave it to the Court to resolve that and we

03:25  4   have no interest in harming our -- just want to comply in our

03:25  5   understanding of the protective order.

03:25  6       THE COURT:  That's fine.  Mr. Waldrop, why don't you do

03:25  7   this?  Since you all know better than I do sitting here in kind

03:25  8   of a vacuum, since you all, meaning both sides, that's why I'm

03:25  9   saying you all, know more specifically what it is you're

03:25  10  concerned about, send the Court -- I don't want this to

03:25  11  worry -- is there a way for you all to send to the Court a page

03:25  12  or two pages of the infringement contentions so we have

03:25  13  examples of what the specific fight is over so Josh and I can

03:25  14  take a look at it and can we do that in a way that doesn't

03:25  15  cause counsel for Apple to be overly distressed at it being --

03:25  16  not -- it won't be made public if it's sent to me, but would --

03:26  17  let me start with that.  Mr. Jensen, would you be okay with us

03:26  18  receiving, you know, a couple of pages to see what it is

03:26  19  specifically you all are talking about?

03:26  20      MR. JENSEN:  Yes, Your Honor.  We'd be happy to provide a

03:26  21  representative example or two from the infringement

03:26  22  contentions.

03:26  23      THE COURT:  That -- you pick whatever -- by you I mean

03:26  24  Mr. Jensen.  You select whatever it is that you think will not

03:26  25  hurt Apple in any way by sending it to the Court and -- but

03:26   1   send us a representation so we can put into context what it is

03:26   2   both sides' concern is over the language in the protective

03:26   3   order with respect specifically to what the plaintiff has done

03:26   4   with their infringement contentions.  Does that work for

03:26   5   everyone?

03:26   6        MR. JENSEN:  Yes, Your Honor.

03:26   7        MR. WALDROP:  Yes, Your Honor.

03:26   8        THE COURT:  Okay.  Anything else from either side?

03:26   9        MR. WALDROP:  Yes, Your Honor.  There were -- there were

03:27   10  just one or two issues, the one regarding -- and this is

03:27   11  prophylactic, Your Honor, and to avoid further issues.  The

03:27   12  next was Apple's interpretation of the protective order which

03:27   13  we believe would preclude us from exchanging or sharing with

03:27   14  our experts what we thought were paper copies of the source

03:27   15  code or the final infringement reports.  We haven't had a

03:27   16  meeting of the minds with Apple regarding this and their

03:27   17  interpretation and position led us trepidatious that we wanted

03:27   18  the Court's guidance.  The protective order is fairly clear

03:27   19  that they have three paper copies may be maintained of their

03:27   20  source code printouts and that they can be mailed or FedExed

03:27   21  was our belief, but Apple seemed to be taking a position on

03:27   22  transmission that we thought would prevent us from sharing

03:28   23  source code or printouts outside of our office, meaning that we

03:28   24  got the sense from their interpretation that our experts had to

03:28   25  come only to our offices to review source code or our final

03:28  1   infringement contentions, and that, we thought, was an

03:28  2   unreasonable position and inconsistent with the protective

03:28  3   order and so we sought the Court's guidance on that.  I think

03:28  4   that is a central issue.  There are others, but if that's

03:28  5   resolved, I think the other ones fold into each other.

03:28  6        THE COURT:  Let me hear from Mr. Jensen.

03:28  7        MR. JENSEN:  Your Honor, I think our concern was with

03:28  8   Paragraph 11(c)(xii) of the protective order which says that

03:28  9   absent express written permission from the producing party, the

03:28  10  receiving party may not create electronic images or any other

03:28  11  images or make electronic copies of the source code from any

03:28  12  paper copy for use in any manner, including, by way of example,

03:28  13  the receiving party may not scan the source code to a PDF or

03:28  14  photograph the code.  So our concern was that there may have

03:29  15  been an electronic version, a scan or a PDF that was made and

03:29  16  that was being transmitted to experts or other individuals on

03:29  17  the Fintiv side.  We asked them to confirm in writing that no

03:29  18  electronic copies had been made and they did not respond to

03:29  19  that request.  So that was our concern was specifically around

03:29  20  the electronic copies.  We think that the PO is very clear as

03:29  21  well on the number of, you know, hard copies that can be

03:29  22  printed and the way those can be used and sent.

03:29  23       THE COURT:  Okay.  Mr. Waldrop?

03:29  24       MR. WALDROP:  Yes, Your Honor.  There have not been any

03:29  25  electronic copies transmitted, Your Honor.  So Mr. Jensen --

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **FINTIV, INC.,** | § | |
| *Plaintiff,* | § | |
| | § | **1:19-CV-01238-ADA** |
| **v.** | § | |
| | § | |
| **APPLE INC.,** | § | |
| *Defendant.* | § | |

**ORDER DENYING DEFENDANT APPLE'S REQUEST FOR**
**PLAINTIFF TO RE-SERVE ITS FINAL INFRINGEMENT CONTENTIONS**

Before the Court is Defendant Apple's request for the Plaintiff Fintiv to re-serve its Final Infringement Contentions to use Bates and line numbers instead of file names and function calls, in order to comply with what Apple believes the Protective Order requires. ECF No. 98 at 2. For the reasons that follow, the Court will not require Fintiv to re-serve its Final Infringement Contentions using Bates and line numbers.

**I.      Factual Background**

Plaintiff filed the instant action on December 21, 2018 alleging that Apple infringed U.S. Patent No. 8,843,125. ECF No. 1. The '125 Patent is titled "System and Method for Managing Mobile Wallet and its Related Credentials." *Id.* at 1. Fintiv alleges that Apple infringes upon the '125 patent through the sale of its iPhone, Apple Watch, and Apple Wallet products that are enabled to provision a contactless card in a mobile device that includes a mobile wallet application. *Id.* at 5.

Given the proprietary nature of the devices in question, the parties negotiated and jointly submitted a motion for entry of an agreed protective order. ECF No. 98 at 1. The Court entered the Protective Order on August 7, 2019. *Id.* The Protective Order defines "Source Code" as

"computer code, scripts, assembly, binaries, object code, source code listings and descriptions of source code, object code listings, and descriptions of object code, . . . ." *Id.* The Order restricts communication of the Source Code from being "included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible." *Id.* at 2.

On January 17, 2020, Fintiv served Apple with its Final Infringement Contentions. *Id.* at 1. The Final Infringement Contentions contained over sixty file names and function calls from Apple's source code. *Id.* Apple, under the impression that file names and function calls are within the Protective Order's definition of "Source Code," requested that Fintiv re-serve its Final Infringement Contentions using references to Bates and line numbers in lieu of the file names and function calls. *Id.* The Court held a discovery hearing on February 24, 2020.

## II.     Analysis

The central issue of this discovery dispute is whether file names and function calls fall within the protection of the Protective Order given its definition of "Source Code." Apple makes several arguments in support of its position.

First, Apple contends that Fintiv implicitly concedes that file names and function calls fall the protections of the Protective Order.  More specifically, Apple argues that because Fintiv designated the Final Infringement Contentions as "CONFIDENTIAL – OUTSIDE ATTORNEY'S EYES ONLY – SOURCE CODE," Fintiv implicitly concedes that file names and function calls are source code. ECF No. 98 at 2.

Fintiv responds by stating that it included the "SOURCE CODE" designation to its Final Infringement Contentions out of an abundance of caution since those contentions contained information relating to "Source Code." ECF No. 101-1 at 3.

The Court agrees that the confidentiality designation is not dispositive of the substance of the document. The Court also finds that it is not unreasonable that Fintiv would overclassify a document that referenced source code in order to err on the safe side.

Second, Apple further claims that since the function calls are included within the source code, they should be considered source code as well. ECF No. 98 at 2. Apple provided a representative sample of Fintiv's Final Infringement Contentions, which listed various file names and function calls but did not appear to contain any actual lines of code beyond that. *Id.* at Ex. 1.

Fintiv's response contends that since the definition of "Source Code" does not explicitly list "file name" or "function name" or any derivations thereof, citations to such names should not fall within the Protective Order. ECF No. 101-1 at 1–2.

The Court again agrees with Fintiv. First, after examining the representative sample of Fintiv's Final Infringement Contentions, the Court does not believe that the listed file names and function calls provide the same level of disclosure as would the source code implementation of an algorithm or data structure. In fact, the Court finds that the listed file names and function calls provide very little, if any, useful—let alone highly confidential—information.  Second, the people that have access to this document only have access to this document by virtue of their involvement in this litigation, *i.e.*, the parties' counsel and their experts. Because the operative Protective Order in this case does not bar parties' counsel and their experts from reviewing source code, the Court finds that danger of including file names and function calls in this type of document is considerably less than the danger of including those things in other documents *e.g.*, a sealed filing with improperly applied redactions.

That said, the Court realizes that there is a non-zero danger of including file names and function calls within this type of document, as one party (usually the receiving party) may

accidentally disclose this document to an unauthorized third-party. But even if that were to occur, the Court finds that because the file names and function calls in Fintiv's Final Infringement Contentions do not appear to be particularly informative, the Court finds that the level of danger in this case is acceptably low.

Third, the Court finds that using file names and function calls instead Bates and line numbers improves the clarity of Fintiv's Final Infringement Contentions, while also eliminating the potential of introducing inadvertent errors when converting over to Bates and line numbers.

Fourth, while the burden to Fintiv (to modify its contentions to excise any listing of file names and function calls by replacing them with Bates and line numbers ) is relatively low, the Court finds the danger is small enough and less than Fintiv's burden.

Therefore, the Court declines to order Fintiv to re-serve its Final Infringement Contentions using Bates and line numbers instead of file names and function calls.

The Court, however, shares Apple's concern of protecting its source code from improper disclosure. ECF No. 98 at 3. To the extent that Apple feels any particular file name or function call has an independent basis for being sensitive enough material to warrant further protection, the Court will allow Apple to request encoding particular terms on a case-by-case basis.

## III.   Conclusion

Based on the foregoing, Defendant Apple's request for Fintiv to re-serve its Final Infringement Contentions is **DENIED** (ECF No. 98).

**SIGNED** this 24th day of June 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

# **Confidential Material Omitted**

## Sealed – Redacted in Full

Appx03815 – Appx03818

Appx04235

Appx04240 – Appx04247

Appx04292 – Appx04297